# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| MOLDEX METRIC, INC., ) | |
| ) | |
| Plaintiff, ) | Civil No. 14-cv-01821-JNE/FLN |
| ) | |
| v. ) | |
| ) | |
| 3M COMPANY and 3M INNOVATIVE ) | |
| PROPERTIES COMPANY, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR DISMISSAL MOTION

Dated:  July 2, 2014

**FAEGRE BAKER DANIELS LLP**
Wendy J. Wildung (#117055)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Phone:  (612) 766-7000
Fax:  (612) 766-1600

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Lawrence B. Friedman (admitted *pro hac vice*)
(New York #1866631)
Leah Brannon (admitted *pro hac vice*) (District of
Columbia #467359)
One Liberty Plaza
New York, New York 10006
Phone:  (212) 225-2000
Fax:  (212) 225-3999

*Attorneys for Defendants 3M Company*
*and 3M Innovative Properties Company*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................... 3

    A.  The Parties ................................................................................................ 3

    B.  The Patent Litigation ............................................................................... 3

    C.  The Instant Action ................................................................................... 7

III. ARGUMENT ..................................................................................................... 8

    A.  Moldex Fails to State a Claim Under the Sherman Act for Monopolization
        or Attempted Monopolization .................................................................. 8

        1.  Moldex Fails to Allege Antitrust Injury ......................................... 8

        2.  Moldex Fails to Allege an Antitrust Violation ................................. 12

            i.   Moldex Fails to Provide any Factual "Heft" for its Allegations
               that the Patent Litigation Was Baseless ...................................... 13

            ii.  Moldex Fails to Properly Allege that 3M's Subjective  Intent
               Was to Interfere Directly with Moldex's Business Relationships 15

        3.  Moldex's Complaint Fails to Plead Other Essential Elements of a
            Cognizable Antitrust Claim .............................................................. 16

            i.   Moldex Fails to Plead Sufficient Facts to Establish a Viable
               Claim for Monopolization ........................................................... 16

            ii.  Moldex Likewise Fails to Plead Facts that Would Establish a
               Viable Claim for Attempted Monopolization .............................. 18

    B.  Moldex Fails to State a Claim for Unfair Competition Based
        on the Patent Litigation .......................................................................... 19

    C.  Moldex Fails to State a Claim for Malicious Prosecution ............................. 20

    D.  The Court Should Dismiss Moldex's Claims for Unfair Competition and
        Malicious Prosecution Pursuant to Minnesota's Anti-SLAPP Statute .......... 21

    E.  Moldex Fails to State a Claim for Unfair Competition Based on 3M's
        Alleged False Advertising ....................................................................... 23

        1.  Moldex Mischaracterizes 3M's Advertising ......................................... 24

      2.     3M's Publication of the NRR Is Not Actionable Because It Complies with Federal Law ................................................................. 27

      3.     Moldex's False Advertising Claim Is Time-Barred ............................ 29

IV.  CONCLUSION .................................................................................................. 30

3M Company and 3M Innovative Properties Company (together, "3M") seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Complaint filed by Moldex Metric, Inc. ("Moldex") because it fails to state a claim against 3M.

## I.      INTRODUCTION

3M filed a patent infringement lawsuit against Moldex in this Court (the "Patent Litigation") in March 2012, and then dismissed that suit in June 2013 after discovery showed that Moldex's infringing sales were not of a size sufficient to warrant continued litigation.  Moldex now claims 3M's suit was a "sham" and maliciously filed and prosecuted, and thus violated the federal Sherman Act and state malicious prosecution and unfair competition law.  Moldex repeatedly made the same allegations in this Court during the Patent Litigation.  But rather than pursue these allegations in the Patent Litigation, Moldex waited until nearly one year after that lawsuit was dismissed, and then filed a lawsuit incorporating such allegations in April 2014, initially not in this Court, but rather in the Central District of California.[1]  Then, after 3M told Moldex that 3M would seek to transfer Moldex's claims to this Court, Moldex withdrew its complaint from the California court and re-filed it in this Court.[2]

---

[1]     *See* Complaint, *Moldex Metric, Inc. v. 3M Co.*, No. 2:14-cv-02921-PA-JEM (C.D. Cal. Apr. 16, 2014), ECF No. 1.

[2]     This lawsuit was originally assigned to Judge Doty and then, at 3M's request and over Moldex's objection, was re-assigned here. *See* Order Reassigning Case, *Moldex Metric, Inc. v. 3M Co.*, No. 14-cv-01821-JNE-FLN (D. Minn. June 16, 2014), ECF No. 13.

The Court should dismiss this lawsuit in its entirety because it does not state a claim. First, Moldex fails to state a claim that 3M's prosecution of the Patent Litigation is actionable under either the Sherman Act or corresponding state law. Moldex's attempt to plead a Sherman Act claim based on 3M's conduct in the Patent Litigation is fatally flawed because it fails to allege that Moldex suffered any cognizable antitrust injury due to the Patent Litigation. Moldex's claim also fails because it does not allege an exception to the *Noerr-Pennington* doctrine, under which 3M's filing and prosecution of the Patent Litigation is protected First Amendment activity. In addition, Moldex fails to plead other critical elements of a proper antitrust claim, including that 3M possesses monopoly power in a properly defined relevant market or that 3M engaged in anticompetitive conduct.

Moldex also fails to plead a proper unfair competition claim under California law to the extent that claim is based on the Patent Litigation, for the same reasons that the Court should dismiss Moldex's Sherman Act claim. Likewise, Moldex also fails to plead a proper malicious prosecution claim for substantially the same reasons that it fails to properly allege an exception to the *Noerr-Pennington* doctrine with respect to its Sherman Act claim. The Court also should dismiss Moldex's attempt to plead an unfair competition and malicious prosecution claim based on the Patent Litigation under Minnesota's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, which immunizes from liability acts to petition the government, such as the Patent Litigation, unless they constitute a tort or a violation of a person's constitutional rights, exceptions that do not apply here. Minn. Stat. §§ 554.01-554.05.

