# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY, | Court File No.: 12-cv-00611-JNE-FLN |
| Plaintiff, | |
| vs. | **PROTECTIVE ORDER** |
| MOLDEX-METRIC, INC., | |
| Defendant. | |

### PROTECTIVE ORDER

Whereas, the parties to the above-captioned action (the "Action"), Plaintiffs, 3M Company and 3M Innovative Properties Company (collectively "3M"), and Defendant, Moldex-Metric, Inc. ("Moldex"), may seek discovery or documents, information or other materials which may contain or relate to confidential or proprietary information, such as commercial processes; research and development; testing information; financial data (such as pricing, profit margins, and losses); market data and entry information; business strategies, customer contacts and requirements; regulatory filings; business transactions; supplier or distributor contacts and requirements; or trade secret information of another party or of a third party;

1.  PURPOSE

This action will involve discovery of information that is confidential, proprietary, commercially sensitive, or trade secret. The purpose of this Protective Order is to govern the production of such information without frequent resort to determinations of discoverability by the Court and to protect such information from improper or premature disclosure. In addition,

03394.23598/4877023.1

this Protective Order provides a mechanism for non-parties to protect any confidential, proprietary, commercially sensitive, or trade secret information from public disclosure.

2.    DEFINITIONS

2.1.    Discovery Material: "Discovery Material" means any information, document or tangible thing produced in this action, including information provided in response to discovery requests, interrogatories, requests for production, requests for admission, subpoena, subpoena duces tecum, deposition, and including any material that may be provided for inspection or voluntarily produced by exhibit, declaration, affidavit or other means.

2.2.    Party: "Party" or "Parties" means the plaintiffs and defendant in this action, including their directors, officers, employees, agents, attorneys or representatives.

2.3.    Producing Party: "Producing Party" means a person or entity, whether or not a Party to this action, that produces or otherwise makes available Discovery Material in this action.

2.4.    Receiving Party: "Receiving Party" means a Party to this action, including without limitation all directors, officers, employees, agents, attorneys or representatives of the Party that receives Discovery Material from a Producing Party.

2.5.    Confidential Information: A Producing Party may designate as "Confidential Information" those materials which the Producing Party believes in good faith constitute or contain confidential, proprietary and/or commercially sensitive research, development or commercial information, which information is not generally known and which the Producing Party would normally not reveal to a third party or if disclosed would require such third party to maintain the information in confidence.

2.6.    Highly Confidential Technical Information: A Producing Party may designate as "Highly Confidential Technical Information" any confidential, proprietary, commercially

sensitive and/or trade secret information which that party in good faith believes it would not reveal to a third party and is so highly sensitive that the protections afforded to Confidential Information are not sufficient. This designation shall be reserved for information that constitutes, reflects, or concerns (a) unpublished patent applications and documents related thereto; (b) information, documents, or things that disclose or describe new product designs that have not been introduced to the market, commercialized, or otherwise disclosed to the public; or (c) information or documents that describe or disclose the materials, methods, or processes used by a disclosing party to manufacture its products.

2.7    Highly Confidential Financial Information:  A producing party may designate as "Highly Confidential Financial Information" any confidential, proprietary, commercially sensitive and/or trade secret information which that party believes in good faith it would not reveal to a third party and is so highly sensitive that the protections afforded to Confidential Information are not sufficient. This designation shall be received for information that constitutes, reflects, or concerns highly sensitive financial, sales, marketing and strategic business planning information.

2.8    Highly Confidential Information:  "Highly Confidential Information" means and is limited to Highly Confidential Financial Information and/or Highly Confidential Technical Information.

2.9.    Protected Material:  "Protected Material" means any Discovery Material that is designated as "Confidential Information," "Highly Confidential Financial Information," "Highly Confidential Technical Information" or "Highly Confidential Information" in accordance with this Protective Order, and any copies, abstracts, summaries, or information derived from such

Discovery Material, and any notes or other records regarding the contents of such Discovery Material.

2.10.   Counsel of Record means outside litigation counsel for the Parties who have made an appearance before the Court in this action, including attorneys, secretaries, legal assistants, and other support personnel who work for the same law firm, to whom it is necessary to disclose Protected Material for the purpose of this action, currently:

- Barnes & Thornburg LLP,  on behalf of Plaintiffs, 3M Company and 3M Innovative Properties Company (collectively "3M");

- Leonard Street and Deinard, PA, on behalf of Defendant, Moldex-Metric, Inc. ("Moldex"); and

- Quinn Emanuel Urquhart & Sullivan, LLP, on behalf of Moldex.

2.11.   Expert:  "Expert" means any consultant retained by either Party to advise or to assist Counsel of Record in the preparation, resolution or trial of this action.

3.      DESIGNATION OF PROTECTED MATERIAL

3.1.    The Producing Party shall clearly mark each page of Discovery Material that the Producing Party contends constitutes Protected Material on its face at the time of production the appropriate legend  "CONFIDENTIAL,"  "HIGHLY  CONFIDENTIAL,"  "HIGHLY CONFIDENTIAL  FINANCIAL  INFORMATION"  or  "HIGHLY  CONFIDENTIAL TECHNICAL INFORMATION" together with a letter or letters identifying the Producing Party or other comparable notice.  Additional information, such as the case name and number, also may be used.

3.2.    The designation of Protected Material shall be made at the following times:

a.      For documents and things, at the time of the production of the documents or things;

b.      For written responses to interrogatories or requests for admissions, at the

time of the written response;

      c.     For declarations and pleadings, at the time of the filing of such declaration or pleading or as otherwise required by the Court; and

      d.     For deposition testimony, at the time of the testimony or within thirty (30) business days after receipt by the designating party of the transcript of the deposition in accordance with the procedure set forth in paragraph 3.5 herein.

    3.3.    Discovery Material produced in a media that cannot be marked on each page (e.g., videotape, audiotape, etc.) may be designated as Protected Material by clearly labeling the outside of such media with the appropriate legend at the time of production.

    3.4.    Discovery Material provided for inspection, such as a Producing Party's facilities or manufacturing processes, and any documents or things produced or generated in connection with such inspection (including, but not limited to, notes, recordings, or photographs of the facilities or processes), is subject to designation by the Producing Party as the Producing Party deems appropriate in view of the designations available in paragraphs 2.5, 2.6 and 2.7 herein, and shall be communicated, marked and treated as such.

    3.5    Whenever a deposition involves a disclosure of CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION, the following procedure shall be implemented:

      a.     At the request of the party whose CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION is disclosed, the reporter shall mark those pages of the transcript containing CONFIDENTIAL INFORMATION, HIGHLY CONFIDENTIAL TECHNICAL INFORMATION, or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION. Such request shall be made on the record whenever possible, but any party

may designate portions of the transcript of depositions as containing CONFIDENTIAL INFORMATION, HIGHLY CONFIDENTIAL TECHNICAL INFORMATION, or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION after transcription as in the case of any other document or tangible thing, provided that written notice of such designation is promptly given to the other party. Following such notice, the parties shall confer as to the most convenient way to segregate the designated portions of this transcript. The parties shall not disseminate a deposition transcript or the contents thereof beyond the persons designated in paragraphs 2.10 hereof for a period of thirty (30) days after receipt in order to give adequate time for such notice, except that portions of transcripts may be filed under seal with the court and used in accordance with paragraph 3.6 in connection with these proceedings at any time.

b. The cover of any deposition transcript that contains CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION shall be prominently marked with the legend referred to in paragraph 3.6. All portions of deposition transcripts designated as CONFIDENTIAL INFORMATION, HIGHLY CONFIDENTIAL TECHNICAL INFORMATION, OR HIGHLY CONFIDENTIAL FINANCIAL INFORMATION shall be sealed and dissemination of such transcript portion or the content thereof shall be limited to the persons identified in paragraphs 4.2, 4.3 and 4.4 hereof.

3.6.   Designations of Protected Material in Pleadings:   In the event that a Receiving Party includes Protected Material of a Producing Party in any pleading, motion, deposition transcript or other document filed with the Court, the Receiving Party shall label such document with the designation provided by the Producing Party for that Protected Material and shall comply with all applicable provisions of the Court's May 13, 2004, Order establishing "Electronic Case Filing Procedures For The District Of Minnesota," as amended from time to

time. As set forth in Section IX(A)(2) of the Electronic Case Filing Procedures for the District of Minnesota, this Protective Order shall govern and authorize the conventional filing and disposition of any such pleadings or documents designated as "filed under seal" pursuant to the Court's CM/ECF-Civil Filing Procedures. Specifically, such documents will not be filed electronically, but, instead, a form or placeholder will be electronically filed and paper copies will be conventionally filed in sealed envelopes prominently marked with the case name, case number, the identity of the party filing the envelope, a complete title of the document, and the notation:

**CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

**THIS ENVELOPE IS NOT TO BE OPENED NOR THE**
**CONTENTS THEREOF DISPLAYED, COPIED OR REVEALED,**
**EXCEPT BY COURT ORDER OR BY AGREEMENT OF THE PARTIES**

Any pleading, motion, deposition transcript, or other paper filed with the court that contains HIGHLY CONFIDENTIAL TECHNICAL INFORMATION or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION shall be marked with such designation ONLY on those pages that actually contain HIGHLY CONFIDENTIAL INFORMATION. Blanket marking of an entire multi-page document with the legends HIGHLY CONFIDENTIAL TECHNICAL INFORMATION or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION is not permitted unless each and every page of that document contains HIGHLY CONFIDENTIAL INFORMATION.

4.   <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

   4.1.   <u>Use of Confidential Information and Highly Confidential Information</u>: CONFIDENTIAL INFORMATION and HIGHLY CONFIDENTIAL INFORMATION shall be maintained in confidence according to the terms of this Order, may be disclosed only as provided

in this Protective Order, and shall be used solely in the preparation, prosecution or trial of this action.

      4.2   CONFIDENTIAL   INFORMATION   and   HIGHLY   CONFIDENTIAL INFORMATION may be disclosed (1) to the party who designated the item CONFIDENTIAL INFORMATION, HIGHLY CONFIDENTIAL INFORMATION, or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION or (2) to any employee of such party who was involved with the matters the item is directed to at the time of the events to which the item is directed, (3) to any nonparty entity who authored or received the item prior to its production to the other party, (4) to an expert cleared to receive Protected Material under paragraph 7 of this Order, (5) litigation support vendors or personnel retained by counsel for the purposes of this action and who have been informed of the requirement to maintain documents as Protected Material and who have agreed to do so, (6) counsel as identified in paragraph 4.3, below, (7) independent individuals or businesses assisting counsel in the preparation of this action pursuant to paragraph 4.4, below, and (8) any other persons agreed to in writing by the parties. Disclosure of CONFIDENTIAL INFORMATION and HIGHLY CONFIDENTIAL INFORMATION to former employees who were involved with the matters the item is directed may be done in a court proceeding (e.g., deposition). If there is not a court proceeding, disclosure of CONFIDENTIAL INFORMATION and HIGHLY CONFIDENTIAL INFORMATION to former employees who were involved with the matters the item is directed may NOT be done without prior notice and approval from the party who designated the item CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION.

      4.3   Disclosure of Confidential Information and Highly Confidential Information to counsel and their employees shall be limited as follows:

(a)    CONFIDENTIAL INFORMATION may be disclosed to the court and its officers and to the following counsel, including their necessary support personnel:

(1)    for 3M, (A) the firm of Barnes & Thornburg, LLP, (B) its regularly employed support staff, (C) any independent copying service retained to copy Discovery Material, and (D) the following 3M in-house attorneys: Hildy Bowbeer, Eric Levinson, and Karl Hanson;

(2)    for Moldex, (A) the firms of Quinn Emanuel Urquhart & Sullivan, LLP and Leonard, Street and Deinard, (B) their regularly employed support staff, (C) any independent copying service retained to copy Discovery Material, (D) Charles H. Schwartz, patent counsel for Moldex, and (E) the following Moldex in-house attorney, James Hornstein, Esq.;

(b)    HIGHLY CONFIDENTIAL TECHNICAL INFORMATION may be disclosed to the court and its officers and to the following counsel, including their necessary support personnel:

(1)    for 3M, (A) the firm of Barnes & Thornburg, LLP, (B) its regularly employed support staff, and (C) any independent copying service retained to copy Discovery Material and (D) the following 3M in-house attorney: Hildy Bowbeer;

(2)    for Moldex, (A) the firms of Quinn Emanuel Urquhart & Sullivan, LLP and Leonard, Street and Deinard, (B) their regularly employed support staff, and (C) any independent copying service retained to copy Discovery Material.

