# EXHIBIT 9

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>MOLDEX-METRIC, INC.<br><br>Moldex. | Court File No.: 12-cv-611-JNE-FLN |

## PLAINTIFFS' OPPOSITION TO MOLDEX'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PAT. NO. 6,070,693

Plaintiffs 3M Company and 3M Innovative Properties Company ("Plaintiffs" or "3M"), by and through their counsel, file this Opposition to Moldex-Metric, Inc.'s ("Defendant" or "Moldex") Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,070,693, and in support thereof, state as follows:

## I. INTRODUCTION

Inexplicably moving for summary judgment on a claim that Moldex asserts this Court does not have the legal authority to adjudicate, Moldex's summary judgment motion boils down to the erroneous argument that the Court should ignore the plain and ordinary meaning of the claims of U.S. Patent No. 6,070,693 (the "'693 patent") that literally read upon Moldex's BattlePlug product.[1] There are certain concepts that are very clear within the jurisprudence of patent litigation and the construction of patent claims. First and foremost, perhaps, is the maxim that the patent *claims* "define the invention to

---

[1] *See* Declaration of Felicia J. Boyd, Ex. A ('693 patent). All "Ex." references refer to exhibits attached to the supporting Boyd Declaration.

1

which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). When construing patent claims, there is a presumption that claim terms should receive their "ordinary and customary meaning." *Id.* (quotation and citation omitted).

Moldex's summary judgment arguments attempt to ignore the plain and ordinary meanings of the '693 patent claims because, of course, the plain and ordinary meanings of the '693 patent claims literally cover Moldex's BattlePlug product. Moldex is free to argue for constructions based on something *other* than the plain and ordinary meanings of the patent claims, but such arguments run against the "heavy presumption" that the plain and ordinary meanings of a claim terms apply. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999); *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012). Considering that the plain and ordinary meaning of the '693 patent claims read directly upon Moldex's accused device, Moldex has not provided sufficient basis to find non-infringement as a matter of law. *See Dorel Juvenile Group, Inc. v. Graco Children's Products, Inc.*, 429 F.3d 1043 (Fed. Cir. 2005) (finding summary judgment not appropriate where there was a dispute regarding whether or not the accused device actually infringes the asserted patent).

It is also difficult to understand how Moldex squares its early summary judgment motion with Moldex's pursuit of a "governmental immunity" defense challenging this Court's authority to adjudicate the infringement issues in this case. If Moldex pursues that defense in good faith as it presumably claims, it simply makes no sense that Moldex would file an early summary judgment motion asking the Court to do exactly what it

2

claims this Court has no authority to do—to wit, adjudicate infringement of the '693 patent.

Inconsistency aside, if Moldex has repudiated its "governmental immunity" defense and now wants this Court to resolve the infringement issue, Moldex invites an unfavorable outcome by filing its early summary judgment motion with an undeveloped record.   As discussed in detail below, Moldex's claim construction arguments are supported by neither the claim language nor the entire body of intrinsic evidence applicable to the '693 patent—including the relevant file histories applicable to the '693 divisional patent application and the parent application to the '693 patent.  At the very least, because Moldex argues uphill against the plain and ordinary meanings of the '693 patent claims, Moldex should know better than to overplay its hand by calling 3M's infringement claims "baseless."  (Def.'s Br. at 1.)  3M has demonstrated how the '693 patent claims cover Moldex's accused product.  Summary judgment is not appropriate, and Moldex's premature summary judgment motion should be denied.

## II. <u>STATEMENT OF FACTS</u>

### A.    Nature of This Litigation

This is a patent infringement case in which 3M alleges that Moldex infringes two 3M patents covering hearing-protection innovations.  Plaintiff 3M Innovative Properties Company owns U.S. Patent No. 7,036,157 ("the '157 patent"), entitled "Method Of Producing A Hood, And A Hood Produced According To The Method."  (Ex. B.)  The '157 patent issued on May 2, 2006.  (*Id.*)  Plaintiff 3M Company is the exclusive licensee of the '157 patent.  (Ex. D, Doc. 1.)  Plaintiff 3M Innovative Properties Company is the

3

exclusive licensee of U.S. Patent No. 6,070,693 ("the '693 patent"), entitled "Hearing Protector Against Loud Noise." (*Id.*) The '693 patent issued on June 6, 2000. (Ex. A.)

**B.     3M's '693 Patent**

3M's '693 patent discloses and claims a hearing protector (*i.e.*, "earplug") that is capable of selectively attenuating noises, allowing, for example, the attenuation of loud impulse noises such as gunshots or explosions while still allowing the user to hear lower-intensity noises such as human speech. (Ex. A, Col. 1, ll. 10-23.) As the '693 patent explains, the goal of the claimed hearing protector is "to provide a reliable hearing protector that does not suffer from the disadvantage of user adjustment and permits two configurations for noise attenuation that have different characteristics." (*Id.*, Col. 1, ll. 42-45.) Accordingly, the '693 patent discloses and claims a hearing protector "being intended to be sealingly inserted into an auditory canal of a user" comprising:

> a cylindrical body having a center, a first end and a second end;
> a channel extending from said first and second ends to said center of said
>     cylindrical body; and
> said channel containing a first acoustic filter and a second acoustic filter,
>     each of said first and second filters being in communication with one
>     of said first and second ends.

(*Id.*, Col. 4, ll. 30-43.) The innovations covered by the '693 patent are useful in environments where the ability to selectively attenuate different noise intensities is critical. Most prominently, the use of hearing protectors with selective-attenuation capability is critical to the United States military. 3M manufactures and sells personal hearing protection products embodying 3M's selective-attenuation technology, including 3M's Combat Arms® earplugs.

**C.    Moldex's BattlePlug**

On March 8, 2012, 3M filed a Complaint alleging that Moldex's BattlePlug earplug infringes 3M's '693 patent. (Ex. D, Count II.)  Moldex's accused BattlePlug product is depicted below:

**Moldex BattlePlug**



The BattlePlug product literature advertises a dual noise-attenuation mode for the product where the plug can be adjusted to reduce impulse noises such as gunfire while still allowing the user to hear low level noise, or, alternatively, be adjusted to protect against both continuous and impulse noise.  (Ex. F.)

In its Answer, Moldex included an "Introductory Statement" labeling this lawsuit "a transparent attempt by 3M to misuse the U.S. patent laws to disrupt sales by Moldex of important safety equipment to the United States Army." (Ex. H.)  Moldex further asserted that "Moldex is currently under a contract to provide certain of the accused products in large quantities to the United States military for use by thousands of military personnel ... " (Ex. H at 2) and asserted a "governmental immunity" defense under 28

U.S.C. § 1498 claiming "3M's sole remedy for the infringement alleged in the Complaint is a suit against the United States in the United Court of Federal Claims for recovery of 3M's reasonable and entire compensation for the alleged use of the '693 patent." (*Id.*, ¶ 44.) 3M, finding no evidence supporting the allegations in Moldex's Answer, recently filed a summary judgment motion seeking to resolve the forum issue. (Doc. 39.)

