## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MOLDEX METRIC, INC., | ) |
| Plaintiff, | ) Civil No. 14-cv-01821-JNE/FLN |
| v. | ) |
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY, | ) |
| Defendants. | ) |

### DEFENDANTS' REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF THEIR DISMISSAL MOTION

Dated:  August 20, 2014

**FAEGRE BAKER DANIELS LLP**
Wendy J. Wildung (#117055)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Phone:  (612) 766-7000
Fax:  (612) 766-1600

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Lawrence B. Friedman (admitted *pro hac vice*)
(New York #1866631)
Leah Brannon (admitted *pro hac vice*) (District of Columbia #467359)
One Liberty Plaza
New York, New York 10006
Phone:  (212) 225-2000
Fax:  (212) 225-3999

*Attorneys for Defendants 3M Company
and 3M Innovative Properties Company*

## **TABLE OF CONTENTS**

I.  ARGUMENT ........................................................................................................ 1

    A.  Moldex Fails to State a Claim for Monopolization or Attempted Monopolization .................................................................................... 1

        1.  Moldex Fails to Plead Antitrust Injury ............................................ 1

        2.  Moldex Fails to Plead an Antitrust Violation .................................. 4

        3.  Moldex Fails to Plead Other Required Elements of Its Antitrust Claims ............................................................................. 7

    B.  The Court Should Dismiss Moldex's Malicious Prosecution Claim Pursuant to Minnesota's Anti-SLAPP Statute ............................................ 7

    C.  Moldex Does Not State a Claim for False Advertising Under California's UCL ................................................................................. 10

        1.  Moldex Has Not Pleaded that 3M's Advertising is False ............... 10

        2.  3M's Zero NRR is Entitled to a Safe Harbor Under the UCL ....... 12

        3.  Moldex's Claim is Time-Barred ................................................... 13

II. CONCLUSION ................................................................................................. 14

3M respectfully submits this reply memorandum in further support of its dismissal motion and in response to Moldex's opposition brief.[1]

## I. ARGUMENT

### A. Moldex Fails to State a Claim for Monopolization or Attempted Monopolization

Moldex has not properly pleaded the underlying premise of its suit – that a purportedly baseless lawsuit harmed competition.

#### 1. Moldex Fails to Plead Antitrust Injury

The Court should dismiss Moldex's antitrust claim because it does not allege a cognizable antitrust injury, which is "a threshold issue [Moldex] must establish in order to have standing to sue under the antitrust laws." *Fischer v. NWA, Inc.*, 883 F.2d 594, 597 n.5 (8th Cir. 1989). Harm to a <u>competitor</u> alone – which is all that Moldex alleges – is insufficient. Moldex must, but does not, allege harm to <u>competition</u> itself. *TheMLSonline.com, Inc. v. Reg'l Multiple Listing Serv. of Minn., Inc.*, 840 F. Supp. 2d 1174, 1182 (D. Minn. 2012) (dismissing antitrust claim where plaintiff alleged it was harmed but alleged no harm to competition overall).

Moldex concedes that the only injury it sustained consists of its attorneys' fees in the Patent Litigation, and argues that this alone establishes harm to competition as a whole. Opp'n at 10-13. Moldex is wrong. The precedents it cites for its misstatement of the law hold only that attorneys' fees are recoverable as <u>damages</u> that flow from

---

[1] Capitalized terms and abbreviations herein have the same meaning as in 3M's initial brief (cited as "Mot.").

antitrust injury, <u>not</u> that they qualify as the required injury to competition. For example, in *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979), the discussion of attorneys' fees concerns a jury instruction regarding recoverable damages, not whether the fees constituted antitrust injury. *Id.* at 996-97. Further, when the court thereafter in *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006), rejected the defendant-counterclaimant's attempt to rely on its defense costs as antitrust injury to support its sham patent suit-based antitrust counterclaim – which the court did for the same reason that this Court should do so here – it emphasized that *Handgards* "does not support [plaintiff's] claim that a litigant's attorneys' fees are sufficient—standing alone—to constitute injury." *Id.* at *6. Similarly, *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365, 374 (6th Cir. 1977), and *Rickards v. Canine Eye Registration Foundation, Inc.*, 783 F.2d 1329, 1333 (9th Cir. 1986), hold only that litigation costs may be recoverable as damages, not that they alone can constitute antitrust injury. Moldex similarly misconstrues *TransWeb, LLC v. 3M Innovative Properties Co.*, No. 10-4413 (FSH)(JBC), 2014 WL 1577557, at *20 (D.N.J. April 21, 2014), which states only that "[a]ttorneys' fees can be the damages that flow from the injury."[2]

