UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Moldex Metric, Inc.,

                  Plaintiff,

v.                                                       Civil No. 14-1821 (JNE/FLN)
                                                         ORDER
3M Company and 3M Innovative Properties
Company,

                  Defendants.

---

Harold A. Barza, Quinn Emanuel Urquhart & Sullivan, LLP, and Kevin D. Conneely and
Katherine A. Moerke, Stinson Leonard Street LLP, appeared for Moldex Metric, Inc.

Lawrence B. Friedman and Leah Brannon, Cleary Gottlieb Steen & Hamilton LLP, and
Wendy J. Wildung, Faegre Baker Daniels LLP, appeared for 3M Company and 3M
Innovative Properties Company.

---

        Approximately one year after the dismissal of an action for patent infringement

brought against Moldex Metric, Inc., by 3M Company and 3M Innovative Properties

Company, Moldex Metric brought this action against 3M Company and 3M Innovative

Properties Company for monopolization and attempted monopolization, malicious

prosecution, and unfair competition under the California Business and Professions Code.

The action is before the Court on 3M Company and 3M Innovative Properties

Company's Motion to Dismiss the Complaint.  For the reasons set forth below, the Court

denies the motion.

## I.     BACKGROUND

**A.     Civil No. 12-611**

In March 2012, 3M Company and 3M Innovative Properties Company (collectively, 3M) sued Moldex Metric for patent infringement.  Complaint for Patent Infringement, *3M Co. v. Moldex-Metric, Inc.*, Civil No. 12-611 (D. Minn. Mar. 8, 2012). 3M claimed that Moldex Metric's BattlePlug earplug infringed U.S. Patent No. 6,070,693 (filed Jan. 20, 1999) and that Moldex Metric's M-series earmuffs infringed U.S. Patent No. 7,036,157 (filed June 15, 2000).  Moldex Metric denied 3M's infringement claims and asserted counterclaims for declarations of noninfringement and invalidity with respect to each patent.

In November 2012, the parties filed a joint claim construction statement.  The parties asked the Court to schedule a claim construction hearing to interpret the following terms in the '693 Patent: (1) "a first end" and "said first . . . end[]"; (2) "a second end" and "second end[]"; (3) "channel extending from said first and second ends to said center of said cylindrical body"; (4) "acoustic filter"; (5) "first acoustic filter and a second acoustic filter," "first and second acoustic filters," and "acoustic filters"; (6) "each of said first and second filters being in communication with one of said first and second ends"; and (7) "cylindrical body."  For each claim term, 3M stated that it did "not believe that construction . . . is necessary" and that, "[i]f the Court believes construction is necessary, . . . the plain and ordinary meaning of the term or phrase should apply."  Moldex Metric offered a construction of each claim term.  The Court declined to hold a claim

construction hearing.  Instead, the Court directed that issues of claim construction would be considered in connection with dispositive motions or trial.

In January 2013, Moldex Metric moved for summary judgment of noninfringement of the '693 Patent.  In February 2013, 3M moved for summary judgment of infringement of the '157 Patent and for summary judgment on Moldex Metric's affirmative defense of governmental immunity.  By early March 2013, the motions were fully briefed.  They were scheduled to be heard on March 21, 2013.

The parties disputed the issue of infringement of the '693 Patent, which is entitled "Hearing Protector Against Loud Noise."  The patent has one independent claim, which recites:

> **1.**  A hearing protector for selectively or automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:
>
> > a cylindrical body having a center, a first end and a second end;
> >
> > a channel extending from said first and second ends to said center of said cylindrical body; and
> >
> > said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of said first and second ends.

In its motion for summary judgment of noninfringement of the '693 Patent, Moldex Metric argued that the '693 Patent requires an earplug with two insertable ends, a channel opening to the outside of the earplug at the center of the earplug, and two acoustical filters, and that the BattlePlug lacks each feature.

