# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MOLDEX-METRIC, INC., | Civil No. 14-cv-01821 (JNE/LFN) |
| Plaintiff, | |
| v. | |
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOLDEX'S MOTION TO COMPEL DISCOVERY FROM 3M

Plaintiff Moldex-Metric, Inc. ("Moldex") moves to compel discovery from

Defendants 3M Company and 3M Innovative Properties Company (collectively, "3M").

Specifically, Moldex asks the Court to compel 3M to produce discovery on four subjects:

1.  Discovery related to government procurement of 3M's Combat Arms earplugs and Moldex's BattlePlug earplugs and communications involving those earplugs with persons and entities involved in the JWOD (Javits-Wagner-O'Day) program;

2.  Documents regarding 3M's NRRs (noise reduction ratings) and NRR testing beyond 3M's limitation to only "the rating of zero that 3M publishes for its dual-ended version of 'Combat Arms' earplugs in the 'Yellow End-Open/Weapons Fire' mode";

3.  All documents 3M has referencing Moldex's BattlePlug earplugs; and

4.  A privilege log of documents relating to the filing of, continued maintenance of, and decisions to deliver covenants not to sue in 3M's prior patent lawsuit against Moldex.

12208280v1

First, Moldex moves to compel discovery about 3M's activities involving the Javits-Wagner-O'Day ("JWOD") government contracting program. As alleged in Moldex's Complaint, 3M misused this program for the purpose of blocking the U.S. military's purchases of Moldex's BattlePlug earplugs. Moldex's Requests for Production Nos. 3, 12, and 16 and Interrogatory No. 7 in this lawsuit and Moldex's Requests Nos. 40 and 44 in 3M's prior patent lawsuit seek discovery about this subject, and 3M objects to producing any responsive discovery.[1]

Second, Moldex moves to compel discovery necessary to prove its allegations that 3M used improper testing procedures to obtain false and misleading noise reduction ratings ("NRRs") on 3M's Combat Arms earplugs, which 3M sold to the U.S. military and which are used by American soldiers on the battlefield. Moldex's Requests for Production Nos. 2 and 13-20 and Moldex's Request No. 39 in 3M's prior patent lawsuit seek discovery about this subject, and 3M objects to producing all responsive documents. Instead, 3M agrees only to produce responsive documents about "the rating of zero that 3M publishes for its dual-ended version of 'Combat Arms' earplugs in the 'Yellow End-Open/Weapons Fire' mode."

3M objects to Moldex's discovery requests about both JWOD and NRRs based on relevance. 3M's objections must fail. The allegations in Moldex's Complaint relating to 3M's anticompetitive and illegal conduct are more than sufficient to establish Moldex's right to discovery about these subjects. 3M contends that the anticompetitive conduct

---

[1] The Parties agreed to use and seek supplementation of discovery in response to certain designated requests in 3M's prior lawsuit. Doc. No. 66 at 2, ¶ (a)(4).

alleged in Moldex's Complaint is limited to 3M's filing and prosecution of the prior patent lawsuit that 3M brought against Moldex in this Court. But Moldex's Complaint is not so limited, as illustrated by the explicit allegations in the Complaint, and as recognized by the Court in its denial of 3M's previous motion to dismiss. Accordingly, 3M should be compelled to provide complete discovery in response to Moldex's discovery requests regarding JWOD and NRRs.

Third, Moldex moves to compel the production of all 3M documents referencing Moldex's BattlePlug earplugs, as requested in Moldex's Request for Production No. 5. Moldex's BattlePlugs are at the very center of this lawsuit, which claims monopolization and attempted monopolization by 3M with respect to this product. 3M should be compelled to produce all 3M documents referencing BattlePlugs, rather than only those 3M "documents that refer to BattlePlug earplugs in connection with the Patent Litigation" (whatever that means), as 3M seeks to do.

Fourth and finally, Moldex moves to compel 3M to log all privileged documents relating to 3M's decisions to file, to continue maintenance of, and to deliver two covenants not to sue in 3M's prior patent lawsuit against Moldex that are responsive to Moldex's Requests for Production Nos. 1, 4-6, and 23-25. 3M refuses to do so unless Moldex does the same and also logs all privileged documents relating to 3M's prior patent lawsuit against Moldex. But 3M's documents about the specific decisions 3M made regarding the prior lawsuit are directly relevant to Moldex's malicious prosecution claim, which the Court has ruled is supported by clear and convincing evidence. 3M's documents are also relevant to Moldex's claim for monopolization and attempted

3

monopolization, which the Court ruled survived 3M's prior motion to dismiss. Specifically, 3M's documents are relevant to the element of 3M's subjective baselessness—i.e., 3M's motivations—in bringing and prosecuting 3M's prior lawsuit. Moldex's documents about 3M's prior lawsuit are not.

## I.     Factual and Procedural Background

Moldex filed its Complaint against 3M on June 5, 2014. Doc. No. 1. Moldex's Complaint asserts three claims: (1) Monopolization and Attempted Monopolization; (2) Unfair Competition; and (3) Malicious Prosecution. *Id*. at 1.

Moldex's monopolization claim alleges that 3M attempted to monopolize the market for selective attenuation earplugs by, among other anticompetitive conduct, doing the following: (a) bringing sham patent litigation claims against Moldex's BattlePlug earplugs (the "Prior Lawsuit") and dismissing those claims with prejudice right before the scheduled hearing on Moldex's motion for summary judgment (Compl. ¶¶ 14-28); (b) engaging in predatory conduct in connection with the JWOD program (Compl. ¶ 29); and (c) using improper testing procedures to assign misleading NRRs to 3M's Combat Arms Earplugs and advertising these NRRs to the U.S. military and others (Compl. ¶ 29). This same anticompetitive conduct gives rise to Moldex's unfair competition law claim.

3M responded to Moldex's Complaint with a motion to dismiss for alleged failure to state a claim. Doc. No. 24. A hearing on 3M's dismissal motion was held on October 30, 2014. Doc. No. 58. The Court issued an order denying 3M's motion in its entirety on February 9, 2015. Doc. No. 62.

12208280v1

### A.      3M's Sham Patent Claims in 3M's Prior Lawsuit

This Motion to Compel largely pertains to 3M's conduct involving the JWOD program and NRRs, but a brief overview of 3M's anticompetitive conduct in the Prior Lawsuit will help provide context. Shortly after Moldex began selling its BattlePlugs to the U.S. military, a market dominated by 3M for many years, 3M sued Moldex for allegedly infringing two of 3M's patents. Compl. at ¶¶ 15-16. 3M alleged that Moldex's BattlePlug earplug infringed 3M's U.S. Patent No. 6,070,693 ("the '693 Patent"), and that Moldex's earmuff products infringed 3M's U.S. Patent No. 7,036,157 ("the '157 Patent"). Despite the fact that 3M knew or should have known that its infringement claims were baseless, 3M pursued this sham litigation for more than a year, forcing Moldex to endure expensive litigation costs and fees and disrupting Moldex's business. *Id.* ¶ 28. One week before a summary judgment hearing on the '693 patent, after the parties had fully briefed the motion, 3M sent Moldex a covenant not to sue and then asked the Court to dismiss 3M's '693 claim. *Id.* ¶ 24. Months later, 3M sent Moldex another covenant not to sue, this time asking the Court to dismiss 3M's '157 claim. *Id.* ¶ 26. Both of 3M's patent claims in the Prior Lawsuit were dismissed with prejudice. *Id.* ¶¶ 24, 26.

