**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MOLDEX-METRIC, INC., | Civil No. 14-1821 (JNE/FLN) |
| Plaintiff, | |
| vs. | |
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOLDEX'S MOTION TO AMEND ITS COMPLAINT**

Plaintiff Moldex-Metric, Inc. ("Moldex") seeks leave to file a First Amended Complaint against Defendants 3M Company and 3M Innovative Properties Company (collectively, "3M") and to amend the Scheduling Order to permit such filing. Moldex's proposed First Amended Complaint is attached as Exhibit 1 to the concurrently-filed Declaration of Matthew Hosen.

In 2012, 3M sued Moldex, its much smaller rival, asserting a patent infringement claim against Moldex's newly-introduced "BattlePlug"—a specialized, selective-attenuation earplug used to protect soldiers from the harmful auditory effects of battlefield explosions, while still allowing them to hear fellow soldiers nearby. Recognizing that its infringement claim against the BattlePlug was frivolous on its face and seeking to impose greater litigation costs on Moldex, 3M asserted a second infringement claim on certain earmuffs that Moldex had been selling for a decade. By this tactic, 3M sought to drive Moldex from the selective attenuation earplug market(s)

1

and maintain 3M's monopoly power there.  But when Moldex stood its ground, and filed a motion for summary judgment that laid bare the absurdity of 3M's infringement claim on the BattlePlug, 3M abandoned its claim only a week before the hearing. 3M sent Moldex a covenant not to sue and then argued the case was moot, depriving the court of jurisdiction to rule on Moldex's summary judgment motion.  Two months later, 3M dropped its earmuff infringement claim by sending Moldex another covenant not to sue. Having suffered significant injury from 3M's bad faith patent suit and other wrongful conduct, Moldex commenced the present action to recover damages for those losses, as well as to obtain injunctive relief against certain false advertising claims made by 3M concerning its selective-attenuation earplug products.

Moldex asserts three claims against 3M in the present action: (1) Monopolization and Attempted Monopolization; (2) Unfair Competition; and (3) Malicious Prosecution. Moldex seeks to amend its original complaint in three regards:

First, Moldex seeks leave to amend its allegations regarding the Noise Reduction Rating ("NRR") assigned to the olive, fully-blocked end ("closed end") of 3M's dual-ended Combat Arms earplugs ("dual-ended CAE").  In the original complaint, Moldex sufficiently alleged that the "zero" NRR assigned to the yellow, selective-attenuation end ("open end") of the dual-ended CAE is false and misleading because it creates a false expectation that the earplug does not affect the ability to hear verbal commands, approaching vehicles or combatants in the open mode and that this misleading NRR was obtained using improper testing methods.  Compl. ¶ 29; Order Denying 3M's Motion to Dismiss, ECF No. 62 at 10. In the First Amended Complaint, Moldex adds similar

allegations regarding the "22" NRR that 3M advertises for the closed end of the dual-ended CAE:  The 22 NRR is false and misleading because it drastically overstates the amount of hearing protection provided by the earplug when used in the manner instructed by 3M and it too was obtained using improper testing methods.  Moldex's new allegations regarding the NRR on the closed end of the dual-ended CAE are based on documentary evidence that 3M did not produce to Moldex until July 30, 2015, after the Scheduling Order's July 1, 2015 deadline for amending the pleadings in this action.

Second, Moldex seeks to plead punitive damages for its malicious prosecution claim, pursuant to Minnesota Statutes Sections 549.20 and 549.191.  Attempting to comply with the Scheduling Order, Moldex previously sought leave to plead these damages on July 1, 2015, but that motion was denied because the Court found that Moldex "failed to present prima facie evidence for its punitive damages claim in the manner required by Minn. Stat. §§ 549.20 and 549.191."  ECF No. 105 at 5.  In the course of discovery, however, Moldex uncovered highly relevant documents that 3M did not produce until late July and early August of 2015, and that Moldex could not pursue in depositions until October, that establish by clear and convincing evidence that 3M filed and prosecuted the prior patent lawsuit in bad faith ███████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

The third amendment removes Moldex's allegation that "the product market for passive (non-electronic) industrial earmuffs" is relevant to Moldex's monopolization claim.

