## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MOLDEX-METRIC, INC.,

                 Plaintiff,

vs.

3M COMPANY and 3M INNOVATIVE
PROPERTIES COMPANY,

                 Defendants.

Civil No. 14-1821 (JNE/FLN)

## MOLDEX'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON ELEMENTS OF ITS SHAM LITIGATION AND MALICIOUS PROSECUTION CLAIMS

Moldex moves for partial summary judgment against defendants 3M Company and 3M Innovative Properties Company (collectively, "3M") on the twin elements of objective baselessness (an element of Moldex's sham litigation antitrust claim) and lack of probable cause (an element of Moldex's malicious prosecution claim). Specifically, Moldex moves for partial summary judgment that 3M's assertion of U.S. Patent No. 6,070,693 (the "'693 patent"), directed to double-ended earplugs, against Moldex's single-ended BattlePlug earplug in *3M Co. v. Moldex-Metric, Inc.*, Case No. 12-cv-611-JNE-FLN (D. Minn.) (the "Patent Litigation") was objectively baseless and lacked probable cause.[1]

---

[1] To be certain, Moldex expects to prove that the other infringement claim asserted by 3M in the Patent Litigation—asserting U.S. Patent No. 7,036,157 (the "'157 patent")—was also objectively baseless. Because factual disputes preclude summary judgment as to the '157 patent, however, Moldex makes this motion only with respect to

1

The undisputed facts establish that no reasonable attorney or litigant could read the asserted '693 patent, look at the accused Moldex BattlePlug, and still expect to prevail. The '693 patent is directed to earplugs with *two* insertable ends; the accused Moldex BattlePlug has only one.

The '693 patent's specification states in clear and unambiguous language that "[t]he present invention has two ends…either of which can be inserted into the auditory canal" and distinguishes the invention from "well known" prior art single-ended plugs. Yet the Moldex BattlePlug 3M accused is unquestionably single-ended and essentially identical to the "well known" prior art. The Federal Circuit has repeatedly found that infringement allegations are objectively baseless when they can succeed only if such unequivocal statements in a patent's specification are ignored.

Moreover, 3M faced a true "no win" situation: The improper and overbroad claim constructions necessary to prevail on infringement would also render the patent claims invalid by prior art identified by the patent itself. That "winning" infringement would necessarily mean invalidating the asserted patent claims eliminates any possibility that a reasonable attorney or litigant could think 3M's claim could succeed; indeed, it is difficult to imagine a starker example of objective baselessness. Partial summary judgment that 3M's assertion of the '693 patent against Moldex's BattlePlug was objectively baseless and lacked probable cause should be granted.

---

the '693 patent. Because the objective baselessness and lack of probable cause elements of Moldex's claims are satisfied if even one of 3M's claims is objectively baseless, however, partial summary judgment of these elements based on the '693 patent is proper. *See* n.4, *infra.*

## I.     Relevant Factual Background

### A.     Selective Attenuation Earplugs

Selective attenuation earplugs attenuate explosive sounds more than spoken sounds.  In the military context, these earplugs allow soldiers to hear their colleagues while still protecting them from the harmful effects of loud explosions.  *See, e.g.*, Declaration of Matthew S. Hosen, filed concurrently herewith ("Hosen Decl.") Ex. 5014 at 1:11-15.[2]  Selective attenuation earplugs work by filling the opening of the ear canal with a plug-like device that has an open channel running from the outside sound source to the user's auditory canal, which allows some sound to pass through.  *Id.* Ex. 6108 at 2:26-3:4, 3:17-26.  By filtering sound with a series of constrictions and expansions in the channel, explosive noises are highly attenuated while constant lower-volume noises are affected much less.  *Id.* at 3:24-4:5.  Specialized impulse earplugs have been known in the prior art since at least the 1960s.  *See, e.g.*, *id*. Ex. 5107 at 3720.