Finally, to the extent Moldex's unfair competition claim is based on 3M's alleged false advertising of one of its products – a claim Moldex also made during the Patent Litigation – the Court should dismiss it because it is predicated on Moldex's mischaracterization of 3M's advertising of a Noise Reduction Rating, which is required by applicable federal law and thus enjoys a "safe harbor," and because Moldex's claim is time-barred.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   <u>The Parties</u>

3M Company is a Delaware corporation and has its principal place of business in St. Paul, Minnesota. Compl. ¶ 2. Among other things, it designs, makes and sells worker safety products, including hearing protection products. *Id.* 3M Innovative Properties Company, an affiliate of 3M Company, is likewise incorporated in Delaware and based in St. Paul. *Id.* ¶ 3. It owns the 3M group's intellectual property. *Id.*

Moldex is a California corporation having its principal place of business in Culver City, California. Compl. ¶ 1. It too designs, manufactures and sells worker safety products, including hearing protection products. *Id.*

### B.   <u>The Patent Litigation</u>

Here, Moldex is challenging 3M's filing and prosecution of the Patent Litigation, which 3M commenced against Moldex in this Court on March 8, 2012. *See* Complaint, *3M Co. v. Moldex-Metric, Inc.*, No. 12-cv-00611-JNE-FLN (D. Minn.

Mar. 8, 2012), ECF No. 1.[3]  3M alleged that two Moldex products, its BattlePlugs®

earplug and its M-Series earmuff, infringe two 3M patents, U.S. Patent No. 6,070,693

(the "'693 Patent") and U.S. Patent No. 7,036,157 (the "'157 Patent") respectively.  *Id.*

¶¶ 13-14.

   Moldex's BattlePlugs product is a "non-linear" or "selective attenuation"

earplug, which means that it is designed to block or attenuate sounds of different

amplitude and frequency to differing degrees, such that the wearer is protected from

intense impulse sounds (*e.g.*, gunfire or explosions) while still being able to hear sounds

of different amplitude or frequency (*e.g.*, speech).  Compl. ¶ 8.  It is also a "dual mode"

earplug, in that the selective attenuation sound channel can be blocked, thereby providing

greater hearing protection.  *Id.* ¶ 17.  3M manufactures and sells its own "non-linear dual

mode" earplug, named "Combat Arms™."  *Id.* ¶ 14.

   Moldex filed its Answer, Affirmative Defenses, and Counterclaims in the

Patent Litigation on April 27, 2012, which asserted among other things that "an objective

examination of the record will demonstrate that 3M's assertion of infringement against

Moldex's BattlePlugs is baseless" and that 3M had pleaded "unfounded claims against

Moldex' Earmuff products . . . simply to distract from its baseless accusations against

BattlePlugs."  *See* ECF No. 13 at 2.  Moldex also accused 3M of unclean hands and

---

[3]    Unless otherwise noted, all references to "ECF No." refer to the Patent Litigation docket, *3M Co. v. Moldex-Metric, Inc.*, No. 12-cv-00611-JNE-FLN (D. Minn. 2012). The Court may take judicial notice of the filings in the Patent Litigation under Federal Rule of Evidence 201(b), including in connection with 3M's dismissal motion, because they are referenced in the Complaint and in court records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

alleged that "3M's lawsuit has been brought in bad faith." *Id.* ¶ 45.  Further, Moldex

asserted that, "based on the conduct of 3M, this is an exceptional case under 35 U.S.C.

§ 285" that warrants an award of Moldex's "costs and attorneys' fees." *Id.* at Prayer for

Relief.

      The parties engaged in substantial discovery and extensively briefed to this

Court several factual and legal issues that directly address the core issue in the instant

lawsuit – whether 3M had objective and subjective bases for its infringement claims

against Moldex in the Patent Litigation.  In particular, the parties made extensive

presentations to this Court concerning the bases for 3M's patent infringement claims.  For

example, in opposition to Moldex's Motion for Summary Judgment of Non-Infringement

of the '693 Patent, ECF No. 33, 3M explained in detail precisely why Moldex's

BattlePlugs product infringes the '693 patent.  ECF No. 46.

      While Moldex's summary judgment motion was pending, Moldex provided

3M with sales information for BattlePlugs.  ECF No. 61-1 at 3-4.  Based on that

information and other considerations, 3M concluded that Moldex's limited sales of

BattlePlugs did not justify 3M's continued pursuit of its infringement claims under the

'693 Patent, and so informed Moldex and this Court.  Compl. ¶ 27; ECF Nos. 65 at 4; 61-

1 at 3-5.  Thus, on March 29, 2013, 3M moved to voluntarily dismiss its claims.  ECF

No. 60.  Moldex consented to this dismissal, but only on the condition "that 3M's claims

are dismissed without Moldex waiving any rights to seek damages, attorneys' fees, and

costs." ECF No. 84 at 1.[4]  At 3M's request, this Court dismissed 3M's claims under the

'693 Patent on June 19, 2013.  ECF No. 93; Compl. ¶ 24.

As to 3M's '157 Patent, given that Moldex never disputed that its M-Series

earmuffs infringe that patent, on February 7, 2013, 3M filed a detailed Motion for

Summary Judgment of Infringement.  *See* ECF Nos. 39; 41; 48 at 1.  To that date,

Moldex's disclosures concerning the grounds for its contention that the '157 Patent was

invalid were minimal.  However, between March 21 and April 12, 2013, Moldex tardily

produced voluminous documents and a supplemental interrogatory response concerning

its earmuff sales and purporting to support Moldex's invalidity defense.  *See* ECF Nos.

65 at 6-7; 9; 80 at 2-3.  Based upon this new information, 3M concluded that it did not

make economic sense to further pursue 3M's claims under the '157 Patent.  Compl. ¶ 27.

Thus, on May 17, 2013, 3M proposed to withdraw those claims as well.  ECF No. 88.

After the parties conferred, this Court noted in a May 22, 2013 Order that "[t]he parties

were unable to agree upon the language to include in a stipulation of dismissal, because

[Moldex] . . . contends that it is entitled to recover its costs and fees in this case, and may

well file a fee petition at the appropriate time," and "that it may file a separate law suit

---

[4]      Moldex had previously attempted to preserve its ability to seek damages, fees and
costs in the Patent Litigation in a brief it filed on April 5, 2013, in which it noted that it
"will not oppose dismissal of the '693 patent claims but wants to ensure that Moldex's
counterclaims of noninfringement and invalidity are dismissed without prejudice, and
that, if Moldex has any right to recover its fees or costs incurred in defending itself
against 3M's assertion of claims under the '693 patent, such rights are not waived merely
because Moldex has stipulated to the dismissal of these claims."  ECF 77 at 5.

seeking other unspecified relief by reason of [3M's] conduct in bringing this case in the first place." ECF No. 90 at 1-2.