(c)    HIGHLY CONFIDENTIAL FINANCIAL INFORMATION may be disclosed to the court and its officers and to the following counsel, including their necessary support personnel:

(1)    for 3M, (A) the firm of Barnes & Thornburg, LLP, (B) its regularly employed support staff, and (C) any independent copying service retained to copy Discovery Material and (D) the following 3M in-house attorneys: Hildy Bowbeer;

(2)    for Moldex, (A) the firms of Quinn Emanuel Urquhart & Sullivan, LLP and Leonard, Street and Deinard, (B) their regularly employed support staff, and (C) any independent copying service retained to copy Discovery Material.

4.4.    CONFIDENTIAL    INFORMATION    or    HIGHLY    CONFIDENTIAL INFORMATION may be disclosed to independent individuals or businesses assisting counsel in the preparation of this action under the following conditions:

(a)    Before any disclosure of CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION of another party is made to an outside independent individual or business employed by counsel for assistance in the preparation, prosecution or trial of this action, such individual or business shall be furnished with a copy of this Protective Order and shall execute a written statement under oath, in the form appended hereto as Exhibit A, acknowledging that he or she is familiar with the provisions of this Protective Order and will abide by them, and such statement shall be kept by the employing counsel for reference should such be necessary. The name of each such individual or business shall be filed with the court under seal upon request of the other party. For a business, the statement shall be signed by a person authorized to bind the business organization who shall advise any other personnel of such business to whom CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION is disclosed of the obligations imposed by this Order.

(b)    Each outside independent individual or business who is known to be an employee or agent of or consultant to any third party competitor of the party whose CONFIDENTIAL

INFORMATION or HIGHLY CONFIDENTIAL INFORMATION is sought to be disclosed to such individual or business shall be identified to the other party prior to making any such disclosure in sufficient time (not less than two (2) weeks) for such party to object and to seek further protection should it deem that necessary. If such party objects, no disclosure shall be made to such individual or business until the matter is resolved.

(c)     Before any disclosure of CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION of another party is made to mock jurors, focus group members and the like selected by trial consultants, jury consultants or by counsel in preparation for trial, any such person shall execute a confidentiality agreement in the form attached as Exhibit B and such statement shall be kept by counsel for reference should such be necessary. No documents or physical things embodying CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION of another party shall be left in the possession of any such person.

(d)     Nothing in this Order prohibits any party from using any documents designated as Confidential in a deposition. A party may, however, designate that portion of the deposition as Confidential provided the information meets the definition of Confidential contained herein.

4.5     Information Designated Improperly:   The restrictions set forth in any of the preceding paragraphs shall not apply to:

(a)     any information which at the time of disclosure is available to the public;

(b)     any information which after disclosure becomes available to the public through no act, or failure to act, on behalf of the receiving party, its counsel or independent consultant; and

(c)     any information which the receiving party, its counsel or independent consultants can show (i) as a matter of written record was already known to the receiving party from

legitimate sources, (ii) as a matter of written record was independently developed by the receiving party, (iii) was obtained from the furnishing party without having been identified as CONFIDENTIAL INFORMATION, HIGHLY CONFIDENTIAL TECHNICAL INFORMATION, or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION(subject to the provisions and circumstances provided for in paragraph 9 hereof), or (iv) was received after the time of disclosure hereunder from a third party having the right to make such disclosure and was not required to be held in confidence.

In the event of any dispute with respect to the propriety or correctness of the designation of information, including testimony and documents, as CONFIDENTIAL INFORMATION, HIGHLY CONFIDENTIAL TECHNICAL INFORMATION, or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION, the parties shall attempt to resolve the dispute by negotiation. If such negotiations fail to resolve the dispute, any party wishing to challenge the designation may file a motion for an appropriate order. The information shall be treated as designated by the Producing Party until the issue is resolved.

No party shall be obligated to challenge the propriety or correctness of the designation of information as CONFIDENTIAL INFORMATION, HIGHLY CONFIDENTIAL TECHNICAL INFORMATION, or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION and a failure to do so shall not preclude a subsequent challenge to such status. The burden of proof with respect to the propriety or correctness in the designation of information as CONFIDENTIAL INFORMATION, HIGHLY CONFIDENTIAL TECHNICAL INFORMATION, or HIGHLY CONFIDENTIAL FINANCIAL INFORMATION shall rest on the designating party.

5.    CUSTODY OF PROTECTED MATERIAL

Protected Material shall not be copied or otherwise produced by a Receiving Party, except for transmission to qualified recipients as specified in this Protective Order, without the written permission of the Producing Party, or, in the alternative, by further order of the Court. Nothing herein shall, however, restrict a Receiving Party from (1) making working copies, abstracts, digests and analyses of Protected Material for use in connection with this litigation and such working copies, abstracts, digests and analyses shall be deemed Protected Material, or (2) from converting or translating Protected Material into machine readable form for incorporation into a data retrieval system used in connection with this action, provided that access to that Protected Material, in whatever form stored or reproduced, shall be limited to qualified recipients.

6.    PARTY REPRESENTATIVES

6.1.    Protected Material may be shared with a Party's in-house counsel to the extent, and only to the extent, provided under section 4 above upon providing the other Party with a copy of the Acknowledgment attached as Appendix A executed by such in-house counsel.

6.2    Protected Material may be shared with Party representatives to the extent, and only to the extent, provided under section 4 above upon providing the other Party with a copy of the Acknowledgment attached as Appendix B executed by such Party representatives.

6.3.    In the event Counsel of Record for a Receiving Party finds it necessary to make a disclosure of Protected Material to individuals other than the persons identified in section 4, Counsel of Record for the Receiving Party must serve written notice on Counsel of Record for the Producing Party in advance of any disclosure including:  (i) the Protected Material to be disclosed; (ii) the purpose of the disclosure; and (iii) an identification by name, business address,

and employer of the person(s) to whom such disclosure is requested. Unless the Producing Party approves in writing the proposed disclosure, no disclosure will be made without an order of the Court. If written approval is provided by the Producing Party, or if an order of the Court permits the disclosure, Counsel of Record for the Receiving Party must, prior to such disclosure, inform the individual to whom the Protected Material is to be disclosed of the terms of this Protective Order, and have the individual agree to the terms of this Protective Order in writing by executing the Acknowledgment attached as Appendix A (for Highly Confidential Information) or Appendix B (for Confidential Information), the executed Acknowledgment to be served on Counsel of Record for the Producing Party prior to any disclosure.

7.    EXPERTS

7.1.    Each Receiving Party may designate Experts to receive Protected Material of a Producing Party. A Party desiring to disclose Protected Material to an Expert shall serve written notice on the other Party no later than five (5) business days prior to any disclosure. Written notice shall include (a) the Acknowledgment attached as Appendix B, signed by the Expert, (b) the curriculum vitae of the Expert, including information on educational background beyond high school and all professional employment by employer, position, time period, and location, and (c) disclosure of any previous or current relationship with any of the Parties, any current or former assignee of any patent-in-suit, and any inventor(s) of any patent-in-suit.

7.2.    No Protected Material shall be disclosed to the Expert by the Receiving Party until after the expiration of the foregoing notice period. Consent to the disclosure of Protected Material to a proposed Expert may not be unreasonably withheld. If, however, during the notice period the other Party objects to the disclosure, there shall be no disclosure of that Party's or any third party's Protected Material to the Expert, except by further order of the Court. Any

objection shall include a complete explanation of the basis of the objection. The objecting party shall move the Court within ten (10) business days after the expiration of the foregoing notice period for a ruling on its objection. The objecting party shall have the burden of showing to the Court "good cause" for preventing the disclosure. A failure to file a motion within the ten (10) business day period shall operate as an approval of the disclosure. The Parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph and/or the briefing schedule to the Court if necessary to abide by any discovery or briefing deadlines.

7.3.   The disclosure of an Expert under this paragraph shall not commit a Party to identifying or utilizing that person as an expert or witness at trial, nor shall it give the other Party the right to comment on the absence of that person as a witness at trial. A non-testifying expert consultant who would not otherwise be subject to deposition does not become subject to deposition solely because he or she is disclosed pursuant to this paragraph.

8.   <u>FILING PROTECTED MATERIAL WITH THE COURT</u>

To the extent that documents containing Protected Material are submitted with any Court filing, the Parties shall comply with all applicable provisions of the Court's May 13, 2004, Order establishing "Electronic Case filing Procedures For The District Of Minnesota," as amended from time to time and shall otherwise comply with the Local Rules regarding the filing of documents under seal. Such Protected Material shall remain subject to the provisions of this Protective Order and are to be maintained under seal by the clerk or court reporter. No sealed envelope shall be opened by anyone other than Court personnel, absent strict compliance with this Protective Order or a separate order from the Court identifying by name the person or persons who may have access to the sealed material and specifically designating which portions of the sealed file may be revealed.

9.    INADVERTENT PRODUCTION

9.1.    If a Producing Party through inadvertence produces Protected Material without designation in accordance with this Protective Order, the Producing Party may give written notice to the Receiving Party that the information produced is deemed Confidential Information or Highly Confidential Information and the information shall be treated as such in accordance with this Protective Order. Any such written notice shall be accompanied or promptly followed by a replacement production containing properly designated documents. The Receiving Party shall treat such information with the noticed level of protection from the date notice of the error is received. Disclosure, prior to the receipt of such notice of such information, to persons not authorized to receive such information shall not be deemed a violation of this Protective Order.

9.2.    In the event that a Producing Party inadvertently produces information that otherwise is not discoverable for reasons of the attorney-client privilege or work product immunity, the Producing Party shall promptly, upon discovery of such inadvertent disclosure, inform the Receiving Party and request that the item or items of information be destroyed, and no party to this action shall thereafter assert that such inadvertent production waived any privilege or immunity. Upon such notice by the Producing Party, the Receiving Party shall promptly destroy all copies of the inadvertently produced information. Within ten (10) business days of informing the Receiving Party of the inadvertent disclosure, the Producing Party shall identify the item or items of information on a privilege log and shall provide a replacement, redacted to obscure only the privileged or immune information, for any item that contains both privileged or immune and relevant non-privileged information. Prior to the receipt of such notice, disclosure to persons not authorized to receive such information shall not be deemed a violation of this Protective Order and shall not be deemed to be a waiver of any privilege held by

the Producing Party. Nothing in this paragraph shall prevent the Receiving Party from challenging in Court the designation of the privilege after the inadvertent production of documents in the possession of Receiving Party has been destroyed, and/or from seeking production of any such documents or information in accordance with the Federal Rules of Civil Procedure.

10.     **TESTIMONY REGARDING PROTECTED MATERIAL**

Subject to the provisions this Protective Order:

(a)     A Producing Party or present employee of a Producing Party may be examined concerning all Protected Material produced by the Producing Party;

(b)     A former employee of a Producing Party may be examined concerning all Protected Material produced by the Producing Party which pertains to the period or periods of his or her employment;

(c)     To the extent a Producing Party produces Protected Material relating to a third party, (i) the third party or present employee of the third party may be examined concerning all such Protected Material and (ii) a former employee of the third party may be examined concerning all such Protected Material which pertains to the period or periods of his or her employment.

(d)     An Expert of either Party may be examined concerning all Protected Material, except that the rules for disclosure of the Protected Material shall be governed exclusively by paragraph 4 above;

(e)     For any other person not permitted to access Protected Material, a Receiving Party wishing to examine that person about Protected Material of any other

Producing Party must follow the procedure set forth in paragraph 6.3 or as otherwise agreed by counsel.