On August 1, 2012, 3M served its Claim Chart pursuant to the Court's Scheduling Order. (Ex. C, ¶ D(1).) 3M's claim chart set forth in detail how the BattlePlug product infringes claims 1, 3, and 17 of the '693 patent in violation of 35 U.S.C. § 271. (Ex. E.) In Compliance with the Scheduling Order, Moldex served a responsive chart disputing 3M's interpretations of the '693 patent and the ultimate infringement issues. (Ex. C, ¶ D(2).) The parties exchanged written discovery regarding 3M's infringement allegations, but the parties have not commenced depositions in this case. (Boyd Decl., ¶ 10.) Under the Court's Scheduling Order, the deadline for hearing summary judgment motions in this case is October 1, 2013. (Ex. C, ¶ G(2).) As the parties were preparing for a settlement conference before Magistrate Judge Noel, Moldex filed its summary judgment motion.

### III. LEGAL STANDARDS

#### A. Summary Judgment Standard

Summary judgment is not proper unless the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court

of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   In this context, summary judgment is appropriate only if no "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 110-11 (8th Cir. 1997).

## B.   Claim Construction and Infringement

Patent infringement analysis is a two-step process involving the Court's construction of the asserted patent claims as a matter of law, and comparing the construed claims to the accused device(s). *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).   Patent claims "define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312.

There is a presumption that claim terms should receive their "ordinary and customary meaning." *Id.* (quotation and citation omitted).   It is "the claim terms themselves [that] provide substantial guidance as to the meaning of particular claim terms," and the context in which a term is used in the asserted claim can be highly instructive." *Id.* at 1314.   Accordingly, there is a "heavy presumption in favor of the ordinary meaning of claim language." *Johnson Worldwide*, 175 F.3d at 989.

While courts construing claims may consider intrinsic evidence outside of the claims themselves, courts are cautioned not to import limitations from the specification into the claims. *Philips*, 415 F.3d at 1323; *The Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998). Intrinsic evidence is not limited to the specification. Beyond the specification, courts look to the prosecution history because, "[it] provides evidence of how the PTO and the inventor understood the patent." *Philips*, 415 F.3d at 1317.

It is generally improper to rely on extrinsic evidence in construing claims unless, after consideration of all the intrinsic evidence, ambiguity remains. *See Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1373 (Fed. Cir. 1998). Still, the Federal Circuit permits consideration of information related to the accused products to provide context for claim construction. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27 (Fed. Cir. 2006). Therefore, it is appropriate for a district court to review the accused products during claim construction because they provide "a proper context for an accurate claim construction." *Lava Trading, Inc. v. Sonica Trading Mgmt.*, 445 F.3d 1348, 1350 (Fed. Cir. 2006).

## C.    Summary Judgment on a Patent Infringement Claim

The Federal Circuit has cautioned district courts to "approach a motion for summary judgment on the fact issue of infringement with great care." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 528 (Fed. Cir. 1996). Summary judgment of non-infringement may be granted only if one or more limitations of the claim in question do not read on an element of the accused product, either literally or under the doctrine of

8

equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the asserted patent claims. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

Moldex bears the initial burden of showing non-infringement based on the proper claim interpretation; only then does the burden shift to 3M, as the patentee, to present evidence of infringement. *See, e.g., SRI Int'l v. Matsushita Electric Corp. of America*, 775 F.2d 1107, 1116 (Fed. Cir. 1984); *Vivid Tech., Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 806 (Fed. Cir. 1999) ("The opposing party does not, at this stage, have the burden of establishing that it is entitled to judgment in its favor ... "). If Moldex satisfies its initial burden, 3M need only establish sufficient evidence upon which a jury could find infringement under the preponderance of evidence standard of proof. *SRI Int'l*, 775 F.2d at 1123.

**D.     Infringement Is an Issue of Fact**

In determining whether summary judgment resolving the issue of infringement is proper, courts consider whether a "reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). A genuine dispute over any material fact in this inquiry makes summary judgment improper. *Warner-Lambert Co. v. Purepac Pharm. Co.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007).

Even in cases where the structural elements of an accused device are not in dispute, summary judgment is not appropriate if there is a dispute regarding whether or not the accused device actually infringes the asserted patent. *Dorel Juvenile Group, Inc. v. Graco Children's Products, Inc.*, 429 F.3d 1043 (Fed. Cir. 2005). In *Dorel*, the patent-in-suit claimed a juvenile car seat assembly, with "a seat, and ... a base, the seat being removably secured to the base." *Id.* at 1044. The district court interpreted the claim language to require a "product designed to come apart." *Id.* at 1045. As a result, the district court found that the accused product could not infringe as a matter of law because its "two-part structure [was] integral, meaning that it lacks a seat and base as separate, stand-alone structures." *Id.* On appeal, the Federal Circuit reversed, finding that "the district court ha[d] invaded the province of the finder of fact" in deciding the infringement question. *Id.* at 1047.

The Federal Circuit directed that, on remand, the fact-finder should determine whether the "integrated unit" described by the district court could instead be considered two separate entities - a "seat" and a "base." *Id.* "In other words, the Federal Circuit ordered the [district court] to allow the jury to determine whether what was thought of as one piece could instead be considered two." *Windbrella Products v. Taylor Made Golf Co.*, 414 F. Supp. 2d 305, 317 n. 80 (S.D.N.Y. 2006) (citing *Dorel*, 429 F.3d at 1046-47).

# IV. ARGUMENT

**A.    Summary Judgment of Non-Infringement is Inappropriate Because Moldex's BattlePlug Product Literally Infringes the '693 Patent.**

The most straightforward reason why summary judgment of non-infringement is improper is because 3M has sufficiently established that Moldex's BattlePlug product practices the claims of the '693 patent.  3M's Infringement Contentions served in this case set forth in detail how Moldex's BattlePlug infringes the '693 patent. (Ex. E.)  The following explanation of Moldex's infringement of independent Claim 1 of the '693 patent, with illustrations taken from 3M's Infringement Contentions, illustrates how 3M detailed Moldex's literal infringement of the '693 patent.

Claim 1 begins by claiming

> **1.    A hearing protector for selectively or automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:**

and 3M's Infringement Contentions illustrate how the Moldex BattlePlug product includes a hearing protector,



**Moldex BattlePlug**

Moldex BattlePlugs are hearing protectors.

http://www.moldex.com/government-division/hearing-protection/reusable-earplugs/battleplugs.php

(Ex. E at 2.)

that is clearly capable of selectively or automatically reducing noises, which would include noises having intensities at least up to 190 db, and

**Moldex BattlePlug**

Moldex BattlePlugs are clearly capable of selectively or automatically reducing noises, which would include noises having intensities at least up to 190 db.

http://www.moldex.com/pdf/datasheets/battleplugs-datasheet.pdf

(*Id.* at 3.)

that is intended to be sealingly inserted into an ear of a user,

**Moldex BattlePlug**

Moldex BattlePlugs are intended to be sealingly inserted into an ear of a user.