    In sum, Moldex has cited no precedent that allows a plaintiff to satisfy the antitrust injury requirement solely with its litigation defense costs, and 3M is aware of none.

---

[2]   3M's appeal from this ruling is pending.

Nor can Moldex avoid the required showing of injury to competition by arguing that it may plead only a likelihood of such injury for its attempted monopolization claim. Opp'n at 11. Moldex's reliance on *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980 (5th Cir. 1983), overlooks that the Fifth Circuit expressly disavowed *Multiflex* nearly 30 years ago in *Deauville Corp. v. Federated Department Stores, Inc.*, 756 F.2d 1183 (5th Cir. 1985), when it clarified that a plaintiff must show the "defendants' conduct adversely affected competition" to prove a "rule of reason" claim such as monopolization or attempted monopolization. *Deauville,* 756 F.2d at 1192 & n.5. Moldex also cites *General Industries Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir. 1987), but omits its explicit statement that the "legal standard [for antitrust injury] requires proof of injury to the competitive process and not just to the plaintiff" and its finding that the alleged antitrust violations harmed overall competition by forcing the plaintiff to exit the market. *Id.* at 807-08.

Thus, the Eighth Circuit requires private plaintiffs to allege antitrust injury for <u>all</u> Sherman Act claims, including for attempted monopolization. *Id.* at 801, 807-09; *see also Midwest Commc'ns, Inc. v. Minn. Twins, Inc.*, 779 F.2d 444, 449-50 (8th Cir. 1985).

Moldex's assertion that its pleading satisfies the requirement of antitrust injury by alleging "a sham litigation scheme that, had it been successful, would have coerced Moldex to leave the market," Opp'n at 12, is also wrong. An allegation that a defendant <u>intended</u> to eliminate a competitor does not satisfy the antitrust injury requirement without an allegation of harm to competition. *TheMLSonline.com*, 840 F.

- 3 -

Supp. 2d at 1182; *Fair Isaac Corp. v. Experian Info. Solutions Inc.*, 645 F. Supp. 2d 734, 750-51 (D. Minn. 2009).

### 2. Moldex Fails to Plead an Antitrust Violation

Moldex's antitrust claim also fails because it has not properly alleged an exception to the *Noerr-Pennington* doctrine, which immunizes 3M from liability unless Moldex can demonstrate that the Patent Litigation was both objectively baseless and subjectively motivated by bad faith. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE")*, 508 U.S. 49, 60-61 (1993). This "sham litigation" exception is "narrow," particularly in this Circuit, where Moldex must demonstrate that 3M's "resort to the courts [was] accompanied or characterized by illegal and reprehensible practices." *Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 487-88 (8th Cir. 1985) (citations omitted). This burden is even heavier here because patent infringement suits are presumed to be brought in good faith. *Lund Indus., Inc., v. Westin, Inc.*, 764 F. Supp. 1342, 1346 (D. Minn. 1990).

Moldex attempts to evade this demanding standard by relying on district court opinions from other circuits to argue that this Court cannot address the applicability of the *Noerr-Pennington* doctrine to the Patent Litigation as a matter of law. Opp'n at 14-15. Once again, Moldex is wrong. The Eighth Circuit rejected this argument in *Razorback* and ruled that the "sham exception" did not apply to that action <u>as a matter of law</u>. 761 F.2d at 487-88. The Eighth Circuit and this Court have repeatedly applied *Razorback* to dispose of deficient sham litigation claims at the motion to dismiss stage. *See, e.g.*, *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 899-900

(D. Minn. 2012) (Ericksen, J.); *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 412-14 (D. Minn. 2009).