The parties did not dispute the issue of infringement of the '157 Patent, which is entitled "Method of Producing a Hood, and a Hood Produced According to the Method." Moldex Metric argued that it was "premature (and unnecessary) to enter an interlocutory order of infringement" because Moldex Metric did "not intend to defend 3M's claims based on the absence of infringement" of the '157 Patent.  Instead, Moldex Metric maintained that the '157 Patent was invalid because Moldex Metric had invented the accused products years before the application for the patent was filed.

By letter dated March 15, 2013, 3M informed the Court that 3M had provided to Moldex Metric a covenant not to sue with respect to the '693 Patent.  According to 3M, the covenant "effectively ended" all claims related to the '693 Patent.  3M represented that the parties were discussing the form of appropriate documents for dismissal and that 3M would file a motion under Rule 41 of the Federal Rules of Civil Procedure if the parties failed to agree to the terms of a stipulation.  3M also stated that a hearing on its motion for summary judgment with respect to the '157 Patent was not necessary, that Moldex Metric wished to be heard on the motion, and that Moldex Metric maintained the hearing should be continued in light of the covenant not to sue with respect to the '693 Patent.  The Court cancelled the March 21 hearing.

After the parties had failed to agree to the terms of a stipulated dismissal of the claims related to the '693 Patent, 3M moved to dismiss its claim of infringement of the '693 Patent with prejudice and to dismiss Moldex Metric's counterclaims related to the '693 Patent, as well as the affirmative defense of governmental immunity, without prejudice.  Although Moldex Metric did not oppose the motion, it wanted to avoid

waiving any rights it may have as a result of having to defend against 3M's claim of infringement of the '693 Patent.

By letter dated May 17, 2013, Moldex Metric informed the Court that it had received from 3M a covenant not to sue with respect to the '157 Patent. Two days before 3M's motion to dismiss was scheduled to be heard, the parties filed a letter in which they agreed that 3M's claims with respect to the '157 Patent should be dismissed with prejudice and that Moldex Metric's counterclaims with respect to the '157 Patent should be dismissed without prejudice. They remained unable to agree to the terms of a stipulated dismissal. The Court cancelled the hearing, dismissed 3M's infringement claims with prejudice, dismissed Moldex Metric's counterclaims and affirmative defense of governmental immunity without prejudice, and entered judgment. Moldex Metric did not seek an award of attorney fees and costs.

**B.     Civil No. 14-1821**

Approximately one year after the dismissal of Civil No. 12-611, Moldex Metric brought this action, Civil No. 14-1821, against 3M. A summary of Moldex Metric's complaint appears in the following paragraphs.

*Nature of trade and commerce*

"Non-linear" or "selective attenuation" earplugs purchased and used by the U.S. military are at issue in this case. In the United States, the military purchases the vast majority of non-linear earplugs. The military may purchase them if they meet certain standards. By using a sound channel that has various constrictions and openings for the passage of sound from the exterior to a wearer's ear canal, non-linear earplugs block or

attenuate sounds of different amplitude and frequency to differing degrees.  Soldiers wear the earplugs to protect themselves from intense impulse sounds of battlefield explosions while maintaining their ability to communicate by speech with their colleagues.

Another type of hearing protector, an earmuff, is also at issue in this case.  An earmuff protects its wearer from the harmful effects of excessive sound energy by covering the exterior of the wearer's ear.

Hearing protectors are sold with a listed noise reduction rating, which "represents the amount of sound attenuation perceived by a test group, when tested under certain required conditions, and adjusted pursuant to the test methodology."  An independent laboratory performs the testing to determine noise reduction ratings for Moldex Metric.  3M personnel perform the testing to determine noise reduction ratings for 3M.