In denying 3M's prior motion to dismiss Moldex's Complaint in this lawsuit, the Court held that Moldex "has satisfied its burden to show by clear and convincing evidence that 3M is not immune" from suit for malicious prosecution under Minnesota's anti-SLAPP (strategic litigation against public participation) statute. Doc. No. 62 at 21-22 (citing Minn. Stat. ch. 554 (2014)). The Court also held that Moldex sufficiently alleged

5

that the Prior Lawsuit was subjectively and objectively baseless. *Id*. at 16-17.

**B.     3M's Misuse of the JWOD Program**

Moldex's Complaint alleges that 3M misused the JWOD program to monopolize

the market:

> And even since dismissing its sham patent infringement claims, 3M has
> continued to use other predatory means to monopolize the market,
> including misusing the Javits-Wagner-O'Day ("JWOD") government
> contracting process, and otherwise competing unfairly.

Complaint, Doc. No. 1, at 2 ("Nature of Action"). Moldex's Complaint further alleges

that 3M's misuse of the JWOD program has included misleading assertions about

Moldex's BattlePlug earplug:

> Furthermore, 3M has used, and continues to use, predatory conduct in its
> efforts to sell into the Relevant Product Market(s). In this regard, 3M has
> attempted to use a federal program designed to further the use of disabled
> workers, called JWOD, to exclude Moldex from said Markets, by engaging
> in misleading assertions concerning BattlePlug and a comparison of it to
> Combat Arms.

*Id.* ¶ 29. In denying 3M's Motion to Dismiss, the Court quoted these allegations. Order

Denying 3M's Motion to Dismiss, Doc. No. 62, at 10.

Based on publicly available information, the relevant facts appear to be that 3M

partners with New Dynamics Corporation (now known as Access: Supports for Living,

Inc.) to sell various 3M products to the U.S. government. As detailed in an August 30,

2012 press release, New Dynamics is a New York corporation that assembles, packages,

and distributes 3M products through its government and commercial contracts, pursuant

to a co-branding agreement. Ex. A. New Dynamics also works with the U.S. AbilityOne

Commission, an independent federal agency established by the Javits-Wagner-O'Day Act

("JWOD"), 41 U.S.C. § 8501 et seq. *Id.* The AbilityOne Commission implements JWOD regulations by requiring many U.S. federal agencies to purchase equipment from third-party vendors that employ disabled individuals.

AbilityOne has designated nonprofit organizations to assist it with enforcing JWOD regulations, including the National Industries for the Severely Handicapped ("NISH," now known as SourceAmerica). NISH monitors the purchases of federal agencies to ensure that they do not purchase products that are "essentially the same" as AbilityOne-designated products. According to the SourceAmerica website, "New Dynamics Corporation works closely with SourceAmerica, a national nonprofit agency whose mission is to create employment opportunities for people with significant disabilities by securing Federal contracts through the AbilityOne Program." Ex. B.

Through a Freedom of Information Act ("FOIA") request, Moldex has learned the following. NISH contacted the General Services Administration, a federal agency, on March 20, 2013—only 8 days after 3M delivered to Moldex a covenant not to sue on the '693 patent in the Prior Lawsuit on March 12, 2013—for the purpose of trying to get AbilityOne to classify Moldex's BattlePlug earplugs as essentially the same ("ETS") as 3M's Combat Arms earplugs so there would be "broader government requirements." *See* Ex. C. An ETS designation would have meant that Moldex's competing BattlePlug earplugs could not be purchased by the government instead of 3M's Combat Arms earplugs under the JWOD program. *See, e.g.*, Ex. D at 3 ("Federal customer is required to buy AbilityOne products and cannot purchase commercial equivalents determined Essentially the Same (ETS)."). Thus, had the ETS request been approved, Moldex would

have been blocked from selling its BattlePlugs to the U.S. military or any other US

government entity. Moldex expended time and resources defending against this baseless

request.

**C.    False and Misleading NRRs Assigned to 3M's Combat Arms Earplugs**

Moldex's Complaint also alleges that 3M misled the U.S. military, and the general

public, by using improper testing procedures to generate false and misleading NRRs for

the dual-ended version of 3M's Combat Arms earplugs:

> For example, 3M continues to market its dual-ended Combat Arms earplug
> with a "0" NRR rating based on ratings by its own inhouse personnel. This
> "0" rating is highly misleading and anticompetitive, and it creates a false
> expectation in wearers that, in open position, they can hear critical sounds
> such as commands, approaching vehicles or combatants without any
> impairment. Moldex brings this lawsuit, therefore, in order to seek
> recompense for the harm it has suffered as a result of 3M's anticompetitive
> and monopolistic practices, and for injunctive relief to protect it against
> 3M's on-going predatory conduct.

Complaint, Doc. No. 1, at 2-3 ("Nature of Action").

Moldex's Complaint further alleges the following related to 3M's misleading

NRRs:

> In addition, 3M continues to use misleading NRR ratings for its hearing
> protection products, based on self-testing it does in its own labs.
> Specifically, 3M continues to sell its dual-ended version of Combat Arms
> with an NRR rating of zero in the open or unblocked position, thus
> suggesting that the open earplug will not in any way impair the sounds one
> hears from fellow soldiers or combatants in the field. This zero rating is
> based upon an improper testing effort, not in compliance with proper
> procedures. Indeed, in the reported underlying test, 3M basically concluded
> that the Combat Arms earplug would actually enhance the sound level of
> the wearer as compared to wearing no earplug at all. Although 3M has
> asserted that the "0" NRR rating is not a violation of the Noise Control Act,
> 42 U.S.C. § 4901, because, 3M claims, an understatement of sound
> attenuation is not prohibited by that Act, it is nonetheless the case that this

advertised rating is intended to inform the military that Combat Arms does not diminish the ability to hear commands, or approaching combatants or vehicles. As a result, the "0" NRR rating is highly misleading, misleads users of the plug, and anticompetitive. Moldex, on the other hand, elected over 15 years ago to test all of its hearing protection products in an independent, industry-recognized audiology laboratory to assure that its advertised NRR ratings are accurate.

Complaint, Doc. No. 1, at 13-14, ¶ 29.

As noted above, in denying 3M's motion to dismiss Moldex's Complaint, the

Court specifically referenced these allegations in the Complaint:

In addition to 3M's alleged misconduct in Civil No. 12-611, . . . Moldex Metric also alleged that 3M uses misleading noise reduction ratings for its hearing protection products. In particular, 3M sells its "dual-ended version of Combat Arms with [a noise reduction rating] of zero in the open or unblocked position, thus suggesting that the open earplug will not in any way impair the sounds one hears from fellow soldiers or combatants in the field." The zero rating is based on tests that do not comply with proper procedures.

Order Denying 3M's Motion to Dismiss, Doc. No. 62, at 10 (quoting Moldex's

Complaint in the Court's summary of Moldex's allegations); *see also id.* at 22 (holding

that Moldex's Unfair Competition claim based on 3M's false advertising survived

dismissal because "Moldex Metric alleged that the noise reduction rating of zero is the

result of tests that did not comply with applicable procedures").

A NRR is a measurement called for by certain measurement standards and by

certain federal regulations that have adopted those measurement standards. The NRR

measures an earplug's attenuation of continuous noise, not impulsive noise like an

explosion. 40 C.F.R. § 211.204.