3

Because good cause exists for modifying the Scheduling Order, and because the proposed amendment is neither futile nor unduly prejudicial to 3M and Moldex has presented a prima facie case of deliberate disregard for Moldex's rights, Moldex respectfully requests that the Court grant its motion for leave to file a First Amended Complaint.

## FACTUAL AND PROCEDURAL HISTORY

Moldex filed its Complaint against 3M on June 5, 2014, asserting three claims: (1) Monopolization and Attempted Monopolization; (2) Malicious Prosecution; and (3) Unfair Competition. *See generally* ECF No. 1. The Court denied 3M's motion to dismiss Moldex's Complaint on February 2, 2015, holding that all of Moldex's claims survived dismissal. ECF No. 62 at 20-22. The Court also denied 3M's anti-SLAPP motion brought against Moldex's malicious prosecution claim under Minnesota Statutes ch. 554 (2014). After examining the merits of Moldex's malicious prosecution claim, the Court held that Moldex had shown by clear and convincing evidence that 3M's conduct in filing and prosecuting *3M Co. v. Moldex-Metric, Inc.*, 12-cv-611 (JNE/FLN) (the "Patent Lawsuit") was both objectively and subjectively baseless. ECF No. 62 at 20-22.

After the Court denied 3M's anti-SLAPP motion, Moldex promptly sought discovery from 3M, serving its first set of document requests on 3M on February 20, 2015. Declaration of Matthew Hosen in Support of Moldex's Motion to Amend Its Complaint, filed concurrently herewith ("Hosen Decl.") Ex. 3. As of the Scheduling Order's July 1, 2015 deadline for amending the pleadings, however, Moldex had received no substantive discovery from 3M in this action. No documents had been produced,

aside from the documents that 3M had produced in the prior Patent Lawsuit; lacking the documents it needed, Moldex had also been unable to take any depositions. *See Id.* ¶¶ 5-6. On May 15, 2015, Moldex brought a motion to compel 3M to produce several categories of relevant documents, ECF No. 77, which was not granted until July 7, 2015. ECF No. 98.

Notwithstanding its lack of any meaningful discovery, Moldex filed a motion to amend its complaint to allege punitive damages on July 1, 2015 in an effort to comply with the Scheduling Order's deadline for amending the pleadings. The Court denied this motion in an order dated September 4, 2015, finding that by submitting only two internal 3M emails in support of its motion, Moldex had not proffered sufficient evidence to plead a punitive damages claim in the manner required by Minnesota Statutes §§ 549.20 and 549.191.[1] ECF No. 105.

Once 3M began complying with Court's July 7, 2015 Order compelling the production of documents, however, Moldex uncovered substantial evidence (1) corroborating 3M's bad faith conduct underlying the malicious prosecution claim; and (2) establishing that the "22" NRR on the closed end of 3M's dual-ended CAE is false, misleading, and dangerous to wearers. 3M produced the majority of this evidence after the July 1, 2015 deadline for amending the pleadings. *See* Hosen Decl. ¶ 5. Even as to those probative documents that 3M produced before the July 1, 2015 deadline (*i.e.*, the documents it had produced in the Patent Litigation), their import and significance only

---

[1] On September 18, 2015, Moldex filed an Objection to the September 4 order, ECF No. 105, which the Court denied on November 10, 2015. ECF No. 132.

became clear in the context of this later discovery.  Having further developed this newly-produced evidence through recent depositions, Moldex now seeks leave to file a First Amended Complaint ("FAC").  This recently-obtained evidence is summarized below.

**A.**



3M's dual-ended CAE has two modes: a "closed" mode that operates like a traditional earplug by blocking all sound, and an "open" mode with a sound channel that protects the user by attenuating gunfire and explosions while at the same time allowing

the user to hear spoken commands and other desired nearby non-impulsive sounds. Compl. ¶¶ 8, 14.  A picture of 3M's dual-ended CAE, with a yellow "open" end and an olive "closed" end is displayed below:



Exh. 5105.





---

[4]   ANSI S3.19-1974 § 3.2.3 dictates that any NRR test subjects "for whom an adequate fit cannot be obtained … should not be included in the evaluation."  Hosen Decl. Ex. 5301.

As a result, the 22 NRR that 3M advertises on the closed end of the dual-ended CAE was obtained using improper testing procedures and is false and misleading.