### B.     The '693 Patent

The '693 patent, entitled "Hearing Protector Against Loud Noise" and issued to Pascal Hamery on June 6, 2000, "relates to hearing protectors, and in particular…to a hearing protector to protect against high, continuous or impulsed, noises."  *Id.* Ex. 5014 at 1:11-13.  Like prior art earplugs, the hearing protector can function either in a selective attenuation mode or a maximum attenuation mode.  *Id.* at 1:13-15, 1:30-36.

The '693 patent identifies French Patent Publication No. 2 676 642 ("FR'642") as an example of a prior art earplug.  *Id.* at 1:30-41.  As stated in the '693 patent's

---

[2]   Patent citations herein take the form [column]:[line].

specification: "The [FR'642] protector comprises an elongate flexible body containing selective attenuation means, maximum attenuation means, and a manually controlled plug that makes it possible to choose the attenuation functional mode to be either selective or maximum." *Id.* at 1:32-36.  An embodiment of FR'642 is pictured below:



*Id.* Ex. 6108.  Figure 2 depicts a manually controlled earplug in maximum attenuation mode, with the plug (3) inserted to block the channel opening at the non-inserted end to stop sound passage.  *Id.*  Figure 3 depicts the same earplug in selective attenuation mode, with the plug (3) removed so that sound can enter the channel.  *Id.*

FR'642 also discloses an alternative embodiment, depicted below, where the plug element (35) has a different shape and connection to the rest of the device. *Id.* The user of this embodiment of the FR'642 earplug can adjust the plug to increase attenuation by moving the plug (35) over the rod (26), which blocks the constricted channel. *Id.* at 10:22-27.



FIG. 4

According to the '693 patent, the manually controlled plug of the prior art FR '642 is problematic, however, because it "requires careful handling by the user" and the "manipulation can be done incorrectly, resulting in inefficient blockage" in the two attenuation modes. *Id.* Ex. 5014 at 1:37-41. The '693 patent purports to solve this problem, describing its "invention" as a dual-ended hearing protector that does not require a user to manipulate a single-ended hearing protector (*e.g.*, by inserting a plug into the non-inserted end as described in the FR'642 prior art) to attain a second sound attenuation level; rather, because the invention is dual-ended, the wearer can obtain a different attenuation level simply by inserting the other end into the ear. *Id.* at 1:44-2:5 ("The device is useful in the fact that it possesses, in the same hearing protector, two configurations that can have different attenuation characteristics, both obtained by simply

5

reversing the direction of the…ear plug…that is inserted into the auditory canal.").  The

'693 patent figures also clearly illustrate that the invention is directed to only a dual-

ended earplug:



*Id.* at Drawing Sheets.  Finally, there are no statements from the applicant or examiner in

the prosecution history of the '693 patent (or its parent patent) that the "invention" is

anything other than a hearing protector with two insertable ends.  *See generally id.*

Exs. 6100 & 6103.

###    C.    Moldex's BattlePlug

Although BattlePlug products come in different sizes, colors and packaging, they

are all identical with respect to the structural features relevant to an infringement analysis

of the '693 patent.  *See, e.g.*, Declaration of James E. Hornstein, filed concurrently

herewith ("Hornstein Decl.") ¶ 5.   Representative BattlePlugs are depicted below in
maximum attenuation mode (left) and selective attenuation mode (right):

 

*Id.* Exs. 1 & 2.  All BattlePlug products have only one insertable end.  *Id.*  As shown
above, the non-insertable end includes a cap, similar to the plug of FR'642, that allows
the user to open (for selective attenuation) or block (for maximum attenuation) the
BattlePlug's single channel by opening or closing the cap.  *Id.* Exs. 1 & 2.