The parties later agreed on terms for dismissal of the Patent Litigation, and in a letter filed in this Court on June 18, 2013, Moldex again expressly reserved its right to seek, among other things, recovery of the attorneys' fees and costs it incurred in the Patent Litigation. ECF No. 91 at 2. This Court entered judgment on June 19, 2013, and dismissed the Patent Litigation with prejudice as to 3M's claims and without prejudice as to Moldex's counterclaims. ECF No. 93. Moldex never filed a fee application within the time period set by the local rules.

## C.   The Instant Action

Moldex's core allegation in this lawsuit is that the Patent Litigation was "objectively and subjectively baseless." *See, e.g.*, Compl. at Nature of the Action, ¶¶ 16, 27-28. Indeed, each of its three claims is predicated in whole (in the case of Moldex's Sherman Act and malicious prosecution claims) or in part (in the case of Moldex's unfair competition claim) on this central allegation. Moldex alleges that the Patent Litigation was a sham and lacked any objective or subjective basis, and thus violated the Sherman Act. Compl. ¶¶ 30-33. Moldex also accuses 3M of malicious prosecution on that same ground, and of unfair competition, in part based on that same ground, and in part on 3M's purported false advertising of Combat Arms with a Noise Reduction Rating ("NRR") of zero. Compl. at Nature of the Action, ¶¶ 29, 35, 39. Moldex also alleges that 3M withdrew the Patent Litigation because it recognized its claims were baseless, and not because, as 3M informed Moldex and this Court, 3M concluded that continued litigation

was no longer economically justified due to Moldex's low sales volumes. *Compare* Compl. ¶ 27 *with supra* Section II.B.

Importantly, Moldex does not allege that 3M's purported "sham" litigation impeded Moldex from selling its BattlePlugs; to the contrary, Moldex admits that it is "continuing to sell its BattlePlug [sic] products to the U.S. military." Compl. ¶ 27; *see also id.* ¶¶ 9, 15. Rather, Moldex alleges only that the Patent Litigation caused it to incur "legal fees, costs, and lost employee time" for which it seeks recovery. *Id.* ¶¶ 25, 28. This allegation echoes Moldex's oft-repeated threat during the Patent Litigation to seek recovery of its costs, fees and unspecified damages, on the ground that 3M's claims lacked any good faith basis. *See supra* Section II.B. Yet Moldex never sought that relief in the Patent Litigation. Instead, Moldex takes what is effectively an untimely request for fees incurred in the Patent Litigation and attempts to recast it here as an antitrust, treble damages claim.

For the reasons detailed below, the Court should dismiss Moldex's lawsuit.

## III.   ARGUMENT

### A.   Moldex Fails to State a Claim Under the Sherman Act for Monopolization or Attempted Monopolization

#### 1.   Moldex Fails to Allege Antitrust Injury

A properly pleaded antitrust claim must include allegations of antitrust injury. Antitrust injury is a substantive element of a Section 2 claim, and thus a plaintiff must properly plead that injury. *See Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*, 789 F. Supp. 2d 1133, 1142-43 (D. Minn. 2011); *see also Midwest Commc'ns v. Minn. Twins,*

*Inc.*, 779 F.2d 444, 450 (8th Cir. 1986). To adequately plead antitrust injury, a plaintiff must allege that the defendant engaged in unlawful conduct that caused an injury to the plaintiff, and this injury must both flow from the unlawful conduct and be of the type that the antitrust laws were intended to prevent. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *In re Canadian Imp. Antitrust Litig. Eileen Iverson*, 470 F.3d 785, 791 (8th Cir. 2006).

It is well established that the antitrust laws are intended to preserve competition for the benefit of consumers. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 530 (1983). As the Supreme Court held in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), "[i]t is competition, not competitors, which the [Sherman] Act protects." 370 U.S. at 344. To survive a dismissal motion, therefore, Moldex must plead facts demonstrating antitrust injury, including harm to the market or to competition in general, rather than mere injury to itself. *See, e.g., Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 488 (8th Cir. 1985).

Application of these requirements here shows that Moldex has failed to plead antitrust injury. The Complaint does not allege that Moldex was excluded from the market while the Patent Litigation was pending, or at any time thereafter. To the contrary, it alleges that Moldex continues to sell its product. Compl. ¶ 27. Moldex certainly does not allege that the Patent Litigation harmed competition or consumers. Indeed, the Complaint contains no allegations of diminution in competition. Because

- 9 -

Moldex fails to allege harm to competition, it cannot establish antitrust injury. The Court should dismiss Moldex's antitrust claim on this ground alone.

In this respect, Moldex's antitrust claim is strikingly different from so-called "sham litigation" claims that survive dismissal motions. Those claims arise most frequently in pharmaceutical cases, in which courts have on occasion found complaints to properly allege harm to competition where purported sham litigation triggered a statutory stay that kept a new drug product off the market. *See, e.g., Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 806-09 (D.C. Cir. 2001). Specifically, if a generic drug manufacturer attempts to enter the market with a bioequivalent of a patented drug and the patent holder sues for infringement, the Hatch-Waxman Act imposes a 30-month stay preventing FDA approval of the generic drug. *See* 21 U.S.C. § 355(j)(5)(B)(iii). Under certain circumstances, this statutory stay preventing a generic drug competitor from entering the market can constitute an injury to competition.

Here, by contrast, Moldex alleges solely that the purportedly sham Patent Litigation required it to incur legal fees, and that a few Moldex employees had to participate in depositions. Compl. ¶¶ 25, 28. Plainly, that is not injury to competition. *Razorback,* 761 F.2d at 488 (requiring that plaintiff demonstrate "an injury to competition as distinguished from injury to itself"). Nowhere does Moldex allege that these costs impaired its ability to compete in the market, much less that they had a negative impact on competition generally. "Antitrust injury does not occur" when actions "merely harm a competitor, not competition." *Wildenauer v. Blue Cross & Blue Shield of Minn.*, 737 F. Supp. 64, 67 (D. Minn. 1989).