11.     REQUEST FOR PRODUCTION IN UNRELATED LEGAL PROCEEDINGS

In the event any Receiving Party receives from or on behalf of a non-party a subpoena or other process or order to produce Protected Material in another unrelated legal proceeding, such Receiving Party shall:  (a) notify the Producing Party; (b) furnish the Producing Party with a copy of said subpoena or other process or order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party whose interests may be affected.  The Producing Party shall have the burden of defending against such subpoena, process, or order. The Receiving Party receiving the subpoena or other process or order shall cooperate with the Producing Party seeking an order modifying or quashing the subpoena or other process or order.

13.     NON-PARTY USE OF THIS PROTECTIVE ORDER

A non-party who produces Discovery Material voluntarily or pursuant to a subpoena or a court order may designate such Discovery Material as Confidential Information or Highly Confidential Information pursuant to the terms of this Protective Order.  Any Party seeking to challenge the designation of non-party information as Confidential Information or Highly Confidential Information, or who is seeking to use such information in proceedings where it may become a part of the public record, shall provide notice to the non-party in sufficient time to allow the non-party to appear and seek continued protection of its information as designated.

14.     RIGHT TO FURTHER RELIEF:

Nothing in this Protective Order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action to seek a modification or amendment of this Protective Order.

15.  AMENDMENT

    This Protective Order may be amended only where Counsel of Record for all Parties file

a Joint Motion to Amend Protective Order that is subsequently granted by the Court, or by other

order of the Court.

16.  RIGHT TO ASSERT OTHER OBJECTIONS

    This Protective Order shall not be construed as waiving any right to assert a claim of

privilege, relevance, overbreadth, burdensomeness or other grounds for not producing Discovery

Material, whether during discovery, hearing, or trial, and access to such Discovery Material shall

be only as otherwise provided by the discovery rules and other applicable law.

17.  FINAL DISPOSITION

    Protected Material disclosed pursuant to this Protective Order shall be used only for

purposes of this litigation and any corresponding appeals.   Within two months after final

termination of this action including any appeals, or within one month after the time for appeal

has expired

        a)  each Party shall assemble all Protected Material furnished and designated by

            any other Party, including Protected Material provided to Experts, and shall

            destroy the Protected Material and provide a certificate of destruction to the

            Producing Party.  Said certificate shall also provide assurance that no steps

            will be taken at any time in the future to restore deleted Protected Material,

            and that any inadvertent violation of this assurance and steps taken to remedy

            it will be promptly reported to the other party.  The deletion required under

            this paragraph shall not require deletion from backup tapes provided such

            backup tapes (1) were not created for the purpose of maintaining Protective

Material beyond the time period allowed by this section, and (2) are not otherwise periodically purged in the ordinary course of business. Notwithstanding the foregoing, Counsel of Record for each party shall be entitled to retain a copy of all pleadings, motion papers, legal memoranda, correspondence and work product; and

b) the Clerk of Court is authorized to release possession of any Protected Material FILED UNDER SEAL to counsel for the filing Party, or, after expiration of the time limitations set forth at the beginning of this Paragraph, to destroy any Protected Material filed under seal that has not been retrieved by the filing Party.

18.   <u>TERMINATION AND SURVIVAL OF OBLIGATIONS</u>

No restriction imposed by this Protective Order may be terminated, except by order of this Court for good cause shown.  The termination of this action shall not automatically terminate the obligations specified in this Protective Order.

19.   <u>COURT'S ENTRY OF THE PROTECTIVE ORDER</u>

Upon signature by both Parties to the Protective Order and before the Court enters the Protective Order, the Parties agree to exchange information designated Confidential Information and Highly Confidential Information based on the terms provided herein.  The Parties further agree that should the Court alter the terms of the Protective Order affecting what material may be designated as Confidential Information and/or Highly Confidential Information, any previously disclosed Protected Material affected by the altered terms shall not be subsequently disclosed to anyone not authorized under the altered terms to view such material, absent agreement by the

Parties on the treatment of the Protected Material implicated by any such alterations or absent further order of the Court.

SO ORDERED:

Dated:  August 15, 2012                    _s/ Franklin L. Noel_
                                           The Honorable Franklin L. Noel
                                           U.S. Magistrate Judge

APPENDIX A

## ACKNOWLEDGMENT AND CONFIDENTIALITY AGREEMENT
### (For Access by In-House Counsel to Highly Confidential Information)

I, _____, hereby acknowledge that:

(i)     I have read the Protective Order entered in the action presently pending in the U.S. District Court for the District of Minnesota captioned *3M Company et al. v. Moldex-Metric, Inc.*, (Civil Action No. 12-cv-00611-JNE-FLN);

(ii)    I understand the terms of the Protective Order;

(iii)   I agree, upon threat of penalty of contempt and other civil remedies, to be bound by the Protective Order's terms;

(iv)    I irrevocably submit my person to the jurisdiction of the U.S. District Court for the District of Minnesota for the limited purpose of securing compliance with the terms and conditions of the Protective Order.

DATED:_____         _____
                                       Signature

                                       _____
                                       Name

                                       _____
                                       Present Employer

                                       _____
                                       Title/Occupation

                                       _____
                                       Address

                                       _____
                                       City          State          ZIP

                                       _____
                                       Telephone Number

03394.23598/4877023.1

APPENDIX B

## ACKNOWLEDGMENT AND CONFIDENTIALITY AGREEMENT
### (For Access by Party Representatives to Confidential Information)

I, _____, hereby acknowledge that:

(i)     I have read the Protective Order entered in the action presently pending in the U.S. District Court for the District of Minnesota captioned *3M Company et al. v. Moldex-Metric, Inc.*, (Civil Action No. 12-cv-00611-JNE-FLN);

(ii)    I understand the terms of the Protective Order;

(iii)   I agree, upon threat of penalty of contempt and other civil remedies, to be bound by the Protective Order's terms;

(iv)    I irrevocably submit my person to the jurisdiction of the U.S. District Court for the District of Minnesota for the limited purpose of securing compliance with the terms and conditions of the Protective Order.

DATED:_____

_____
Signature

_____
Name

_____
Present Employer

_____
Title/Occupation

_____
Address

_____
City             State             ZIP

_____
Telephone Number

APPENDIX C

ACKNOWLEDGMENT AND CONFIDENTIALITY AGREEMENT
(For Experts)

I, _____, hereby acknowledge that:

(i)     I have read the Protective Order entered in the action presently pending in the U.S. District Court for the District of Minnesota captioned *3M Company et al. v. Moldex-Metric, Inc.*, (Civil Action No. 12-cv-00611-JNE-FLN);

(ii)    I understand the terms of the Protective Order;

(iii)   I agree, upon threat of penalty of contempt and other civil remedies, to be bound by the Protective Order's terms; and

(iv)    I certify that I am not a competitor to any Party, or a consultant for, or employed by, such a competitor with respect to the specific subject matter of this case;

(v)     I understand that I am to maintain all copies of any Protected Material that I receive in a container, cabinet, drawer, room, password protected computer medium, or other safe place in a manner consistent with this Protective Order, and that all copies are to remain in my custody only until I have completed my assigned duties, whereupon the copies are to be destroyed or returned to the Producing Party or Stipulating Third Party. Such return or destruction shall not relieve me from any of the continuing obligations imposed upon me by the Protective Order. I further agree to notify any stenographic or clerical personnel who are required to assist me of the terms of the Protective Order; and

(vi)    I irrevocably submit my person to the jurisdiction of the District Court for the District of Minnesota for the limited purpose of securing compliance with the terms and conditions of the Protective Order.

DATED:_____

Signature
_____

Name
_____

Present Employer
_____

Title/Occupation
_____

Address
_____

City          State          ZIP
_____

Telephone Number

MIDS01 670822v1

**McLean, Barbara**

| | |
|---|---|
| **From:** | ecf-notice@mnd.uscourts.gov |
| **Sent:** | Thursday, August 16, 2012 12:48 PM |
| **To:** | mndecfnotifications@mnd.uscourts.gov |
| **Subject:** | Activity in Case 0:12-cv-00611-JNE-FLN 3M Company et al v. Moldex-Metric, Inc. Protective Order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Minnesota**

**Notice of Electronic Filing**

The following transaction was entered on 8/16/2012 at 12:48 PM CDT and filed on 8/16/2012
**Case Name:**      3M Company et al v. Moldex-Metric, Inc.
**Case Number:**    0:12-cv-00611-JNE-FLN
**Filer:**
**Document Number:** 26

**Docket Text:**
**PROTECTIVE ORDER. Signed by Magistrate Judge Franklin L. Noel on 8/15/12. (RLR)**

**0:12-cv-00611-JNE-FLN Notice has been electronically mailed to:**

Aaron A Myers     aaron.myers@btlaw.com, landerson@btlaw.com

Aaron M Staser    aaron.staser@btlaw.com

Felicia J Boyd    felicia.boyd@btlaw.com, hjohnson@btlaw.com

Harold A Barza    halbarza@quinnemanuel.com

Justin M Brownstone    justinbrownstone@quinnemanuel.com

Katherine A Moerke    katherine.moerke@leonard.com, sue.may@leonard.com

Kevin D Conneely    kevin.conneely@leonard.com, barbara.mclean@leonard.com

Robert S. Hill    roberthill@quinnemanuel.com

William Earl Manske    wmanske@btlaw.com, hjohnson@btlaw.com

**0:12-cv-00611-JNE-FLN Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051215216 [Date=8/16/2012] [FileNumber=3810574-0
] [15964217d9e662882ba7a8e7ddd2ec7a765ae6c5691eb20d10bdf6a84a4aa95a559
6f9dd9edc17cc79c86489ea8d6554c1698542efad52aa62ceda71049ef152]]

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>  Plaintiffs,<br><br>vs.<br><br>MOLDEX-METRIC, INC.<br><br>  Defendant. | Court File No.: 12-cv-611-JNE-FLN<br><br><br>**ORDER** |

The parties have stipulated to an amendment to the Protective Order (Dkt. 28) entered in this action to substitute Erik Drange for Hildy Bowbeer as Plaintiffs' designated individual to receive protected material as set forth therein.  Based on the foregoing stipulation, the Court hereby ORDERS entry of the Stipulated Amendment to the Protective Order.


Dated: October 18, 2012          *s/ Franklin L. Noel*
                                 The Honorable Franklin L. Noel
                                 U.S. Magistrate Judge

**McLean, Barbara**

| | |
|---|---|
| **From:** | ecf-notice@mnd.uscourts.gov |
| **Sent:** | Thursday, October 18, 2012 3:44 PM |
| **To:** | mndecfnotifications@mnd.uscourts.gov |
| **Subject:** | Activity in Case 0:12-cv-00611-JNE-FLN 3M Company et al v. Moldex-Metric, Inc. Protective Order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Minnesota**

**Notice of Electronic Filing**

The following transaction was entered on 10/18/2012 at 3:43 PM CDT and filed on 10/18/2012
**Case Name:**       3M Company et al v. Moldex-Metric, Inc.
**Case Number:**   0:12-cv-00611-JNE-FLN
**Filer:**
**Document Number:** 29

**Docket Text:**
**PROTECTIVE ORDER. Signed by Magistrate Judge Franklin L. Noel on 10/18/12. (kt)**

**0:12-cv-00611-JNE-FLN Notice has been electronically mailed to:**

Aaron A Myers     aaron.myers@btlaw.com, landerson@btlaw.com

Aaron M Staser     aaron.staser@btlaw.com

Felicia J Boyd     felicia.boyd@btlaw.com, hjohnson@btlaw.com

Harold A Barza     halbarza@quinnemanuel.com

Katherine A Moerke     katherine.moerke@leonard.com, sue.may@leonard.com

Kevin D Conneely     kevin.conneely@leonard.com, barbara.mclean@leonard.com

Robert S. Hill     roberthill@quinnemanuel.com

William Earl Manske   wmanske@btlaw.com, hjohnson@btlaw.com

**0:12-cv-00611-JNE-FLN Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051215216 [Date=10/18/2012] [FileNumber=3880772-
0] [80b6e6226f8c56235b399d04845ab085288078854c373cbc3781b9924052c3be26
bf7e61a19aec35156d6f679bad8698367a47c857f4ed8208da1378aa46dcd5]]

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>MOLDEX-METRIC, INC.,<br><br>Defendant. | Court File No.: 12-cv-611 (JNE/FLN) |

## PLAINTIFFS' RESPONSES TO FIRST SET OF REQUESTS FOR ADMISSION

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively, "3M") submit the following objections and responses to Defendant Moldex-Metric, Inc.'s First Set of Request for Admissions to Plaintiffs ("Requests"). 3M reserves the right to amend these responses and to object to future discovery on the same or related matters and does not waive any objection by providing these responses.