(*Id.* at 5.)

including fins that are clearly designed to facilitate sealing against the auditory canal.

**Moldex BattlePlug**

Moldex BattlePlugs include fins that are clearly designed to facilitate sealing against the auditory canal.

(*Id.* at 6.)

Applying the successive limitations of Claim 1, 3M demonstrated how the Moldex

BattlePlug product contains

> **a cylindrical body having a center, a first end and a second end;**

by detailing how the Moldex BattlePlug product includes a portion having a cylindrical

body.  The portion has a center, a first end and a second end.



(*Id.* at 8.)

3M illustrated the presence of the next limitation in the Moldex BattlePlug,

> **a channel extending from said first and second ends to said center of said cylindrical body; and**

as follows:



(*Id.* at 10.)

3M proceeded to establish that Moldex's BattlePlug product satisfies the next limitation requiring that

> **said channel containing a first acoustic filter and a second acoustic filter,**

by showing clearly that the Moldex BattlePlug product has a first acoustic filter (a first narrow constriction of the channel) and a second acoustic filter (a second narrow constriction of the channel),



(*Id.* at 12.)

which is better seen in a drawing of the Moldex BattlePlug product.  The first acoustic filter includes the cylindrical constriction and its two ends.  The second acoustic filter includes the conical constriction and its two ends.



(*Id.* at 13.)

Finally, 3M established that Moldex's accused BattlePlug practices the final

limitation of Claim 1,

> **each of said first and second filters being in communication with one of said first and second ends.**

by showing as follows:



(*Id.* at 15.)

3M's Infringement Contentions provided similarly detailed explanation

demonstrating how Moldex's accused BattlePlug infringes the other asserted '693 patent

claims. (*Id.* at 18-26.) Accordingly, 3M has carried its burden of demonstrating a triable

issue that the '693 patent claims read upon Moldex's accused earplugs, and summary

judgment of infringement is not appropriate.

**B.** **Moldex Erroneously Contends That the '693 Patent Claims a "Dual Ended Hearing Protector in Which the Wearer Can Obtain Two Different Attenuation Levels Simply By Inserting a Different End of the Protector Into His Ear."**

Moldex makes several general contentions about the claims of the '693 patent without reference to the actual claims or actual claim language of the '693 patent. Moldex makes several erroneous contentions relating to a purported "requirement" that the '693 patent claims are limited only to embodiments comprising a "dual ended hearing protector" where either end of the earplug is designed to be inserted into the user's ear canal. For example, Moldex asserts:

> The '693 patent claims as its invention a dual mode hearing protector that does not require a plug to attain its second sound attenuation level. **Instead, it discloses a dual ended hearing protector in which the wearer can obtain two different attenuation levels simply by inserting a different end of the protector into his ear.**

(Def.'s Br. at 2 (emphasis added).)  Moldex continues:

> As demonstrated fully below, the '693 patent claims only one type of invention, a dual-ended hearing protector with each end insertable into the user's auditory canal. Moldex's accused BattlePlug protector simply does not meet this requirement-- it is a single-ended earplug, and only one of its ends can be inserted into the user's ear.

(*Id.* at 3.)

> As demonstrated above, there can be **no legitimate dispute** that the '693 patent requires an earplug with two insertable ends.

(*Id.* at 23 (emphasis added).)

There is, however, a "legitimate dispute" with Moldex's interpretation of the '693 patent. For as many times as Moldex repeats its "two insertable ends" argument, Moldex

gives short shrift to a rather important consideration: that limitation appears *nowhere* in the asserted '693 patent claims. None of the asserted claims of the '693 patent require that each end of the hearing protector be insertable into the user's auditory canal. (*See* Ex. A, Claims 1, 3, and 17.) The claim language contains no such limitation, as illustrated in reference to Claim 1:

> **1. A hearing protector for selectively or automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:**
>
> **a cylindrical body having a center, a first end and a second end;**
> **a channel extending from said first and second ends to said center of said cylindrical body; and**
> **said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of said first and second ends.**

(*Id.*, Col. 4, ll. 30-41.)

It is hornbook law that the claims define the scope of the invention. *Phillips*, 415 F.3d at 1312. As demonstrated by the language quoted above, Claim 1 contains absolutely no limitation requiring that each end of claimed hearing protector is insertable into the user's auditory canal.

Claim 1 does not contain any language indicating that the "hearing protector" requires that both the "first end" and "second end" must be insertable into the auditory canal. In fact, the preamble states only that the "hearing protector [is] intended to be sealingly inserted into an auditory canal of the user." (Ex. A, Col. 4, ll. 32-33.) A plain

reading of the claims, therefore, would indicate to one of ordinary skill in the art that "hearing protector" under the plain and ordinary meaning of the term in the context of the patent claims should not be construed as Moldex argues. The claim language literally covers Moldex's BattlePlug product. (Ex. E.)

### 1. Moldex's Proposed Constructions of "First End" and "Second End" Improperly Read Limitations into the Claims from the Specification.

Moldex primarily bases its summary judgment motion on the argument that language in the '693 patent's *specification*—if not the claims—limits the claims to reversible earplugs where either end of the earplug can be inserted into a user's ear canal. But Moldex walks steeply uphill in arguing for constructions of "first end" and "second end" that would require the Court to import limitations from the specification into the '693 patent claims. Although a court may use the specification to help *interpret* patent claims, the Federal Circuit has repeatedly advised that it is improper for courts to read into the claims any limitations appearing in the specification but not recited in the claims. *See, e.g., E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003).

Following are Moldex's proposed claim constructions for "first end" and "second end" submitted in the parties' Joint Claim Construction Statement, which demonstrates Moldex's attempt to read the additional limitation of dual insertability into the plain and ordinary meaning of "end":

> Moldex contends that a person having ordinary skill in the art would understand the intrinsic evidence to require the following claim constructions for the "first end" and "second end" in the limitation "a cylindrical body having a center, a first end and a second end":

| Claim Language | [Moldex] Proper Construction |
|---|---|
| "a first end"; "said first… end[]" | "A first portion of a completed hearing protector constructed to be inserted into the user's auditory canal." |
| "a second end"; "second end[]" | "A second portion of a completed hearing protector located at the opposite end of the hearing protector from the first end and constructed to be inserted into the user's auditory canal." |

(Ex. I, Appendix A at 1-6.)

Moldex's proposed constructions for these terms clearly read in limitations from the specification. Moldex argues, for example:

> The invention **described in the specification** of the '693 patent avoids the need for careful user adjustment by having "two ends, both of which can be inserted into the auditory canal." This, in turn, allows the user to change attenuation modes by "simply reversing the direction of the hearing protector, or ear plug, that is inserted into the auditory canal." Col. 1, Lin 57 - Col. 2, Lin 5. The **specification sets forth** different embodiments of a two-ended, reversible earplug.

(Def's Br. at 11-12 (emphasis added).)