Further, Moldex has not pleaded that the Patent Litigation was objectively baseless under the demanding *Razorback* standard. Moldex claims that the '157 Patent is invalid, but does not allege that 3M had "actual knowledge" that this patent is invalid, as is required for a sham litigation claim. *Lund*, 764 F. Supp. at 1346. Moreover, Moldex disavowed a non-infringement defense under the '157 Patent. *See* ECF No. 48 at 1 ("Moldex does not intend to defend 3M's claims based on the absence of infringement of the '157 patent.").

As for the '693 Patent, Moldex cannot simply rely on the same arguments it made in its prior, undecided motion for summary judgment of non-infringement to contend that 3M's infringement claim was objectively baseless. *See* Opp'n at 6-7, 14-16. The Court will see from the parties' summary judgment briefs – which Moldex has re-filed with its opposition brief here – that 3M rebutted Moldex's argument that the '693 Patent's specification limited its claims to earplugs with two insertable ends with objectively well-founded arguments, grounded in the patent's claims and Federal Circuit precedents. 3M's contentions do not even approach being "so clearly baseless as to amount to an abuse of process," as Moldex must plead and prove. *Razorback*, 761 F.2d at 487 (citations omitted). To the contrary, 3M demonstrated that:

- The asserted claims of the patent literally read on BattlePlugs. ECF No. 46 at 4-6, 11-17.

- Moldex's reliance on the patent's specification to argue that the patent is limited to dual-ended earplugs ignores that the plain and ordinary meaning of the patent's <u>claims</u> govern its scope, and those claims contain no limitation that restricts them to earplugs with two insertable ends.  *Id.* at 18-22.

- Nothing in the specification disclaims earplugs with one insertable end, and its criticism of an embodiment of single-ended earplugs is legally "not sufficient to rise to the level of clear disavowal."  *Id.* at 22-24 (citation omitted).

- The '693 Patent's prosecution history demonstrates that it is not limited to devices with two insertable ends.  *Id.* at 24-28.

Finally, because Moldex has not pleaded that the Patent Litigation was objectively baseless, the Patent Litigation's subjective basis is irrelevant.  *PRE*, 508 U.S. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.").  Further, Moldex offers only conclusory allegations and purported circumstantial evidence on this point, far from the required clear and convincing evidence of bad faith.  Opp'n at 16-18; *Lund*, 764 F. Supp. at 1346.  For example, Moldex's argument that 3M's claims were subjectively baseless simply because Moldex denied them, Compl. ¶¶ 21, 23, would, if accepted, render every lawsuit subjectively baseless.  Further, circumstantial evidence of bad faith alone is insufficient. *Lund*, 764 F. Supp. at 1346 (dismissing sham litigation claim where only circumstantial evidence of bad faith was presented).

### 3. Moldex Fails to Plead Other Required Elements of Its Antitrust Claims

Because Moldex has not pleaded the threshold requirements of antitrust injury or an exception to the *Noerr-Pennington* doctrine, the Court need not address 3M's showing that Moldex has not pleaded the substantive elements of its monopolization or attempted monopolization claims, which remain independent reasons for dismissal. *See* Mot. at 16-19.[3]

### B. The Court Should Dismiss Moldex's Malicious Prosecution Claim Pursuant to Minnesota's Anti-SLAPP Statute

Because Moldex confirms that it does not seek damages under the UCL, Opp'n at 34, 3M agrees that Minnesota's anti-SLAPP statute requires dismissal solely of Moldex's malicious prosecution claim. As to that claim, 3M clearly meets its initial "minimal burden" of showing that the anti-SLAPP statute applies. *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 841 (Minn. 2010). Moldex's allegations unquestionably "materially relate[] to an act of [3M] that involves public participation" – specifically, they attack 3M's grounds for prosecuting the Patent Litigation and thus implicate "conduct . . . aimed . . . at procuring favorable government action." *Id.* at 841. Accordingly, Moldex must show with clear and convincing evidence