*Markets*

According to Moldex Metric, 3M's conduct relates to "the following product markets, in the conjunctive or in the alternative":

> (a) a product market for non-linear earplugs that are approved for purchase by the United States military; (b) the product market for non-linear earplugs; (c) the product market for non-linear earplugs that have dual modes of setting, with one mode including a non-linear sound channel and one mode including a fully blocked earplug; and/or (d) the product market for passive (non-electronic) industrial earmuffs.

The United States is the geographic market for each product market.

*3M's conduct*

For many years, 3M has manufactured and sold a non-linear earplug called Combat Arms.  Each of the four different versions of Combat Arms uses a sound channel

with constrictions and openings to produce a non-linear sound attenuation effect.  Such sound channels have been used for decades.  Combat Arms earplugs allow the wearer to set the earplug to a second mode of operation by, for example, inserting a plug into the channel so that the earplugs function like a traditional, fully blocked earplug.  The dual mode feature is well known in the art.

In 2011, Moldex Metric introduced BattlePlug, which is a non-linear, dual-mode earplug.  Moldex Metric's BattlePlug provided the first actual competition to 3M's Combat Arms in the market for non-linear earplugs approved for purchase by the military.  The U.S. military made its first order of BattlePlug in May 2011.

3M wanted to block Moldex Metric's entry into the market for non-linear earplugs approved for purchase by the military.  To do so, 3M brought an action, Civil No. 12-611, against Moldex Metric in which 3M claimed Moldex Metric infringed the '693 Patent.

According to Moldex Metric, 3M's claim of infringement of the '693 Patent was "objectively baseless."  Non-linear earplugs that feature a second mode of attenuation with the sound channel blocked were well known in the art.  The '693 Patent claimed an alternative way of achieving two different levels of sound attenuation in a single earplug: a dual-ended earplug, where each end was insertable into the user's ear and each end provided a different level of attenuation.  Moldex Metric's BattlePlug does not infringe because, among other reasons, it has but one end that may be inserted into the user's ear. Moldex Metric responded to 3M's claim of infringement of the '693 Patent by immediately informing 3M the BattlePlug could not possibly infringe the patent.  3M

nevertheless pursued its claim, seeking injunctive relief to force Moldex Metric from the market.

3M also asserted a claim against Moldex Metric for infringement of the '157 Patent in Civil No. 12-611.  According to 3M, Moldex Metric's M-series earmuff infringed the patent.  Moldex Metric first introduced the M-series earmuff in 2001, almost five years before the '157 Patent issued.  "[B]ecause of the length of time it takes to develop a such product," Moldex Metric alleged, "3M knew, or should have known, that Moldex [Metric] had in fact invented its accused M-series earmuffs well before the priority date of the '157 [P]atent."  Moldex Metric responded to 3M's lawsuit by immediately informing 3M of Moldex Metric's prior invention of the M-series earmuffs. 3M nevertheless persisted in its infringement claim.

In January 2013, Moldex Metric moved for summary judgment of noninfringement of the '693 Patent.  3M sent to Moldex Metric a covenant not to sue with respect to the '693 Patent and the BattlePlug one week before the motion hearing. According to Moldex Metric, 3M did so to avoid adjudication of 3M's claim as baseless. 3M asserted that the covenant not to sue deprived the Court of jurisdiction to hear the claims related to the '693 Patent.  Later, 3M moved to dismiss with prejudice its claim of infringement of the '693 Patent and to dismiss without prejudice Moldex Metric's counterclaims of invalidity and noninfringement with respect to the '693 Patent.  In June 2013, the Court dismissed with prejudice 3M's claim of infringement of the '693 Patent and dismissed without prejudice Moldex Metric's counterclaims of noninfringement and invalidity with respect to the '693 Patent.