3M's Combat Arms earplugs have two modes: a "closed" mode that operates like

a traditional earplug by blocking all sound, and an "open" mode with a sound channel that attenuates gunfire and explosions while at the same time allowing the user to hear spoken commands and other desired nearby non-impulsive sounds. Compl. ¶¶ 8, 14. 3M continues to advertise that the dual-ended version of its Combat Arms earplugs have a zero NRR in the open mode, thereby creating a false expectation that in open mode, 3M's earplugs do not affect the ability to hear commands, approaching vehicles or combatants. Compl. ¶ 29. This rating represents the amount of sound attenuation perceived by a test group, when tested under certain required conditions, and adjusted pursuant to the test methodology. As alleged in Moldex's Complaint, these NRR tests can be unfairly biased either willfully or unwittingly, by tester error, subject anomaly, and/or tester bias, resulting in false or misleading NRRs being assigned to hearing protection products. Compl. ¶ 29. There is evidence that the zero-NRR listed for the dual-ended version of 3M's Combat Arms earplug is erroneous. For example, a single-ended version of 3M's Combat Arms earplug lists the NRR as 7 in the open position. Ex. E at 2. The single-ended Combat Arms earplugs appear to use the same filter as the dual-ended Combat Arms earplugs, though, so the NRRs should be the same as or similar.

   **D.     3M's Inadequate Responses to Moldex's Discovery Requests**

   **1.     Government Procurement and JWOD Program (Requests Nos. 3, 12, and 16; Interrogatory No. 7; and Prior Requests Nos. 40 and 44)**

   Moldex served the following discovery requests to 3M relating to government procurement and the JWOD program: Requests Nos. 3, 12 and 16 and Interrogatory No. 7 in this lawsuit; and Requests Nos. 40 and 44 in 3M's Prior Lawsuit. 3M objected to

producing documents responsive to these requests unless such documents also relate to

3M's Prior Lawsuit or to the "3M Published Zero NRR," as 3M has defined that term.[2]

**Request No. 3:** Moldex's Request No. 3 requested the following documents

related to Moldex's allegations about 3M's activities involving the U.S. government's

procurement process for 3M's Combat Arms earplugs:

> All documents that reference or relate to efforts by you or New Dynamics to
> have the U.S. AbilityOne Commission move certain Combat Arms earplugs
> from the "C" procurement list to the "B" procurement list or "A"
> procurement list, or efforts by you or New Dynamics to have the U.S.
> AbilityOne Commission designate BattlePlug earplugs or Sonic Defender
> earpieces as essentially the same as Combat Arms Earplugs, including but
> not limited to, all documents that reference the potential effect on Battleplug
> earplugs or Sonic Defender earpieces were they designated by the U.S.
> AbilityOne Commission to be essentially the same as Combat Arms earplugs.

Ex. F at 5.

3M objected to Request No. 3 on relevance and scope with respect to time, and

3M refused to produce any responsive documents based on 3M's objections:

> In addition to the General Objections, 3M objects to Request No. 3 on the
> grounds that it seeks documents (1) that are not relevant to the subject matter
> of the Complaint, and (2) without reference to any time frame. Moldex has
> not asserted any claim in this matter as to which any documents that are the
> subject of this request would be relevant. 3M declines to produce documents
> on these bases.

*Id.*[3]

---

[2] As discussed below in the next section, 3M defines "3M Published Zero NRR" as "the rating of zero that 3M publishes for its dual-ended version of 'Combat Arms' earplugs in the 'Yellow End-Open/Weapons Fire' mode. 3M seeks to limit all of its document production accordingly.

[3] 3M has made corresponding objections with respect to proposed search terms to be used for gathering electronic documents in 3M's possession for production to Moldex, including, for example, the terms "JWOD," "NISH," "AbilityOne," "essentially the

12208280v1

**Request No. 12:** Moldex's Request No. 12 requested "[a]ll documents that reference or refer to both (1) the Javits-Wagner-O'Day Act and (2) Combat Arm earplugs, the accused BattlePlug earplugs or Moldex." Ex. G at 7.

3M objected to Request No. 12 based on relevance, and 3M refused to produce any responsive documents:

> In addition to the General Objections, 3M objects to Request No. 12 on the grounds that it seeks documents that are not relevant to the claims of the Complaint. Moldex has not asserted any claim in this matter as to which any documents that are the subject of this request would be relevant. 3M declines to produce documents on these bases.

*Id.*

**Request No. 16:** Moldex's Request No. 16 requested "[a]ll documents that constitute, reference, relate or pertain to your communications with any branch of the U.S. military or other U.S. government employee, agent or agency, from 2010 to the present, regarding the Lawsuit, Moldex, and/or BattlePlug earplugs." *Id.* at 10.

3M objected to Request No. 16 on multiple grounds, including relevance, and limited 3M's production to only "documents relating to communications with any branch of the U.S. military or other U.S. government employee, agent or agency regarding the Patent Litigation":

> In addition to the General Objections, 3M objects to Request No. 16 on the grounds that it (1) is overbroad and burdensome and (2) seeks documents concerning communications with the U.S. government that are not relevant to the claims of the Complaint.
>
> 3M further objects to this request on the grounds that it is duplicative

same," and the names of United States employees with whom New Dynamics and 3M corresponded regarding government procurement. Moerke Decl. ¶ 13.

of Request No. 34 from Moldex's First Requests for Production of Documents dated May 18, 2012 in the Patent Litigation and Moldex's Requests To Supplement Responses in the Patent Litigation dated April 3, 2015 ("All documents and things referring or relating to the communications between 3M and any entity other than Moldex regarding the patents-in-suit, or the alleged infringement by Moldex of the patents-in-suit.").

Subject to and without waiving the foregoing, 3M will produce documents relating to communications with any branch of the U.S. military or other U.S. government employee, agent or agency regarding the Patent Litigation, to the extent 3M locates any such documents within its possession that have not already been produced in connection with the Patent Litigation and are not protected against disclosure.

*Id*. at 11. Thus, 3M seeks to avoid production of communications with the U.S. government regarding Moldex or BattlePlugs, but not regarding the Prior Lawsuit.

**Interrogatory No. 7:** Moldex's Interrogatory No. 7 asked 3M to "[i]dentify all 3M employees and all other persons known to 3M involved in any attempt to have the U.S. AbilityOne Commission designate Moldex's BattlePlug earplugs as essentially the same as Combat Arms earplugs." Ex. H at 6.

3M objected based on relevance and refused to answer this interrogatory:

In addition to the General Objections, 3M objects to Interrogatory No. 3 on the grounds that it seeks information that is not relevant to the subject matter of the Complaint. Moldex has not asserted any claim in this matter as to which any information that is the subject of this interrogatory would be relevant. 3M declines to respond on this basis.

*Id.*

**Prior Request No. 40:** 3M has also made corresponding objections with respect to Moldex's Requests for 3M to Supplement Document Requests in the Patent

Litigation.[4] Ex. I. Moldex's Document Request No. 40 in 3M's Prior Lawsuit requested

documents related to the JWOD and AbilityOne programs:

> All documents and things relating to 3M's efforts regarding obtaining Javits-Wagner-O'Day ("JWOD") or AbilityOne Program certification for its hearing protection products that 3M contends practice the patents-in-suit.

*Id.* at 5-6.

3M objected based on relevance and refused to produce any supplemental

documents responsive to Request No. 40:

> In addition to the General Objections, 3M objects to Moldex's request that 3M supplement its response to Request No. 40 on the grounds that it seeks documents that are protected against disclosure by the attorney-client privilege and/or the work product doctrine, and are not relevant to the subject matter of Moldex's Complaint in the pending lawsuit. Moldex has not asserted any claim in this matter as to which any documents that are the subject of this request would be relevant. 3M declines to produce documents on these bases.

*Id.* at 6.

Moldex's Document Request No. 44 served in 3M's Prior Lawsuit requested

documents related to certain communications between 3M and New Dynamics:

> All documents and things relating to communications between 3M and New Dynamics Corporation regarding Moldex, the patents-in-suit, the Accused Products, any 3M product that 3M contends practices one or both of the patents-in-suit, or JWOD or AbilityOne Program certification related to any of these.