**B.      3M's Wanton and Malicious Acts Against Moldex**

3M's baseless Patent Lawsuit was only one part of a larger scheme hatched by 3M

for the purpose of blocking Moldex from selling the BattlePlug to the U.S. Military.

---

<sub>7</sub>      The Javits-Wagner-O'Day ("JWOD") Act is the federal law that formed the AbilityOne Commission and requires that federal agencies purchase specific items included on AbilityOne's Procurement List from nonprofit companies employing disabled persons.  *See http://www.abilityone.gov/laws_and_regulations/jwod.html.*















### 2.    3M's Filing of the Patent Lawsuit



3M hoped that the expensive prospect of defending a lawsuit would cause Moldex simply to exit the market.

Thus, 3M scrambled to file the Patent Lawsuit against Moldex on March 8, 2012, alleging that Moldex's single-ended BattlePlug earplug infringed 3M's U.S. Patent No. 6,070,693 ("the '693 Patent") and that Moldex's earmuff products infringed 3M's U.S. Patent No. 7,036,157 ("the '157 Patent"), *see* Hosen Decl. Ex. 19, even though it knew that (1) the '693 Patent only covered dual-ended earplugs, because the specification unambiguously states that its invention is of a double-ended earplug and contrasts that invention against well-known single-ended prior art; and (2) Moldex had in fact invented its accused M-series earmuffs well before the '157 Patent's priority date. *See infra* at pp. 32-33 & nn.20-22.   The Court has already held that Moldex has shown by clear and convincing evidence that the Patent Litigation was objectively and subjectively baseless. ECF No. 62 at 20-22.

15







### 4.     3M Drops Its Infringement Claims After Extensive Litigation

As alleged in the original complaint, 3M pursued its sham litigation for more than a year, forcing Moldex to endure expensive litigation costs and fees and disrupting Moldex's business, even though 3M was aware from the outset of the Patent Lawsuit that its infringement claims against Moldex were baseless.   ECF No. 62 at 8-9.   3M sent Moldex a covenant not to sue and sought dismissal of its '693 Patent infringement claim only one week before the hearing on Moldex's fully-briefed motion for summary judgment of non-infringement, citing as justification "Moldex's market position and limited sales of the BattlePlug product."   Hosen Decl. Ex. 20 at 2-3; *id*. Ex. 5122.   Two months later, 3M sent Moldex a second covenant not to sue and sought dismissal of its '157 Patent infringement claim, citing the same justification.   *Id.* Ex. 5124.   That 3M's purported basis for abandoning its objectively meritless claims was a false pretext was confirmed when





\*      \*      \*

In light of this newly-discovered evidence, Plaintiff moves the Court for leave to

file a First Amended Complaint (1) to allege that the "22" NRR on the closed-end of



dual-ended Combat Arms earplug is false and misleading and was obtained using improper testing procedures in violation of state and federal law; and (2) to plead punitive damages for its malicious prosecution claim. Moldex's proposed First Amended Complaint also withdraws its allegations concerning one antitrust relevant market. Before bringing this motion, Moldex informed 3M of the proposed amendments. 3M would not consent to Moldex's amendments and declined to meet and confer with Moldex. Hosen Decl. Ex. 21.

## ARGUMENT

## I.  GOOD CAUSE EXISTS FOR AMENDING THE SCHEDULING ORDER TO PERMIT THE FILING OF THE FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3, when a motion for leave to amend is made after the deadline for bringing such motions has passed, the moving party must demonstrate "good cause." Rule 16(b) "focuses on the diligence of the party seeking to modify a Scheduling Order." *Boston Scientific SciMed, Inc. v. ev3, Inc.*, No. CIV 05-651 JNE/JSM, 2007 WL 2493117, at *8 (D. Minn. Aug. 29, 2007); *see also Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) ("The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements."). "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008). In

addition, Local Rule 16.3 requires that the moving party "explain the proposed modification's effect on any deadlines."  LR 16.3.