### D.    The Patent Litigation

Moldex made its first sale of its BattlePlug earplugs to the United States military
in March 2011, which were delivered later that year.  Hornstein Decl. ¶ 4.  3M responded
by filing the Patent Litigation in March 2012, alleging that (1) Moldex's BattlePlug
military earplug infringed claims 1, 3, and 17 of 3M's '693 patent and that its M-Series
earmuff infringed 3M's '157 patent.  *See* Hosen Decl. Ex. 5102.  After nearly a full year
of litigation, and only a week before the hearing on Moldex's fully-briefed motion for
summary judgment of non-infringement of the '693 patent, 3M sent Moldex a covenant
not to sue and requested dismissal of its '693 patent infringement claim.  Hosen Decl.

Exs. 3 & 5122.  Two months later, 3M sent Moldex a second covenant not to sue and sought dismissal of its '157 patent infringement claim.  *Id.* Ex. 5124.  Both claims were dismissed with prejudice.  *Id.* Ex. 7.

### E.     This Action

On June 5, 2014, Moldex filed this lawsuit, alleging that 3M (1) monopolized or attempted to monopolize certain United States product markets in violation of Section 2 of the Sherman Act through the sham Patent Litigation; (2) engaged in malicious prosecution by initiating and maintaining the same litigation; and (3) engaged in unfair competition in violation of California Business & Professions Code § 17200 *et seq.* by initiating the sham Patent Litigation and by falsely advertising and unlawfully distributing its Combat Arms earplugs with a Noise Reduction Rating ("NRR") of zero. ECF No. 1.

On February 2, 2015, the Court denied 3M's anti-SLAPP motion to dismiss Moldex's malicious prosecution claim.  ECF No. 62.  After examining the merits, the Court held that Moldex had shown by clear and convincing evidence that 3M's conduct in filing and prosecuting the Patent Litigation was both objectively and subjectively baseless.  ECF No. 62 at 20-22.

## II.   Argument

### The Court Should Enter Partial Summary Judgment Against 3M on the Elements
### of Objective Baselessness and Probable Cause as to the '693 Patent

To establish its Sherman Act claim based on sham litigation, Moldex must show that one or more of 3M's claims in the Patent Litigation were objectively baseless.[3]  *See, e.g.*, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993) ("*PREI*") ("lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" to satisfy sham exception to antitrust immunity for petitioning activity).  Similarly, Moldex's malicious prosecution claim requires it to establish that 3M brought or maintained a claim or lawsuit without probable cause and with no reasonable ground on which to believe that the plaintiff would ultimately prevail on the merits.  *See, e.g.*, *Zamos v. Stroud*, 32 Cal. 4th 958, 965 (2004); *Jordan v. Lamb*, 392 N.W.2d 607, 609 (1986).

"[P]robable cause exists if any reasonable attorney would have thought the claim tenable."  *Fleishman v. Superior Court*, 102 Cal. App. 4th 350, 354 (2002) (internal quotations and citations omitted); *accord Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) ("Probable cause to initiate civil proceedings requires only a reasonable belief that the claim will ultimately prevail, or 'such facts and circumstances

---

[3]    Whether a patent infringement claim is objectively baseless is governed by Federal Circuit law.  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1067-68 (Fed. Cir. 1998).  The Court does not need to determine whether California or Minnesota law applies to Moldex's malicious prosecution claim for purposes of this motion because the law of the two states is not in conflict with respect to any issue herein.  *See, e.g.*, *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123 (8th Cir. 2012).

as will warrant a cautious, reasonable and prudent person in the honest belief that his action and the means taken in prosecution of it are just, legal, and proper.'") (applying Minnesota law).  Whether a claim or suit is objectively baseless or lacks probable cause is essentially the same inquiry, *see PREI*, 508 U.S. at 62-63; *accord Porous Media*, 186 F.3d at 1079 n.4,[4] and is a question of law where the factual circumstances are not in dispute.  *See Scott v. Harris,* 550 U.S. 372, 381 n.8 (2007) (*cited by Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 701 F.3d 1351, 1353-54 (Fed. Cir. 2012)); *PREI*, 508 U.S. at 63.