- 10 -

In fact, the Complaint affirmatively concedes a lack of antitrust injury. Moldex alleges that the U.S. military – which it describes as the purchaser of "the vast majority of such products sold every year in this country" – placed its "first order" with Moldex in May 2011, and it alleges that "Moldex is continuing to sell its BattlePlug [sic] products" today. Compl. ¶¶ 9, 15, 27. Moldex adds that, by filing and prosecuting the Patent Litigation, "3M wanted to block Moldex from entering this market" and sought "injunctive relief intended to force Moldex from the market," *id.* ¶¶ 16, 21, but the Complaint does not contain a single allegation that 3M was successful in doing so, or that competition was thereby constrained.

In sum, Moldex does not allege at all that the Patent Litigation harmed competition. Its complaint that it incurred legal fees is simply an untimely fee application, not an antitrust claim.[5] Because the Complaint lacks any factual allegations supporting antitrust injury, and because any attempt to so allege would directly contradict the allegations already pled, the Court should dismiss Moldex's antitrust claim with prejudice. *See Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.,* 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'") (internal citation omitted); *Schuykill Energy Res., Inc. v. Pa. Power & Light Co.,* 113 F.3d 405, 413-16,

---

[5]   Beginning early in the Patent Litigation and continuing until dismissal of 3M's claims, Moldex repeatedly stated its intent to seek recovery of attorneys' fees and costs. *See, e.g.,* ECF No. 13 at 13; ECF No. 77 at 5; ECF No. 84 at 1. After the Court accepted 3M's voluntary dismissal of its claims, Moldex had 30 days to move for attorneys' fees, and chose not to do so. D. Minn. LR 54.3. Moldex now seeks to recast as an antitrust claim what is actually an untimely request for fees.

419 (3d Cir. 1997) (denying leave to amend where the original complaint alleged facts that contradicted any claim by the plaintiff of an "injury of the type the antitrust laws were intended to prevent"); *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1055 (D. Minn. 1992) (dismissing antitrust claims without leave to amend where pleading defects suffered from "fundamental inadequacies").

### 2.    Moldex Fails to Allege an Antitrust Violation

The Court also should dismiss Moldex's antitrust claims for the independent reason that Moldex fails to properly allege an exception to the *Noerr-Pennington* doctrine, under which 3M's application to the court system for relief in the Patent Litigation was protected First Amendment activity. *See United Mine Workers v. Pennington*, 381 U.S. 657, 669-71 (1965); *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135-37 (1961). Courts recognize a limited exception to *Noerr-Pennington* immunity only when the plaintiff can demonstrate that (1) the challenged litigation is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) the suit also "conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.* ("*PRE*"), 508 U.S. 49, 60-61 (1993) (internal citations omitted).

Further, in this Circuit, "'[i]t is only where a defendant's resort to the courts is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation,

or is so clearly baseless as to amount to an abuse of process, that the *Noerr-Pennington* cloak of immunity provides no protection.'" *Razorback*, 761 F.2d at 487 (internal citations omitted). As numerous federal courts have noted, a heightened pleading standard is warranted for claims alleging sham litigation because "the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific factual allegations than would otherwise be required." *Franchise Realty v. San Francisco Local Joint Exec. Bd.*, 542 F.2d 1076, 1082-83 (9th Cir. 1976); *see also Hydro-Tech Corp. v. Sundstrand Corp.*, 673 F.2d 1171, 1177 n.8 (10th Cir. 1982); *Caplan v. Am. Baby, Inc.*, 582 F. Supp. 869, 871 (S.D.N.Y. 1984); *Spanish Int'l Commc'ns Corp., Sin, Inc. v. Leibowitz*, 608 F. Supp. 178, 183 (S.D. Fla. 1985) *aff'd sub nom. Spanish Int'l v. Leibowitz*, 778 F.2d 791 (11th Cir. 1985).

Moldex fails to plead facts sufficient to establish that 3M's claims in the Patent Litigation were either objectively or subjectively baseless under the standards quoted above. Thus, the Court should dismiss the Complaint.

### i. Moldex Fails to Provide any Factual "Heft" for its Allegations that the Patent Litigation Was Baseless

Moldex's repeated assertions that the Patent Litigation was both objectively and subjectively "baseless," *e.g.*, Compl. ¶¶ 27-28, 31, are nothing more than a "formulaic recitation of the elements" of such a claim and fail to provide the factual specificity required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, because "patent infringement suits are presumed to be in good faith," Moldex

unquestionably bears the burden of rebutting that presumption. *Lund Indus., Inc. v. Westin, Inc.*, 764 F. Supp. 1342, 1346 (D. Minn. 1990).

Importantly, Moldex neither contested key elements of 3M's claims in the Patent Litigation, *e.g.*, that Moldex infringed the '157 Patent, nor moved to dismiss that lawsuit. *See* ECF No. 48 at 1 ("Moldex does not intend to defend 3M's claims based on the absence of infringement of the '157 patent."). Moldex alleged that the '157 Patent is invalid, but to rebut the legal presumptions that this patent is valid and that 3M brought the Patent Litigation in good faith, Moldex must present specific factual allegations that 3M <u>actually knew</u> the '157 patent was invalid. *See Lund Indus., Inc. v. Westin, Inc.*, 764 F. Supp. 1343, 1346 (D. Minn. 1990) (citing *Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*, 812 F.3d 1381, 1386 (Fed. Cir. 1987)). Instead, Moldex alleges in wholly conclusory terms that 3M "knew, or should have known" that Moldex had invented its M-Series earmuffs before the '157 Patent's priority date. Compl. ¶ 22. Moldex presents no specific allegations, sufficient under *Twombly*, that 3M actually knew this patent was invalid.[6]

Moreover, Moldex never sought recovery of its fees in the Patent Litigation, although it repeatedly claimed that it was entitled to do so. That further undermines Moldex's argument that the Patent Litigation was objectively baseless. Had

---

[6]    The Complaint's suggestion that the '157 Patent is invalid because it "issued" after Moldex introduced its infringing product, Compl. ¶ 22, is a *non sequitur*, because the patent's priority date precedes Moldex's introduction of its product. Further, Moldex's allegation that 3M "might have" omitted to disclose Moldex's product in the application that matured as the '157 Patent, *id.*, is both conclusory and speculative, and thus inadequate to avoid dismissal under *Twombly*.