## RESERVATION OF RIGHTS AND GENERAL OBJECTIONS

3M makes the following Reservation of Rights and General Objections to Plaintiff's Requests:

1. Pursuant to Fed. R. Civ. P. 36(b), these responses are made for the purposes of this action only, and may not be used for any other purpose or in any other proceeding.

2. 3M objects to Defendant's Requests to the extent they purport to limit or restrict 3M's right to rely upon any information, document, or thing for any purpose whatsoever, including, but not limited to, the use of information, documents, or things as evidence at any hearing, trial, or other proceeding in this action.

3.      Nothing contained herein shall be construed as an admission as to the relevance or admissibility of any information, document, or thing.

4.      3M objects to Defendant's Requests to the extent they are overly broad, unduly burdensome and not limited to the discovery of information that is relevant in this matter or is reasonably calculated to lead to the discovery of admissible evidence.

5.      3M objects to Defendant's Requests to the extent they are too vague and ambiguous to adequately apprise 3M of what information is sought or to permit 3M to ascertain the response with reasonable diligence.

6.      3M objects to Defendant's Requests to the extent they seek information that is protected by the attorney-client privilege, work product doctrine, or both.

7.      Each of the foregoing General Objections is hereby expressly incorporated by reference in 3M's responses to each individual request as if fully set forth in each response.  To the extent 3M provides information in response to any request, 3M does so subject to and without waiving any of these General Objections.

8.      3M further reserves the right to object to the relevance of any of 3M's responses, in whole or in part, at trial in this action on any grounds, including but not limited to materiality, relevance, and privilege.

## SPECIFIC OBJECTIONS AND ANSWER TO REQUEST NOS. 1-16

Subject to and without waiving any of the foregoing General Objections, 3M responds to Moldex's individually numbered Requests as follows:

**REQUEST FOR ADMISSION NO. 1:**

Admit that the date of conception that applies in the United States for the inventions disclosed in the '157 patent is no earlier than Jul. 8, 1999.

2

**RESPONSE:**    In addition to the above General Objections, 3M objects to this Request as prematurely calling for a legal conclusion without any demonstrated relevance. Discovery has only recently commenced in this action, and 3M has not completed its investigation of this matter.  Further, Defendant has not identified any prior art or other basis to establish that the information has any relevance to this action.  Accordingly, 3M objects to this Request as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections, 3M denies the Request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the date that the inventions disclosed in the '157 patent were first reduced to practice that applies in the United States is no earlier than Jul. 8, 1999.

**RESPONSE:**    In addition to the above General Objections, 3M objects to this Request as prematurely calling for a legal conclusion without any demonstrated relevance. Discovery has only recently commenced in this action, and 3M has not completed its investigation of this matter.  Further, Defendant has not identified any prior art or other basis to establish that the information has any relevance to this action.  Accordingly, 3M objects to this Request as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections, 3M denies the Request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the date of conception that applies in the United States for the inventions disclosed in the '693 patent is no earlier than Sep. 18, 1997.

**RESPONSE:**    In addition to the above General Objections, 3M objects to this Request as prematurely calling for a legal conclusion without any demonstrated relevance. Discovery has only recently commenced in this action, and 3M has not completed its

investigation of this matter. Further, Defendant has not identified any prior art or other basis to establish that the information has any relevance to this action. Accordingly, 3M objects to this Request as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, 3M denies the Request.

**REQUEST FOR ADMISSION NO. 4:**

Admit that the date that the inventions disclosed in the '693 patent were first reduced to practice that applies in the United States is no earlier than Sep. 18, 1997.

**RESPONSE:** In addition to the above General Objections, 3M objects to this Request as prematurely calling for a legal conclusion without any demonstrated relevance. Discovery has only recently commenced in this action, and 3M has not completed its investigation of this matter. Further, Defendant has not identified any prior art or other basis to establish that the information has any relevance to this action. Accordingly, 3M objects to this Request as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, 3M denies the Request.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Moldex's BattlePlugs earplugs each contain only a single filter for attenuating sound.

**RESPONSE:** Denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Moldex's BattlePlugs earplug is not a two-ended plug in which both ends of the earplug are designed to be inserted into a user's ear.

**RESPONSE:** In addition to the above General Objections, 3M objects to this Request as vague and ambiguous, and as compound and calling for multiple answers. 3M also

4

objects that the information sought is neither relevant nor reasonably calculated to lead to discovery of admissible evidence. 3M further objects that the Request improperly calls for 3M to speculate about information not within its custody or control. Without waiving these objections, 3M denies that the BattlePlugs earplug is not a two-ended plug and denies that the entire earplug was not designed "to be inserted into a user's ear." 3M admits that the more tapered end of the BattlePlugs earplug appears to be the end primarily designed to be inserted first into a user's ear canal, but denies knowing Moldex's subjective design intentions.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the '693 patent claims a two-ended earplug in which either end of the earplug can be inserted into the user's ear.

**RESPONSE:** In addition to the above General Objections, 3M objects to this Request as vague and ambiguous, and as prematurely calling for a legal conclusion on claim construction. 3M also objects that the Request seeks information that is neither relevant nor reasonably calculated to lead to discovery of admissible evidence. Without waiving these objections, 3M admits that the '693 patent claims, *inter alia*, a two-ended earplug in which either end of the earplug can be inserted into the user's ear, but denies that the '693 patent claims cover only a two-ended earplug in which either end of the earplug can be inserted into the user's ear. 3M further admits that the '693 patent claims cover the Moldex earplugs accused of infringement in this lawsuit and denies this Request to the extent it is intended to suggest any interpretation of the '693 patent to the contrary.

**REQUEST FOR ADMISSION NO. 8:**

Admit that the '693 patent claims an earplug with two separate filters for attenuating sound.

5

RESPONSE:     In addition to the above General Objections, 3M objects to this Request as vague and ambiguous, and as prematurely calling for a legal conclusion on claim construction.  3M also objects that the Request seeks information that is neither relevant nor reasonably calculated to lead to discovery of admissible evidence.  Without waiving these objections, 3M admits that the '693 patent claims, *inter alia,* an earplug with two filters for attenuating sound.  3M further admits that the '693 patent claims cover the Moldex earplugs accused of infringement in this lawsuit and denies this Request to the extent it is intended to suggest any interpretation of the '693 patent to the contrary.

REQUEST FOR ADMISSION NO. 9:

Admit that the '693 patent claims an earplug that offers the user the possibility of achieving two different sound attenuations through the use of two separate filters.

RESPONSE:     In addition to the above General Objections, 3M objects to this Request as vague and ambiguous and as prematurely calling for a legal conclusion on claim construction.  3M also objects that the Request seeks information that is neither relevant nor reasonably calculated to lead to discovery of admissible evidence.  3M further objects that this Request is compound, comprising multiple subparts that call for several different answers. Without waiving these objections, 3M admits that the '693 patent claims, *inter alia,* an earplug with two filters for achieving different sound attenuations.  3M further admits that the '693 patent claims cover the Moldex earplugs accused of infringement in this lawsuit and denies this Request to the extent it is intended to suggest any interpretation of the '693 patent to the contrary.

6

**REQUEST FOR ADMISSION NO. 10:**

Admit that earplugs which have filters comprised of a series of chambers of alternating sizes, all as part of a single channel, are well known in the prior art.

**RESPONSE:**   In addition to the above General Objections, 3M objects to this Request as prematurely calling for a conclusion on prior art that the Defendant has not disclosed. 3M further objects to this Request as vague and ambiguous, requiring 3M to speculate as to what the Defendant means by "well known" and what prior art is contemplated by this Request. Without waiving these objections, 3M is without sufficient information to admit or deny this Request, and 3M accordingly denies this Request.

**REQUEST FOR ADMISSION NO. 11:**

Admit that earplugs which have filters comprised of a series of constrictions, all as part of a single channel, are well known in the prior art.

**RESPONSE:**   In addition to the above General Objections, 3M objects to this Request as prematurely calling for a conclusion on prior art that the Defendant has not disclosed. 3M further objects to this Request as vague and ambiguous, requiring 3M to speculate as to what the Defendant means by "well known" and what prior art is contemplated by this Request. Without waiving these objections, 3M is without sufficient information to admit or deny this Request, and 3M accordingly denies this Request.

**REQUEST FOR ADMISSION NO. 12:**

Admit that Moldex has not disparaged 3M's Combat Arms earplugs.

**RESPONSE:**   In addition to the above General Objections, 3M objects to this Request on the basis that the information that is the subject of this Request is not sufficiently accessible to 3M to admit or deny the request.  3M also objects to this Request as vague and

ambiguous to the point that 3M cannot reasonably admit or deny this Request.  3M is without sufficient information to admit or deny this Request, and 3M accordingly denies this Request.

**REQUEST FOR ADMISSION NO. 13:**

Admit that your reputation has not been damaged in any way by Moldex's sale of the Accused Products.

**RESPONSE:**   In addition to the above General Objections, 3M objects to this Request on the basis that the information that is the subject of this Request is not sufficiently accessible to 3M to admit or deny the request.  3M also objects to this Request as vague and ambiguous to the point that 3M cannot reasonably admit or deny this Request.  Without waiving these objections, 3M is without sufficient information to admit or deny this request, and 3M accordingly denies this Request.

**REQUEST FOR ADMISSION NO. 14:**

Admit that the Moldex BattlePlug does not infringe the '693 patent.

**RESPONSE:**   Denied.

**REQUEST FOR ADMISSION NO. 15:**

Admit that Moldex does not infringe the '157 patent.

**RESPONSE:**   Denied.

**REQUEST FOR ADMISSION NO. 16:**

Admit that because Moldex's only sales of the BattlePlugs earplugs were to the U.S. government, 3M's only forum for relief, if any, is in the United States Court of Federal Claims pursuant to 28 USC § 1498.

**RESPONSE:**   Denied.

8

Date:  September 12, 2012

BARNES & THORNBURG LLP

By: _Felicia J Boyd_

Felicia J. Boyd (MN #186168)
Aaron A. Myers (MN #311959)
William E. Manske (MN # 392348)
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 333-2111
Facsimile: (612) 333-6798
felicia.boyd@btlaw.com
aaron.myers@btlaw.com
william.manske@btlaw.com

Aaron M. Staser (*admitted pro hac vice*)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
aaron.staser@btlaw.com

**ATTORNEYS FOR PLAINTIFFS**
**3M COMPANY AND 3M INNOVATIVE**
**PROPERTIES COMPANY**

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2012, a copy of the foregoing was served via electronic mail and U.S. mail upon the following parties and participants:

> Kevin D. Conneely
> Katherine A. Moerke
> LEONARD, STREET AND DEINARD
> 150 South Fifth Street , Suite 2300
> Minneapolis, MN 55402
> Telephone: (612) 335-1500
> Facsimile: (612) 335-1657
> kevin.conneely@leonard.com
> katie.moerke@leonard.com
>
> Harold A. Barza
> Robert S. Hill
> QUINN EMANUEL URQUHART &
> SULLIVAN, LLP
> 865 South Figueroa Street
> Los Angeles, CA 90017
> Telephone: (213) 443-3000
> Facsimile: (213) 443-3211
> halbarza@quinnemanuel.com
> roberthill@quinnemanuel.com

Dated:   September 12, 2012

_____
Felicia J. Boyd

*Attorney for Plaintiff*

MIDS01 670907v1

10

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> MOLDEX-METRIC, INC. <br><br> Defendant. | Court File No.: 12-cv-611-JNE-FLN |

## JOINT CLAIM CONSTRUCTION STATEMENT OF THE PARTIES

Pursuant to the June 14, 2012 Scheduling Order [Docket No. 18], 3M Company and 3M Innovative Properties Company (collectively "3M" or "Plaintiffs") and Moldex-Metric, Inc. ("Moldex" or "Defendant") submit this Joint Claim Construction Statement.