> Thus, **the specification demonstrates** clearly that the term "a first and a second end" requires two ends, each of which is insertable into a user's ear, and that the term "a channel extending …to said center" requires an opening to the outside of the earplug at its center. Although **the specification** does not describe the structure of the first and second filters in detail, there is no doubt, as explained below, but that these filters must be truly separate, not merely constrictions in the same primary sound path.

(*Id.* at 10-11 (emphasis added).)

> The '693 patent is unambiguous that its invention is of a double-ended earplug and expressly disclaims single ended hearing protectors as "well known" prior art. The requirement of two insertable ends lies at the heart of the invention and

21

> must be reflected in a proper claim construction. Moreover, any construction broad enough to cover a single-ended plug would also cover the FR'642 patent, **which the '693 patent specification states** is distinguishable prior art. Such an invalidating construction should be avoided if possible. *See Rhine*, 183 F.3d at 1345. Therefore, the proper construction of a "first end" and a "second end" requires that both ends of the hearing protector be insertable into the user's auditory canal.

(*Id.* at 21-22 (emphasis added).)

Moldex expressly advocates reading from the specification additional limitations that do not otherwise exist in the plain and ordinary language of the claims themselves. Moldex argues that the Court should adopt meanings of "a first end" and "a second end" that improperly read in limitations from the specification. The proper construction for these terms is the plain and ordinary meaning of the terms as proposed by 3M. The plain and ordinary meaning of the claim terms does not require that each end of the hearing protector have the additional limitation of being designed for insertion into the user's auditory canal.[2]

## 2.   Moldex's "Disclaimer" Theory Does Not Support its Attempt to Re-write the '693 Patent Claims.

Related to Moldex's erroneous argument that this Court should import limitations from the specification is Moldex's argument that the '693 patent "disclaims" anything other than earplugs with two insertable ends. Moldex argues:

---

[2] Moldex argues that 3M impliedly argues for a claim construction of "first end" and "second end" that is "broad enough to cover an earplug with only a single end." (Def.'s Br. at 19-20.) This is clearly incorrect and assumes Moldex's construction for "end." The plain and ordinary meaning of "end" does not require that it be constructed to be inserted into the user's auditory canal.

> The '693 patent is unambiguous that its invention is of a double-ended earplug and **expressly disclaims** single ended hearing protectors as 'well known' prior art. The requirement of two insertable ends lies at the heart of the invention and must be reflected in a proper claim construction.

(Def.'s Br. at 21 (emphasis added).)

Moldex's attempt to read limitations into the claims under a disclaimer theory only adds to Moldex's burden. There is a heavy presumption that the plain and ordinary meaning of a claim term applies, and the Federal Circuit cautions that "[t]o constitute disclaimer, **there must be a clear and unmistakable disclaimer**." *Thorner*, 669 F.3d at 1366-67 (Fed. Cir. 2012) (emphasis added). Moldex cannot show the requisite "clear and unmistakable disclaimer." Moldex hinges its disclaimer argument on the specification's criticism of a particular embodiment of single-ended earplugs, but the Federal Circuit has rejected this very type of disclaimer argument. "Mere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to rise to the level of clear disavowal." *Id.* at 1366 (citing *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009)). "It is likewise not enough [to establish a disclaimer of claim scope] that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into claims; we do not redefine words." *Id.*

Applying the Federal Circuit's guidelines on the law of disclaimer, the specification's criticism of the prior art earplug with a single insertable end does not amount to a disclaimer. As discussed below, Moldex misrepresents the nature of the specification's commentary on the prior art earplugs having a single insertable end.

Regardless, even if an earplug with one insertable end made it more difficult to achieve the benefits of the invention as discussed in the specification, this would not amount to a disclaimer. "Even where a particular structure makes it 'particularly difficult' to obtain certain benefits of the claimed invention, this does not rise to the level of disavowal of the structure." *Id.* (discussing *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1315 (Fed. Cir. 2010)).[3]

### 3.   Moldex's "Two Insertable Ends" Position Fails to Account for the Prosecution History Relevant to the '693 Patent.

Moldex so myopically focuses its disclaimer argument on a single paragraph in the specification that Moldex ignores the entire body of intrinsic evidence applicable to the '693 patent.   Nothing in the relevant prosecution history suggests limiting the interpretation of the '693 patent claims to double-ended devices.   To the contrary, the relevant prosecution history indicates that the United States Patent & Trademark Office did not view the '693 patent claims as limited to embodiments of the invention with two insertable ends.

In addition to the defects discussed above, Moldex's disclaimer argument fails to properly account for the fact that the '693 patent issued from a *divisional* patent application.   The '693 patent is a divisional of a parent patent application that issued as U.S. Patent No. 5,936,208 (the "'208 patent") (Ex. G.)   A clear indication that the '693 patent is directed to the use of two acoustic filters as required by Claim 1, but does not

---

[3] Moreover, the '693 patent shows that if the inventor wanted to limit the claims to an embodiment with two insertable ends, the inventor certainly knew how.  For example, Claim 4 of the '693 patent is expressly limited to the hearing protector of Claim 1 but with a double-ferruled (*i.e.*, two insertable ends) embodiment. (Ex. A, Col. 4, ll. 46-49.)

require a "two insertable ends" device to achieve this invention, is found in reference to the '208 patent and its prosecution history.

Claim 1 of the '208 patent claims a device that has a "ferrule at each end of said first and second ends." (*Id.*) During the prosecution of the '208 patent, the examiner found the parent patent application disclosed more than one invention and required the patentees to make an election, which resulted in the withdrawal of originally-filed claims 17-33 and the pursuit of claims 1-16. (Conneely Decl., Ex. E at 38-41, 46.) Claim 1 of the remaining claims in the application for the '208 patent was rejected as anticipated by the "Killion '967" prior art, which appears to be directed to an earplug of a particular configuration that includes a single insertable end. (*Id.* at 48-52.) In response to this rejection, the patentee did *not* argue that Killion '967 does not anticipate because his invention was limited to a "two insertable end" device per the description of the invention in the specification. Rather, the patentee *amended the claims* to explicitly recite a limitation directed to a "double ended" device, as follows:

> 1. (Amended) A hearing protector capable of selectively or automatically attenuating noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:
>
> a cylindrical body having a center, a first end and a second end;
>
> a channel extending from at least one of said first and said second ends of said body to said center of said body; [and]
>
> said channel contains an acoustic filter; and
>
> a ferrule at each of said first and said second ends, wherein said ferrules are separate and said cylindrical body forms an internal connector linking said ferrules.

(*See Id.* at 53-55.)

In other words, Claim 1 was amended to explicitly require a double-insertable-ended device as a way of overcoming a particular type of single-insertable-end device in the prior art. The '208 patent issued based on this amendment, with independent Claim 1 directed to a device where either end was insertable into the ear canal. (Ex. G, Col. 1, ll. 52-55.) Indeed, if the examiner had concluded that the specification limited all of the patent claims to two insertable ends as Moldex now argues, there would have been no reason for the inventor to add the two-insertable-ends limitation to Claim 1 of the '208 patent in order to overcome the prior art. The allowance of this claim over the prior art is inconsistent with any argument that the examiner believed the specification *already* limited the claims to two-insertable-end devices.