---

[3] Paragraph 16 of Moldex's proposed amended complaint, its sole additional antitrust allegation, concerns only market power and does not cure the Complaint's fatal pleading defects. Moldex proposes no changes to its malicious prosecution claim, which fails for substantially the same reasons that Moldex fails to allege an exception to the *Noerr-Pennington* doctrine. *See* Mot. at 20-21. Likewise, the Court also should dismiss Moldex's UCL claim based on the Patent Litigation because, as California courts have ruled, a failure to state a claim under the Sherman Act is fatal to a UCL claim based on the same conduct. *See* Mot. at 19-20.

that 3M's conduct is not immune from suit. *Id.* at 839; *see also Hoyt v. Goodman*, No. 10-cv-3680 (SRN/FLN), 2011 WL 6151511, at *5 (D. Minn. Dec. 12, 2011). Indeed, the Minnesota Supreme Court has expressly recognized that "SLAPP suits generally come in the form of tort claims, such as . . . malicious prosecution, among others." *Stengrim*, 784 N.W.2d at 839 n.3 (citing, *inter alia*, *In re Conditional Use Permit & Preliminary Planned Unit Dev. Applications of Living Word Bible Camp*, No. A06-1374, 2008 WL 2245708, at *1, *4 (Minn. Ct. App. June 3, 2008) (dismissing malicious prosecution counterclaim pursuant to anti-SLAPP motion)).

Moldex's reliance on *Stengrim* to argue that 3M has not shown that the anti-SLAPP statute applies misconstrues the threshold inquiry under section 554.02. Moldex's assertion that 3M's lawsuit is not "public participation" merely because Moldex alleges that 3M's conduct was neither "lawful" nor "genuine," Opp'n at 36, is simply contrary to *Stengrim*. *See* 784 N.W.2d at 839. Likewise, Moldex's suggestion that the purposes of the *Noerr-Pennington* doctrine are irrelevant misapplies *Stengrim*'s statement that a party cannot invoke *Noerr-Pennington* as a <u>defense</u> to an anti-SLAPP motion, *id.* at 840 n.7, and ignores that the purpose of anti-SLAPP laws is predicated on and "similar to the purpose behind the *Noerr-Pennington* immunity doctrine." *Adelson v. Harris*, 973 F. Supp. 2d 467, 498 (S.D.N.Y. 2013) (quotation omitted); *see also Select Portfolio Servicing v. Valentino*, 875 F. Supp. 2d 975, 988 (N.D. Cal. 2012) ("The first part of the anti-SLAPP inquiry is substantially the same as the inquiry into whether the *Noerr-Pennington* doctrine applies.").

The Court also should reject Moldex's mischaracterization of *Stengrim* as being analogous to this case. The *Stengrim* court sensibly held that a party cannot invoke the anti-SLAPP statute to immunize its breach of an agreement by which it waived its public participation rights. Opp'n at 38-39. As the court explained, that case presented a "peculiar" situation where the underlying dispute was essentially contractual. 784 N.W.2d at 842. Here, by contrast, 3M never waived its public participation right to sue Moldex for patent infringement until 3M withdrew its claims, and at that time 3M merely agreed not to sue Moldex <u>again</u> on the patents-in-suit. That does not negate the fact that, by prosecuting the Patent Litigation <u>before</u> that agreement – the very conduct Moldex now seeks to challenge – 3M was exercising a "public participation" right. Hence this is a "classic SLAPP situation . . . involv[ing] tort claims" which threatens to chill 3M's right of petition to enforce its patents. *Id.*

Thus, 3M has met its threshold burden to show that the anti-SLAPP statute applies. Moldex, by contrast, has failed to meet its burden to show with clear and convincing evidence that 3M's litigation conduct is not immune under section 554.02, subd. 1, for the same reasons that Moldex has failed to plead plausible claims under the Sherman Act and for malicious prosecution. *See supra* at 4-7; Mot. at 12-15; 20-21.