After it had sent the covenant not to sue with respect to the '693 Patent to Moldex Metric, 3M continued to assert its claim of infringement of the '157 Patent.  3M demanded extensive discovery that imposed great expense on Moldex Metric.  According to Moldex Metric, "3M undertook this campaign of intense discovery in order to impose huge costs on Moldex [Metric], so as to attempt to force Moldex [Metric] to settle the case, and not pursue Moldex[ Metric's] rights, including those asserted [in Civil No. 14-1821], all as part of 3M's efforts to unlawfully obtain and/or maintain monopoly power." In May 2013, after the close of fact discovery and as Moldex Metric was preparing a motion for summary judgment of invalidity of the '157 Patent, 3M sent to Moldex Metric a covenant not to sue with respect to the '157 Patent and the M-series earmuffs.  3M asserted that the covenant not to sue left the Court without jurisdiction to determine the '157 Patent's validity.  After the parties had informed the Court of the covenant not to sue, the Court dismissed with prejudice 3M's claim of infringement of the '157 Patent and dismissed without prejudice Moldex Metric's counterclaim of invalidity.

In connection with the dismissal of its infringement claims, 3M sent letters to Moldex Metric in which 3M claimed that it dismissed its claims not because they were without merit but because pursuit of the claims did not make economic sense given the amount of sales of Moldex Metric's accused products.  According to Moldex Metric, 3M's explanation "was clearly a mere pretext, designed to try to construct a defense to the claims being asserted [in Civil No. 14-1821]."  Because Moldex Metric continues to sell its BattlePlug products to the U.S. military and because 3M continues to try to interfere with those sales, 3M did not dismiss its infringement claims for economic

reasons.  Instead, Moldex Metric alleged, "3M did so because it knew they were baseless and that it was going to lose the claims on the merits."  3M's pursuit of its infringement claims imposed costs on Moldex Metric in the form of legal fees, costs, and lost employee time of more than $1 million.

In addition to 3M's alleged misconduct in Civil No. 12-611, Moldex Metric alleged that 3M "attempted to use a federal program designed to further the use of disabled workers . . . to exclude Moldex [Metric] from [the alleged markets] by engaging in misleading assertions concerning BattlePlug and a comparison of it to Combat Arms."  Moldex Metric also alleged that 3M uses misleading noise reduction ratings for its hearing protection products.  In particular, 3M sells its "dual-ended version of Combat Arms with [a noise reduction rating] of zero in the open or unblocked position, thus suggesting that the open earplug will not in any way impair the sounds one hears from fellow soldiers or combatants in the field."  The zero rating is based on tests that do not comply with proper procedures.

*Moldex Metric's claims*

Moldex Metric's complaint contains three claims for relief: (1) monopolization and attempted monopolization; (2) malicious prosecution; and (3) unfair competition under California Business and Professions Code § 17200.  3M moved to dismiss the complaint.

## II.   DISCUSSION

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept the facts alleged in the complaint as true and grant all

reasonable inferences in favor of the plaintiff.  *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).  Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## A.    Monopolization and attempted monopolization

3M contended that Moldex Metric failed to state a claim for monopolization or attempted monopolization because Moldex Metric failed to allege an antitrust injury; failed to allege an exception to the *Noerr-Pennington* doctrine; failed to allege that 3M has market power in a properly defined product market and that 3M willfully acquired or maintained that power through exclusionary or predatory conduct; and failed to allege that 3M engaged in anticompetitive conduct with the specific intent to monopolize and that there was a dangerous probability of achieving monopoly power.  Moldex Metric disputed 3M's contentions.

It is illegal to monopolize or attempt to monopolize "any part of the trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 2 (2012). "[A]ny person who shall be injured in his business or property by reason of anything

forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." *Id.* § 15(a).

To establish a monopolization claim under Section 2 of the Sherman Act, a plaintiff must prove the defendant "(1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining that power as a result 'of a superior product, business acumen, or historical accident.'" *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (quoting *United States v. Grinnell*, 384 U.S. 563, 571 (1966)). "To establish an attempted monopolization claim under the Sherman Act, a plaintiff must prove: '(1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success.'" *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 549 (8th Cir. 2007) (quoting *Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 801 (8th Cir. 1987)). To recover under § 15, a plaintiff "must prove an 'injury of the type that the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386-87 (2014).