*Id*. at 6.

3M objected based on relevance and limited 3M's supplemental production to

---

[4] The Parties agreed to this mechanism for using discovery from 3M's Prior Lawsuit while also seeking supplementation of such discovery as needed. Doc. No. 66 at 2, ¶ (a)(4).

communications with 3M regarding the Prior Lawsuit and the "3M Published Zero NRR":

> In addition to the General Objections, 3M objects to Moldex's request that 3M supplement its response to Request No. 44 on the grounds that it seeks documents that are protected against disclosure by the attorney-client privilege and/or the work product doctrine, and are not relevant to the subject matter of Moldex's Complaint in the pending lawsuit.

> Subject to and without waiving the foregoing, 3M will produce responsive documents that 3M did not produce in the Patent Litigation, to the extent 3M locates or has located any such documents within its possession and they are not protected against disclosure, that relate to 3M's communications with New Dynamics Corporation regarding the Patent Litigation or the 3M Published Zero NRR.

*Id*. at 6-7.

### 2.    NRRs Other Than the "3M Published Zero NRR" (Requests Nos. 2 and 13-20 and Prior Request No. 39)

Moldex has served the following discovery requests to 3M regarding NRRs: Request Nos. 2 and 13-20 in this lawsuit; and Request No. 39 in 3M's Prior Lawsuit. 3M has objected to producing documents responsive to these requests unless such documents also reference 3M's Prior Lawsuit or the "3M Published Zero NRR," as 3M has defined that term.

**Request No. 2:** Moldex's Document Request No. 2 requested the following documents related to Moldex's allegations about 3M's NRRs:

> All documents that constitute, reference, relate or pertain to your communications with any branch of the U.S. military or other U.S. government employee, agent or agency regarding Noise Reduction Ratings, including communications regarding the zero NRR on your Generation 1 Combat Arms earplugs.

Ex. F at 4.

3M objected to Request No. 2 on relevance and two other grounds:

> In addition to the General Objections, 3M objects to Request No. 2 on the grounds that it seeks documents (1) concerning noise reduction ratings and products that are not relevant to the subject matter of Moldex's Complaint, and (2) without reference to any time frame. The only Noise Reduction Rating published by 3M that Moldex challenges in its Complaint is the rating of zero that 3M publishes for its dual-ended version of "Combat Arms" earplugs in the "Yellow End-Open/Weapons Fire" mode (the "3M Published Zero NRR").

> 3M further objects to Request No. 2 to the extent it is duplicative of Request No. 39 of Moldex's Second Requests for Production of Documents dated March 8, 2013 in the Patent Litigation ("All documents and things relating to 3M's noise reduction rating testing and reporting for any Accused Products or any 3M products that 3M contends practice the patents-in-suit.").

> Subject to and without waiving the foregoing, to the extent 3M locates or has located any responsive documents within its possession that constitute, reference or relate or pertain to its communications regarding the 3M Published Zero NRR that are not duplicative of documents previously produced and not privileged, it will produce such documents as responsive to Request No. 2.

*Id.* at 4-5.

As shown by 3M's response to Request No. 2, 3M has agreed only to produce documents regarding the term "3M Published Zero NRR," as defined by 3M to be "the rating of zero that 3M publishes for its dual-ended version of 'Combat Arms' earplugs in the 'Yellow End-Open/Weapons Fire' mode." *Id.* at 4. This would limit 3M's production of responsive documents related to NRR testing in four ways: (1) to only Combat Arms earplugs rather than all 3M earplugs; (2) to only the dual-ended version of 3M's Combat Arms earplugs rather than all versions of Combat Arms earplugs; (3) to only the dual-ended version of 3M's Combat Arms earplugs in the open mode rather than in both the

open mode and closed mode; and (4) to only NRR testing that resulted in a zero NRR.

**Document Request No. 13:** Moldex's Request No. 13 requested "[a]ll documents that constitute, reference, relate or pertain to all iterations, drafts, and versions of your NRR testing protocols with regard to your hearing protection products, including the Combat Arms earplugs, from 1990 to the present." Ex. G at 7.

3M objected to Request No. 13 based on time period and relevance and limited 3M's response to "the 3M Published Zero NRR":

> In addition to the General Objections, 3M objects to Request No. 13 on the grounds that (1) the time period it purports to cover is overly broad, and (2) it seeks documents concerning noise reduction ratings and products that are not relevant to the claims of the Complaint. The only Noise Reduction Rating published by 3M that Moldex challenges in its Complaint is the 3M Published Zero NRR.

> 3M further objects to this request on the grounds that it is duplicative of Request No. 39 of Moldex's Second Request for Production of Documents dated February 6, 2013 in the Patent Litigation and Moldex's Requests To Supplement Responses in the Patent Litigation dated April 3, 2015 ("All documents and things relating to 3M's noise reduction rating testing and reporting for any Accused Products or any 3M products that 3M contends practice the patents-in-suit.").

> Subject to and without waiving the foregoing, 3M will produce documents pertaining to NRR testing protocols related to the 3M Published Zero NRR or 3M's procedures for testing and calculating Noise Reduction Ratings that were utilized in connection with determining the 3M Published Zero NRR, to the extent 3M locates any such documents within its possession that have not already been produced in connection with the Patent Litigation and are not protected against disclosure.

*Id.* at 8.

**Request No. 14:** Moldex's Document Request No. 14 requested documents regarding NRR testing:

All documents that refer or relate to any NRR testing and/or retesting done on your Combat Arms earplugs, including but not limited to matters such as: test results, deficiencies or defects in such testing, the test subjects you used for testing your Combat Arms earplugs. Without limiting the foregoing, this Request also seeks all documents that describe, refer, or relate to any hearing impairments suffered by any such test subject used by you for such testing, from 2005 to the present.

*Id.*

3M objected to Request No. 14 based on time period and relevance and limited

3M's response to "the 3M Published Zero NRR":

In addition to the General Objections, 3M objects to Request No. 14 on the grounds that (1) the time period is overly broad, and (2) it seeks documents concerning noise reduction ratings and products that are not relevant to the claims of the Complaint. The only Noise Reduction Rating published by 3M that Moldex challenges in its Complaint is the 3M Published Zero NRR.

3M further objects to this request on the grounds that it is duplicative of Request No. 39 of Moldex's Second Request for Production of Documents dated February 6, 2013 in the Patent Litigation and Moldex's Requests to Supplement Responses in the Patent Litigation dated April 3, 2015 ("All documents and things relating to 3M's noise reduction rating testing and reporting for any Accused Products or any 3M products that 3M contends practice the patents-in-suit.").

Subject to and without waiving the foregoing, 3M will produce documents pertaining to the 3M Published Zero NRR or 3M's procedures for testing and calculating Noise Reduction Ratings that were utilized in connection with determining the 3M Published Zero NRR, to the extent 3M locates any such documents within its possession that have not already been produced in connection with the Patent Litigation and are not protected against disclosure.

*Id*. at 9.

**Request No. 15:** Moldex's Document Request No. 15 requested communications

with the U.S. government regarding 3M's Combat Arms earplugs, including

communications regarding NRRs:

> All documents that constitute, reference, relate or pertain to your communications with any branch of the U.S. military or other U.S. government employee, agent or agency, from 2005 to the present, regarding your Combat Arms earplugs, including but not limited to, documents that constitute, reference, relate or pertain to the Noise Reduction Ratings assigned to your Combat Arms earplugs.

*Id.*

3M objected to Request No. 15 based on time period and relevance and limited

3M's response to "the 3M Published Zero NRR":

> In addition to the General Objections, 3M objects to Request No. 15 on the grounds that (1) the time period is overly broad, and (2) it seeks documents concerning communications with the U.S. government that are not relevant to the claims of the Complaint.