The Court's Scheduling Order set a July 1, 2015 deadline for motions to amend. *See* ECF No. 70 at 1 ("All motions which seek to amend the pleadings, add parties, or to seek punitive damages must be filed and served by July 1, 2015.").  As of July 1, 2015, when Moldex filed its first motion to amend, 3M had not produced any documents in response to Moldex's discovery requests and no depositions had taken place in this action.  ECF No. 91 at 4.  Moldex had to rely solely on discovery obtained from 3M during the prior Patent Lawsuit.  *Id.*

Moldex has been diligent in attempting to comply with the Court's Scheduling Order.  Moldex sought to pursue discovery diligently from the outset of this action: It served requests for production on 3M on February 20 and April 8, 2015 and began requesting deposition dates for 3M witnesses on June 30, 2015.  Hosen Decl. ¶ 5.  3M did not start producing documents responsive to Moldex's discovery requests in this action until the end of July 2015, and Moldex was first able to explore the significance of those documents in its depositions of 3M and New Dynamics personnel beginning at the end of September 2015.  *Id.* ¶¶ 5-6. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Additionally, the substantial majority of the documents that Moldex relies on in this Motion to support its punitive damages claim were not produced by 3M until late July or

early August of 2015 and, as to the remainder, the import of the documents was not clear until the documents were probed at deposition or viewed in light of other recently-produced evidence. ██████████████████████

██████████████████████████████ Moldex was not dilatory in seeking this discovery and obtained it only after the July 1, 2015 deadline for filing a motion to amend the pleadings through no fault of its own. Even 3M agreed in the recently filed Joint Stipulation to Modify the Scheduling Order that the parties have exercised diligence in attempting to comply with the Scheduling Order.  ECF No. 127 at 1 ("Despite due diligence, the parties have not been able to complete all discovery that was timely noticed.").

Moldex's proposed amendments pertain to the NRR ratings for 3M's CAEs and 3M's malicious intent in pursuing the prior Patent Lawsuit, issues that are inseparable from the claims Moldex pleaded in its original complaint.  Thus, Moldex's requested amendment will not extend deadlines for discovery, dispositive motions, or the trial-ready date.

Because Moldex did not have access to the documents and deposition testimony supporting its amendments until after the July 1, 2015 deadline set forth in the Scheduling Order, Moldex respectfully requests that the Court amend the Scheduling Order to permit it to file a First Amended Complaint.  *See, e.g.*, *Mallak v. Aitkin Cty.*, No. 13-CV-2119 DWF/LIB, 2015 WL 2250494, at *2 (D. Minn. Mar. 4, 2015) aff'd sub nom. *Mallak v. City of Brainerd*, No. CIV. 13-2119 DWF/LIB, 2015 WL 2254926 (D. Minn. May 13, 2015) (finding good cause and granting leave to file a second amended

complaint 4.5 months after date specified in Scheduling Order where plaintiff previously lacked information necessary to amend complaint despite seeking discovery two months earlier); *Birchwood Labs., Inc. v. Battenfeld Techs., Inc.*, 762 F. Supp. 2d 1152, 1154-56 (D. Minn. 2011) (finding good cause to allow amendment after Scheduling Order deadline where plaintiff waited to file its amended complaint in order to gather facts through additional discovery and finding that "[a]ny claim of prejudice based on the need for additional discovery is greatly diminished where the claim to be added overlaps with some of the claims already pled"); *Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 263-64 (D. Minn. 1997) (finding good cause for allowing leave to amend 3.5 months after deadline in Scheduling Order).

## II.   THE COURT SHOULD GRANT MOLDEX LEAVE TO FILE ITS FIRST AMENDED COMPLAINT

### A.   The Court Should Grant Leave to Amend to Add Additional Violations of the Unfair Competition Law Based on the False "22" NRR

A party may amend its pleadings with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id*. The Supreme Court has explained the purpose of Rule 15(a)(2) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of such an apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

> virtue of allowance of the amendment, futility of the
> amendment, etc. – the leave sought should, as the rules
> require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "Although 'parties do not have an absolute right to amend their pleadings, even under this liberal standard,' the Court begins its review 'with a presumption of liberality.'" *Mallak v. Aitkin County*, No. 13-cv-2119 (DWF/LIB), 2015 WL 2250494, at *6 (D. Minn. March 4, 2015) (citations omitted). Generally, a court should deny a motion to amend a pleading as futile only if the proposed amendment would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Id*.