A.    **3M's Assertion of the '693 Patent—a Self-Described Dual-Ended Earplug Invention—Against the Single-Ended Moldex BattlePlug Was Objectively Baseless and Lacked Probable Cause**

No reasonable litigant could have concluded that the '693 patent was infringed by Moldex's BattlePlug.  Although the BattlePlug does not infringe claims of the '693 patent for at least three distinct reasons—each of which standing alone makes 3M's assertion of that patent against the BattlePlug objectively baseless—Moldex focuses this motion on only one of these reasons because it presents no factual disputes and it is dispositive:  The

---

[4]    It is sufficient that a single claim is objectively baseless; appending a meritorious claim to an objectively baseless one does not immunize the objectively baseless claim from the antitrust laws or from tort liability for malicious prosecution. *See, e.g.*, *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, 184 Cal. App. 4th 313, 333 (2010) ("A claim for malicious prosecution need not be addressed to an entire lawsuit; it may, as in this case, be based upon only some of the causes of action alleged in the underlying lawsuit."); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1154 (7th Cir. 1983) (concluding "a *single* claim, lawsuit or petition can be 'sham litigation' actionable under the antitrust laws") (emphasis in original).

'693 patented invention is directed to a *dual*-ended earplug (*i.e.*, having two ends that can be inserted into the ear) and expressly distinguishes the invention from *single*-ended earplugs—nearly identical in all relevant respects to the BattlePlug—as "well known" prior art.[5]

In the Patent Litigation, 3M alleged that the BattlePlug literally infringed the asserted claims of the '693 patent; it did not assert infringement under the doctrine of equivalents. *Compare* Hosen Decl. Ex. 4 at § D.1 *with id.* Ex. 5; *accord id.* Ex. 6 at 11-17. "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) (internal quotation marks omitted). "The test for patent infringement requires both proper interpretation of the claim scope and proper comparison of the claims with the accused device." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir.), *opinion amended on reh'g*, 131 F.3d 1009 (1997). The patentee bears the burden of proving infringement by a preponderance of the evidence. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

The '693 patent has only one independent claim, from which all other claims in the patent depend; thus, to infringe any claim of the '693 patent, the BattlePlug must meet all

---

[5] The BattlePlug lacks two other features—"a channel extending from [the] first and second ends to [the] center of [the] cylindrical body" and "a second acoustic filter"—when the terms are given their only proper construction in light of the patent's specification. That Moldex does not address these arguments in detail in this motion is not intended to be a waiver for other purposes, including opposing any summary judgment motion filed by 3M or presenting evidence at trial.

of the limitations of claim 1.  *Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1367 (Fed. Cir. 2012).  Claim 1 requires, among other things, a hearing device that has "a cylindrical body having a center, a first end and a second end."  Hosen Decl. Ex. 5014 at 4:30-35.  Although 3M contended in the Patent Litigation that this limitation does not require that each recited end be insertable into the auditory canal (such that claim 1 can extend to cover earplugs with only one insertable end), the specification of the '693 patent unambiguously states that its invention as a whole is a *double*-ended earplug, wherein both ends are insertable and expressly contrasts its invention against "well-known" single-ended prior art earplugs:

SUMMARY OF THE INVENTION

> …
>
> ***The hearing protector has two ends, both of which can be inserted into the auditory canal*** and is referred to as a "double-ended" device.  ***This contrasts with the well-known hearing protector that typically has one end that can be inserted into the auditory canal***, while the other end allows the hearing protector to be gripped so the user can position it in the auditory canal.  ***The present invention has two ends,*** that may or may not be identical, ***either of which can be inserted into the auditory canal,*** thus making it possible to choose between two operating modes of attenuation that may or may not be identical.
>
> The device is useful in the fact that it possesses, in the same hearing protector, two configurations that can have different attenuation characteristics, both obtained by simply reversing the direction of the hearing protector, or ear plug, that is inserted into the auditory canal.

*Id.* at 1:44-2:5 (emphases added).