Moldex truly believed the Patent Litigation to have been filed in bad faith, it would have filed a timely fee application. It never did so.

> ii. **Moldex Fails to Properly Allege that 3M's Subjective Intent Was to Interfere Directly with Moldex's Business Relationships**

Moldex also fails to plead specific facts demonstrating that 3M filed the Patent Litigation to interfere directly with Moldex's business relationships. *See, e.g.*, Compl. ¶ 31 (alleging without any support that 3M brought the claims "for improper and anticompetitive reasons"). Moldex makes only conclusory assertions that fall short of the requirements of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and fails to provide the specificity required when challenging activity that is *prima facie* protected by the First Amendment. *See, e.g.*, *Franchise Realty*, 542 F.2d at 1082-83.

Further, Moldex does not adequately allege that the Patent Litigation was "not genuinely aimed at procuring favorable government action." *PRE*, 508 U.S. at 58 (internal citations omitted). Its allegations that 3M sued to prevent Moldex from selling its products are insufficient. Rather, those allegations are fully consistent with 3M's desire to protect its lawful patent rights from infringement.

In sum, because Moldex fails to adequately allege an exception to *Noerr-Pennington* immunity, the Patent Litigation cannot serve as the basis for any antitrust claim.

3.  **Moldex's Complaint Fails to Plead Other Essential Elements of a Cognizable Antitrust Claim**

i.  *Moldex Fails to Plead Sufficient Facts to Establish a Viable Claim for Monopolization*

In addition to antitrust injury, there are two other essential elements to a successful claim of Section 2 monopolization:  (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power through anticompetitive means.  *Paschall v. Kansas City Star Co.*, 727 F.2d 692, 695-96 (8th Cir. 1984); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  All three elements – injury, market power and anticompetitive conduct – are required, and a failure to properly plead any one warrants dismissal.  *See Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992).  The Complaint fails on all three points.

Moldex does not properly allege that 3M possesses monopoly power in a properly defined relevant market, which is essential to state a claim for monopolization under the Sherman Act.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  Moldex must sufficiently allege both a "valid relevant market" and that 3M has monopoly power within that market.  *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998).  Moldex fails on both fronts.

Moldex's alleged product markets are not plausible.  It offers only conclusory assertions for each market that it alleges.  *See* Compl. ¶¶ 12-13.  In particular, "[t]he relevant product market includes all reasonably interchangeable products," *Double D. Spotting Serv.*, 136 F.3d at 560, but Moldex pleads no facts as to why products outside of its proposed relevant markets could not be used in place of relevant products.  Its

failure to plead facts regarding interchangeability and cross-elasticity renders the Complaint appropriate for dismissal. *See Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) (dismissing the complaint due to plaintiff's failure to "state any facts indicating that all [proposed market] products are interchangeable for the same purpose"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient and a motion to dismiss may be granted."); *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993) (dismissal is warranted where a complaint "fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand").

Moldex also fails to properly plead that 3M has market power in the markets that Moldex alleges. "Market power generally is defined as the power of a firm to restrict output and thereby increase the selling price of its goods in the market." *Southeast Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 622 (8th Cir. 2011) (internal citations omitted). The Complaint alleges that 3M has a high market share, but not that 3M has the ability to exclude competition or control prices. In addition, Moldex does not and cannot allege that there are significant barriers to entry. To the contrary, Moldex itself effectively entered the market in recent years. Compl. ¶ 15.

Even if Moldex had adequately alleged that 3M possesses monopoly power in a properly defined relevant market – which it has not – that alone would not rescue its

Complaint. Rather, Moldex must also allege that 3M willfully acquired or maintained

that power through exclusionary or predatory conduct, rather than through "growth or

development as a consequence of a superior product, business acumen, or historic

accident." *United States v. Grinnell Corp.*, 384 U.S. at 570-71. In particular, patent

infringement lawsuits that qualify as exclusionary conduct under Section 2 are those

initiated and conducted in bad faith, which, as shown above, Moldex has utterly failed to

properly plead here. *See Argus Chem. Corp. v. Fibre Glass-Evercoat Co., Inc.*, 812 F.2d

1381, 1385-86 (Fed. Cir. 1987); *Handgards v. Ethicon, Inc.*, 601 F.2d 986, 993 (9th Cir.

1979). Because Moldex fails to plead critical elements of a Section 2 claim, the Court

should dismiss its monopolization claim.

### ii. *Moldex Likewise Fails to Plead Facts that Would Establish a Viable Claim for Attempted Monopolization*

An attempted monopolization claim requires a showing "(1) that the

defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent

to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum*

*Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Other than offering the conclusory

allegation that "3M wanted to block Moldex from entering this market," Compl. ¶ 16,

Moldex makes no allegations at all regarding 3M's intentions in filing the Patent

Litigation. It thus fails to allege that 3M engaged in anticompetitive conduct with the

specific intent to monopolize.

With respect to the "dangerous probability of success" element of an

attempted monopolization claim, Moldex's Complaint again lacks the factual "heft"

required by *Twombly*.  This element of a Section 2 claim requires more than conclusory allegations.  Specifically, it "requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Spectrum Sports*, 506 U.S. at 459.  Here, by contrast, the Complaint contains no allegations of a dangerous probability of 3M achieving monopoly power.  It contains no details on the scope of the alleged relevant market or even the number of competitors in the market.  Without a single allegation regarding the market and 3M's power in that market, Moldex cannot demonstrate a dangerous probability of 3M achieving monopoly power.  Accordingly, Moldex fails to state an attempted monopolization claim under the Sherman Act.

**B.    Moldex Fails to State a Claim for Unfair Competition Based on the Patent Litigation**

Because Moldex fails to plead a claim under the Sherman Act, its claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL"), regarding the Patent Litigation also fails. *See* Compl. ¶¶ 38-39.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  When a claim involves allegations of anticompetitive conduct by a competitor, California courts generally interpret the UCL in parallel with federal antitrust statutes. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999).  Thus, when a plaintiff brings both a federal Sherman Act claim and a claim under the UCL based upon the same predicate conduct, a failure to state a claim under the Sherman Act is fatal to the claim under the UCL. *See Ticketmaster LLC v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1199 (C.D. Cal. 2008); *Belton v. Comcast Cable Holdings, LLC*, 60 Cal.