As required by Paragraph (D)(4)(B) of the Scheduling Order, Appendix A, attached hereto, identifies the disputed claim terms, phrases, or clauses, along with each party's proposed construction of each disputed claim term, phrase, or clause together with an identification of all references from the specification or prosecution history that support that construction, and where applicable, an identification of any extrinsic evidence known to the party on which it intends to rely either in support of its proposed construction of the claim or to oppose the other party's proposed construction of the claim, including, but not limited to, as permitted by law, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses. The

parties reserve all objections and arguments related to the extrinsic and intrinsic evidence identified in Appendix A.[1]

The parties hereby request that the Court schedule a Claim Construction hearing to determine the interpretation of the disputed claim terms. For that purpose, the parties are available to confer with the Court or its staff regarding an agreed briefing schedule. The parties propose that there be simultaneous opening briefs, simultaneous response briefs, and no reply briefs. In light of the upcoming Holidays, the existing obligations of the parties and their counsel in other litigated maters, and the current deadline for completing the Claim Construction hearing, such a conference is requested before November 15, 2012. In light of the nature of the claimed inventions and technology involved, Moldex does not propose that a separate tutorial be conducted in connection with the claim construction proceedings. 3M reserves the right to request such a tutorial to the extent that the Court may find that such a tutorial would be helpful or otherwise appropriate.

---

[1] The parties have not reached agreement on the proposed construction for any of the disputed claim terms. [*See* Dkt. No. 18 at Paragraph (D)(4)(A)]. The parties do not anticipate calling any witnesses at the Claim Construction hearing. [*See* Dkt. No. 18 at Paragraph (D)(4)(C)].

Date:  November 1, 2012 By: s/ Felicia J. Boyd
Felicia J. Boyd (MN #186168)
Aaron A. Myers (MN #311959)
William E. Manske (MN # 392348)
BARNES & THORNBURG LLP
225 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 333-2111
Facsimile: (612) 333-6798
felicia.boyd@btlaw.com
aaron.myers@btlaw.com
william.manske@btlaw.com

AND

Aaron M. Staser (*pro hac vice*)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
aaron.staser@btlaw.com

**ATTORNEYS FOR PLAINTIFFS 3M
COMPANY AND 3M INNOVATIVE
PROPERTIES COMPANY**

Date:  November 1, 2012 By: s/ Robert S. Hill
Kevin D. Conneely (MN #192703)
Katherine A. Moerke (MN #312277)
LEONARD, STREET AND DEINARD, PA
150 South Fifth Street , Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
kevin.conneely@leonard.com
katie.moerke@leonard.com

AND

3

Harold A. Barza (*pro hac vice*)
Robert S. Hill (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3211
halbarza@quinnemanuel.com
roberthill@quinnemanuel.com

**ATTORNEYS FOR DEFENDANT MOLDEX-METRIC, INC.**

MIDS01 674429v1

# Joint Claim Construction Statement

**U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
| --- | --- | --- | --- | --- | --- |
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| "a first end"; "said first… end[]" | 1 | Plaintiffs do not believe that construction of the identified term or phrase is necessary.<br><br>If the Court believes construction is necessary, Plaintiffs believe that the plain and ordinary meaning of the term or phrase should apply. | "A first portion of a completed hearing protector constructed to be inserted into the user's auditory canal." | **Intrinsic**<br>'693 Patent at Fig. 2:<br><br><br>**FIG.2**<br>[Emphasis added.]<br><br>'693 Patent at Fig. 3:<br><br><br>**FIG.3**<br>[Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.]<br><br>'693 Patent at 2:12-16 ("The internal connector may also be a single cylinder having a channel that terminates at three locations, such as at the center of the connector or at **each end** of the connector, with the parts of the channel terminating at **the ends** containing an acoustic filter that may or may not be identical.") [Emphasis added.] | **Intrinsic**<br>"French Patent Publication No. 2 676 642, filed in the name of the Applicant, discloses a hearing protector that is not cumbersome and contacts the auditory canal. The protector comprises an elongate flexible body containing selective attenuation means, maximum attenuation means, and a manually controlled plug that makes it possible to choose the attenuation functional mode to be either selective or maximum. However, this device requires careful handling by the user who wants to block the auditory canal himself This manipulation can be done incorrectly, resulting in inefficient blockage in the selective or maximum attenuation modes." Col. 1:30-41. Emphasis added.<br><br>"**The hearing protector has two ends, both of which can be inserted into the auditory canal and is referred to as a "double-ended" device.** This contrasts with the well-known hearing protector that typically has one end that can be inserted into the auditory canal, while the other end allows the hearing protector to be gripped so the user can position it in the auditory canal. The present invention has two ends, that may or |

**Joint Claim Construction Statement**                                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at 2:33-36 ("Preferably, **each ferrule of the hearing protector is provided with an essentially hemispherical face of which the narrower side is intended to be inserted first into the auditory canal**.") [Emphasis added.] | may not be identical, either of which can be inserted into the auditory canal, thus making it possible to choose between two operating modes of attenuation that may or may not be identical." Col. 1:57-67. Emphasis added. |
| | | | | '693 Patent at 3:16-22 ("FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a body 1 pierced by a channel 2 that terminates at **each end of the body 1, as well as the center of body 1. The channel 2 also contains an acoustic filter 3 at each end**.") [Emphasis added.] | "FIG. 2 is a longitudinal section view of a "double-ended" hearing protector according to a second embodiment of the present invention." Col. 2:52-54. Emphasis added. |
| | | | | '693 Patent at 3:48-53 ("Alternatively, in another embodiment, the internal connector 8 may also have a channel that extends in three locations, the center of the internal connector 8, as well as at **each end** of the internal connector 8. The portion of the channel that terminates at **each end** contains an acoustic filter 3 that may or may not be identical.") [Referring to Fig. 3; emphasis added.] | "FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a body 1 pierced by a channel 2 that **terminates at each end of the body 1, as well as the center of body 1. The channel 2 also contains an acoustic filter 3 at each end. The filters may or may not be identical**." Col. 3:17-23. Emphasis added. |
| | | | | '693 Patent at Claim 1 ("1. A hearing protector for selectively or | 

FIG.2 |

# Joint Claim Construction Statement

**U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:<br><br>a cylindrical body having a center, **a first end** and a second end;<br><br>a channel extending from **said first** and second **ends** to said center of said cylindrical body; and<br><br>said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of **said first** and second **ends**.") [Emphasis added.]<br><br>US Patent 5,936,208 at Claim 1 ("1. A hearing protector capable of selectively or automatically attenuating noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:<br><br>a cylindrical body having a center, **a first end** and a second end;<br><br>a channel extending from at least one of **said first** and said second **ends** of said body to said center of said body; | *See also* French Patent Publication No. 2 676 642 figures 3 and 4—intrinsic by way of the disclosure above—which further demonstrate that the '693 patent is directed toward an earplug with two insertable ends, not only one insertable end like the admitted prior art:<br><br><br><br>**Extrinsic**<br><br>Reference: *French Patent Publication No. 2 676 642* to Dancer et al. (distinguished on the face of the '693 patent); *See, e.g.,* Figs. 3 and 4:<br><br><br><br>Reference: *Empirical evaluation using impulse noise of the level-dependency of various passive earplug designs,* Berger and Hamery (distinguishing single-ended earplugs from dual-ended earplugs): "The level- dependent data described herein for the dual-ended Combat Arms earplug have been found to also describe the simpler single-ended |

**Joint Claim Construction Statement**　　　　　　　　　　　　　　**U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | said channel contains an acoustic filter; and a **ferrule at** each of **said first** and said second **ends,** wherein said ferrules are separate and said cylindrical body forms an internal connector linking said ferrules.") [Emphasis added.]<br><br>US Patent 5,936,208 at Claim 13 ("13. The hearing protector according to claim 1, wherein **said ferrules each have an essentially hemispherical face having a narrow side, said narrow sides being designed to be inserted into the auditory canal** of the user first.") [Emphasis added.] | version also containing the ISL filter in the stem of a premolded UltraFit® earplug as well as to the most recent single-ended design, also with an ISL filter that uses a selector dial.<br><br><br><br>The plug that we have studied most thoroughly is the Combat Arms plug with the ISL filter. That filter, consisting of a small plastic canister with 0.3-mm inside diameter (ID) holes at each end has been imbedded in the stem of various versions of the UltraFit® earplugs, both dual-ended (as shown in Fig. 3) and single-ended designs. We begin by reporting data graphically in Fig. 4, for the dual-ended version of that product as illustrated in Fig. 3." 3722. Emphasis added.<br><br>Reference: **3M Combat Arms Marketing Materials** (distinguishing single- ended earplugs from dual-ended earplugs): |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | **Extrinsic** | |
| | | | | Plaintiffs believe that the Court's Scheduling Order requires specific disclosure of intrinsic and extrinsic evidence in the creation and submission of the Joint Claim Construction Statement. Defendant has indicated an intention to: <br><br> "In addition to the art identified above, for **this and all other limitations identified in this document,** Moldex may rely on statements made by 3M in its Responsive Prior Art Statement and Exhibits thereto, as well as the written references as discussed therein." [*See* Defendant's Preliminary Evidence to the right.] <br><br> Plaintiffs believe that the use of evidence not specifically disclosed in the Joint Claim Construction Statement, or during the preparation of the Statement as set forth in the Court's Scheduling Order, is improper, and reserves the right to object to the same if Defendant proceeds in this fashion. |  Emphasis added. <br><br> In addition to the art identified above, **for this and all other limitations identified in this document,** Moldex may rely on statements made by 3M in its Responsive Prior Art Statement and Exhibits thereto, as well as the written references as discussed therein. |

# Joint Claim Construction Statement

## U.S. Patent No. 6,070,693

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| "a second end"; "second end[]" | 1 | Plaintiffs do not believe that construction of the identified term or phrase is necessary.<br><br>If the Court believes construction is necessary, Plaintiffs believe that the plain and ordinary meaning of the term or phrase should apply. | "A second portion of a completed hearing protector located at the opposite end of the hearing protector from the first end and constructed to be inserted into the user's auditory canal." | **Intrinsic**<br><br>'693 Patent at Fig. 2:<br><br><br>**FIG.2**<br>[Emphasis added.]<br><br>'693 Patent at Fig. 3:<br><br><br>**FIG.3**<br>[Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.]<br><br>'693 Patent at 2:12-16 ("The internal connector may also be a single cylinder having a channel that terminates at three locations, such as at the center of the connector or at **each end** of the connector, with the parts of the channel terminating at **the ends** containing an acoustic filter that may or may not be identical.") [Emphasis added.] | **Intrinsic**<br><br>"French Patent Publication No. 2 676 642, filed in the name of the Applicant, discloses a hearing protector that is not cumbersome and contacts the auditory canal. The protector comprises an elongate flexible body containing selective attenuation means, maximum attenuation means, and a manually controlled plug that makes it possible to choose the attenuation functional mode to be either selective or maximum. However, this device requires careful handling by the user who wants to block the auditory canal himself This manipulation can be done incorrectly, resulting in inefficient blockage in the selective or maximum attenuation modes." Col. 1:30-41. Emphasis added.<br><br>"The hearing protector has two ends, both of which can be inserted into the auditory canal and is referred to as a "double-ended" device. This contrasts with the well-known hearing protector that typically has one end that can be inserted into the auditory canal, while the other end allows the hearing protector to be gripped so the user can position it in the auditory canal. The present invention has two ends, that may or |