Furthermore, the inventor filed a separate divisional application that eventually led to the '693 patent. Because it was a divisional of the application that issued as the '208 patent, Claim 1 of the '693 patent was *by definition* a different invention than Claim 1 of the '208 patent. *See* 35 U.S.C. § 121 ("If two or more independent and distinct inventions are claimed in one application, the Commissioner may require the application to be restricted to one of the inventions."). Claim 1 of the '693 patent issued with its own point of novelty over the prior art, including the use of two acoustic filters, but *without* any limitation that the device have two insertable ends as claimed within Claim 1 of the '208 patent. (Ex. A, Col. 4, ll. 30-43; Ex. G, Col. 1, ll. 52-55.)

4.      **Moldex Misinterprets the Invention in FR '642 and its Relevance to the Invention of the '693 Patent.**

Moldex makes several erroneous contentions for its interpretation of the '693 patent based on the disclosures in French Patent Publication No. 2 676 642 ("FR '642") (Conneely Decl., Ex. D.) For example, Moldex contends:

> The '693 patent is unambiguous that its invention is of a double-ended earplug and **expressly disclaims single ended hearing protectors as "well known" prior art**. The requirement of two insertable ends lies at the heart of the invention and must be reflected in a proper claim construction. **Moreover, any construction broad enough to cover a single-ended plug would also cover the FR'642 patent, which the '693 patent specification states is distinguishable prior art.**

(Def.'s Br. at 21-22 (emphasis added).)

Defendant's argument is simply wrong.  The '693 patent does not disclaim all "single ended hearing protectors as 'well known' prior art." The '693 patent merely states that single ended hearing protectors are well known. (*See* Ex. A, Col. 1, ll. 59-63.) Moldex essentially argues that any single-ended earplug, regardless of its individual features, becomes synonymous with the prior art the instant 3M considers that such a device might infringe the '693 patent.  That position is obviously incorrect.  3M accuses Moldex of practicing the '693 patent, not of practicing the prior art.  The "two insertable ends" concept described in the specification is not the only distinguishing feature over the discussed prior art earplug.  (Ex. J at 1-11.)  The claims of the '693 patent include additional features that distinguish the invention from the criticized prior art devices described in the specification at Column 1.  Importantly, for example, the '693 patent

claims a first and second acoustic filter that are not described as part of the prior art earplug.

**C.     Moldex is Incorrect That the '693 Patent Claims are Limited to a "Hearing Protector That Has a Hole In the Middle of the Length of the Device."**

Moldex erroneously argues that the '693 patent claims are limited to a "hearing protector that has a hole in the middle of the length of the device." For example, Moldex asserts:

> **Specifically, the '693 patent discloses a hearing protector that has a hole in the middle of the length of the device. Sound that enters through the center hole then passes through a channel that runs from that center hole to each end of the hearing protector,** with a different sound filter in each such channel.

(Def.'s Br. at 2-3 (emphasis added).)

> [T]he '693 patent claims require a channel **with an opening to the outside of the earplug at the center of the earplug.** This channel opening allows sound to directly enter the '693 patent's hearing protector regardless of which insertable end is actually inserted into the user's auditory canal. The BattlePlug has no such channel opening to the outside of the earplug at its center and therefore cannot infringe the '693 patent on that basis as well.

(*Id.* at 3-4 (emphasis added).)

Moldex, however, has a familiar problem with its proposed claim construction. None of the asserted claims of the '693 patent require the limitation Moldex wants to read into the claim. The claims do not contain the limitation requiring a hearing protector that has a hole in the middle of the length of the device. (*See* Ex. A, Claims 1, 3, and 17.) As with Moldex's "two insertable ends" argument discussed above, Moldex's proposed

constructions, considered next to the claim language, demonstrate Moldex's insistence upon reading additional limitations into the claims:

| Claim Language | [Moldex] Proper Construction |
|---|---|
| "a channel extending from said first and second ends to said center of said cylindrical body" | "A channel that includes an opening at the center of the earplug to allow sound to enter the earplug at that center and extends to openings at said first and second ends and to that center of the cylindrical body." |

(Ex. I, Appendix A at 11.)

### 1.   Moldex's Claim Construction Argument is Based on Erroneous Arguments Concerning Fig. 2 of the '693 Patent.

The plain and ordinary meaning of "a channel extending from said first and second ends to said center of said cylindrical body" does not require an opening to the outside at the center.   Moldex's determined reliance on Fig. 2 demonstrates, as with Moldex's proposed "two insertable ends" construction, that Moldex improperly imports limitations from the specification into the claims.   The proper construction for these terms is the plain and ordinary meaning of the terms as proposed by 3M.

Moldex's argued construction of "channel" in the '693 patent is based on an erroneous interpretation of Fig. 2 and the prosecution history applicable to the '693 patent.   Moldex contends:

> The patent application that led to the '693 patent, as filed, sought to claim both of these embodiments, and some related ones. But at the outset of prosecution, the examiner imposed a restriction requirement such that the embodiment of Fig. 2 is the embodiment covered in the '693 patent. Specifically, the

'693 patent is a division of application No. 08/994,015 (the "'015 application"), filed Dec. 18, 1997, now issued as U.S. Pat. No. 5,936,208. The '015 application disclosed eight alternative embodiments, each corresponding to one of the eight figures of the specification. In an office action mailed on Sept. 9, 1998, the examiner found that each of the eight alternative embodiments depicted in the figures above corresponds to a different invention. Therefore, the examiner issued a restriction requirement that the invention shown in each embodiment would have to be prosecuted separately.

The '693 patent issued from the divisional application **wherein the applicant selected as the invention the embodiment shown in Fig. 2**. This is clear because the '693 patent's sole independent claim, claim 1, expressly requires a first and second acoustic filter. Only Fig. 2 shows two filters—each labeled with a number 3—so there is no doubt that the invention of the '693 patent corresponds to Fig. 2 alone[.]

(Def.'s Br. at 10-11 (citations omitted) (emphasis added).)