Finally, the Court should reject Moldex's attempt to evade Minnesota's anti-SLAPP protections by arguing that the statute's "draconian pre-discovery standard" is unconstitutional under both the Minnesota and United States Constitutions. Opp'n at 39-42. That argument is not properly before the Court because Moldex has failed to comply with its obligation under Federal Rule of Civil Procedure 5.1 to file a notice of its

- 9 -

constitutional challenge and serve it on Minnesota's Attorney General so that she may address that challenge. *See Ray v. Hauff*, No. 08-922 (MJD/JJK), 2010 WL 1390866, at *6 (D. Minn. Mar. 31, 2010) (where party failed to give notice required by Rule 5.1(b), constitutionality of Minnesota Probate Code provisions was not properly before the court); *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, No. 2:13-cv-1265, 2014 WL 1670099, at *16 (S.D. Ohio Apr. 23, 2014) (same). Allowing the Attorney General to address Moldex's argument is particularly important here because, as Moldex concedes, it seeks to raise a matter of first impression. Opp'n at 42. If necessary, 3M will address the constitutionality of Minnesota's anti-SLAPP statute at the appropriate time.

### C. Moldex Does Not State a Claim for False Advertising Under California's UCL

Moldex's response to 3M's showing that Moldex has failed to state a false advertising claim distorts the facts and the law, and does not salvage Moldex's defective pleading.

#### 1. Moldex Has Not Pleaded that 3M's Advertising is False

Moldex does not refute, and to the contrary concedes, that the zero NRR designation for Combat Arms complies with the Noise Control Act (the "NCA") and the EPA's regulations thereunder for calculating the NRR. *See* Opp'n at 31 (Moldex's agreement that 3M's zero NRR is "allowed under the NCA."). Instead, Moldex now insists only that this rating will mislead Combat Arms users that their hearing will not be affected. Opp'n at 26-28. But the NRR on its face does not convey that meaning; it is a rating of noise reduction that expresses the <u>minimum</u> level of protection achieved in

testing (reduced significantly from the average attenuation achieved in that testing). It does not indicate that average users will experience no impairment of audibility. *See* Mot. at 24-26. Accurate advertising is not misleading under the UCL simply because a user may misinterpret its meaning. *Kearney v. Hyundai Motor Co.*, No. SACV 09-1298 DOC (MLGx), 2010 WL 9093204, at *10 (C.D. Cal. June 4, 2010) (dismissing allegation that advertising was misleading where the allegation was based on a misstatement of an accurate advertising claim).

Nor is Moldex aided by its conclusory assertion in paragraph 29 of its Complaint – which it seeks to rescue in paragraphs 30-32 of its proposed amended complaint – that the zero NRR is false due to 3M's "improper NRR testing procedures." Opp'n at 28. Moldex's proposed amendment alleges that 3M failed in its NRR calculation to exclude the test results reported by two "outlier" subjects, identified as "GWG" and "TRS." *See* Conneely Decl. Ex. 18 ¶¶ 31-32. But this new allegation is futile; excluding GWG's and TRS's results from the calculation yields an NRR of -0.7, which is not greater than zero, as Moldex mistakenly claims. *See* Friedman Decl. ¶¶ 1-5. Thus, Moldex has not plausibly alleged in its original or proposed complaints that 3M's zero NRR is false.[4]

---

[4] Moldex's reference in paragraph 33 of its proposed amended complaint to 3M's advertisement of an NRR of 7 concerns a Combat Arms version that is not at issue here.

### 2. 3M's Zero NRR is Entitled to a Safe Harbor Under the UCL

Contrary to Moldex's mischaracterization of 3M's argument as being premised on the conclusion that the federal NCA preempts California's UCL, Opp'n at 28-29, 3M has shown that it is entitled to a safe harbor <u>under the UCL itself</u>, based on the California Supreme Court's ruling that the UCL does not reach conduct that is permitted by other applicable law, here the NCA. Mot. at 27 (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999)). Thus, contrary to Moldex's argument, Opp'n at 29, the NCA's proviso that it does not "restrict any right which any person . . . may have under any statute or common law to seek enforcement of any noise control requirement or to seek any other relief," 42 U.S.C. § 4911(e), is irrelevant. The UCL's <u>own</u> safe harbor precludes Moldex's claim under *Cel-Tech* because the NCA permits 3M's NRR.[5] Moldex's assertion that "[t]he UCL and the NCA are complementary," Opp'n at 31, would overrule *Cel-Tech*'s construction of the UCL, which this Court cannot do.