"Those who petition government for redress are generally immune from antitrust liability." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S.

49, 56 (1993); *see United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669 (1965);

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961).  A

patentee's assertion of an infringement claim generally does not give rise to antitrust

liability:

> A patent owner who brings a suit for infringement, without more, is
> generally exempt from the antitrust laws for that action; however, the patent
> owner may be subject to antitrust liability for the anticompetitive effects of
> that suit if the accused infringer proves either of two conditions.  First, the
> accused infringer may show that the asserted patent was obtained through
> knowing and willful fraud.  Alternatively, the accused infringer may show
> that the infringement suit was "'a mere sham to cover what is actually
> nothing more than an attempt to interfere directly with the business
> relationships of a competitor.'"

*Q-Pharma, Inc. v. Andrew Jurgens Co.*, 360 F.3d 1295, 1304-05 (Fed. Cir. 2004)

(citations omitted) (quoting *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d

1059, 1068 (Fed. Cir. 1998)).  "Conduct prohibited under antitrust law includes bringing

suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the

litigation is conducted for anti-competitive purposes."  *C.R. Bard, Inc. v. M3 Sys., Inc.*,

157 F.3d 1340, 1368 (Fed. Cir. 1998).

In *Noerr*, the Supreme Court "withheld immunity from 'sham' activities because

'application of the Sherman Act would be justified' when petitioning activity, 'ostensibly

directed toward influencing governmental action, is a mere sham to cover . . . an attempt

to interfere directly with the business relationships of a competitor.'"  *Prof'l Real Estate

Investors*, 508 U.S. at 56 (quoting *Noerr*, 365 U.S. at 144).  "Sham" litigation is defined

according to objective and subjective elements:

First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor" through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." This two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability. Of course, even a plaintiff who defeats the defendant's claim to *Noerr* immunity by demonstrating both the objective and the subjective components of a sham must still prove a substantive antitrust violation. Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim.

*Id.* at 60-61 (alteration in original) (footnote omitted) (citations omitted).

"[W]hether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law. This conclusion applies equally to all antitrust claims premised on the bringing of a patent infringement suit." *Nobelpharma*, 141 F.3d at 1068 (footnote omitted). "[T]he law of the appropriate regional circuit [applies] to issues involving other elements of antitrust law such as relevant market, market power, damages, etc., as those issues are not unique to patent law . . . ." *Id.*

Moldex Metric has sufficiently alleged that 3M's infringement action against it, Civil No. 12-611, was objectively baseless. *Cf. Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014) (stating "it will be a rare case in which a patentee's assertion of its patent in the face of a claim of invalidity will be so

unreasonable as to support a claim that the patentee has engaged in sham litigation" because a patent is presumed to be valid and the patent challenger bears the burden to prove invalidity by clear and convincing evidence); *Q-Pharma*, 360 F.3d at 1304-05 (concluding that infringement claim was not objectively baseless where reasonable litigant could—based on the asserted patent, its prosecution history, and the defendant's statements—expect to prevail).  The sole independent claim of the '693 Patent claims a hearing protector comprising "a cylindrical body having a center, a first end and a second end"; "a channel extending from said first and second ends to said center of said cylindrical body"; and "said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of said first and second ends."  Citing intrinsic evidence, Moldex Metric asserted that the patent plainly claims an earplug whose two ends may be inserted into the user's ear. *Cf. Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012) (summarizing standard for disavowal of claim scope); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323-24 (Fed. Cir. 2005) (en banc) (discussing "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim").  The intrinsic evidence includes, for example, the summary of the invention, which states:

> The hearing protector has two ends, both of which can be inserted into the auditory canal and is referred to as a "double-ended" device.  This contrasts with the well-known hearing protector that typically has one end that can be inserted into the auditory canal, while the other end allows the hearing protector to be gripped so the user can position it in the auditory canal.  The present invention has two ends, that may or may not be identical, either of which can be inserted into the auditory canal, thus

> making it possible to choose between two operating modes of attenuation
> that may or may not be identical.