> 3M further objects to this request on the grounds that it is duplicative of Request No. 2 of Moldex's First Request for Production of Documents dated February 20, 2015 and Moldex's Requests to Supplement Responses in the Patent Litigation dated April 3, 2015 ("All documents that constitute, reference, relate or pertain to your communications with any branch of the U.S. military or other U.S. government employee, agent or agency regarding Noise Reduction Ratings, including communications regarding the zero NRR on your Generation 1 Combat Arms earplugs.") and Request No. 39 of Moldex's Second Request for Production of Documents dated February 6, 2013 in the Patent Litigation and Moldex's Requests To Supplement Responses in the Patent Litigation dated April 3, 2015 ("All documents and things relating to 3M's noise reduction rating testing and reporting for any Accused Products or any 3M products that 3M contends practice the patents-in-suit.").

> Subject to and without waiving the foregoing, 3M will produce documents relating to communications with any branch of the U.S. military or other U.S. government employee, agent or agency concerning (1) the Patent Litigation, (2) the 3M Published Zero NRR, or (3) 3M's procedures for testing and calculating Noise Reduction Ratings that were utilized in connection with determining the 3M Published Zero NRR, to the extent 3M locates any such documents within its possession that have not already been produced in connection with the Patent Litigation and are not protected

19

against disclosure.

*Id*. at 9-10.

     **Request No. 16:** As indicated above with respect to JWOD, Moldex's Document

Request No. 16 requested "[a]ll documents that constitute, reference, relate or pertain to

your communications with any branch of the U.S. military or other U.S. government

employee, agent or agency, from 2010 to the present, regarding the Lawsuit, Moldex,

and/or BattlePlug earplugs." *Id*. at 10. 3M objected to Request No. 16 based on time

period and relevance and limited 3M's response to "the 3M Published Zero NRR." *Id*. at

11.

     **Request No. 17:** Moldex's Document Request No. 17 requested "[d]ocuments

sufficient to show all reports and studies, or focus groups you conducted, referring or

relating to zero NRRs, BattlePlug earplugs, or Combat Arms earplugs." *Id*. at 11.

     3M objected to Request No. 17 based on relevance and limited 3M's response to

"the 3M Published Zero NRR":

> In addition to the General Objections, 3M objects to Request No. 17
> on the grounds that it seeks documents concerning noise reduction ratings
> and products that are not relevant to the claims of the Complaint. The only
> Noise Reduction Rating published by 3M that Moldex challenges in its
> Complaint is the 3M Published Zero NRR.
>
> 3M further objects to this request on the grounds that it is duplicative
> of No. 39 of Moldex's Second Request for Production of Documents dated
> February 6, 2013 in the Patent Litigation and Moldex's Requests To
> Supplement Responses in the Patent Litigation dated April 3, 2015 ("All
> documents and things relating to 3M's noise reduction rating testing and
> reporting for any Accused Products or any 3M products that 3M contends
> practice the patents-in-suit.").
>
> Subject to and without waiving the foregoing, 3M will produce

documents relating to reports, studies, or focus groups 3M conducted in connection with the 3M Published Zero NRR or 3M's procedures for testing and calculating Noise Reduction Ratings that were utilized in connection with determining the 3M Published Zero NRR, to the extent 3M locates any such documents within its possession that have not already been produced in connection with the Patent Litigation and are not protected against disclosure.

*Id*. at 11-12.

  **Request No. 18:** Moldex's Document Request No. 18 requested documents about

the zero NRR on dual-ended Combat Arms earplugs:

   All documents that reference the zero NRR on the dual-ended versions of the Combat Arms earplugs, including but not limited to documents that discuss: how the zero NRR was derived, the NRR testing procedures used, the accuracy of the zero NRR, and the potential for the zero NRR to mislead users.

*Id*. at 12.

  3M objected to Request No. 18 and limited 3M's response to "the 3M Published

Zero NRR":

   In addition to the General Objections, 3M objects to Request No. 18 on the grounds that it is overly broad and burdensome.

   3M further objects to this request on the grounds that it is duplicative of Request No. 39 of Moldex's Second Request for Production of Documents dated February 6, 2013 in the Patent Litigation and Moldex's Requests To Supplement Responses in the Patent Litigation dated April 3, 2015 ("All documents and things relating to 3M's noise reduction rating testing and reporting for any Accused Products or any 3M products that 3M contends practice the patents-in-suit.").

   Subject to and without waiving the foregoing, 3M will produce documents sufficient to show how the 3M Published Zero NRR was derived, the NRR testing procedures used in connection with determining, and the accuracy of the 3M Published Zero NRR, and documents, if any, referring to the potential for the 3M Published Zero NRR to mislead users of Combat Arms earplugs, to the extent 3M locates any such documents

within its possession that have not already been produced in connection
with the Patent Litigation and are not protected against disclosure.

*Id*. at 12-13.

**Request No. 19:** Moldex's Document Request No. 19 requested "[d]ocuments

sufficient to show all communications you received from any of your present or former

employees or consultants involving criticism of your NRR testing protocols, including

the NRR testing you conducted on your Combat Arms earplugs." *Id*. at 13.

3M objected to Request No. 19 based on relevance and limited 3M's response to

"the 3M Published Zero NRR":

> In addition to the General Objections, 3M objects to Request No. 19
> on the grounds that it seeks documents concerning noise reduction ratings
> that are not relevant to the claims of the Complaint. The only Noise
> Reduction Rating published by 3M that Moldex challenges in its Complaint
> is the 3M Published Zero NRR.
>
> 3M further objects to this request on the grounds that it is duplicative
> of Request No. 39 of Moldex's Second Request for Production of
> Documents dated February 6, 2013 in the Patent Litigation and Moldex's
> Requests To Supplement Responses in the Patent Litigation dated April 3,
> 2015 ("All documents and things relating to 3M's noise reduction rating
> testing and reporting for any Accused Products or any 3M products that 3M
> contends practice the patents-in-suit.").
>
> Subject to and without waiving the foregoing, 3M will produce
> documents sufficient to show criticism, if any, of 3M's procedures for
> testing and calculating Noise Reduction Ratings that were utilized in
> connection with determining the 3M Published Zero NRR, to the extent 3M
> locates any such documents within its possession that have not already been
> produced in connection with the Patent Litigation and are not protected
> against disclosure.

*Id*. at 13-14.

**Request No. 20:** Moldex's Document Request No. 20 requested organizational

charts related to NRRs: "Organizational charts, from 2005 to the present, sufficient to identify all persons in the division or segment of your business relating to the NRR testing of your hearing protection products." *Id.* at 14.

3M objected to Request No. 20 based on time period and relevance, and 3M limited 3M's response to "the 3M Published Zero NRR":

> In addition to the General Objections, 3M objects to Document Request No. 20 on the grounds that (1) the time period is overly broad and (2) it seeks documents concerning the testing of noise reduction ratings that are not relevant to the claims of the Complaint. The only Noise Reduction Rating published by 3M that Moldex challenges in its Complaint is the 3M Published Zero NRR.
>
> Subject to and without waiving the foregoing, 3M will produce documents sufficient to identify the persons at 3M responsible for the NRR testing that resulted in the 3M Published Zero NRR, to the extent 3M locates any such documents within its possession that have not already been produced in connection with the Patent Litigation and are not protected against disclosure.

*Id.*

**Prior Request No. 39:** 3M has also made corresponding objections with respect to Moldex's Requests for 3M to Supplement Document Requests in the Patent Litigation. Moldex's Document Request No. 39 in 3M's prior patent suit requested documents related to NRRs with respect to the patents asserted by 3M in that suit: "All documents and things relating to 3M's noise reduction rating testing and reporting for any Accused Products or any 3M products that 3M contends practice the patents-in-suit." Ex. I at 5.