## A.    The Proposed Amendment Is Not Futile

A proposed amendment is futile only if the "claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted." *Birchwood Labs., Inc. v. Battenfeld Techs.*, 762 F. Supp. 2d 1152, 1156 (D. Minn. 2011) (internal citation omitted). The proposed amendment withstands scrutiny under this standard.

The First Amended Complaint adds additional allegations regarding the falsity of the "22" NRR 3M advertises for the closed end of the dual-ended CAE. These allegations constitute additional unlawful, unfair and deceptive business practices and false advertising in violation of California Business and Professions Code §§ 17200 and 17500.[20] In denying 3M's motion to dismiss the original complaint, the Court has already

---

[20]   3M's advertising of the false "22" NRR on the closed end of the dual-ended CA also constitutes further predatory and anti-competitive conduct that 3M has used against Moldex for the purpose of monopolizing the market(s) for selective-attenuation earplugs.

25

upheld as sufficient Moldex's allegations regarding the falsity of the "zero" NRR on the open end of the dual-ended CAE.  ECF No. 62 at 23.  The proposed amendment simply expands these claims to expressly include additional violations based on 3M's false and misleading "22" NRR on the closed end of the same earplug.

As discussed above, ████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

These new allegations relating to the "22" NRR are not futile; they are more than adequately pleaded and supported by plausible factual allegations.  Before the dual-ended CAE could be sold in the United States, each end of the earplug had to be tested in accordance with ANSI S3.19-1974; additionally, its NRR had to be determined and labeled in accordance with EPA regulations, 40 C.F.R. § 211.201 *et seq.*, under the Noise

---

This conduct falls within the scope of Moldex's sufficiently pleaded monopolization claim in its original complaint.  Compl. ¶ 30.

Control Act, 42 U.S.C. § 4901 *et seq*. FAC at ¶ 32. One such applicable EPA regulation, 40 C.F.R. § 211.204-4, entitled "Supporting information," states:

> The following minimum supporting information must accompany the [hearing protection] device in a manner that insures its availability to the prospective user…(e) Instructions as to the proper insertion or placement of the device.

████████████████████████████████████████████████

3M has therefore violated 40 C.F.R. § 211.204-4, which alone constitutes a violation of Section 17200. 3M's false and misleading advertising of the "22" NRR further constitutes a violation of Section 17500. Because the First Amended Complaint sufficiently alleges facts in support of Moldex's claim that 3M's marketing and sale of the dual-ended CAE with a false and misleading "22" NRR for the closed end constitutes violations of Business and Professions Code §§ 17200 and 17500, the requested amendment to include these allegations would not be futile.

### B.    The Proposed Amendment Will Cause 3M No Undue Prejudice

The burden of proof is on the party opposing a motion to amend to show prejudice. *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540-41 (8th Cir. 1977). A defendant is not prejudiced by the addition of claims premised upon facts exclusively within its own knowledge. *See Trustees of Graphic Comm'ns Int'l Union Local 229 Health & Welfare Fund v. Rapid Copy, Inc.*, 620 F. Supp. 202, 206-07 (D. Minn. 1985)

("Amendment would not prejudice defendants because they knew from the outset . . . of the events giving rise to the [additional] claims . . . ."). "The function of Rule 15(a) is to enable [the plaintiff] to assert matters that were unknown to [it] at the time [it] interposed [its] original complaint . . . ." *See id.* (internal citation omitted).

Even assuming that any prejudice would result, the test is not whether the amendment would cause *any* prejudice to 3M. Indeed, "every amendment to a complaint is prejudicial to a defendant – additional claims must be analyzed and defended against, often at considerable expense, and, if proved, may result in additional liability." *Sun Newspapers, Inc. v. Minneapolis Star & Tribune Co.*, No. 4-75-Civ-445, 1976 U.S. Dist. LEXIS 11640, *3 (D. Minn. Dec. 28, 1976). Rather, the prejudice must be undue, *i.e.*, it "must be balanced against the hardship to the moving party if it is denied." *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981).

Here, 3M is unable to show that undue prejudice would result from granting Moldex's leave to file the proposed First Amended Complaint. That the "zero" NRR for the Combat Arms earplug's open end is false and misleading is already at issue in this case and is closely related; indeed, the falsity of the "22" NRR of the closed end was uncovered by taking discovery on the existing unfair competition claim. ████████████ ████████████████████████████████████████████████████ 3M is not prejudiced by these amendments.