"[C]laims 'must be read in view of the specification, of which they are a part.'"
*Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed.Cir.2005) (en banc).   "[T]he
specification 'is always highly relevant to the claim construction analysis.   Usually, it is
dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (internal
citations omitted).

Under well-established principles of claim construction, the '693 patent's explicit
description of "the present invention" as a device having "two ends…either of which can
be inserted into the auditory canal" and the clear and unambiguous distinction of the
claimed invention from single-ended earplugs in the specification necessarily limits the
scope of the claims of the '693 patent.   Cases finding such explicit statements in the
specification to limit the scope of claims are legion.   For example, in *Virnetx, Inc. v.
Cisco Systems, Inc.*, 767 F.3d 1308, 1317-18 (Fed. Cir. 2014), the Federal Circuit found
that "when read in light of the entire specification, the term 'secure communication link'
requires anonymity" because the specification presented anonymity as the patent's
primary inventive contribution and noted that "[t]he fact that the Summary of the
Invention gives primacy to these attributes strongly indicates that the invention requires"
anonymity in addition to data security.   *Id.* (citations omitted); *see also Verizon Servs.
Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a
patent…describes the features of the 'present invention' as a whole, this description
limits the scope of the invention."); *Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312,
1318 (Fed. Cir. 2006) ("On at least four occasions, the written description refers to the
fuel filter as 'this invention' or 'the present invention'….The public is entitled to take the

patentee at his word and the word was that the invention is a fuel filter."); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 883 (Fed. Cir. 2000) (statement in specification that "[t]he present invention utilizes [the varying taper angle] feature" limited claims to structures utilizing taper angles).[6]

All of the depictions and descriptions of the inventions of the '693 patent in the specification depict double-ended earplugs, never a single-ended earplug. *See generally* Hosen Decl. Ex. 5014. This confirms that the claims of the '693 patent cover only double-ended earplugs with two insertable ends. *See, e.g.*, *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1338 (Fed. Cir. 2011) (limiting construction of term where "the specification, including the figures, consistently and exclusively" disclose only one embodiment, and "that [embodiment] is clearly what the inventors…conceived of"); *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581-82 (Fed. Cir. 1997) ("smooth-walled, completely cylindrical" structure not encompassed in scope of claim term "passage" where "[a]ll of the 'passage' structures contemplated by the written description" were "either non-smooth or conical" and "the description expressly distinguishe[d] over prior art passages by stating that those passages are generally smooth-walled").

Here, the specification includes a detailed discussion of the problem with "well known" prior art single-ended plugs and how the problem is addressed by the '693 patented invention, *i.e.*, an earplug with two insertable ends. Hosen Decl. Ex. 5014 at

---

[6] *See also TriStrata, Inc. v. Microsoft Corp.*, 594 F. App'x 653, 656-57 (Fed. Cir. 2014) (relying in part on statement in "Summary of the Invention" to define claim term); *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1337 (Fed. Cir. 2011) (same); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004).

1:30-2:5.  This further supports the conclusion that the dual-ended earplug described and shown in the specification is not a *preferred* embodiment, but rather the *only* embodiment.  As in *Honeywell*, the public is entitled to take the applicant at its word, which in this case was that the invention is a hearing protector with two insertable ends.

Here, it is beyond dispute that Moldex's BattlePlug does not have "two ends, either of which can be inserted into the auditory canal."  *Compare, e.g.*, Hosen Decl. Exs. 1 & 2 *with id.* Ex. 5014 at 1:44-2:5; Hosen Decl. Ex. 1 at 218:5-219:4.  Rather, one end of the BattlePlug is a "plug handle" that cannot enter the auditory canal.  Hosen Decl. Exs. 1 & 2.  The *only* way Moldex's BattlePlug could infringe any claim of the '693 patent, then, is if the claim limitation "a cylindrical body having a center, a first end and a second end" could be properly construed so broadly as to cover single-ended earplugs.  As set forth above, any construction that covered single-ended earplugs would be improper because the invention as a whole is directed solely to dual-ended earplugs and because of the specification's clear and unambiguous statement distinguishing the claimed invention from single-ended earplugs.[7]