Rptr. 3d 631, 644-46 (Cal. Ct. App. 2007). Because Moldex fails to state a claim for Sherman Act violations, the Court should dismiss its allegations of anticompetitive conduct under the UCL.

**C.** **Moldex Fails to State a Claim for Malicious Prosecution**

Moldex's malicious prosecution claim also fails for substantially the same reasons Moldex has failed to properly allege an exception to the *Noerr-Pennington* doctrine for its Sherman Act claim. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 n.4 (8th Cir. 1999) (noting that the *Noerr-Pennington* doctrine is not limited to the antitrust context and applies to malicious prosecution claims too). Malicious prosecution actions are "carefully circumscribed, and not favored in law." *Lundberg v. Scoggins*, 335 N.W.2d 235, 236 (Minn. 1983). To state a malicious prosecution claim, Moldex must plausibly allege, among other things, that 3M lacked "probable cause" to bring the Patent Litigation. *Porous Media Corp.*, 186 F.3d at 1079. "Probable cause" "requires only a reasonable belief that the claim will ultimately prevail, or such facts and circumstances as will warrant a cautious, reasonable and prudent person in the honest belief that his action and the means taken in prosecution of it are just, legal, and proper." *Id.* (internal quotation marks and citation omitted).

As shown above, Moldex has not pleaded facts supporting an inference that 3M lacked a reasonable belief that its claims in the Patent Litigation would prevail. Moldex's repeated and minimalist assertion that the Patent Litigation was "baseless" is nothing but a "formulaic recitation" of the probable cause element and thus cannot pierce *Noerr-Pennington* immunity, because it does not provide the factual "heft" required by

*Twombly.*  Further, as also shown above, Moldex's conduct during the Patent Litigation negates any plausible inference that 3M's lawsuit was baseless.  Moldex neither contested key elements of 3M's claims (*e.g.*, that Moldex infringes the '157 Patent) nor moved to dismiss any of them.  Nor did Moldex ever seek to recover its fees in the Patent Litigation, despite the fact that it repeatedly claimed it was entitled to do so.  Accordingly, the Court should dismiss Moldex's malicious prosecution claim.

**D.     The Court Should Dismiss Moldex's Claims for Unfair Competition and Malicious Prosecution Pursuant to Minnesota's Anti-SLAPP Statute**

The Court also should dismiss Moldex's state law claims for malicious prosecution and unfair competition (as to the latter, to the extent it is predicated on the Patent Litigation, *see* Compl. ¶ 39), based on Minnesota's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute.  That statute immunizes from liability acts to petition the government unless those acts constitute a tort or a violation of a person's constitutional rights, exceptions that do not apply here.  Minn. Stat. §§ 554.01-554.05; *Leinendecker v. Asian Women United of Minn.*, Nos. A12-1978, A12-2015, -- N.W.2d --, 2014 WL 2874751, at *3 (Minn. June 25, 2014).

Here, 3M's assertion of patent infringement claims in the Patent Litigation indisputably constitutes an act to petition the government within the meaning of the anti-SLAPP statute.  *See, e.g., Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 487 (8th Cir. 1985) ("[T]he right of access to the courts is indeed but one aspect of the right of petition.") (internal citation and quotation omitted).

Under the Minnesota anti-SLAPP statute, the Court is therefore required to dismiss Moldex's state law claims to the extent those claims are based on the Patent Litigation, unless Moldex responds to this motion with clear and convincing evidence that 3M's conduct is not immune from liability. *Leinendecker*, 2014 WL 2874751 at *6 ("[T]he court is *required* to dismiss the claim, even in the face of genuine issues of material fact, if the responding party has failed to carry its burden of persuasion that the moving party is not immune by clear and convincing evidence.") (emphasis in original); Minn. Stat. § 554.02 subd. (2)(3) ("[T]he court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from liability.").[7]  To meet this burden, Moldex must produce evidence that 3M's conduct was not genuinely aimed at procuring favorable government action, constituted a tort or violated another's constitutional rights. *Leinendecker*, 2014 WL 2874751 at *4.  Further, Moldex cannot satisfy this requirement merely by relying on the allegations of its

---

[7]    Courts in this district apply the Minnesota anti-SLAPP statute to pendent state law claims. *See, e.g., Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998) ("When considering . . . supplemental state-law claims, we are bound by Minnesota law."). However, even if the Court determines that Moldex's UCL claim is not subject to the Minnesota anti-SLAPP statute, the California anti-SLAPP statute would require dismissal as well. *See* C.C.P. § 425.16(b)(1) (authorizing a special motion to strike any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue . . ."); *A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc.*, 137 Cal. App. 4th 1118, 1125 (2006) ("It is beyond dispute the filing of a complaint is an exercise of the constitutional right of petition and falls under section 425.16."). Further, because Moldex has availed itself of one California statute as the basis for its claims, it may not demand exemption from another that expressly limits these claims.

Complaint. Instead, it must produce evidence such as oral testimony, documents or physical objects. *Leinendecker*, 2014 WL 2874751 at *3-4.

Moldex's burden is not diminished merely because the parties have not yet undertaken discovery. Indeed, the plain language of the anti-SLAPP statute not only places a heavy burden on Moldex to support its contentions, it also requires that discovery be suspended upon the filing of a dismissal motion based on the anti-SLAPP statute. *Leiendecker*, 2014 WL 2874751 at *3; *see also* Minn. Stat. § 554.02 subd. (2)(1) (providing that "discovery must be suspended pending the final disposition of the motion" to dismiss on anti-SLAPP grounds).

As shown above, Moldex has failed to allege any specific facts to indicate that 3M's conduct in the Patent Litigation was not genuinely aimed at procuring government action. *See supra* Section III.A.2. Similarly, Moldex has failed to sufficiently plead a plausible claim that 3M's actions constituted malicious prosecution. *See supra* Section III.C. Because Moldex cannot adequately plead, let alone prove by clear and convincing evidence, that 3M's conduct falls outside the immunity provided by Minnesota's anti-SLAPP statute, the Court should dismiss Moldex's state law claims based on the Patent Litigation on this ground, in addition to the others detailed above.