**Joint Claim Construction Statement**                                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at 2:33-36 ("Preferably, **each ferrule of the hearing protector is provided with an essentially hemispherical face of which the narrower side is intended to be inserted first into the auditory canal.**") [Emphasis added.] | may not be identical, either of which can be inserted into the auditory canal, thus making it possible to choose between two operating modes of attenuation that may or may not be identical." Col. 1:57-67. Emphasis added. |
| | | | | '693 Patent at 3:16-22 ("FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a body 1 pierced by a channel 2 that terminates at **each end** of the body 1, as well as the center of body 1. The channel 2 also contains an acoustic filter 3 at **each end.**") [Emphasis added.] | "FIG. 2 is a longitudinal section view of a "double-ended" hearing protector according to a second embodiment of the present invention." Col. 2:52-54. Emphasis added. |
| | | | | '693 Patent at 3:48-53 ("Alternatively, in another embodiment, the internal connector 8 may also have a channel that extends in three locations, the center of the internal connector 8, as well as at **each end** of the internal connector 8. The portion of the channel that terminates at **each end** contains an acoustic filter 3 that may or may not be identical.") [Referring to Fig. 3; emphasis added.] | "FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a body 1 pierced by a channel 2 that terminates at **each end of the body 1, as well as the center of body 1. The channel 2 also contains an acoustic filter 3 at each end. The filters may or may not be identical.**" Col. 3:17-23. **Emphasis added.** |
| | | | | '693 Patent at Claim 1 ("1. A hearing protector for selectively or |  FIG.2 |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:<br>　　a cylindrical body having a center, a first end and **a second end**;<br>　　a channel extending from **said first** and **second ends** to said center of said cylindrical body; and<br>　　said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of **said** first and **second ends**.") [Emphasis added.]<br><br>US Patent 5,936,208 at Claim 1 ("1. A hearing protector capable of selectively or automatically attenuating noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:<br>　　a cylindrical body having a center, a first end and **a second end**;<br>　　a channel extending from at least one of said first and **said second ends** of said body to said center of said body; | *See also* French Patent Publication No. 2 676 642 figures 3 and 4— intrinsic by way of the disclosure above—which further demonstrate that the '693 patent is directed toward an earplug with two insertable ends, not only insertable end like the admitted prior art:<br><br><br><br>**Extrinsic**<br>**Reference:** *French Patent Publication No. 2 676 642* to Dancer et al. (distinguished on the face of the '693 patent); See, e.g., Figs. 3 and 4:<br><br><br><br>**Reference:** *Empirical evaluation using impulse noise of the level-dependency of various passive earplug designs*, Berger and Hamery (distinguishing single-ended earplugs from dual-ended earplugs): "The level- dependent data described herein for the dual-ended Combat Arms earplug have been found to also describe the simpler single-ended |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | said channel contains an acoustic filter; and **a ferrule at** each of said first and **said second ends**, wherein said ferrules are separate and said cylindrical body forms an internal connector linking said ferrules.") [Emphasis added.]<br><br>US Patent 5,936,208 at Claim 13 ("13. The hearing protector according to claim 1, wherein **said ferrules each have an essentially hemispherical face having a narrow side, said narrow sides being designed to be inserted into the auditory canal** of the user first.") [Emphasis added.] | version also containing the ISL filter in the stem of a premolded UltraFit® earplug as well as to the most recent single-ended design, also with an ISL filter that uses a selector dial.<br><br><br><br>The plug that we have studied most thoroughly is the Combat Arms plug with the ISL filter. That filter, consisting of a small plastic canister with 0.3-mm inside diameter (ID) holes at each end has been imbedded in the stem of various versions of the UltraFit® earplugs, both dual-ended (as shown in Fig. 3) and single-ended designs. We begin by reporting data graphically in Fig. 4, for the dual-ended version of that product as illustrated in Fig. 3." 3722. Emphasis added.<br><br>**Reference: *3M Combat Arms Marketing Materials*** (distinguishing single- ended earplugs from dual-ended earplugs): |

**Joint Claim Construction Statement**                                   **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | |  Emphasis added. |

# Joint Claim Construction Statement

# U.S. Patent No. 6,070,693

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| "channel extending from said first and second ends to said center of said cylindrical body" | 1 | Plaintiffs do not believe that construction of the identified term or phrase is necessary.<br><br>If the Court believes construction is necessary, Plaintiffs believe that the plain and ordinary meaning of the term or phrase should apply. | "A channel that includes an opening at the center of the earplug to allow sound to enter the earplug at that center and extends to openings at said first and second ends to that center of the cylindrical body." | **Intrinsic**<br><br>'693 Patent at Fig. 2:<br><br><br>FIG.2<br>[Emphasis added.]<br><br>'693 Patent at Fig. 2:<br><br><br>FIG.2<br>[Emphasis added.]<br><br>'693 Patent at Fig. 3:<br><br><br>FIG.3<br>[Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.] | **Intrinsic**<br><br>"FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a body 1 pierced by a channel 2 that terminates at each end of the body 1, as well as the center of body 1. The channel 2 also contains an acoustic filter 3 at each end. The filters may or may not be identical." Col. 3:17-23. Emphasis added.<br><br><br>FIG.2<br><br>Furthermore, although only Fig. 2 corresponds to the claims of the '693 patent, it is significant that every figure of the patent features a channel that includes an opening at the center of the earplug to allow sound to enter the earplug at that center, as shown below with emphasis added:<br><br> |

**Joint Claim Construction Statement**                                   **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at Fig. 3:<br><br><br><br>FIG.3<br>[Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.]<br><br>'693 Patent at Fig. 4c:<br><br><br><br>FIG.4c<br>[Emphasis added.]<br><br>'693 Patent at Fig. 5:<br><br><br><br>FIG.5<br>[Emphasis added.] | **Extrinsic**<br>**Reference: *3M Combat Arms Marketing Materials*** (Note: reference shows a channel with an opening at center extending to one insertable end; the '693 patent specification corresponding to this limitation shows the channel extending to a second insertable end as well, as claimed).<br><br><br><br>Emphasis added. |

**Joint Claim Construction Statement**                                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at 2:12-16 ("The internal connector may also be **a single cylinder having a channel that terminates at three locations, such as at the center of the connector or at each end of the connector**, with the parts of the channel terminating at the ends containing an acoustic filter that may or may not be identical.") [Emphasis added.]<br><br>'693 Patent at 2:17-25 ("The internal connector may also be composed of three **cylindrical parts. The central part may have a channel at its center with a diameter slightly greater than that of the other two parts. The other two parts have a diameter that is essentially equal to or slightly larger than that of the channel. At least one of the two parts is pierced by a channel at its center** which contains an acoustic filter and communicates with **the channel in the central part**.") [Emphasis added.]<br><br>'693 Patent at 2:31-32 ("In yet another embodiment, **the hearing protector may have tapered ends**.") [Emphasis added.]<br><br>'693 Patent at 3:16-20 ("FIG. 2 is a longitudinal section view of the hearing protector according to a | |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | second embodiment of the present invention. The hearing protector includes **a body 1 pierced by a channel 2 that terminates at each end of the body 1, as well as the center of body 1.**") [Emphasis added.] | |
| | | | | '693 Patent at 3:48-51 ("Alternatively, in another embodiment, **the internal connector 8 may also have a channel that extends in three locations, the center of the internal connector 8, as well as at each end of the internal connector 8.**") [Referring to Fig. 3; emphasis added.] | |
| | | | | '693 Patent at 3:64-66 ("The internal connector 8 may have serrations, or ridges, as shown in FIGS. 4b and 6, or **the internal connector 8 may have tapered ends 13 and 14, as shown in FIGS. 4c and 5.**") [Emphasis added.] | |
| | | | | '693 Patent at Claim 1 ("1. A hearing protector for selectively or automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising: **a cylindrical body having a** | |

**Joint Claim Construction Statement**                                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | center, a first end and a second end; <br> a channel extending from said first and second ends to said center of said cylindrical body; and <br> said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of said first and second ends.") [Emphasis added.] <br><br> '693 Patent at Claim 4 ("4. The hearing protector according to claim 1, further having a ferrule at each of said first and second ends wherein said ferrules are separate and **said cylindrical body forms an internal connector** linking said ferrules.") [Emphasis added.] <br><br> '693 Patent at Claim 9 ("9. The hearing protector according to claim 4, wherein **said internal connector includes a central cylindrical part having a central diameter, a first cylindrical part having a first diameter and a second cylindrical part having a second diameter, said central diameter being larger than said first diameter and said second diameter, said first diameter and said second diameter being larger** | |

# Joint Claim Construction Statement

## U.S. Patent No. 6,070,693

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | **than said channel**, said first cylindrical part containing said first acoustic filter and said second cylindrical part contains said second acoustic filter.") [Emphasis added.]<br><br>'693 Patent at Claim 14 ("14. The hearing protector according to claim 4, wherein **said internal connector has tapered ends**.") [Emphasis added.] | |

**Joint Claim Construction Statement**                                   **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | **Intrinsic** | **Extrinsic** |
| "acoustic filter" | 1, 3, 17 | Plaintiffs do not believe that construction of the identified term or phrase is necessary. <br><br> If the Court believes construction is necessary, Plaintiffs believe that the plain and ordinary meaning of the term or phrase should apply. | "A passageway with structural features that have the effect of modifying sound waves in the primary sound path, such as a passageway with more than one constriction in the primary sound path." | '693 Patent at Fig. 2: <br><br>  <br> **FIG.2** <br> [Emphasis added.] <br><br> '693 Patent at Fig. 2: <br><br>  <br> **FIG.2** <br> [Emphasis added.] <br><br> '693 Patent at Fig. 3: <br><br>  <br> **FIG.3** <br> [Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.] | **Reference:** *Nonlinear Hearing Protection Devices*, P. Hamery and A. Dancer, page 6: <br><br>  <br><br> (emphasis added) <br><br> **Reference:** *Empirical evaluation using impulse noise of the level-dependency of various passive earplug designs*, Berger and Hamery (distinguishing single-ended earplugs from dual-ended earplugs): "The level- dependent data described herein for the dual-ended Combat Arms earplug have been found to also describe the simpler single-ended version also **containing the ISL filter** in the stem of a premolded UltraFit® earplug as well as to the most recent single-ended design, also with an ISL filter that uses a selector dial. |

Appendix A                                      Page 17                                   November 1, 2012

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at Fig. 3:  **FIG.3** [Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.] <br><br> '693 Patent at 2:12-16 ("The internal connector may also be a single cylinder having a channel that terminates at three locations, such as at the center of the connector or at each end of the connector, with the parts of the channel terminating at the ends containing **an acoustic filter** that may or may not be identical.") [Emphasis added.] <br><br> '693 Patent at 2:23-27 ("At least one of the two parts is pierced by a channel at its center which contains **an acoustic filter** and communicates with the channel in the central part. When the two parts each contain **an acoustic filter**, the **filters** may or may not be identical.") [Emphasis added.] <br><br> '693 Patent at 2:41-42 ("The hearing protector makes it possible to perform nonlinear sound filtration by choosing |  The plug that we have studied most thoroughly is the Combat Arms plug with the ISL filter. That filter, consisting of a small plastic canister with 0.3- mm inside diameter (ID) holes at each end has been imbedded in the stem of various versions of the UltraFit® earplugs, both dual-ended (as shown in Fig. 3) and single-ended designs. We begin by reporting data graphically in Fig. 4, for the dual-ended version of that product as illustrated in Fig. 3." 3722. Emphasis added. <br><br> Reference: *J. Acoust. Soc. Am.*, Vol. 105, No. 2, Pt. 2, February 1999 **Joint Meeting: ASA/EAA/DEGA 1130** <br><br> **10:00** **3aNSb6. Amplitude-sensitive attenuating earplugs.** Pascal J. F. Hamery and Armand L. Dancer ~French–German Res. Inst. of Saint-Louis, 5 rue du General Cassagnou, BP 34, 68301 Saint-Louis Cedex, |