Moldex's contention that the '693 patent issued from the divisional application limited to the embodiment shown in Fig. 2 is pure speculation. Moldex does not cite any such selection in the '693 patent file history, nor is there any such selection. Although Fig. 2 shows two filters, the embodiments shown in other figures can also include two filters. (*See, e.g.*, Ex. A, Col. 3, ll. 34-37, 48-53, and 60-63.) Moldex has not established that the invention of the '693 patent is limited to the embodiment of Fig. 2. [4]

---

[4] Even if Moldex were correct that the '693 patent was somehow limited to nothing other than Fig. 2, it is not clear that this interpretation helps Moldex. Figure 2 does not clearly show a requirement of a middle opening that is open to the outside. The vertically extending lines that Fig. 2 depicts at the center of the earplug are not labeled and are not described anywhere in the '693 patent specification. (*See* Ex. A at Fig. 2 and *generally*.) The parties have not taken the deposition of the inventor of the '693 patent or the prosecuting attorney, either of whom might offer relevant testimony on what, if anything,

Moreover, the examiner's *actual statement* in the September 8, 1998 Office Action was:

> This application contains **claims directed to the following patentably distinct species of the claimed invention**: the species shown in Fig. 1, the species shown in Fig. 2, the species shown in Fig. 3, the species shown in Fig. 4(a), the species shown in Fig. 4(b), the species shown in Fig. 4(c), the species shown in Fig. 5, and the species shown in Fig. 6.
>
> Applicant is required under 35 U.S.C. 121 to elect a single disclosed species for prosecution on the merits to which the claims shall be restricted **if no generic claim is finally held to be allowable**.

(Conneely Decl., Ex. E at 40 (emphasis added).)

The examiner's observation that the application contained certain claims reflected in particular Figures, despite Moldex's characterization, is far afield from a promulgation that *every claim prosecuted within the entire patent family* could cover nothing other than a single embodiment shown in a single Figure. That much is made clear by the examiner's removal of any "generic claim" from any such interpretation. Claim 1 is exactly such a claim, as demonstrated by the fact that the language of Claim 1 is broad enough to read on multiple embodiments—including, *but not limited to*, the embodiment demonstrated in Fig. 2.

### 2.   Moldex (Again) Misinterprets the Relevance of FR '642 to the Invention Claimed in the '693 Patent.

Repeating a familiar theme, Moldex enlists an erroneous argument for its "channel" construction based on FR '642. Moldex asserts:

the vertically extending lines represent. This dispute is yet another reason to deny Moldex's summary judgment motion.

> For all of these reasons, **the '693 patent's claimed "channel" must include an opening to the outside at the center of the earplug.** 3M's implicit constructions would cover an earplug without such a hole. But here, in light of the '693 patent's prosecution history, the embodiment shown in Fig. 2 is itself the invention. ... **Moreover, a claim construction broad enough to cover earplugs without such center holes would read on the prior art FR'642 publication, a feature that the '693 patent expressly distinguishes.** Such an invalidating construction should be avoided to the extent possible. For all of these reasons, the claimed channel must have an opening to the outside at the center of the earplug.

(Def.'s Br. at 26-27 (citations omitted) (emphasis added).)

As discussed above, the invention of the '693 patent is distinguishable from FR '642 in ways other than those described by Moldex. As with Moldex's argument that FR '642 supports its "two insertable ends" limitation, Moldex essentially advocates that any earplug without a center hold opening to the outside would become identical to the prior art the instant that 3M might believe such an earplug practiced the '693 patent claims. Moldex is again incorrect with its over-simplistic argument that any infringement allegation against the BattlePlug product is tantamount to an allegation against the FR '642 prior art.

**D.    Moldex Misconstrues "Acoustic Filter" and is Incorrect that the '693 Patent Claims Exclude Multiple Filters in the Same "Sound Path."**

Moldex makes several erroneous contentions relating to a "requirement" that the '693 patent claims require filters that "must be truly separate, not merely constrictions in the same primary sound path." (*See, e.g.,* Def.'s Br. at 2-3.) Contrary to Moldex's position, none of the asserted '693 patent claims require this additional limitation. (Ex.

A., Claims 1, 3, and 17.)  Furthermore, as an even more transparent defect, Moldex

improperly construes the term "acoustic filter" in a way that is inconsistent with any

rational interpretation of this element of the '693 patent claims.

> **1.  Moldex Improperly Attempts to Add a Non-Existent Limitation to the '693 Patent Claims Requiring that Each Filter Occur in a Separate Sound Path.**

Moldex improperly construes the '693 patent claims to exclude embodiments

where the two filters are within the same sound path.  As with its other proposed claim

constructions, Moldex expressly (and improperly) attempts to add limitations to the

claims by importing limitations from Moldex's unilateral interpretation of the

specification.  Moldex contends, for example:

> As will be shown in detail below, the meaning of these limitations is clear **from the specification**. Thus, the specification demonstrates clearly that the term "a first and a second end" requires two ends, each of which is insertable into a user's ear, and that the term "a channel extending …to said center" requires an opening to the outside of the earplug at its center. **Although the specification does not describe the structure of the first and second filters in detail, there is no doubt, as explained below, but that these filters must be truly separate, not merely constrictions in the same primary sound path.**

(Def.'s Br. at 11-12 (emphasis added).)  Moldex continues:

> B. The '693 Patent Expressly Requires Two Acoustic Filters
>
> Every claim of the '693 patent requires both a "first acoustic filter and a second acoustic filter." The annotated Figure 2 of the '693 patent discloses that there are first and second filters:



As shown above, **only one filter is most operative at a time** because it lies between the central hole that directly connects the earplug to outside sounds and the end hole that allows sound to pass through the earplug to the interior of the ear.

(*Id.* at 35 (emphasis added).)

Moldex's claim construction arguments are wrong on multiple fronts. First, as described above, there is no reason to adopt an additional limitation—a limitation precluding coverage where the two filters are within the same sound path—that is simply *not present in the plain and ordinary claim language*. Second, also as described above, Moldex is flatly incorrect with any argument seeking artificial limits on the scope of the patent claims based on the unproven assumption that all of the asserted '693 claims are bounded by the single embodiment shown in Figure 2.[5] As much as Moldex would like to constrict the '693 patent claims to a purported "sound path" embodiment in hopes of escaping the reach of those claims, Moldex has provided no acceptable rationale for its claim construction position.

### 2.    Moldex Improperly Construes the Term "Acoustic Filter."

In addition to its wrongly advocated sound-path limitation, Moldex advocates for a construction of "filter" that seeks, with no legal or factual basis, to exclude what is

---

[5] 3M does not concede in responding to Moldex's argument that Moldex's interpretation of Fig. 2 is correct.  However, even if one were to assume Moldex's interpretation, Moldex cannot establish as a threshold matter that Fig. 2 limits the scope of the independent claims of the '693 patent.

clearly the two-filter embodiment present in Moldex's BattlePlug product.   Moldex

argues:

> [T]he '693 patent requires two acoustic filters and expressly
> does not cover single-filtered hearing protection devices. The
> BattlePlug has only a single acoustic filter consisting of a
> single channel with multiple constrictions. The '693 patent
> inventor's own writings—and other undisputed evidence—
> conclusively demonstrate that the structure of the accused
> BattlePlug also is a single acoustical filter. Because it only
> has one filter, the BattlePlug does not infringe the '693 patent.

(Def.'s Br. at 4.)

Moldex's proposed construction for the term "acoustic filter" clearly reads in

limitations not present from the claim language, as indicated simply by comparing the

simple term "acoustic filter" to Moldex's elaborate proposed construction:

| Claim Language | Proper Construction |
|---|---|
| "acoustic filter" | "A passageway with structural features that have the effect of modifying sound waves in the primary sound path, such as a passageway with more than one constriction in the primary sound path" |

(Ex. I, Appendix A at 17.)