The Supreme Court's recent ruling in *Pom Wonderful LCC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014), does not help Moldex because it addresses the relationship between two federal statutes, the Food, Drug, and Cosmetic Act and the Lanham Act, and concludes that compliance with the former does not preclude liability under the latter. *Id.* at 2241. The Supreme Court emphasized that *Pom* "is not a pre-emption case" but rather

---

[5] The UCL's safe harbor applies to both state and federal statutes that permit conduct challenged under the UCL. *See, e.g.*, *Suzuki v. Hitachi Global Storage Techs., Inc.*, No. C 06-07289 MHP, 2007 WL 2070263 (N.D. Cal. July 17, 2007).

"a statutory interpretation case." *Id.* at 2231. Here, by contrast, 3M's safe harbor is based not on another federal statute, but rather the UCL. Further, that safe harbor is consistent with *Pom*, in which the district court dismissed the UCL claim under the UCL safe harbor because the defendant's advertising "complied with the relevant FDA regulations." *See* Mot. at 28, n.11 (*quoting Pom Wonderful LLC v. Coca-Cola Co.,* No. CV-08-06237 SJO (FMOx), 2013 WL 543361, *5 (C.D. Cal. Feb. 13, 2013)).

### 3. Moldex's Claim is Time-Barred

The Court should reject Moldex's argument that its claim is not time-barred because that claim continues to accrue. Moldex mistakenly cites *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871 (Cal. 2013), for the proposition that "all UCL claims are subject to the common-law doctrine of continuous accrual." Opp'n at 32. That assertion distorts *Aryeh,* which holds only that common law principles determine <u>whether</u> a UCL claim is subject to continuous accrual. *See* 292 P.3d at 878 (the labeling of "a UCL claim is not dispositive; instead, the nature of the right sued upon and the circumstances attending its invocation control the point of accrual.") (internal quotation marks and citations omitted). Moldex also mischaracterizes *Allen v. Similasan Corp.*, No. 12 CV 0376-BTM-WMC, 2013 WL 5436648, at *4-6 (S.D. Cal. Sept. 27, 2013), as holding categorically that "the continuous accrual doctrine is applicable to false advertising claims." Opp'n at 32. *Allen* neither states nor relies on a categorical rule. It notes that the consumer plaintiffs had "made discrete purchases of different products over many years" and "f[ound] no reason" the continuous accrual doctrine should not apply; it did not apply the doctrine simply because the case involved false advertising. 2013 WL

5436648, at *6. But the circumstances here, involving a claim between competitors, are materially different from those in *Allen*. Far more analogous is *Baby Trend, Inc. v. Playtex Products, LLC,* No. 13-cv-647-ODW (RZx), 2013 WL 4039451 (C.D. Cal. Aug. 7, 2013), which 3M has already addressed. *See* Mot. at 30. The *Baby Trend* court did not apply the continuous accrual doctrine because, as here, the plaintiff knew or should have known of its false advertising claim against its competitor more than three years before it filed suit. A contrary rule would afford a competitor a limitless period in which to make a claim. Tellingly, Moldex does not address *Baby Trend* at all.

## II. CONCLUSION

The Court should dismiss Moldex's Complaint.

Dated: August 20, 2014

Respectfully submitted,

**FAEGRE BAKER DANIELS LLP**

/s/ Wendy J. Wildung
Wendy J. Wildung (#117055)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Lawrence B. Friedman (admitted *pro hac vice*) (New York #1866631)
Leah Brannon (admitted *pro hac vice*) (District of Columbia #467359)
One Liberty Plaza
New York, New York 10006
Phone: (212) 225-2000
Fax: (212) 225-3999

*Attorneys for Defendants 3M Company and 3M Innovative Properties Company*