'693 Patent, col.1, ll.57-67.  Moldex Metric's BattlePlug has but one end that may be

inserted into the user's ear.  As to the '157 Patent, Moldex Metric alleged that 3M

asserted the patent notwithstanding 3M's knowledge of the patent's invalidity due to

Moldex Metric's invention of the M-series earmuffs before the patent's priority date.

The Court concludes that Moldex Metric alleged 3M's infringement claims were

objectively baseless.  *Cf. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324-26 (Fed.

Cir. 2011) (affirming district court's finding that case was exceptional and concluding

that "district court did not clearly err in finding that Eon-Net pursued objectively baseless

infringement claims" because "the written description clearly refutes Eon-Net's claim

construction").[1]

Drawing all reasonable inferences in favor of Moldex Metric, the Court also

concludes that Moldex Metric sufficiently alleged that 3M's infringement action against

it was subjectively baseless.  3M brought Civil No. 12-611 only after Moldex Metric's

BattlePlug provided the first actual competition to 3M's Combat Arms in the market for

non-linear earplugs approved for purchase by the U.S. military.  To force Moldex Metric

from the market, 3M asserted the '693 Patent and the '157 Patent against Moldex Metric.

Days before a motion for summary judgment of noninfringement of the '693 Patent was

to be heard, 3M issued a covenant not to sue.  3M persisted in its assertion of the '157

---

[1]     *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014),
established a standard to determine whether a case is exceptional under 35 U.S.C. § 285
that differs from the one employed in *Eon-Net*.

Patent, imposing substantial costs on Moldex Metric.  As Moldex Metric prepared a

motion for summary judgment of invalidity of the '157 Patent, 3M against issued a

covenant not to sue.  Moldex Metric has adequately alleged that 3M's infringement

action was subjectively baseless.  Having concluded that Moldex Metric adequately

alleged 3M's infringement action was objectively and subjectively baseless, the Court

considers 3M's arguments that Moldex Metric failed to allege antitrust violations.

    3M asserted that Moldex Metric had failed to allege plausible product markets,

that Moldex Metric offered only conclusory assertions for each alleged product market,

and that Moldex Metric's failure to plead facts regarding interchangeability and cross-

elasticity renders dismissal appropriate.  Moldex Metric countered that it had sufficiently

alleged at least three product markets: (1) non-linear earplugs that are approved for

purchase by the United States military; (2) the general market for non-linear earplugs;

and (3) non-linear earplugs that have dual modes of setting.  Moldex Metric asserted that

there are no reasonable substitutes for selective attenuation earplugs.  "Traditional, fully-

blocked earplugs are not a reasonable substitute," Moldex Metric argued, "not only

because they do not comply with military testing standards, but also because soldiers

would have to remove the traditional earplugs, in the heat of battle, every time they

needed to communicate verbally with their colleagues."

    "The outer boundaries of a product market are determined by the reasonable

interchangeability of use or the cross-elasticity of demand between the product itself and

substitutes for it."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).  "Where

the plaintiff fails to define its proposed relevant market with reference to the rule of

reasonable interchangeability and cross-elasticity of demand, or alleges a proposed

relevant market that clearly does not encompass all interchangeable substitute products

even when all factual inferences are granted in plaintiff's favor, the relevant market is

legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc. v.*

*Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *see Todd v. Exxon Corp.*, 275

F.3d 191, 200 (2d Cir. 2001).  The Court concludes that Moldex Metric has adequately

alleged product markets.