3M objected to this request for supplementation, and 3M limited 3M's response to only the "3M Published Zero NRR":

> In addition to the General Objections, 3M objects to Moldex's request

23

that 3M supplement its response to Request No. 39 on the grounds that it seeks documents that are protected against disclosure by the attorney-client privilege and/or the work product doctrine, and concerning noise reduction ratings and products that are not relevant to the subject matter of Moldex's Complaint in the pending lawsuit. The only Noise Reduction Rating published by 3M that Moldex challenges in that Complaint is the rating of zero that 3M publishes for its dual-ended version of "Combat Arms" earplugs in the "Yellow End–Open/Weapons Fire" mode (the "3M Published Zero NRR").

Subject to and without waiving the foregoing, 3M will produce all documents that 3M did not produce in the Patent Litigation regarding (a) the rating of zero that 3M publishes for the 3M Published Zero NRR, or (b) 3M's procedures for testing and calculating Noise Reduction Ratings that were utilized in connection with determining the 3M Published Zero NRR, and not protected against disclosure.

*Id.*

### 3. Documents Referencing Moldex's BattlePlug Earplugs (Request No. 5)

**Request No. 5:** Moldex's Request No. 5 requested "[a]ll documents that refer to Moldex's accused BattlePlug earplugs." Ex. G at 3.

3M objected to this request and limited 3M's response to "documents that refer to BattlePlug earplugs in connection with the Patent Litigation":

In addition to the General Objections, 3M objects to Request No. 5 on the grounds that it (1) is overly broad and burdensome, (2) seeks documents not relevant to the claims in the complaint and (3) seeks documents and information that are protected against disclosure by the attorney-client privilege and/or the work product doctrine. To the extent relevant responsive documents exist that are not protected against disclosure, those documents are already within Moldex's possession or control through discovery and correspondence between the parties in the Patent Litigation.

Subject to and without waiving the foregoing, 3M will produce documents that refer to BattlePlug earplugs in connection with the Patent Litigation to the extent 3M locates any such documents within its possession that have not already been produced in connection with the

Patent Litigation and are not protected against disclosure.

*Id*. at 3-4.

### 4.     Privilege Log (Requests Nos. 1, 4-6, 23-25)

3M has objected to multiple document requests that relate to 3M's motivations regarding 3M's Prior Lawsuit—Requests Nos. 1, 4-6, 23-25—on the ground of attorney-client privilege and/or work-production protection. 3M has also indicated during meet-and-confer teleconferences between counsel for the parties that 3M will only agree to log responsive documents constituting or referencing privileged communications about 3M's Prior Lawsuit on a privilege log if Moldex also agrees to log responsive documents constituting or referencing privileged communications about 3M's Prior Lawsuit. Moerke Decl. ¶ 13.

## II.    Argument

### A.     Moldex's Claims Are Not Limited to 3M's Conduct in the Prior Patent Suit and Instead Encompass All Alleged Predatory and Anticompetitive Conduct by 3M.

3M contends that Moldex's lawsuit is merely a "case about a case." Moerke Decl. ¶ 15. Based on this contention, 3M further contends that Moldex's discovery requests are overbroad and irrelevant to the issues supposedly at hand. 3M's contentions are faulty.

While 3M's baseless Prior Lawsuit is a significant part of Moldex's monopolization and unfair competition claims and allegations, Moldex's claims are not limited to 3M's conduct in bringing and prosecuting that lawsuit. Moldex's Complaint explicitly alleges that 3M engaged in anti-competitive conduct by misusing the U.S. government's contracting process via the JWOD program and by misrepresenting NRRs

on the Combat Arms earplugs that 3M sells to the U.S. government. *See* Complaint, Doc.

No. 1, at 2-3, 13-14.

3M already attempted to limit Moldex's claims to its conduct in the Prior Lawsuit

in 3M's earlier motion to dismiss, but the Court rejected 3M's arguments. 3M's motion to

dismiss wrongly claimed that "Moldex's core allegation" was that 3M's prior patent suit

was baseless and that "each of [Moldex's] three claims is predicated in whole . . or in

part . . . on this central allegation." Doc. No. 24 at 7. 3M even went so far as to wrongly

claim that "Moldex takes what is effectively an untimely request for

fees incurred in the Patent Litigation and attempts to recast it here as an antitrust, treble

damages claim." *Id*. at 8; *see also id.* at 11 n.5 (claiming that "Moldex now seeks to

recast as an antitrust claim what is actually an untimely request for fees").

The Court rejected 3M's arguments and denied 3M's motion to dismiss. *See

generally* Doc. No. 62. In doing so, the Court acknowledged that the allegations in

Moldex's Complaint include predatory activities by 3M well beyond 3M's conduct in

3M's Prior Lawsuit, and that these activities include 3M's activities with respect to

government contracting:

> *In addition to 3M's alleged misconduct in Civil No. 12-611*, Moldex Metric
> alleged that 3M "attempted to use a federal program designed to further the
> use of disabled workers . . . to exclude Moldex [Metric] from [the alleged
> markets] by engaging in misleading assertions concerning BattlePlug and a
> comparison of it to Combat Arms."

Order Denying Motion to Dismiss, Doc. No. 62, at 10 (emphasis added) (quoting

Moldex's Complaint in the Court's summary of Moldex's allegations).

The Court also recognized that the allegations in Moldex's Complaint extend to

misleading NRRs for 3M's Combat Arms earplugs:

> Moldex Metric also alleged that 3M uses misleading noise reduction ratings for its hearing protection products. In particular, 3M sells its "dual-ended version of Combat Arms with [a noise reduction rating] of zero in the open or unblocked position, thus suggesting that the open earplug will not in any way impair the sounds one hears from fellow soldiers or combatants in the field." The zero rating is based on tests that do not comply with proper procedures.

*Id*. (quoting Moldex's Complaint in the Court's summary of Moldex's allegations).

Yet 3M still seeks to avoid providing discovery relevant to Moldex's claims by repeating the same arguments rejected by the Court in its denial of 3M's motion to dismiss. 3M's arguments should be rejected once again, and 3M should be compelled to produce discovery responsive to Moldex's requests regarding 3M's activities involving the JWOD government contracting process and the NRRs 3M assigns to its hearing-protection products.

### B.    3M Should Be Compelled to Produce Documents Related to Government Procurement and the JWOD Program.

3M's relevance objection to Moldex's discovery requests related to government procurement and the JWOD program—i.e., Document Requests Nos. 3, 12, and 16, Interrogatory No. 7; and Prior Requests Nos. 40 and 44—is based on 3M's incorrect contention that these requests seek documents "not relevant to the subject matter of the Complaint." *E.g*., Ex. F at 5. As shown above, 3M's argument is plainly incorrect based on explicit allegations in Moldex's Complaint. In addition, the Court has already rejected 3M's arguments attempting to limit Moldex's claims in this action to 3M's conduct in the Prior Lawsuit. *See* Order Denying 3M's Motion to Dismiss, Doc. No. 62, at 10, 23.

3M should be compelled to produce discovery responsive to Moldex's discovery requests related to government procurement and the JWOD program. Rule 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. These discovery rules "'are to be accorded a broad and liberal treatment.'" *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Given these standards, it is well established that "[r]elevancy, in the discovery context, is extremely broad." *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 522 (D. Minn. 1992), *quoted in Sinco, Inc. v. B & O Mfng., Inc.*, No. 03-5277, 2005 WL 1432202, at *1 (D. Minn. May 23, 2005). Rule 26 is "widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992), *citing Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989).