III.   **THE COURT SHOULD GRANT LEAVE TO FILE THE PROPOSED COMPLAINT BECAUSE MOLDEX HAS AMPLY MET THE STANDARD FOR PLEADING PUNITIVE DAMAGES**

Minnesota Statutes Section 549.191 provides:

> Upon commencement of a civil action, the complaint must not seek punitive damages. After filing the suit a party may make a motion to amend the pleadings to claim punitive damages. The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages.

Minn. Stat. § 549.191 (Claim for Punitive Damages). Thus, to plead punitive damages under this statutory scheme, "a plaintiff must first obtain leave of the Court to do so, based on a prima facie showing of entitlement." Am. Bank of St. Paul v. Carolina First Bank, *No. CIV. 09-2240 JMR/JJK*, 2010 WL 3168644, at *1 (D. Minn. Mar. 2, 2010).

Pursuant to Minnesota Statutes Section 549.20, punitive damages are available upon a showing of "clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20. "Deliberate disregard" is defined by the statute as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, subdiv. 1(b).

"The prima facie threshold for being allowed to plead punitive damages is lower than the clear and convincing showing ultimately necessary to be awarded punitive damages." *Nunn v. Noodles & Co.*, Civ. No. 09-1286, 2010 WL 3170763, at *3 (D. Minn. Aug. 6, 2010) (granting motion for leave to amend to add punitive damages); *see also Am. Bank of St. Paul*, 2010 WL 3168644, at *2 (same). "A plaintiff need not demonstrate an entitlement to punitive damages *per se*, but only an entitlement to allege such damages. If the Court finds such prima facie evidence, the court shall grant the moving party permission to amend the pleadings to claim punitive damages." *Id.* at *1 (internal quotation omitted). "Prima facie evidence is evidence which, if unrebutted, would support a judgment in the party's favor." *Id.* (citing *McKenzie v. NSP Co.*, 440 N.W.2d 182, 184 (Minn. Ct. App. 1989)); *see also Swanlund v. Shimano Indus. Corp.*, 459 N.W.2d 151, 156 (Minn. Ct. App. 1990) (determining whether punitive damages are adequately pled "does not require the trial court to make credibility determinations of any kind, and therefore does not denigrate the role of the jury.").

Upon the discovery of new evidence, a plaintiff may bring a motion to plead punitive damages, regardless of whether the court has denied plaintiff's previous attempts to plead punitive damages. *Brown ex rel. Brown v. Duluth Steam Co-op. Ass'n*, No. A14-

30

1598, 2015 WL 4611926, at *4 (Minn. Ct. App. Aug. 3, 2015) (motion to amend to add a punitive damages claim can be brought upon discovery of new evidence); *Swanlund v. Shimano Indus. Corp.*, 459 N.W.2d 151, 156 (Minn. Ct. App. 1990) (denying amendment to add punitive damages claim and stating that plaintiffs were free to bring another motion to amend should discovery "yield evidence justifying a punitive damages claim").

From 3M's recently-produced documents and its witnesses' October deposition testimony, Moldex has adduced clear and convincing evidence that 3M acted in deliberate disregard of Moldex's rights when it filed and prosecuted the Patent Lawsuit. As presented in detail in the Factual and Procedural History, *supra*, there is ample evidence showing that 3M's Patent Lawsuit against Moldex was objectively baseless, that 3M knew the Patent Lawsuit was objectively baseless, and that 3M acted with deliberate disregard for Moldex's rights when it filed the Patent Lawsuit for the improper purpose of driving Moldex from the market. This evidence includes emails and deposition testimony showing that:





- The Patent Lawsuit was objectively baseless, as the Court has already found that Moldex established by clear and convincing evidence.  ECF No. 62 at 20-22.

> The '693 Patent only covered dual-ended earplugs and could not possibly read on Moldex's single-ended BattlePlug.  The specification plainly states that its invention is a double-ended earplug and contrasts that invention against well-known single-ended prior art.[21]  Any claim construction broad enough to cover the BattlePlug product would clearly invalidate the '693 patent in view of the prior art.[22]   As further evidence of the objective

---

[21]   *See* Hosen Decl. Ex. 5014 ("*The present invention has two ends*, that may or may not be identical, *either of which can be inserted into the auditory canal*, thus making it possible to choose between two operating modes of attenuation that may or may not be identical.") (emphasis added).