---

[7]   It is not surprising that 3M would make such objectively baseless infringement claims given that the lawyer who was the architect of the claims at issue—3M in-house patent lawyer Karl Hanson—has already been found to have committed inequitable conduct by defrauding the USPTO in another case where 3M used its patents to violate the antitrust laws.  *See* Hosen Decl. Ex. 2 at 24:10-25:14; *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1304-06 (Fed. Cir. 2016).

**B.**     **The Claim Constructions Necessary to Prevail on Infringement Would Necessarily Invalidate the Patent, Confirming the Objective Baselessness of 3M's Claim**

That 3M's claim for infringement of the '693 patent was objectively baseless and lacked probable cause is particularly clear in this case because the claim constructions 3M needed to prevail on infringement would necessarily invalidate the asserted claims.

Claim 1 of the '693 patent requires:

> 1. A hearing protector for selectively or automatically reducing noises having intensities up to 190 dB, the hearing protector being intended to be sealingly inserted into an auditory canal of a user, the hearing protector comprising:
>
>> a cylindrical body having a center, a first end and a second end;
>>
>> a channel extending from said first and second ends to said center of said cylindrical body; and
>>
>> said channel containing a first acoustic filter and a second acoustic filter, each of said first and second filters being in communication with one of said first and second ends.

Hosen Decl. Ex. 5014 at 4:30-41.

Instead of "a cylindrical body having a center, a first end and a second end," the BattlePlug has only a single end that is insertable into the auditory canal. Instead of a "channel extending from said first and second ends to said center of said cylindrical body," the BattlePlug has no channel opening at the center of the cylindrical body. And instead of a channel containing "a first acoustic filter and a second acoustic filter," the

BattlePlug has a single channel with multiple constrictions that serves as a single acoustic filter.

Thus, for the BattlePlug to infringe any of the '693 patent's claims, the claim would have to be read so broadly as to cover a single-ended hearing protector with a single sound path containing multiple filtering constrictions and openings at either end but no center hole.  Indeed, 3M's own expert admitted that, ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ Hosen Decl. Ex. 1 at 164:11-165:11.  Notably, this describes to a "T" FR'642, which the '693 patent itself identifies as "well known" prior art and explicitly distinguishes in the specification.  *See* Declaration of Sigfrid D. Soli, filed concurrently herewith ("Soli Decl.") ¶¶ 23-29, 53-56. That this technology was disclosed in FR'642 is immediately evident by looking at its Figure 4, which has been annotated below for clarity:



Hosen Decl. Ex. 6108.  As set forth in FR'642, Figure 4 represents a "flexible body 1" that "is axially transversed by a channel 20 composed of a succession of cylindrical sections of different cross section which ensures a non-linear acoustic transmission." *Id.* at 8:14-16.  "The succession of channel sections…ensures…a non-linear acoustic transmission that results in a selective attenuation of sounds[.]" *Id.* at 9:11-18.  Applying 3M's constructions, Figure 4 thus discloses a single-ended earplug, with a single channel, and multiple filters—*i.e.*, constrictions—within that single channel.

In short, if the BattlePlug meets the limitations of the '693 patent, so too must FR'642, which invalidates all of the asserted claims.[8]  *See, e.g.*, *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("A century-old axiom of patent law holds that a product 'which would literally infringe if later in time anticipates if earlier.") (citing cases); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.") (citations and quotations omitted).

*       *       *

Because success on the merits would require a claim construction that would at once be both contrary to black-letter Federal Circuit law and invalidating, no reasonable litigant could expect to prevail on 3M's claim for infringement of the '693 patent.