### E.   Moldex Fails to State a Claim for Unfair Competition Based on 3M's Alleged False Advertising

To the extent Moldex's unfair competition claim is based on 3M's alleged "false advertising in connection with the marketing and sale of Combat Arms earplugs," Compl. ¶ 39, it too fails to state a claim.

### 1. Moldex Mischaracterizes 3M's Advertising

Moldex bases its false advertising claim on its assertion that the Noise Reduction Rating ("NRR") of "zero" that appears on the label for 3M's Combat Arms earplug is "misleading" because it is "intended to inform the military that Combat Arms does not diminish the ability to hear commands, or approaching combatants or vehicles." Compl. ¶ 29. That allegation fundamentally mischaracterizes what an NRR is, and thus cannot support a false advertising claim.

The NRR is not an audibility rating but rather a noise reduction rating. Further, it must be calculated according to a formula provided for in U.S. Environmental Protection Agency ("EPA") regulations, which also expressly require that the NRR be included on the label of noise reduction products such as Combat Arms. *See* 40 C.F.R. § 211, *et seq.* The EPA's regulations also specify a particular standard for testing noise attenuation and a procedure to calculate the NRR. 40 C.F.R. §§ 211.203, 211.206, 211.212.

Moldex does not contend that 3M failed to calculate the NRR for Combat Arms in compliance with the EPA's formula.[8] Instead, Moldex asserts that 3M's "zero" NRR designation on Combat Arms packaging and in marketing materials is "intended" to suggest that Combat Arms does not diminish the wearer's ability to hear. Compl. ¶ 29.

---

[8]     Moldex makes a conclusory assertion that 3M's tests were "not in compliance with proper procedures," Compl. ¶ 29, but this unsupported allegation fails *Twombly*'s specificity and plausibility requirements.

But that is predicated on the false premise that 3M has discretion in how it calculates and displays the NRR. Under EPA regulations, it does not.

Further, under EPA regulations, 3M would be ill-advised to report a higher NRR on the label for Combat Arms even if subsequent testing supported doing so. The regulations require a manufacturer to "take into account both product variability and test-to-test variability when labeling his devices," 40 C.F.R. § 211.211(b), and thus dictate that "[t]he value stated on the label must be no greater than the NRR value determined by using the computation method of § 211.207." 40 C.F.R. § 211.204-1(b)(1) (emphasis added). Thus, EPA regulations guide manufacturers to include on their product labels the lowest NRR resulting from EPA-compliant testing in order to account for the variability to which the regulations refer, which is what 3M has done.

Moreover, Moldex's assertion that a zero NRR suggests that "the open earplug will not in any way impair the sounds one hears," Compl. ¶ 29, reflects a fundamental misrepresentation of the statutory formula for calculating the NRR, under which the NRR is always significantly lower than the average levels of sound reduction actually observed during testing. 40 C.F.R. § 211.207, Step #9 of Figure 2.[9] That is because the EPA has defined the NRR to represent the attenuation achieved for the least protected person in order to provide a safe measure of protection that the majority of

_____

[9]     Figure 2 of 40 C.F.R. § 211.207 illustrates this principle. In the example provided, the average sound attenuation is as high as 45 decibels depending on the sound frequency. Yet the resulting NRR is only 20, meaning that, at certain frequencies, the NRR represents a figure 25 decibels lower than the actual average sound attenuation at that frequency.

wearers will receive.[10]  The NRR formula reduces the average levels of sound reduction observed during testing by two standard deviations and an additional constant safety factor of three decibels.  40 C.F.R. § 211.207, Step #9 of Figure 2.  As a result, the calculated NRR represents the <u>minimum</u> level of protection that 98% of users can expect to experience if they use the device properly.  *See* 42 Fed. Reg. 31730, 31731.  A zero NRR is thus consistent with some degree of sound impairment for many wearers of Combat Arms.

Moldex's allegations therefore fail to state a claim under the UCL, because they do not satisfy the plausibility requirement under *Twombly* and *Iqbal.*  That is the teaching of *Kearney v. Hyundai Motor Co.,* No. SACV 09-1298 DOC (MLGx), 2010 WL 9093204 (C.D. Cal. June 4, 2010), concerning an allegation that Hyundai violated the UCL by misrepresenting the functionality of its airbag sensing technology ("OCS").  *Id.* at *10.  There, the plaintiffs asserted that the OCS did not activate properly despite the presence of an adult passenger in the passenger seat.  *Id.* at *1-3, *10.  The court dismissed the claim that Hyundai had "improperly represented that the OCS system could distinguish <u>between adults and children,</u>" because the accused Hyundai materials actually stated "that the OCS system uses factors such as weight and height to determine whether the individual <u>was of an adult size.</u>"  *Id.* at *10 (emphasis added).  The court found that the distinction, although subtle, established that the plaintiffs had impermissibly

---

[10]    For instance, it explains that "[t]o avoid the underprotection that would result from . . . [p]ossible variation in exposure to the noise spectra in the workplace . . . relative to the assumed 'Pink Noise' used to determine the NRR, an extra three decibel reduction is included when computing the NRR."  40 C.F.R. § 211.203(v) (structure altered).

mischaracterized what Hyundai had stated, and thus their claim did not satisfy the "plausibility" requirement of *Twombly* and *Iqbal* and must be dismissed. *Id.* at *11.

The same result follows here. Moldex's false advertising claim rests on improperly suggesting that 3M might have omitted the zero NRR or included a higher NRR on the Combat Arms label, neither of which 3M can do under EPA mandates.

### 2. 3M's Publication of the NRR Is Not Actionable Because It Complies with Federal Law

Further, 3M's advertised NRR for the Combat Arms earplug is not actionable because it accords with, is labeled as required by, and complies with applicable federal regulations, 40 C.F.R. § 211, *et seq.* That compliance places 3M within a "safe harbor" that precludes UCL liability, which is fatal to Moldex's claim.