**Joint Claim Construction Statement**

**U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | the correct **acoustic filter**.") [Emphasis added.]<br><br>'693 Patent at 3:21-23 ("The channel 2 also contains **an acoustic filter 3** at each end. The **filters** may or may not be identical.") [Emphasis added.]<br><br>'693 Patent at 3:51-53 ("The portion of the channel that terminates at each end contains **an acoustic filter 3** that may or may not be identical.") [Referring to Fig. 3; emphasis added.]<br><br>'693 Patent at Claim 1 ("1. A hearing protector for selectively or automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:<br>  a cylindrical body having a center, a first end and a second end;<br>  a channel extending from said first and second ends to said center of said cylindrical body; and<br>  said channel containing **a first acoustic filter and a second acoustic filter**, each of **said first and second filters** being in communication with one of said first and second ends.") [Emphasis added.] | France, dancer@newel.net<br><br>The most simple amplitude-sensitive attenuating earplug is made of a plate with one little hole that is inserted in a perforated plug (like Racal Gunfender). That hole presents an acoustic impedance which has essentially a viscous resistance and a nonlinear dependence on the particle velocity in its center… The dimensions of that hole have been optimized and a new configuration, i.e., an empty cavity with two perforated plates, has been designed. This "filter" of small dimensions can easily be fitted into different commercial perforated earplugs.<br><br>Emphasis added.<br><br>**Reference: *J. Acoust. Soc. Am.*, Vol. 103, No. 5, Pt. 2, May 1998 16th ICA/135th ASA—Seattle 2878**<br><br>**2pNSb5. A new nonlinear earplug for use in high-level impulse noise environment.** Armand L. Dancer and Pascal J-F. Hamery (French-German Res. Inst. of Saint-Louis, 5 rue du Gener. Cassagnou, BP 34, 68301 Saint-Louis Cedex, France, dancer@nucleus.fr) |

**Joint Claim Construction Statement**     **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at Claim 2 ("2. The hearing protector according to claim 1, wherein **said first and second acoustic filters** are identical.") [Emphasis added.] <br><br> '693 Patent at Claim 3 ("3. The hearing protector according to claim 1, wherein **said first and second acoustic filters** are not identical") [Emphasis added.] <br><br> '693 Patent at Claim 17 ("17. The hearing protector according to claim 1, wherein **said acoustic filters** permit non-linear filtration of sound") [Emphasis added.] | A nonlinear earplug allows speech communication, detection and localization of acoustic sources, and prevents hearing hazard from high-peak pressure impulses. Improved physical characteristics of a nonlinear earplug are explained: nonlinear attenuation starting with relatively small level (110 dB peak) and improvement of nonlinear attenuation for high levels. Such an earplug is especially designed against weapon noises (up to 190 dB peak). The study is based on experimental approach. Moreover, a theoretical model has been developed to explain the experimental results and to optimize the acoustic nonlinear filter dimensions and configuration. **The nonlinearity of such a filter is due to one (or several) little hole(s), the** acoustic impedance of which is essentially a viscous resistive one and depends on the particulate velocity in its center. <br><br> Emphasis added. <br><br> **Reference: *J. Acoust. Soc. Am.*, Vol. 114, No. 5, November 2003 Reviews of Acoustical Patents at 2540** <br><br> "6,068,079 43.50.Hg ACOUSTIC VALVE CAPABLE OF SELECTIVE NON- |

**Joint Claim Construction Statement**                     **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | | LINEAR FILTERING OF SOUND Pascal Hamery, Mulhouse, France et al., assignors to L. S. L. Institut Franco-Allemand de Recherches de Saint-Louis 30 May 2000 .Class 181Õ135.; filed 11 August 1997 This variable acoustic filter depends on the relative orientation between two rotatable discs. The filter can be incorporated into an earplug.—JE" (emphasis added) <br><br> **Reference: U.S. Pat. No. 6,068,079** <br><br> "Acoustic valve capable of selective and non-linear filtering of sound and placeable in a perforated ear plug. The acoustic valve consists of a tube enclosing two rigid disks axially spaced opposite each other, each of the disks containing at least one perforation. The total perforated surface of at least one disk is between 0.03 and 0.5 mm2." Abstract. Emphasis added. <br><br>  <br><br> **Reference: U.S. Pat. No. 4,587,965** <br><br> "FIG. 2 shows the filter" Col. 2:61; "FIG. 2 shows a filter 1 embodying the invention which comprises a |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | | fitting piece 2 in which an insertion piece 3 is arranged. The bore 5 is made in the fitting piece 2 and prolonges in the insertion piece 3. An elongate object, preferably a wire 4 is arranged in part of the bore 5 or in the whole bore 5 so that a part of the bore 5 has a considerably smaller free flow passage." Col. 3:29-36. **Emphasis added.**  FIG.2 **Reference: U.S. Pat. No. 3,565,069** "Thus, an acoustical filter element **14**, lodged centrally of body **12**, serves to restrict the passage therethrough of substantially all sound levels above a predetermined level, preferably established at the upper level of human speech. Accordingly, the transmission of noise levels via the filter element 14 is limited to those noise levels falling below a noise level on the order of 80 |

# Joint Claim Construction Statement

## U.S. Patent No. 6,070,693

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | | decibels." Col. 2:3-9. Emphasis added. |



FIG. 1

Reference: U.S. Pat. No. 6,148,821

"FIG. 4 is a perspective view of one embodiment of an acoustic filter of the present invention for use with the earplug of FIG. 1;" Col. 3:35-37. Emphasis added.



FIG. 4

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | | "Now turning to FIGS. 1-3 wherein one embodiment of the selective attenuation earplug of the present invention is provided and is generally designated by reference numeral 10. Earplug 10 of this embodiment broadly comprises a stalk member 12, a stem 14, an acoustic filter 60 and an array of at least three rearwardly orientated and spaced apart flange elements 70, 80, and 90, each being of generally circular cross section. Preferably each flange element of the array extends rearwardly from its point of attachment to stalk member 12. It is within the scope of this invention that earplug 10 may comprise at least one flange extending from stalk member 12 wherein the flanges have a conical or arcuate shape." Col. 5:51-63. **Emphasis added.**<br><br><br><br>*FIG. 1* |

**Joint Claim Construction Statement**                          **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | | **Reference: USACHPPM** *Just the Facts… The Combat Arms Earplug* A small "filter" is inserted into the center (stem) of a one-sized, preformed earplug. This filter is a **cylindrical device of a specified length (3.7 mm) with holes (0.30 mm) in each end.**[2] [citing to] [2]Dancer, A. and Hamery P., "Nonlinear Hearing Protection Devices," Proceedings of 27nd Annual Conference of the National Hearing Conservation Association, Albuquerque, New Mexico, 19-21 Feb 1998. Emphasis added. Reference: *http://www.earinc.com/p1-filtered-afiltered.php*  **Emphasis added; acoustic filter image from link below:** |

# Joint Claim Construction Statement

**U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | |  |

# Joint Claim Construction Statement

# U.S. Patent No. 6,070,693

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| "first acoustic filter and a second acoustic filter"; "first and second acoustic filters"; "acoustic filters" | 1, 3, 17 | Plaintiffs do not believe that construction of the identified term or phrase is necessary. If the Court believes construction is necessary, Plaintiffs believe that the plain and ordinary meaning of the term or phrase should apply. | "A first filter that attenuates the passage of sound in a primary sound path and a second filter that attenuates the passage of sound in a different primary sound path." | **Intrinsic**<br><br>'693 Patent at Fig. 2:<br><br><br><br>FIG.2<br>[Emphasis added.]<br><br>'693 Patent at Fig. 2:<br><br><br><br>FIG.2<br>[Emphasis added.]<br><br>'693 Patent at Fig. 3:<br><br><br><br>FIG.3<br>[Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.] | **Intrinsic**<br><br>"The hearing protector has two ends, both of which can be inserted into the auditory canal and is referred to as a "double-ended" device. This contrasts with the well-known hearing protector that typically has one end that can be inserted into the auditory canal, while the other end allows the hearing protector to be gripped so the user can position it in the auditory canal. **The present invention has two ends, that may or may not be identical, either of which can be inserted into the auditory canal, thus making it possible to choose between two operating modes of attenuation that may or may not be identical.**" Col. 1:57-67. Emphasis added.<br><br>"FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a body 1 pierced by a channel 2 that terminates at each end of the body 1, as well as the center of body 1. **The channel 2 also contains an acoustic filter 3 at each end. The filters may or may not be identical.**" Col. 3:17-23. Emphasis added. |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
| --- | --- | --- | --- | --- | --- |
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | ‘693 Patent at Fig. 3:<br><br><br><br>FIG.3<br>[Modified per alternative embodiment taught by ‘693 Patent at 3:48-53; emphasis added.]<br><br>‘693 Patent at 2:12-16 ("The internal connector may also be a single cylinder having a channel that terminates at three locations, such as at the center of the connector or at each end of the connector, **with the parts of the channel terminating at the ends containing an acoustic filter that may or may not be identical.**") [Emphasis added.]<br><br>‘693 Patent at 2:23-27 ("At least one of **the two parts is pierced by a channel at its center which contains an acoustic filter** and communicates with the channel in the central part. **When the two parts each contain an acoustic filter, the filters may or may not be identical.**") [Emphasis added.]<br><br>‘693 Patent at 3:21-23 ("The channel 2 also contains **an acoustic filter 3 at** |  |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | each end. The filters may or may not be identical.") [Emphasis added.]<br><br>'693 Patent at 3:51-53 ("**The portion of the channel that terminates at each end contains an acoustic filter 3 that may or may not be identical.**") [Referring to Fig. 3; emphasis added.]<br><br>'693 Patent at Claim 1 ("1. A hearing protector for selectively or automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:<br>   a cylindrical body having a center, a first end and a second end;<br>   a channel extending from said first and second ends to said center of said cylindrical body; and<br>   said channel containing **a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of said first and second ends.**") [Emphasis added.]<br><br>'693 Patent at Claim 2 ("2. The hearing protector according to claim 1, wherein said **first and second** | |

**Joint Claim Construction Statement**                                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | acoustic filters are identical.") [Emphasis added.]  '693 Patent at Claim 3 ("3. The hearing protector according to claim 1, wherein **said first and second acoustic filters are not identical**") [Emphasis added.]  '693 Patent at Claim 17 ("17. The hearing protector according to claim 1, wherein **said acoustic filters permit non-linear filtration of sound**") [Emphasis added.] | |

# Joint Claim Construction Statement

# U.S. Patent No. 6,070,693

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | | |
|---|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | | Defendant's |
| | | | | **Intrinsic** | | **Intrinsic** |
| "each of said first and second filters being in communication with one of said first and second ends" | 1 | Plaintiffs do not believe that construction of the identified term or phrase is necessary.<br><br>If the Court believes construction is necessary, Plaintiffs believe that the plain and ordinary meaning of the term or phrase should apply. | "A first filter being a part of a primary sound path from the sound entry hole at the center of the hearing protector to the first end and a second filter being a part of a different primary sound path from the sound entry hole at the center of the hearing protector to the second end." | '693 Patent at Fig. 2:<br><br>[Emphasis added.]<br><br>'693 Patent at Fig. 2:<br><br>[Emphasis added.]<br><br>'693 Patent at Fig. 3:<br><br>[Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.] | | FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a body 1 pierced by a channel 2 that terminates at each end of the body 1, as well as the center of body 1. The channel 2 also contains an acoustic filter 3 at each end. The filters may or may not be identical." Col. 3:17-23. Emphasis added.<br> |

**Joint Claim Construction Statement**  **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at Fig. 3:  FIG.3 [Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.] '693 Patent at 2:12-16 ("The internal connector may also be a **single cylinder having a channel that terminates at three locations, such as at the center of the connector or at each end of the connector, with the parts of the channel terminating at the ends containing an acoustic filter that may or may not be identical.**") [Emphasis added.] '693 Patent at 2:17-27 ("The internal connector may also be composed of three cylindrical parts. **The central part may have a channel at its center with a diameter slightly greater than that of the other two parts.** The other two parts have a diameter that is essentially equal to or slightly larger than that of the channel. **At least one of the two parts is pierced by a channel at its center which contains an acoustic** | |