Moldex incorrectly generalizes that "3M's infringement contentions implicitly

construe a single channel with multiple constrictions to be more than one filter."   Rather,

3M believes that the plain and ordinary meaning of "acoustic filter" applies.   But Moldex

over-generalizes 3M's position in order to set up its argument that it is "well established

in the art that multiple constrictions in a channel constitute a single filter. (Def.'s Br. at

31), providing as an example U.S. Pat. No. 3,565,069 ("the '069 patent").

It is well established in the art that multiple constrictions in a channel constitute a single filter. For example, U.S. Pat. No. 3,565,069 ("'069 patent"), issued in 1971 shows multiple constrictions in a channel, which it describes as a single filter: "Thus, an acoustical filter element 14, lodged centrally of body 12, serves to restrict the passage there through of substantially all sound levels above a predetermined level, preferably established at the upper level of human speech." Ex. P, Col. 2, Lin 3. Figure 1 from the '069 patent confirms this:



(*Id.*)

    As an initial matter, Moldex signals weakness in relying on its questionable interpretation of the *extrinsic* '069 patent to support its argument. *See, e.g., Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1373 (Fed. Cir. 1998) (limiting consideration of extrinsic evidence to situations where ambiguity remains after consideration of all the intrinsic evidence). But Moldex's argument fails even when considering the extrinsic '069 patent on its merits. The structure of Moldex's BattlePlug

product is quite different than the structure depicted above. The '069 patent describes the feature demonstrated in green, above, as a "relatively large cylindrical recess" (Conneely Decl., Ex. P at Col. 2, ll. 33-34.) Moldex's structure, by contrast, demonstrates *two distinct constrictions* capable of individually operating to attenuate sound.



(Ex. E at 13.) Thus, even if Moldex could credibly claim to establish a claim construction position based on a single figure in an extrinsic patent, the '069 patent is not the least bit persuasive because it is so clearly distinguishable from the structure of Moldex's BattlePlug product.

Moldex also fails with its familiar, if ineffective, tactic of trying to reinvent the claims based on the FR '642 prior art. Moldex asserts:

> 3M's implicit construction of "filter" is also inappropriate because it would read claim 1 onto very prior art reference (FR'642) that the specification distinguishes on its face. Figs.

3 and 4 of FR'642 clearly disclose multiple constrictions in the primary sound path. Moreover, if 3M's implicit constructions prevail, the '693 patent is surely invalid in view of this and other prior art, as shown below (with annotations based on 3M's implicit constructions of the key limitations):



(Def.'s Br. at 33.)

If nothing else, Moldex is consistent with its position that no matter what claim element is under consideration, any infringement allegation against the BattlePlug product must "surely" invalidate the patent under FR '642. Again, however, the argument fails. Among other defects in Moldex's argument, the feature "9" in Fig. 3 of FR '642 pointed to above by the left red arrow is not a filter. FR'642 describes this as an "annular shoulder" (Conneely Decl., Ex. D at 6) and not a filter. Fig. 4 of FR '642 illustrates only one filter.[6]

Continuing to misconstrue the prior art, Moldex asserts:

---

[6] The features Moldex labels as "Constrictions (Filters)" operate together as an adjustable single filter: "The succession of channel sections 22, 23, 29 and 31, with the interposition in the latter of the partition 33 with calibrated orifice, ensures, as in the embodiment of figures 1 to 3, a non-linear acoustic transmission that results in a selective attenuation of sounds based on the range of frequencies 15 chosen to pass through the calibrated orifice 34 in laminar form. The passage of high intensity sounds is affected by turbulences that attenuate them. High or very high intensity impulse sounds are blocked so that the user receives them extremely attenuated" (Conneely Decl., Ex. D at 9.) Therefore, FR'642 only discloses embodiments with a single filter.

Indeed, the parallels between the BattlePlug and other prior art references are also undeniable, for example as illustrated below through a comparison of 3M's infringement contentions and Fig. 5 of US Pat. No. US 2,717,596:



*Fig. 5.*

See Ex. R, U.S. Pat. No. US 2,717,596. The above further shows that if the BattlePlug has a "channel," "first end" and "second end" as claimed—even though it has no opening to the outside at the center—then clearly the prior art has all of those features as well.

(Def.'s Br. at 33-34.)

Here, Moldex finds the "parallels ... undeniable" because Moldex's drawing is incorrectly labeled. Only the feature of the '596 patent pointed to by the left red double-ended arrow creates a filter. The feature pointed to by the right red double-ended arrow is not a filter. The '596 patent describes this as "a clearance opening" (Conneely Decl., Ex. R at Col. 3, ll. 49.) The '596 patent only discloses a single filter.

As much as Moldex pretends otherwise, the BattlePlug is not the prior art. As 3M has shown, the Moldex BattlePlug contains two separate and distinct "acoustic filters."



**Moldex BattlePlug**

(Ex. E at 13.)   Moldex improperly seeks to re-write the '693 patent claims to add additional limitations to the meaning of "acoustic filter," but Moldex has not established any valid basis to deviate from the plain and ordinary meaning of the claim term. Although Moldex states that the BattlePlug product "consists of a single channel with multiple constrictions in the primary sound path" (Def.'s Br. at 35), Moldex incorrectly states that "there is no genuine issue of material fact that the BattlePlug has only one acoustical filter."   (Def.'s Br. at 36.)[7]   Using the correct construction—the plain and ordinary meaning of the terms as 3M proposes—3M has clearly established a valid claim

---

[7] At the very least, there is clearly a material dispute as to whether a person of ordinary skill in the art would understand the constrictions in the BattlePlug to constitute separate filters.  Moldex has not included any evidence suggesting that a person of ordinary skill in the art would believe that the two separate constrictions would constitute one, not two, acoustic filters.  There is clearly a dispute as to whether the multiple constrictions could constitute a single filter or whether, as 3M maintains, the two constrictions in the BattlePlug clearly constitute two filters.

that Moldex infringes the '693 patent.   Summary judgment of non-infringement is inappropriate.

**E.   Moldex's Summary Judgment Motion is Premature, and if an Early Summary Judgment is Appropriate, it is Appropriate *Against* Moldex.**

Although 3M filed an early summary judgment on its '157 patent because Moldex has not contested infringement under that patent, 3M did not file an early summary judgment on the *disputed infringement claim* under the '693 patent while the parties are still conducting discovery on the claims in this lawsuit and when the deadline for hearing dispositive motions is still months away.   To the extent that Moldex insists on pursuing an early summary judgment motion on the disputed infringement claim, Moldex invites an unfavorable outcome.   Because the plain and ordinary meanings of the '693 claim terms literally cover Moldex's BattlePlug, if the Court is inclined to enter early summary judgment as Moldex invites, any such summary judgment would properly go in 3M's favor and conclude that Moldex *infringes* the '693 patent.