3M asserted that Moldex Metric failed to allege 3M has monopoly power.  "In a

typical section 2 case, monopoly power is 'inferred from a firm's possession of a

dominant share of a relevant market that is protected by entry barriers.'"  *Harrison Aire,*

*Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005) (quoting *United States v.*

*Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001) (per curiam)).  Moldex Metric alleged

that 3M has a dominant market share and that there are significant barriers to entry, such

as approval by the military.  The Court concludes that Moldex Metric adequately alleged

3M has monopoly power.

According to 3M, Moldex Metric failed to allege that 3M willfully acquired or

maintained monopoly power through exclusionary or predatory conduct.  3M

acknowledged that "patent infringement suits that qualify as exclusionary conduct . . . are

those initiated and conducted in bad faith."  According to 3M, Moldex Metric failed to

allege that 3M's infringement suit was initiated and conducted in bad faith.  For the

reasons set forth above, the Court disagrees.  The Court concludes that Moldex Metric

has adequately alleged 3M willfully acquired or maintained monopoly power through exclusionary or predatory conduct.

With respect to Moldex Metric's claim for attempted monopolization, 3M asserted that Moldex Metric had failed to allege 3M engaged in anticompetitive conduct with the specific intent to monopolize or that there was a dangerous probability of success. Moldex Metric alleged that 3M brought sham litigation to drive Moldex Metric out of the market. Drawing all reasonable inferences in Moldex Metric's favor, the Court concludes that it adequately alleged its claim of attempted monopolization. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1130 (10th Cir. 2014).

Finally, 3M asserted that Moldex Metric's antitrust claims should be dismissed because Moldex Metric failed to allege antitrust injury. According to Moldex Metric, 3M brought sham litigation to maintain its monopoly power. Moldex Metric incurred costs to defend against the sham claims. The Court concludes that Moldex Metric adequately alleged antitrust injury. *See Rickards v. Canine Eye Registration Found., Inc.*, 783 F.2d 1329, 1334-35 (9th Cir. 1986); *Am. Infra-Red Radiant Co. v. Lambert Indus., Inc.*, 360 F.2d 977, 996-97 (8th Cir. 1966).

**B.    Malicious prosecution**

3M asserted that Moldex Metric's claim of malicious prosecution should be dismissed for essentially the same reasons that Moldex Metric failed to allege an exception to the *Noerr-Pennington* doctrine. For essentially the same reasons set forth above, the Court rejects this argument. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079-80 & n.4 (8th Cir. 1999).

19

3M also asserted that Moldex Metric's claim of malicious prosecution should be dismissed under Minnesota's anti-SLAPP (strategic litigation against public participation) statutes, Minn. Stat. ch. 554 (2014).[2]  Moldex Metric countered that 3M had failed to satisfy 3M's burden of demonstrating Civil No. 12-611 constituted public participation, that Minnesota's anti-SLAPP statutes are unconstitutional, and that Moldex Metric presented clear and convincing evidence in support of its claim of malicious prosecution.

A party may file a "motion in a judicial proceeding to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation."  Minn. Stat. § 554.02, subd. 1; *see Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 841 (Minn. 2010) (noting moving party's "minimal" burden).  "'Public participation' means speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action."  Minn. Stat. § 554.01, subd. 6.  "[T]he responding party has the burden of proof, of going forward with the evidence, and of persuasion on the motion."  Minn. Stat. § 554.02, subd. 2(2); *see Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 229-30 (Minn. 2014); *Stengrim*, 784 N.W.2d at 841.  "[T]he court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and

---

[2]     Recognizing that Moldex Metric's claim of unfair competition does not seek damages, 3M abandoned its argument that the claim should be dismissed under Minnesota's anti-SLAPP statutes.  *See* Minn. Stat. § 554.01, subd. 3 (defining "judicial claim" or "claim" as "any civil lawsuit, cause of action, claim, cross-claim, counterclaim, or other judicial pleading or filing seeking damages for an alleged injury" and expressly excluding "a claim solely for injunctive relief").

convincing evidence that the acts of the moving party are not immunized from liability under section 554.03."  Minn. Stat. § 554.02, subd. 2(3); *see Leiendecker*, 848 N.W.2d at 230.  "Lawful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action is immune from liability, unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights."  Minn. Stat. § 554.03.