Courts construe Rule 26(b)(1) broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). As a result of this broad scope, "a court must consider a discovery request relevant unless it is clear that the information sought has no bearing upon the subject

28

matter of the action." *Sinco*, 2005 WL 1432202, at *1 (denying appeal from a Magistrate Judge's order granting motion to compel in part); *see also Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) ("Information is generally discoverable 'unless it is clear that the information sought has no bearing upon the subject matter of the action.'") (quoting *Sinco*, 2005 WL 1432202).

Here, 3M cannot sustain its relevancy objection to Moldex's discovery requests related to government procurement and the JWOD program. Responsive discovery that relates to Moldex or its BattlePlugs easily satisfy these discovery standards, because such documents and information bear on the subject matter of Moldex's claims for at least two independent reasons.

First, the discovery requested is relevant to Moldex's antitrust and unfair competition claims to the extent that such documents and information may show anticompetitive, predatory conduct by 3M in misusing the government contracting process via the JWOD program to shut out Moldex's products, in addition to 3M's initiation, prosecution, and dismissal of the Prior Lawsuit. As shown above, Moldex's Complaint plainly alleges such conduct with respect to government contracting. Furthermore, the Court even recognized these allegations in the Court's denial of 3M's motion to dismiss. Moldex's claims in its Complaint explicitly extend to 3M's government contracting efforts.

Second, responsive discovery is relevant to Moldex's claims because such discovery may help explain 3M's conduct in prosecuting and dismissing the Prior Lawsuit. Documents regarding JWOD and AbilityOne go toward 3M's subjective

29

baselessness in prosecuting the Prior Lawsuit. Specifically, efforts by 3M and/or New Dynamics Corp. to block Moldex from the U.S. military market by having the U.S. AbilityOne Commission classify BattlePlug earplugs as "essentially the same" as Combat Arms earplugs undertaken just 8 days after 3M's delivery of the covenant not to sue on the '693 patent discredits 3M's purported "economic" justification for dismissing its '693 patent infringement claim.

As explained above, NISH submitted a request to a federal agency on March 20, 2013—only 8 days after 3M offered Moldex a covenant not to sue on the '693 patent— for the purpose of getting AbilityOne to classify Moldex's BattlePlugs as essentially the same as Combat Arms earplugs. Ex. C. If the request had been granted, this would have blocked the U.S. military from purchasing BattlePlugs. Thus, documents responsive to Request No. 3 may show further evidence that the reasons given by 3M's counsel to the Court for dismissing its claims in the Prior Lawsuit were pretextual and false, and that one of the true reasons 3M dismissed its claims was because it found another anticompetitive and predatory method to use to block Moldex from the military market.

For these reasons, 3M should be compelled to produce discovery responsive to Moldex's requests seeking discovery about government contracting with respect to 3M's Combat Arms earplugs, as alleged in Moldex's Complaint.

### C.     3M Should Be Compelled to Produce Documents Related to the NRRs 3M Assigns to Its Hearing Protection Products.

3M objects to Moldex's document requests regarding NRRs—i.e., Moldex's Requests for Production Nos. 2 and 13-20 and Moldex's Prior Request No. 39 in 3M's

prior patent lawsuit—based on relevance and time frame. Based on these objections, 3M has agreed only to produce documents that relate to "the rating of zero that 3M publishes for its dual-ended version of 'Combat Arms' earplugs in the 'Yellow End-Open/Weapons Fire' mode." *E.g.*, Ex. F at 4-5. Thus, 3M objects to producing documents related to NRRs and NRR testing about all of the following: (1) 3M earplugs other than Combat Arms; (2) versions of Combat Arm earplugs other than the dual-ended version, (3) the closed position of the dual-ended version of Combat Arms rather than the open position; and (4) testing resulting in NRRs other than zero. In addition, 3M has agreed only to produce documents from January 1, 2011, to the present. *Id*.

3M's limitations are too narrow, and the scope of Moldex's discovery requests regarding NRRs is proper. As the District of Minnesota has recognized, because of the extremely broad scope of discovery, a relevance objection "is a difficult objection upon which to prevail during the discovery phase of an action." *Kramer*, 126 F.R.D. at 692. Here, communications between 3M and the government regarding the NRRs 3M assigns to its hearing protection products plainly have bearing upon the subject matter of Moldex's claims because discovery may reveal, *inter alia*, that 3M deviated from its normal testing procedures to obtain the zero NRR on its dual-ended Combat Arms earplugs. Testing protocols, methods, and results, as well as statistical analyses, for all NRR testing of all 3M earplugs is relevant to Moldex's claim that 3M's zero-NRR is misleading. Discovery responsive to Moldex's document requests may reveal improprieties in 3M's NRR testing procedures that may not be apparent or referenced in communications strictly limited to a specific NRR on a specific hearing protection

31

product set in a specific mode. Thus, documents responsive to these discovery requests are likely to lead to admissible evidence.

Moldex's fundamental allegation with respect to 3M's NRRs is that 3M's zero NRR is inaccurate and misleading. Thus, 3M's discovery cannot be limited to communications regarding only the NRR of zero for the dual-ended version of the Combat Arms earplugs and must instead encompasses other NRRs for all of 3M's earplugs. *Cf AGA Med. Corp. v. W.L. Gore & Assocs.*, 2011 WL 11023511, at *7 (D. Minn. Oct. 19, 2011) (rejecting the argument that discovery regarding a particular product was not relevant because it was not expressly identified in the complaint); *Kramer*, 126 F.R.D. at 693 (concluding that the argument in opposition to a motion to compel that only discovery pertaining to the specific product at issue in the case was relevant "defies well-accepted tenets of proof, including basis notions of circumstantial proof" and that "discovery extending beyond the exact component part in dispute should be allowed.").

In addition, 3M markets and sells other versions of its Combat Arms earplugs that have noise filters that are very similar, if not identical, to the filter used in 3M's zero-NRR dual-ended Combat Arms earplug. *See, e.g.*, Ex. E. Yet these other Combat Arms versions have published NRRs of 7. By refusing to turn over documents related to the NRRs on other versions of Combat Arms earplugs, 3M has improperly prevented Moldex from gathering evidence that may show that, like the other versions, 3M's "zero-NRR" dual-ended Combat Arms earplug should have been assigned an NRR of 7 or higher.

With respect to 3M's timing objections, there may have been relevant

communications during 2010 and long before. 3M may have tested its Combat Arms earplugs as early as 1995. *See* Blast Overpressure Studies, Daniel L. Johnson, *available at* http://www.dtic.mil/dtic/tr/fulltext/u2/a347634.pdf , at I-10 ("Starting in July 1995, there were two phases of testing accomplished using one distance (3-m) and three different types of hearing protection. . . . The second phase was a repeat of the 3-m distance using a nonlinear plug designed at the French-German Research Institute of Saint-Louis, France as the primary protector. Again, the E.A.R.® foam plug was used as a backup."). Documents from 3M show that 3M did NRR testing on Combat Arms earplugs, in particular, as early as 2000. *See, e.g.*, Ex. J (Doc. No. 38 at 22). Thus, 3M's 2011 time limitation to Moldex's document requests regarding NRR testing for 3M's earplugs should be rejected. No time limitation should be imposed apart from the time limitation inherent in Moldex's requests for documents related to NRR testing, given that such testing obviously has not been done forever.[5]

For these reasons, 3M should be compelled to fully produce documents responsive to Moldex's document requests regarding NRRs, without the limitations as to either definition or time that 3M has sought to impose.

### D.   3M Should Be Compelled to Produce All Documents Referencing Moldex's BattlePlug Earplugs.

Moldex began offering its BattlePlug earplugs for sale in the U.S. in 2011. 3M responded to this new market entrant by seeking to have the BattlePlugs earplugs de-

---

[5] With respect to 3M's duplicative objection, although some documents responsive to Moldex's requests may have been produced in the prior lawsuit, the discovery requests in this lawsuit are broader than Request No. 39 in 3M's Prior Lawsuit.

33

listed as a qualifying substitute for 3M's own ear plugs, as discussed above, and by filing

a now-dismissed sham lawsuit against Moldex for patent infringement. Discovery in the

Prior Lawsuit demonstrates that 3M was monitoring and concerned about Moldex's entry

into the impulse-noise earplug market. *See* Ex. K at 11-13 (Doc. No. 48 in 3M's Prior

Lawsuit).[6]

In short, Moldex's BattlePlug earplugs are at the center of this lawsuit. This is a

monopolization lawsuit about this very Moldex product. Thus, Moldex seeks discovery

about internal 3M reports, meeting summaries, e-mails, and other business documents in

3M's possession, custody, and control that mention 3M's smaller rival's competing

product.

In response to Moldex's request regarding documents referencing "BattlePlug,"

however, 3M has agreed to produce only "documents that refer to BattlePlug earplugs in

connection with the Patent Litigation." It is unfair for 3M to restrict its production to only

documents in which the term "BattlePlug" is used by 3M "in connection with the Patent

Litigation."

3M should not be permitted to weed out of its production any documents that

reference "BattlePlug" but do not—in 3M's subject view—do so "in connection with the

Patent Litigation."[7] Logically, 3M's limitation suggests that 3M may only produce

documents referencing "BattlePlug" if the document was produced in or generated as part

---

[6] Exhibit K is filed under seal.

[7] 3M's limitation to Moldex's Document Request No. 5 is also entirely too vague. It is not clear how such an "in connection with the Patent Litigation" limitation would be imposed or what documents would be excluded as a result of this limitation.

of the Prior Lawsuit and was not already produced. That scope is entirely too narrow given that Moldex's claims against 3M in this lawsuit are not—as 3M wrongly continues to contend—limited to the Prior Lawsuit.

Finally, in addition to rejecting 3M's relevance objection, the Court should also reject 3M's objection that Document Request No. 5 is burdensome and overly broad. Moldex seeks production of less than four years' worth of 3M e-mails and other 3M documents that have the unique trade name "BattlePlug," which is the central product at issue in this case.[8]

For these reasons, 3M should be compelled to produce documents responsive to Moldex's Request No. 5, without the limitation that 3M has sought to impose. 3M should produce (or log, as appropriate) any additional documents containing the word "BattlePlug" that were never part of and were not already produced or logged as part of 3M's Prior Lawsuit.

**E.      3M Should Be Compelled to Log Privileged Documents Relating to 3M's Prior Lawsuit.**

3M should be compelled to log its privileged documents relating to the filing of, prosecution of, and decisions to deliver covenants not to sue in 3M's Prior Lawsuit

---

[8] 3M has already agreed, as part of the parties' ESI protocol, to do a search for electronic documents containing the following terms and combinations: (Moldex OR MM) AND (Battleplug or Battle /5 Plug). Thus, 3M will already be collecting and reviewing for production the documents that Moldex seeks. Any additional burden for 3M to actually produce documents beyond those "in connection with the Patent Litigation" will be minimal. In addition, the total number of hits for "Battleplug OR Battle /5 Plug" will be instructive to show that 3M has substantially more relevant documents about the central product in this case than the documents 3M already produced "in connection with the Patent Litigation."

against Moldex, because such documents are relevant to Moldex's claims against 3M in this lawsuit. 3M's position is that such privilege logging obligations must be the same for both 3M and Moldex. Thus, 3M is only willing to log its privileged documents relating to 3M's Prior Lawsuit against Moldex if Moldex also logs privileged documents relating to 3M's Prior Lawsuit against Moldex.

But any such privileged documents in 3M's possession on the foregoing issues are relevant to the claims in this action, whereas documents in Moldex's possession are not. In particular, 3M's privileged documents in which 3M received or discussed advice regarding the viability of its patent claims in 3M's Prior Lawsuit or 3M's reasons to file or pursue the Prior Lawsuit are directly relevant to Moldex's claim against 3M for malicious prosecution.

Such documents are also directly relevant to Moldex's claim for monopolization and attempted monopolization. As the Court explained in its Order denying 3M's prior motion to dismiss, a claim for monopolization and attempted monopolization based on a patent infringement lawsuit must allege sham litigation. Doc. No. 62 at 12-13. Sham litigation has two requirements: (1) objective baselessness; and (2) subjective baselessness. *Id*. at 13-14 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49, 60-61 (1993)). The Court concluded that Moldex has sufficiently alleged that 3M's Prior Lawsuit was objectively baseless. *Id*. at 14. Thus, 3M's log of privileged communications regarding the very topic of subjective baselessness—i.e., 3M's motivation in bringing and maintaining the Prior Lawsuit— is likely to lead to relevant evidence. Such evidence may include, for example, a log of

documents reflecting meetings and communications that may or may not be privileged depending on those who participated.

Accordingly, because 3M has affirmatively elected not to waive its attorney-client privilege to defend against Moldex's claims in this lawsuit, responsive documents in 3M's possession that are withheld on the basis of privilege must be logged on a privilege log in accordance with Federal Rule of Civil Procedure 26 because the log may lead to discovery of relevant and admissible evidence. In contrast, Moldex's motives in defending itself in 3M's Prior Lawsuit are not relevant to any issue this lawsuit. Thus, communications by Moldex to or from its counsel after the Prior Lawsuit began should not be required to be logged in a privilege log.

In sum, 3M had the right to choose not to waive attorney-client privilege as 3M has done, but 3M must log all privileged documents responsive to Moldex's requests that relate to 3M's motivations regarding 3M's Prior Lawsuit—i.e., Requests Nos. 1, 4-6, 23-25. Conversely, Moldex does not have to log all of the same type of privileged documents about 3M's Prior Lawsuit because neither such a log nor the documents on it would be relevant to the claims in this lawsuit.

## III.   Conclusion

For the foregoing reasons, Moldex respectfully requests that the Court order 3M to produce documents and answer discovery related to government procurement and the JWOD program, to produce documents regarding all 3M NRR testing on 3M's earplugs, to produce all documents referencing Moldex's BattlePlug earplugs, and to log privileged documents relating to the filing of, continued maintenance of, and decisions to deliver

37

covenants not to sue in 3M's Prior Lawsuit against Moldex.


Dated: May 15, 2015             By:   s/Katherine A. Moerke
                                      Kevin D. Conneely (#192703)
                                      Katherine A. Moerke (#312277)
                                      STINSON LEONARD STREET LLP
                                      150 South Fifth Street, Suite 2300
                                      Minneapolis, MN 55402
                                      612-335-1500
                                      kevin.conneely@stinsonleonard.com
                                      katie.moerke@stinsonleonard.com

                                             AND

                                      Harold A. Barza
                                      (California Bar No. 80888) (admitted
                                        *pro hac vice*)
                                      halbarza@quinnemanuel.com
                                      Matthew Hosen (California Bar No.
                                        291631)
                                      (admitted *pro hac vice*)
                                      QUINN EMANUEL URQUHART
                                        & SULLIVAN, LLP
                                      865 South Figueroa Street
                                      Los Angeles, CA 90017
                                      Telephone: (213) 443-3000
                                      Facsimile: (213) 443-3211

                                      **ATTORNEYS FOR PLAINTIFF
                                      MOLDEX-METRIC, INC.**

12208280v1