[22]   Hosen Decl. Ex. 5014 ("*The hearing protector has two ends, both of which can be inserted into the auditory canal* and is referred to as a 'double-ended' device.  *This contrasts with the well-known hearing protector that typically has one end that can be inserted into the auditory canal*, while the other end allows the hearing protector to be

baselessness of 3M's '693 infringement allegations ████████████



3M's claim that Moldex's earmuff products infringed the '157 Patent was also objectively baseless because Moldex had in fact invented its accused M-series earmuffs well before the '157 Patent's priority date. ████████████

- ████████████

- In addition to the baseless infringement allegations 3M asserted in the Patent Lawsuit, 3M also made repeated and flagrant misrepresentations to the Court during the course of the Patent Lawsuit that ████████████

---

gripped so the user can position it in the auditory canal.") (emphasis added); *see also* Declaration of Katherine A. Moerke, filed concurrently herewith, at Ex. 1 at 21-22, 33-34; *id.* Ex. 2; *id.* Ex. 3.  Out of an abundance of caution, Moldex has attached portions of its summary judgment papers below which set forth the analysis of why the '693 patent could not possibly read on Moldex's BattlePlugs.  For the Court's convenience, Moldex has isolated these filings in the Moerke Declaration so that this evidence can be easily distinguished from the evidence of 3M's intent and deliberate disregard for Moldex's rights.

23 ████████████

███████████████████████████████████████████████ and (2) it was
dismissing the baseless infringement claims due to Moldex's market position and
limited sales.

██ Belying 3M's claim that it dismissed its sham litigation because of Moldex's
market position and limited sales, ████████████████████████████████████



The incriminating documents and testimony discussed above establish by clear

and convincing evidence that 3M ███████████████████████████████████

████████████████████████████████████████████████████, in

deliberate disregard of Moldex's rights, and all for the purpose of unlawfully blocking

Moldex from selling its BattlePlug earplug to the U.S. Military. This evidence amply

meets Moldex's burden of production for pleading punitive damages. *See, e.g., Cognex*

---

*Corp. v. VCode Holdings, Inc.*, No. CIV 06-1040 JNE/JJG, 2008 WL 3261158, at *4-5

(D. Minn. Aug. 7, 2008) (granting motion to amend to add punitive damages claim upon

clear and convincing showing that defendant had intentionally disseminated false

information to plaintiff's customers "for the purpose of causing injury to [plaintiff's]

business reputation and prejudice to [plaintiff] in the conduct of its business.").  Moldex

respectfully requests that the Court amend the scheduling order and grant Moldex leave

to file the First Amended Complaint, including its request for punitive damages.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant it

leave to file a First Amended Complaint in this action in the form attached as Exhibit 1 to

the Declaration of Matthew Hosen.


Date: November 16, 2015                         By:   *Katherine A. Moerke*
                                                     Kevin D. Conneely (MN #192703)
                                                     Katherine A. Moerke (MN #312277)
                                                     STINSON LEONARD STREET P.A.
                                                     150 South Fifth Street, Suite 2300
                                                     Minneapolis, MN 55402
                                                     Telephone: (612) 335-1500
                                                     Facsimile: (612) 335-1657
                                                     kevin.conneely@stinsonleonard.com
                                                     katie.moerke@stinsonleonard.com

                                                         AND

                                                     Harold A. Barza
                                                     (California Bar No. 80888)
                                                     (admitted *pro hac vice*)
                                                     Joseph M. Paunovich
                                                     (California Bar No. 228222)
                                                     (admitted *pro hac vice*)
                                                     Valerie Roddy

(California Bar No. 235163)
(admitted *pro hac vice*)
Matthew Hosen
(California Bar No. 291631)
(admitted *pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
halbarza@quinnemanuel.com
joepaunovich@quinnemanuel.com
valerieroddy@quinnemanuel.com
matthosen@quinnemanuel.com

**ATTORNEYS FOR PLAINTIFF
MOLDEX-METRIC, INC.**