---

[8]   Asserted claim 3 additionally requires that the first and second acoustic filters are not identical, and asserted claim 17 requires that the acoustic filters permit non-linear filtration of sound.  These additional features were also well-known in the prior art and would not save the dependent claims.  *See, e.g.*, Soli Decl. ¶¶ 53-56; Hosen Decl. Ex. 6108 at 8:14-16 (Figure 4 in FR'846 has "succession of cylindrical sections *of different cross section* which *ensures a non-linear acoustic transmission*") (emphasis added).

Infringement claims that depend on a claim construction that—as here—is clearly refuted by the specification have repeatedly been found to be objectively baseless. *See, e.g.*, *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) ("When patentees have sought unreasonable claim constructions divorced from the written description, this court has found infringement claims objectively baseless.") (determining exceptionality);[9] *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) ("Because the specification and prosecution history clearly refute MarcTec's proposed claim construction, the district court did not err in finding that MarcTec's infringement claims were objectively baseless.") (determining exceptionality); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011) ("[B]ecause the written description clearly refutes Eon-Net's claim construction, the district court did not clearly err in finding that Eon-Net pursued objectively baseless infringement claims.") (determining exceptionality); *Teva Pharm. USA, Inc. v. Abbott Labs.*, 580 F. Supp. 2d 345, 365 (D. Del. 2008) ("jury could find defendants' infringement allegations objectively baseless" where "defendants' claim construction arguments were untenable [], contradicting the express definition provided in the specification, and exceeding all reasonable interpretations of the major tenets of claim construction").   No person of ordinary skill in the art would understand claim 1 (or any other claim) of the '693 patent

---

[9]   Between 2005 and 2014, the Federal Circuit equated "objective baselessness" for purposes of finding a case exceptional under 35 U.S.C. § 285 with the objective baselessness required for a finding of sham litigation. *See, e.g.*, *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757-58 (2014); *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 701 F.3d 1351, 1353 (Fed. Cir. 2012).

to read on Moldex's BattlePlug, *see* Soli Decl. ¶¶ 37, 52, 57,[10] and no reasonable litigant could expect to prevail on the merits of 3M's infringement claim.   Partial summary judgment on these elements is therefore appropriate.

### Conclusion

For all of the foregoing reasons, Moldex respectfully requests that the Court grant its motion for partial summary judgment.

Date: April 1, 2016

By:  s/Kevin D. Conneely
Kevin D. Conneely (MN #192703)
Katherine A. Moerke (MN #312277)
STINSON LEONARD STREET P.A.
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
kevin.conneely@stinsonleonard.com
katie.moerke@stinsonleonard.com

AND

Harold A. Barza
(California Bar No. 80888)
(admitted pro hac vice)
Joseph M. Paunovich
(California Bar No. 228222)

---

[10]   Although no amount of extrinsic evidence could save 3M's infringement claim because of the clear intrinsic evidence in the specification, Moldex anticipates 3M will rely primarily on its expert to oppose this motion.   Thus, Moldex submits expert testimony confirming the objective baselessness of the assertion of the '693 patent even though it is unnecessary to decide this motion.  *See, e.g.*, *Allan Block Corp. v. Cty. Materials Corp.*, 502 F. Supp. 2d 845, 848 (D. Minn. 2007) ("The court, in its discretion, may also consider extrinsic evidence, though it is less reliable than intrinsic evidence.   In most situations, however, intrinsic evidence will resolve any ambiguity in a disputed term, and it is improper to rely on extrinsic evidence when intrinsic evidence does so.") (internal citations omitted).

(admitted pro hac vice)
Valerie Roddy
(California Bar No. 235163)
(admitted pro hac vice)
Matthew Hosen
(California Bar No. 291631)
(admitted pro hac vice)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
halbarza@quinnemanuel.com
joepaunovich@quinnemanuel.com
valerieroddy@quinnemanuel.com
matthosen@quinnemanuel.com

**ATTORNEYS FOR PLAINTIFF
MOLDEX-METRIC, INC.**