California's UCL cannot reach conduct that complies with applicable law. "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech*, 973 P.2d at 541. Further, "[w]hen specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Id.* This principle is illustrated by the court's ruling in *Lopez v. Nissan North America, Inc.*, 201 Cal. App. 4th 572 (2011), which concerns an unfair competition claim that accused Nissan of selling cars with odometers that purportedly misstated actual mileage by approximately 2%. *Id.* at 576. The state regulations governing odometer accuracy deemed odometers to be "correct" if they were accurate within 4% of actual mileage. *Id.* The court dismissed the plaintiffs' unfair competition claim in reliance on *Cel-Tech* and concluded that the

governing regulations provided Nissan with a safe harbor because "California law specifically permits a slight measure of inaccuracy in odometers." *Id*. at 592. The court also dismissed the plaintiffs' false advertising claims and noted that "[a]s a matter of law, statements in Nissan manuals that the 'odometer records the total distance the vehicle has been driven' (as alleged in plaintiffs' complaint) are not deceptive because the odometers operate within the lawful tolerance." *Id*. at 595.

Here, the governing EPA regulations require the computation and publication of an NRR. 40 C.F.R. § 211 *et seq*. 3M's inclusion of its properly calculated NRR on its advertising for the Combat Arms product thus expressly complies with federal law, and is therefore protected conduct under *Cel-Tech*'s safe harbor principle.[11] Further, even if the NRR included on 3M's labeling were lower than certain test results would indicate, Moldex still could not make a cognizable claim for false advertising, because the EPA regulations specifying the NRR formula expressly provide that "[t]he manufacturer may label the protector at values lower than indicated by the test results and

---

[11]     The Supreme Court's recent ruling in *Pom Wonderful LLC v. Coca-Cola Co*. ---- S. Ct. ----, 2014 WL 2608859 (June 12, 2014), does not alter this result. In that case, the Court held that the Food Drug and Cosmetics Act and its regulations are not a "ceiling on the regulation of food and beverage labeling" which, if complied with, preclude a false advertising claim under the Lanham Act. *Id*. at *11-12. By contrast, unlike those federal statutes, California law provides that authorized conduct enjoys a "safe harbor" that precludes liability under California's UCL. *Cel-Tech*, 973 P.2d at 541; *Lopez*, 201 Cal. App. 4th at 592, 595. Thus, the EPA's regulations <u>are</u> a ceiling on UCL liability. That is why the district court in *Pom* held that Pom's state law claims under California's UCL and False Advertising Law were barred by California's "safe harbor" doctrine, as Coca-Cola had "complied with the relevant FDA regulations." *Pom Wonderful LLC v. Coca-Cola Co.*, No. CV-08-06237 SJO (FMOx), 2013 WL 543361, *5 (C.D. Cal. Feb. 13, 2013).

this computation procedure, e.g. lower NRR from lower attenuation values." 40 C.F.R. § 211.207.

### 3.    Moldex's False Advertising Claim Is Time-Barred

The statute of limitations for false advertising claims in California is three years. C.C.P. § 338(a). "[T]he limitations period . . . runs from the moment a claim accrues." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013). The delayed discovery rule applies to claims under Sections 17200 (unfair competition) and 17500 (false advertising) of the California Business and Professions Code, which means that these claims ordinarily do not accrue until the plaintiff discovers, or should have discovered, its claim. *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414 LHK, 2014 WL 695024, *8 (N.D. Cal. Feb. 21, 2014). This rule parallels the standard for false advertising claims under the Lanham Act, which has a three year statute of limitations that "runs from the time the plaintiff knew or should have known about his [Lanham Act] cause of action." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002).

The Combat Arms advertising at issue has been published since before June 2011. Declaration of Douglas H. Moses ("Moses Decl.") ¶ 4.[12] By Moldex's own admission, Moldex was actively marketing its BattlePlugs product to customers by

---

[12]    Moldex does not identify the 3M advertisements to which its Complaint refers, but they appear to be what Moldex complained to 3M about during the Patent Litigation, which are attached as exhibits to the Declaration of Aaron A. Myers ("Myers Decl."). *See* Myers Decl. ¶¶ 4-5; Ex. A. The Court may review 3M's advertisements because they are incorporated by reference into the Complaint, they are integral to Moldex's claim and their authenticity is unquestioned. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012); *Moses.com Sec. v. Comprehensive Software,* 406 F.3d 1052, 1063 n.3 (8th Cir. 2005).

February 2011. Compl. ¶ 15. Accordingly, Moldex knew or should have known about the advertised NRR for Combat Arms by that time. Nonetheless, Moldex filed this lawsuit in June 2014, more than three years after Moldex knew or should have known of that advertising. Thus, its claim that this advertising is false is time-barred.

This conclusion is supported by *Baby Trend, Inc. v. Playtex Products, LLC*, No. 5:13-cv-647-ODW (RZx), 2013 WL 4039451 (C.D. Cal. Aug. 7, 2013), which involved Baby Trend's accusation that Playtex had used unverified test results in advertising for its diaper pails. *Id.* at *1. Baby Trend did not file suit until 2013, despite admitting it had observed noticeable drops in sales after Playtex's advertising was launched in 2008. *Id.* at *4. In holding that Baby Trend's claim was time-barred, the court noted that "it is reasonable to expect that a company in a competitive market would, at a minimum, exercise reasonable diligence in determining why it was experiencing a decline in sales, including investigating a direct competitor's advertising claim." *Id.* The same is true here: it is reasonable to expect that Moldex would exercise reasonable diligence in investigating a direct competitor's advertising claims. Thus, Moldex knew or should have known about the challenged advertising by at least February 2011 when it began marketing its own product.

## IV.    CONCLUSION

For the reasons stated above, this Court should dismiss Moldex's Complaint.

Dated:  July 2, 2014

Respectfully submitted,

**FAEGRE BAKER DANIELS LLP**

Wendy J. Wildung (#117055)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Phone:  (612) 766-7000
Fax:  (612) 766-1600

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
Lawrence B. Friedman (admitted *pro hac vice*)
(New York #1866631)
Leah Brannon (admitted *pro hac vice*) (District
of Columbia #467359)
One Liberty Plaza
New York, New York 10006
Phone:  (212) 225-2000
Fax:  (212) 225-3999

*Attorneys for Defendants 3M Company
and 3M Innovative Properties Company*

- 31 -