**Joint Claim Construction Statement**                          **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | filter and communicates with the channel in the central part. When the two parts each contain an acoustic filter, the filters may or may not be identical.") [Emphasis added.] | |
| | | | | '693 Patent at 3:16-23 ("FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a body 1 pierced by a channel 2 that terminates at each end of the body 1, as well as the center of body 1. The channel 2 also contains an acoustic filter 3 at each end. The filters may or may not be identical.") [Emphasis added.] | |
| | | | | '693 Patent at 3:48-53 ("Alternatively, in another embodiment, the internal connector 8 may also have a channel that extends in three locations, the center of the internal connector 8, as well as at each end of the internal connector 8. The portion of the channel that terminates at each end contains an acoustic filter 3 that may or may not be identical.") [Referring to Fig. 3; emphasis added.] | |
| | | | | '693 Patent at Claim 1 ("1. A hearing protector for selectively or | |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
| --- | --- | --- | --- | --- | --- |
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising: a cylindrical body having a center, a first end and a second end; **a channel extending from said first and second ends to said center of said cylindrical body; and** said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of said first and second ends.") [Emphasis added.] | |

**Joint Claim Construction Statement**                                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| "cylindrical body" | 1 | Plaintiffs do not believe that construction of the identified term or phrase is necessary.<br><br>If the Court believes construction is necessary, Plaintiffs believe that the plain and ordinary meaning of the term or phrase should apply. | "The portion of a completed hearing protector between the first and second ends, that has a cross section of the same size throughout." | **Intrinsic**<br>'693 Patent at Fig. 2:<br><br>FIG.2<br>[Emphasis added.]<br><br>'693 Patent at Fig. 3:<br><br>FIG.3<br>[Modified per alternative embodiment taught by '693 Patent at 3:48-53; emphasis added.]<br><br>'693 Patent at Fig. 4c:<br><br>FIG.4c<br>[Emphasis added.] | **Intrinsic**<br><br>FIG.2<br>Emphasis added.<br>**Extrinsic**<br>**Reference: *oxforddictionaries.com***<br>Full URL: http://oxforddictionaries.com/definition/american_english/cylinder?region=us&q=cylindrical#cylinder_9<br><br>**Reference: *Plaintiff's Amended Infringement Contentions Exhibit F*** at page 13. This document recognizes the difference between cylindrical and conical shapes, as shown below: |

**Joint Claim Construction Statement**                                         **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at Fig. 5:  [Emphasis added.] '693 Patent at 2:12-16 ("The internal connector may also be **a single cylinder** having a channel that terminates at three locations, such as at the center of the connector or at each end of the connector, with the parts of the channel terminating at the ends containing an acoustic filter that may or may not be identical.") [Emphasis added.] '693 Patent at 2:17-21 ("The internal connector may also be composed of three **cylindrical parts. The central part may have a channel at its center with a diameter slightly greater than that of the other two parts. The other two parts have a diameter that is essentially equal to or slightly larger than that of the channel.**") [Emphasis added.] |  Although these contentions are otherwise erroneous, their recognition of the geometric difference between a cylinder and a cone is correct. |

**Joint Claim Construction Statement**

**U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | '693 Patent at 2:31-32 ("In yet another embodiment, **the hearing protector may have tapered ends.**") [Emphasis added.]<br><br>'693 Patent at 3:16-20 ("FIG. 2 is a longitudinal section view of the hearing protector according to a second embodiment of the present invention. The hearing protector includes a **body 1** pierced by a channel 2 that terminates at each end of the **body 1**, as well as the center of **body 1**.") [Emphasis added.]<br><br>'693 Patent at 3:64-66 ("The internal connector 8 may have serrations, or ridges, as shown in FIGS. 4b and 6, or **the internal connector 8 may have tapered ends 13 and 14, as shown in FIGS. 4c and 5.**") [Emphasis added.]<br><br>'693 Patent at Claim 1 ("1. A hearing protector for selectively or automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:<br>　　**a cylindrical body** having a center, a first end and a second end;<br>　　a channel extending from said | |

**Joint Claim Construction Statement**                                        **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | first and second ends to said center of **said cylindrical body**; and said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of said first and second ends.") [Emphasis added.]<br><br>'693 Patent at Claim 4 ("4. The hearing protector according to claim 1, further having a ferrule at each of said first and second ends wherein said ferrules are separate and **said cylindrical body forms an internal connector** linking said ferrules.") [Emphasis added.]<br><br>'693 Patent at Claim 9 ("9. The hearing protector according to claim 4, wherein **said internal connector includes a central cylindrical part having a central diameter, a first cylindrical part having a first diameter and a second cylindrical part having a second diameter, said central diameter being larger than said first diameter and said second diameter, said first diameter and said second diameter being larger than said channel**, said first cylindrical part containing said first acoustic filter and said second | |

**Joint Claim Construction Statement**                    **U.S. Patent No. 6,070,693**

| Claim Language to Be Construed | Claim(s) | Preliminary Proposed Construction | | Preliminary Evidence | |
|---|---|---|---|---|---|
| | | Plaintiffs' | Defendant's | Plaintiffs' | Defendant's |
| | | | | cylindrical part contains said second acoustic filter.") [Emphasis added.]<br><br>'693 Patent at Claim 14 ("14. The hearing protector according to claim 4, wherein **said internal connector has tapered ends**.") [Emphasis added.] | |

## McLean, Barbara

| | |
|---|---|
| **From:** | ecf-notice@mnd.uscourts.gov |
| **Sent:** | Thursday, November 01, 2012 2:30 PM |
| **To:** | mndecfnotifications@mnd.uscourts.gov |
| **Subject:** | Activity in Case 0:12-cv-00611-JNE-FLN 3M Company et al v. Moldex-Metric, Inc. Joint Claim Construction Statement |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### District of Minnesota

### Notice of Electronic Filing

The following transaction was entered by Boyd, Felicia on 11/1/2012 at 2:29 PM CDT and filed on 11/1/2012

| | |
|---|---|
| **Case Name:** | 3M Company et al v. Moldex-Metric, Inc. |
| **Case Number:** | 0:12-cv-00611-JNE-FLN |
| **Filer:** | 3M Company |
| | 3M Innovative Properties Company |
| | Moldex-Metric, Inc. |

**Document Number:** 31

**Docket Text:**
**Joint Claim Construction Statement by 3M Company, 3M Innovative Properties Company, Moldex-Metric, Inc.. (Attachments: # (1) Appendix A)(Boyd, Felicia)**

**0:12-cv-00611-JNE-FLN Notice has been electronically mailed to:**

Aaron A Myers      aaron.myers@btlaw.com, landerson@btlaw.com

Aaron M Staser      aaron.staser@btlaw.com

Felicia J Boyd      felicia.boyd@btlaw.com, hjohnson@btlaw.com

Harold A Barza      halbarza@quinnemanuel.com

Katherine A Moerke      katherine.moerke@leonard.com, sue.may@leonard.com

1

Kevin D Conneely    kevin.conneely@leonard.com, barbara.mclean@leonard.com

Robert S. Hill    roberthill@quinnemanuel.com

William Earl Manske    wmanske@btlaw.com, hjohnson@btlaw.com

**0:12-cv-00611-JNE-FLN Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051215216 [Date=11/1/2012] [FileNumber=3896461-0
] [5d5ad0990740a17b5e3003804f5d312fc3656bc98199662d7d7f2ac6045d8d02c6c
f6b0fd32d7d6c36e9b9c4480ae74e6c996f8d9e6f7109607d99b477339bb9]]
**Document description:**Appendix A
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051215216 [Date=11/1/2012] [FileNumber=3896461-1
] [4a49c44aea94f856fa38e02653274fc1acae9cdc99522e8f4b1f8ab983b0224ad5a
d251bc8e88cf4c361fba37aec652193f69189530ee9cd71f0f59026036060]]

# EXHIBIT 5

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

3M Company and 3M Innovative Properties
Company,

        Plaintiffs,

v.                                Civil No. 12-611 (JNE/FLN)
                                ORDER

Moldex-Metric, Inc.,

        Defendant.

This is an action for patent infringement brought by 3M Company and 3M Innovative

Properties Company against Moldex-Metric, Inc. The patents-in-suit are U.S. Patent No.

7,036,157 and U.S. Patent No. 6,070,693. On November 1, 2012, the parties filed a Joint Claim

Construction Statement in which they asked the Court to hold a hearing to construe disputed

claim terms. Having reviewed the Joint Claim Construction Statement, the Court declines to

hold a claim construction hearing. Instead, the Court will consider issues of claim construction

in connection with dispositive motions, if any are made, or trial. *See Ballard Med. Prods. v.

Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("[T]here is nothing unique

about claim construction that requires the court to proceed according to any particular protocol.

As long as the trial court construes the claims to the extent necessary to determine whether the

accused device infringes, the court may approach the task in any way that it deems best.").

        IT IS SO ORDERED.

Dated: November 5, 2012

                                  s/Joan N. Ericksen
                                  JOAN N. ERICKSEN
                                  United States District Judge

**McLean, Barbara**

| | |
|---|---|
| **From:** | ecf-notice@mnd.uscourts.gov |
| **Sent:** | Monday, November 05, 2012 3:26 PM |
| **To:** | mndecfnotifications@mnd.uscourts.gov |
| **Subject:** | Activity in Case 0:12-cv-00611-JNE-FLN 3M Company et al v. Moldex-Metric, Inc. Order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Minnesota**

**Notice of Electronic Filing**

The following transaction was entered on 11/5/2012 at 3:25 PM CST and filed on 11/5/2012
**Case Name:**        3M Company et al v. Moldex-Metric, Inc.
**Case Number:**     0:12-cv-00611-JNE-FLN
**Filer:**
**Document Number:** 32

**Docket Text:**
**ORDER re [31] Joint Claim Construction Statement filed by 3M Innovative Properties Company, 3M Company, and Moldex-Metric, Inc. Signed by Judge Joan N. Ericksen on November 5, 2012. (CBC)**


**0:12-cv-00611-JNE-FLN Notice has been electronically mailed to:**

Aaron A Myers     aaron.myers@btlaw.com, landerson@btlaw.com

Aaron M Staser     aaron.staser@btlaw.com

Felicia J Boyd     felicia.boyd@btlaw.com, hjohnson@btlaw.com

Harold A Barza     halbarza@quinnemanuel.com

Katherine A Moerke     katherine.moerke@leonard.com, sue.may@leonard.com

Kevin D Conneely     kevin.conneely@leonard.com, barbara.mclean@leonard.com

Robert S. Hill    roberthill@quinnemanuel.com

William Earl Manske    wmanske@btlaw.com, hjohnson@btlaw.com

**0:12-cv-00611-JNE-FLN Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051215216 [Date=11/5/2012] [FileNumber=3899629-0
] [c0eeaba8254124a9c563c5bc4bad75ce32f410b7d52fd79a9b1f161196bef9bfb8e
47ae2c43289a1dbbb3cb8bd2c8c1711a581439447b8f95ae85facd6ee42f6]]

# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>          Plaintiffs,<br><br>v.<br><br>MOLDEX-METRIC, INC.,<br><br>          Defendant. | Civil No.: 12-CV-611-JNE-FLN<br><br><br><br>DEFENDANT MOLDEX-METRIC, INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,070,693 |

Defendant Moldex-Metric, Inc. moves, pursuant to Federal Rule of Civil Procedure 56 and the Local Rules for the District of Minnesota, for summary judgment of non-infringement of U.S. Patent No. 6,070,693, and a dismissal of Count II of the Complaint in its entirety and with prejudice.

This Motion is based upon all the files, records, and proceedings herein, including the Notice of Hearing, the Defendant's Brief in support, the Declaration and exhibits thereto, and the proposed Order being submitted in accordance with Local Rule 7.1.

9491920v1

DATED: January 18, 2013

s/ Kevin D. Conneely
Kevin D. Conneely (#192703)
Katherine A. Moerke (MN #312277)
LEONARD, STREET AND DEINARD, P.A.
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
kevin.conneely@leonard.com
katie.moerke@leonard.com

AND

BY: s/ Harold A. Barza
Harold A. Barza (*pro hac vice*)
Robert S. Hill (*pro hac vice*)
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3211
halbarza@quinnemanuel.com
roberthill@quinnemanuel.com

ATTORNEYS FOR DEFENDANT
MOLDEX-METRIC, INC.