To the extent that the Court finds it inappropriate to enter summary judgment of infringement on the '693 patent at this time, Moldex's summary judgment motion should be denied or deferred as premature at this stage of the litigation. The deadline for hearing dispositive motions in this case is not until October 1, 2013.  As opposed to 3M's pending summary judgment motion on an infringement issue that is undisputed (Doc. 39), Moldex has sought an early summary judgment motion on disputed infringement issues based on an undeveloped factual record.  Not a single deposition has occurred in this case.  As a general rule, summary judgment is proper only after the nonmovant has had adequate

time for discovery. *Robinson v. Terex Corp.* 439 F.3d 465, 467 (8th Cir. 2006); *Metro. Life Ins. Co. v. Bancorp Services, L.L.C.*, 527 F.3d 1330, 1336 (Fed. Cir. 2008) ("Under the Federal Rules of Civil Procedure, the parties must be afforded adequate time for general discovery before being required to respond to a motion for summary judgment.").

There is no reason to adjudicate Moldex's summary judgment motion before 3M is able to conclude additional discovery in this case relevant to Moldex's infringement of the '693 patent. For example, 3M seeks to depose Moldex's witnesses on the operation of the BattlePlug and Moldex's argument that each constriction in the BattlePlug does not operate as a claimed "filter" as 3M has alleged. (Boyd Decl., ¶ 10, 11.) Furthermore, 3M understands that Moldex has additional documents to produce in this case, and 3M should at the very least have the benefit of reviewing those documents before Moldex's summary judgment motion is decided. (*Id.*)

Courts consistently find summary judgment motions premature where certain discovery has not occurred. For instance, in *Metro. Life Ins. Co. v. Bancorp Services, L.L.C.*, the Federal Circuit vacated summary judgment in part because the district court had not allowed depositions of the individuals who provided declarations in support of the movant's motion for summary judgment. 527 F.3d 1330, 1337 (Fed. Cir. 2008). There, the Court found that declarations were not an adequate substitute for the requested depositions, and objected to the district court's treatment of the declarations as "truthful." *Id.*

A nonmoving party, believing that it needs more time to obtain discovery to respond satisfactorily to a motion for summary judgment, can seek the shelter of Rule 56(d) which provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Under Fed. R. Civ. P. 56(d), a district court may defer considering a motion for summary judgment if a party opposing the motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *Chambers v. Travelers Cos., Inc.*, 668 F.3d 559, 568 (8th Cir. 2012). Rule 56(d) reflects the principle that "summary judgment is proper only after the nonmovant has had adequate time for discovery." *Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (citation omitted).  As such, Rule 56(d) "should be applied with a spirit of liberality." *United States ex. rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002) (citation omitted).

Pursuant to the Court's June 14, 2012 Scheduling Order, discovery in this case is not concluded until April 2013.  3M disputes Moldex's statement that "[t]here is no source code, facility inspection, foreign operations or witnesses, customers or other non-party witnesses, or other unmet discovery that 3M could possibly need to respond to the non-infringement positions set forth in this motion." (Def.'s Br. at 5.)  The parties have

43

yet to complete a single deposition or disclose their respective experts. Summary judgment is particularly inappropriate at this point in the litigation where the parties have not even taken depositions on issues relating to infringement and the invention defined in the '693 patent.

Further, Moldex has not provided any rationale for asking this Court to prematurely enter summary judgment on the merits of 3M's infringement claim at the same time Moldex maintains its "governmental immunity" defense asserting that this Court does not have the authority to adjudicate 3M's infringement allegations under the '693 patent. Despite the absence of supporting evidence, Moldex maintains that its design, manufacture, and sale of the BattlePlug product were "carried out by Moldex as a contractor for the United States Government." (Ex. H, ¶ 44.) Moldex maintains that "3M's sole remedy for alleged infringement of the '693 patent is a suit against the United States in the United Court of Federal Claims under 28 U.S.C. § 1498." (Def.'s Br. at 12 n. 4.) Moldex has provided no explanation for asking this Court to prematurely adjudicate the very patent infringement claim that Moldex contends this Court has no authority to adjudicate. At the very least, the Court should resolve Moldex's forum dispute before further consideration of the issues raised in Moldex's motion.

# V. <u>CONCLUSION</u>

For all the above reasons, Moldex's summary judgment motion should be denied.

Date: February 19, 2013                    BARNES & THORNBURG LLP

By: /s/ Felicia J. Boyd
    Felicia J. Boyd (MN #186168)
    Aaron A. Myers (MN #311959)
    William E. Manske (MN # 392348)
    225 South Sixth Street, Suite 2800
    Minneapolis, MN 55402
    Telephone: (612) 333-2111
    Facsimile: (612) 333-6798
    felicia.boyd@btlaw.com
    aaron.myers@btlaw.com
    william.manske@btlaw.com

    Aaron M. Staser (*admitted pro hac vice*)
    Barnes & Thornburg LLP
    11 South Meridian Street
    Indianapolis, IN 46204
    Telephone: (317) 236-1313
    Facsimile: (317) 231-7433
    aaron.staser@btlaw.com

    **ATTORNEYS FOR PLAINTIFFS 3M
    COMPANY AND 3M INNOVATIVE
    PROPERTIES COMPANY**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>                            Plaintiffs,<br><br>vs.<br><br>MOLDEX-METRIC, INC.,<br><br>                            Defendant. | Court File No.: 12-CV-00611 (JNE-AJB)<br><br>**L.R. 7.1 WORD COUNT COMPLIANCE CERTIFICATE FOR PLAINTIFFS' OPPOSITION TO MOLDEX'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PAT. NO. 6,070,693** |

I, Felicia J. Boyd, certify that Plaintiffs' Opposition to Moldex's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,070,693 complies with Local Rule 7.1(d) and (f).

I further certify that, in preparation of this memorandum, I used Microsoft® Office Word Version 2003, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

I further certify that the above-referenced Opposition Brief contains 10,045 words.

Date: February 19, 2013                           BARNES & THORNBURG LLP

By: s/ Felicia J. Boyd
      Felicia J. Boyd (MN #186168)
      Aaron A. Myers (MN #311959)
      William E. Manske (MN # 392348)
      225 South Sixth Street, Suite 2800
      Minneapolis, MN 55402
      Telephone: (612) 333-2111
      Facsimile: (612) 333-6798
      felicia.boyd@btlaw.com
      aaron.myers@btlaw.com
      william.manske@btlaw.com

      Aaron M. Staser (*admitted pro hac vice*)
      Barnes & Thornburg LLP
      11 South Meridian Street
      Indianapolis, IN 46204
      Telephone: (317) 236-1313
      Facsimile: (317) 231-7433
      aaron.staser@btlaw.com

      **ATTORNEYS FOR PLAINTIFFS 3M
      COMPANY AND 3M INNOVATIVE
      PROPERTIES COMPANY**

MIDS01 681244v1