3M maintained that its "assertion of patent infringement claims in [Civil No. 12-611] indisputably constitutes an act to petition the government within the meaning of" Minnesota's anti-SLAPP statutes.  The Court concludes that 3M has satisfied its minimal burden of showing that Moldex Metric's claim of malicious prosecution materially relates to an act of 3M that involves public participation.  *See Leiendecker v. Asian Women United of Minn.*, Nos. A12-1978, A12-2015, 2014 WL 7011061, at *2-4 (Minn. Ct. App. Dec. 15, 2014) ("[N]othing indicates that the legislature intended for the moving party to first establish that no merit exists to the responding party's claims in order to invoke the anti-SLAPP statute.").[3]

Moldex Metric asserted that 3M is not immune from liability because Moldex Metric has clear and convincing evidence to support its claim of malicious prosecution.  *See Leiendecker*, 848 N.W.2d at 229.  To satisfy its burden, Moldex Metric relied on its motion for summary judgment of noninfringement in Civil No. 12-611, "as well as 3M's abandonment of the suit immediately before [Moldex Metric's] dispositive motions could

---

[3]   "[U]npublished opinions of the court of appeals are not precedential."  *Vlahos v. R & I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004); *see Skyline Vill. Park Ass'n v. Skyline Vill. L.P.*, 786 N.W.2d 304, 309 (Minn. Ct. App. 2010) ("Unpublished opinions are of persuasive value '[a]t best' and not precedential." (alteration in original)).

be heard and by 3M's pretextual assertion that it did so because Moldex [Metric] was too small a competitor to try to step on."  3M contended that Moldex Metric "failed to meet its burden to show with clear and convincing evidence that 3M's litigation conduct is not immune . . . for the same reasons that Moldex [Metric] has failed to plead plausible claims under the Sherman Act and for malicious prosecution."  The Court finds that Moldex Metric has satisfied its burden to show by clear and convincing evidence that 3M is not immune.[4]  *Cf. Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. Ct. App. 2006) (reciting elements of claim of malicious prosecution).

**C.   Unfair competition**

**1.   Patent litigation**

Insofar as Moldex Metric's claim of unfair competition is based on 3M's infringement action, 3M asserted that the claim should be dismissed because Moldex Metric failed to state a claim under the Sherman Act.  For the reasons set forth above, the Court rejects this argument.

**2.   False advertising**

Insofar as Moldex Metric's claim of unfair competition is based on 3M's alleged false advertising in connection with the marketing and sale of Combat Arms earplugs, 3M argued that the claim should be dismissed because the claim "rests on improperly suggesting that 3M might have omitted the zero [noise reduction rating] or included a higher [noise reduction rating] on the Combat Arms label, neither of which 3M can do

---

[4]   The Court expresses no opinion on Moldex Metric's assertion that Minnesota's anti-SLAPP statutes are unconstitutional.

under EPA mandates."  Because its publication of the noise reduction rating complies with federal law, 3M argued, it is not actionable under California's unfair competition law.  Finally, 3M asserted that Moldex Metric's claim is barred by the statute of limitations.  The Court declines to dismiss the claim on the basis of the first two arguments because Moldex Metric alleged that the noise reduction rating of zero is the result of tests that did not comply with applicable procedures.  The Court declines to dismiss the claim on the basis of the statute of limitations because 3M relied on matters outside the pleadings, which the Court excludes, *see* Fed. R. Civ. P. 12(d), to support its argument.  *See Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) ("As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." (internal quotation marks omitted)).

## III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.      3M's Motion to Dismiss the Complaint [Docket No. 22] is DENIED.

Dated: February 9, 2015

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge