**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MOLDEX-METRIC, INC.,<br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>3M COMPANY and 3M INNOVATIVE<br>PROPERTIES COMPANY,<br>　　　　　　　　　Defendants. | Civil No. 14-1821 (JNE/FLN) |

## MOLDEX'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON 3M'S "UNCLEAN HANDS" AFFIRMATIVE DEFENSE

Moldex moves for summary judgment on the "unclean hands" defense asserted by defendants 3M Company and 3M Innovative Properties Company (collectively, "3M"). Asserted as a purported bar to Moldex's unfair competition claim arising from 3M's unlawful labeling and marketing of its dual-ended Combat Arms earplugs, this defense fails both legally and on the undisputed facts.

As Moldex will establish at trial, the "22" Noise Reduction Rating ("NRR") 3M advertises for its dual-ended Combat Arms earplug was obtained only by using improper testing procedures and undisclosed fitting instructions, in violation of federal law. The Combat Arms earplug continues to threaten the health and safety of U.S. military personnel who trust it will protect their hearing. The law is clear that unclean hands pose no bar to equitable remedies for a defendant's conduct in violation of a statute, particularly where, as here, permitting that conduct to go unchecked is contrary to public policy and dangerous to public health and safety.

1

Moreover, 3M's unclean hands defense also fails because the undisputed facts reveal that the alleged misconduct that is the basis of 3M's defense was inadvertent (unlike 3M's conduct) and shares no direct nexus with Moldex's alleged injury. This untenable defense can and should be disposed of on summary judgment to prevent a distracting and confusing, but legally immaterial, sideshow at trial.

## I. Relevant Factual Background

### A.    3M's Dual-Ended Combat Arms Earplug

Until late 2015, 3M made and sold to the United States dual-ended Combat Arms earplugs for military use. *See, e.g.*, Declaration of Matthew S. Hosen, filed concurrently herewith ("Hosen Decl.") Ex. 1. These selective attenuation earplugs have two modes: a "closed" mode that operates by attenuating all sounds, and an "open" mode that attenuates explosive noises while allowing the user to hear verbal communications and other nearby non-impulsive sounds. *Id.* Ex. 5105. 3M's dual-ended Combat Arms earplug, with a yellow "open" end and an olive "closed" end is pictured below:



*Id.*

In 2000, personnel at Aearo Technologies Inc. (subsequently acquired by 3M) performed NRR testing on the open and closed modes of the dual-ended Combat Arms earplug. In performing this testing, they discovered that the structure of the earplug often

caused it to loosen in the test subject's ear, resulting in very low NRRs for many test subjects for both ends of the earplug.  In particular,



*Id.* Ex.  5211 at 2; *see also id.* Ex. 2 at 87:21-89:8, 91:3-24, 93:5-23; *id.* Ex. 3 at 104:16-106:1.

After discovering this defect and realizing it was causing test subjects to obtain very low NRRs for both ends of the Combat Arms earplug, Aearo personnel immediately stopped testing the *closed* end of the plug, because they knew that the U.S. Army wanted a higher NRR for that end than they were getting due to the plug's design defects.[1]  Aearo personnel continued testing on the *open* end of the plug—even though the defect also affected this testing by allowing noise to bypass the earplug and go directly into the ear canal—because they knew that the Army wanted a low NRR in the open mode.  Thus, Aearo got a "zero" NRR on the open end of the dual-ended Combat Arms earplug only by violating ANSI S3.19-1974 § 3.2.3 (dictating that any NRR test subjects "for whom an adequate fit cannot be obtained…should not be included in the evaluation").

To obtain the "22" NRR that 3M advertises for the closed end of the dual-ended Combat Arms earplug, Aearo personnel devised a different fitting procedure: They rolled

---

[1]   At the time Aearo stopped the closed end testing, the eight test subjects already tested showed a NRR of only 10.9.  Hosen Decl. Ex. 5211 at 2-3.

back the flanges on the yellow open end prior to inserting the olive closed end into the test subjects' ears. *Id*. Ex. 2 at 97:15-98:13; *id.* Ex. 3 at 107:12-109:5; *id.* Ex. 5211. Although this fitting method mitigated the defect by preventing the flanges of the uninserted end from loosening the plug, the NRR obtained from testing using this fitting method would be accurate only if the earplug was then sold with clear instructions directing the user to roll back the opposite-end flanges before insertion. *See, e.g.*, *id.* Ex. 3 at 112:2-21. But 3M provided no such fitting instructions with the earplugs..[2] *Id.* at 120:9-24; *id.* Ex. 4 at 163:24-164:8; *id.* Exs. 5305, 5501 & 5601. Although some versions of the Combat Arms instructions from 2005 and 2007 suggested rolling back the non-inserted flange for a better fit, even this unclear "fitting tip" was omitted completely from the instructions provided since 2012. *Compare id*. Ex. 5304 at 2 *with id.* Ex. 5501. As a result, the "22" NRR for the closed end that 3M advertises was obtained using improper testing procedures in violation of the Noise Control Act of 1972, 42 U.S.C. § 4901 *et seq.* and related regulations.

## B.    This Action

On June 5, 2014, Moldex filed this lawsuit, alleging that, among other things, 3M engaged in unfair competition in violation of California Business & Professions Code § 17200 *et seq.* by unlawfully distributing its dual-ended Combat Arms earplugs with an NRR of zero in their open mode when, in fact, the earplugs reduce *more* low-level sound than indicated by a zero NRR. ECF No. 1.

---

[2] ███████████████████████████████████████

████████████████████████████████████████████████ Hosen Decl. Ex. 4 at 163:24-166:1.

On January 22, 2016, Moldex filed a First Amended Complaint that added allegations that 3M obtained the "22" NRR for the closed mode of the same earplug only by utilizing improper testing techniques and undisclosed fitting instructions. *E.g.,* ECF No. 165 ¶¶ 31-38.

## C.     3M's Unclean Hands Defense

In its February 5, 2016 Answer to Moldex's First Amended Complaint, 3M added an allegation that "Moldex's amended claim for unfair competition is barred in whole or in part by the doctrine of unclean hands." ECF No. 175 ¶ 59. Specifically, 3M alleges that "Moldex amended its Complaint to add new allegations that 3M's NRR testing…violate[s] the Noise Control Act of 1972, 42 U.S.C. § 4901 et seq.…even though Moldex was aware that Moldex had presented inaccurate information to the government regarding earplugs" and "was aware that NRR data reported on Moldex's Internet brochures and packaging for its M-Series and Special Ops earmuffs had not complied with the [Noise Control Act]." *Id.* ¶ 65.

3M contends that the following alleged inaccuracies in certain of Moldex's Internet brochures violate the Noise Reduction Act and related regulations: (1) mean attenuation and standard deviation data for Moldex's M1 and M1 Special Ops earmuffs that did not support the claimed NRR; (2) identical mean attenuation and standard deviation data for products that likely differed in attenuation characteristics; and (3) an incorrect revision date of "01/15."

Moldex briefly recounts the underlying, undisputed facts relating to these allegations:

### 1. Moldex's Online Data Sheets

Moldex was first made aware of inaccuracies in some of its M-Series online data sheets during the deposition of a former employee, Daniel Dix. *See, e.g.*, Declaration of James Hornstein, filed concurrently herewith ("Hornstein Decl.") ¶ 13; Hosen Decl. Ex. 5 at 20:20-43:17. At this deposition, 3M's counsel questioned Mr. Dix regarding inconsistencies between supporting attenuation data on M-Series packaging and supporting attenuation data on certain M-Series online promotional materials. Hosen Decl. Ex. 5 at 20:20-43:17. The next day, Moldex's General Counsel and Vice President of Operations, James Hornstein, initiated an investigation of the NRR and supporting attenuation data on packaging and promotional materials. Hornstein Decl. ¶ 13.

Mr. Hornstein confirmed during this investigation that the supporting attenuation data and NRRs displayed on the packaging of M-Series and Special Ops earmuffs is correct and accurately reflects the attenuation results obtained from the NRR labeling test for each earmuff. *See id.* ¶ 23; *compare id.* Ex. 14 at 2 *with* Ex. 2 at MM00003914; *compare id.* Ex. 16 at 2 *with id.* Ex. 6 at 2.

Mr. Hornstein did discover some inadvertent errors on certain data sheets for Moldex's M-Series and Special Ops earmuffs that Moldex makes available exclusively at its website, *www.moldex.com*. *Id*. ¶¶ 15, 18-21. These data sheets provide general information, NRRs, and supporting attenuation data for each earmuff. *See, e.g.*, *id*. Ex. 1129. The supporting attenuation data is typically displayed in table format, as shown below:

6

**ATTENUATION DATA**
**M1 (OVER-THE-HEAD)**
Tested According to ANSI Specs S3.19-1974 Michael & Assoc., State College, PA.

| Frequency (Hz) | 125 | 250 | 500 | 1000 | 2000 | 3150 | 4000 | 6300 | 8000 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mean Attenuation (dB) | 16.4 | 23.9 | 27.8 | 36.2 | 37.5 | 43.9 | 46.1 | 44.4 | 42.7 | **NRR 29** | **CSA AL** |
| Standard Deviation (dB) | 2.8 | 2.6 | 2.0 | 3.5 | 2.8 | 3.9 | 3.6 | 4.1 | 4.7 | | |

*Id.*

In 2007, five years after Moldex began selling its M-Series product line, Moldex made some product and packaging modifications designed to achieve a more environmentally friendly product line. *Id.* ¶ 16. These modifications necessitated new NRR testing on all M-Series and Special Ops Earmuffs. *Id.* Moldex engaged an independent laboratory to perform these 2007 NRR tests. *Id.*

Moldex then revised two data sheets: (1) a data sheet for the M-Series M1 Premium Earmuff, M2 Multi-Position Earmuff, and M3 Cap-Mounted Earmuff; and (2) a data sheet for the M-Series Special Ops M1 and M2 Earmuffs. *Id.* Exs. 11 & 12. Both of the 2007 data sheets were created by a graphic artist formerly employed by Moldex, with assistance from Moldex's marketing department. Both data sheets were then reviewed and approved by multiple Moldex employees. *Id.* ¶¶ 17-18 & Exs. 11 & 12. Despite this review, the final versions of both 2007 data sheets displayed supporting attenuation data for certain earmuffs that was incorrectly copied from the wrong M-Series models. *Id.* ¶ 18. Importantly, however, the NRRs listed for each Earmuff on the 2007 data sheets are correct. *Id.*

The same graphic artist, again with the assistance of Moldex's marketing department, revised both data sheets in 2009.  *Id.* ¶ 21 & Exs. 1129 & 1130.  Although the supporting attenuation data errors in the 2007 versions were not discovered or corrected and additional supporting attenuation data errors were introduced in the 2009 versions, the stated NRRs for all earmuffs were again correct as stated in the attenuation data tables.  *Id.* ¶ 21.  However, the graphic artist also added a "NRR 33 dB" bubble, which does not accurately reflect the NRR of any M-Series Earmuff, in a lower corner of each 2009 data sheet.  *Id.* ¶ 22 & Exs. 1129 & 1130.  This bubble was most likely copied from the 2009 data sheet for Moldex's Pura-Fit foam earplugs, which *do* have an NRR of 33, that the graphic artist was using as a template.  *Id.* Ex. 13.

Moldex promptly corrected these inaccuracies once they were identified in Mr. Hornstein's investigation.  In December 2015, Moldex revised the M-Series and Special Ops Earmuffs data sheets by inserting the correct supporting attenuation data, and by replacing the "33 NRR dB" bubbles with accurate NRR bubbles for each earmuff.  *Id.* ¶ 24 & Exs. 19 & 20.  In updating the revision date, however, another inadvertent error was made; the revision date was entered "01/15" instead of "12/15."  *Id.* ¶ 25. Moldex immediately corrected this error and removed vestiges of the prior erroneous data sheets from certain webpages on Moldex's website when 3M's litigation counsel brought them to Moldex's attention in February 2016.[3]  *Id.* ¶ 25 & Exs. 21 & 22.

---

[3]   The inadvertent errors in Moldex's online data sheets did not violate the EPA regulations enforceable under the Noise Control Act (42 U.S.C. § 4901 *et seq.*), which apply only to labels on devices and packaging.  *See* 40 C.F.R. § 211.204-3 (regulations govern labeling affixed to device or case); 40 C.F.R. § 211.104 (listing required data for

### 2.      Moldex's 2010 Presentation to the Army

3M also makes a single, bare allegation that "Moldex was aware that Moldex had presented inaccurate information to the government regarding earplugs."  ECF No. 175 ¶ 65.  Because all of the specific errors alleged by 3M relate to ear*muffs* rather than ear*plugs*, Moldex briefly addresses a November 8, 2010 presentation it made to the U.S. Army that was the subject of deposition questioning by 3M, even though 3M does not allege anything about this event in its Answer.

On November 8, 2010, Mr. Hornstein and Moldex's Vice President of Technical Services met with Army Hearing Command regarding the development and testing of Moldex's BattlePlug prototype.  Hornstein Decl. ¶ 12 & Ex. 1 at 109:22-111:23.  At this meeting, Mr. Hornstein distributed printed copies of PowerPoint slides that were prepared by Moldex employees and reviewed by Mr. Hornstein.  *Id.* ¶¶ 11-12 & Ex. 1 at 59:22-62:5, 62:8-20; *id.* Ex. 1037; Hosen Decl. Ex. 6 at 147:16-150:24.  The relevant slide is shown below:

---

labels); 40 C.F.R. § 211.203(o) (defining labels as notices on devices, packaging, or both).

Hornstein Decl. Ex. 1037.  As confirmed by Mr. Hornstein in his deposition, the above slide contains a mistake: the "NRR – Open" for the "CAE Two sides" should be "0", not "8".  *Id.* ¶ 12 & Ex. 1 at 116:16-117:6.  As he also testified, however, Mr. Hornstein discovered this inadvertent mistake at or around the time of the meeting and either removed this slide from the copies distributed at the meeting or noted the mistake during the meeting.  *Id.* ¶ 12 & Ex. 1 at 59:22-61:3; 62:8-63:5; 64:6-14; 71:20-74:14; 76:23-77:5; 117:10-15; 131:6-22.  In any event, by the time of this meeting, the Army was well aware that 3M claimed that the open end had a "0" NRR.  *Id.* Ex. 1 at 128:12-129:9.

## II. Argument

**The Court Should Grant Summary Judgment in Favor of Moldex on 3M's Sixth**

**Affirmative Defense Based on Unclean Hands**

Courts have "gleaned a three-pronged test to determine the effect to be given to the plaintiff's [alleged] unclean hands conduct.  Whether particular misconduct is a bar to

the alleged claim for relief depends on (1) analogous case law, (2) the nature of the

misconduct, and (3) the relationship of the misconduct to the claimed injuries." *Kendall-*

*Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (1999), *as modified on*

*denial of reh'g* (2000).  Each of these considerations confirms that unclean hands is not a

defense to Moldex's unfair competition claim based on 3M's violation of the Noise

Reduction Act by misrepresenting the NRR for its dual-ended Combat Arms earplugs.[4]

First, analogous case law makes clear that an unclean hands defense does not bar

the requested relief.  "Courts have long held that the equitable defense of unclean hands

is not a defense to an unfair trade or business practices claim based on violation of a

statute.  To allow such a defense would be to judicially sanction the defendant for

engaging in an act declared by statute to be void or against public policy."  *Ticconi v.*

*Blue Shield of California Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 543 (2008); *see*

*also FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1284 (2009).

This rule holds especially true when the act sought to be enjoined is against public

policy or dangerous to public health and safety.  *See, e.g.*, *Republic Molding Corp. v. B.*

*W. Photo Utilities*, 319 F.2d 347, 350 (9th Cir. 1963) ("In the interests of right and justice

the court should not automatically condone the defendant's infractions because the

plaintiff is also blameworthy, thereby leaving two wrongs unremedied and increasing the

injury to the public."); *Jomicra, Inc. v. California Mobile Home Dealers Ass'n*, 12 Cal.

---

[4]    Although Moldex's Section 17200 claim asserts other forms of unfair
competition by 3M, 3M has only alleged that unclean hands bars Moldex's allegations
relating to its false "22" NRR labeling and, indeed, did not allege unclean hands at all
until these allegations were added to the case. *Compare* ECF No. 175 ¶¶ 59-74 *with* ECF
No. 65.

App. 3d 396, 402 (1970) ("The maxim 'he who comes into equity must come with clean hands' should not be invoked when the act sought to be enjoined is against public policy."); *see also Summit Media LLC v. City of Los Angeles*, 211 Cal. App. 4th 921, 938 (2012).  Thus, for example, courts have rejected the unclean hands defense where both the unfair competition plaintiff and defendant were allegedly engaged in selling cigarettes below cost to injure competition, *see Kofsky v. Smart & Final Iris Co.*, 131 Cal. App. 2d 530, 532 (1955); where the defendant terminated plaintiff for refusing to participate further in an illegal scheme, contrary to public policy, *see Jacobs v. Universal Dev. Corp.*, 53 Cal. App. 4th 692, 701-02 (1997); where the defendant engaged in discrimination prohibited by the Fair Employment and Housing Act because of the important public policies the statute embodied, *see Salas v. Sierra Chemical Co.*, 59 Cal. 4th 407, 432 (2014); and where the defendant allegedly violated the Immigration Consultants Act, because the statute was intended to protect consumers, *see Mendoza v. Ruesga*, 169 Cal. App. 4th 270, 279 (2008).

This case falls squarely within the rule that a defendant cannot invoke an unclean hands defense to avoid the consequences of its own illegal conduct, particularly where that conduct is contrary to public policy.  Moldex alleges that 3M achieved the stated "22" NRR on the closed end of its dual-ended Combat Arms earplug only by manipulating its testing procedures in violation of federal law, and it has not disclosed in the user instructions the special fitting steps that are required to actually obtain the stated level of hearing protection.  *See, e.g.*, ECF No. 165 ¶¶ 31-38, 48-49.  Other than its attorneys' fees and a determination that 3M engaged in unfair competition, *all* of the

relief Moldex seeks in connection with its unfair competition claim is targeted squarely at stopping 3M conduct that is both contrary to public policy and dangerous. *See, e.g.*, *id.* at Prayer (seeking permanent injunction prohibiting 3M from engaging in false advertising, marketing and/or promotions, improper testing, or selling Combat Arms earplugs without proper NRR labeling and instructions and a determination that 3M engaged in unfair competition).[5]

Second, the nature of the alleged misconduct in this case weighs against the availability of an unclean hands defense to Moldex's unfair competition claim because, as detailed at pages 6-10, *supra*, Moldex's alleged misrepresentations were inadvertent and (unlike 3M's) promptly corrected when discovered. Such alleged conduct does not rise to the level of "conduct that violates conscience, or good faith, or other equitable standards of conduct…sufficient…to invoke the [unclean hands] doctrine." *Kendall-Jackson Winery, Ltd.*, 76 Cal. App. 4th at 979; *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1117 (C.D. Cal. 2010) (rejecting unclean hands defense on summary judgment where conduct did not amount to bad faith).

Finally, there is no causal relationship between *Moldex's* alleged misrepresentations and 3M's alleged misrepresentations that would warrant invoking the unclean hands defense. "[T]here must be a direct relationship between the misconduct and the claimed injuries…so that it would be inequitable to grant [the requested]

_____

[5]   After Moldex moved to amend its complaint to add allegations based on the falsity of the "22" NRR, 3M announced it was discontinuing sales of the dual-ended Combat Arms earplug. Hosen Decl. Ex. 1. However, to Moldex's knowledge, 3M has made no effort to recall these defective earplugs or provide any corrective disclosures that would mitigate the continuing risk to existing users.

13

relief.…The issue is not that the plaintiff's hands are dirty, but rather that the manner of dirtying renders inequitable the assertion of such rights against the defendant. *Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal. App. 4th 820, 846 (1997) (internal citations omitted).   Here, the alleged misconduct was not "the instrumentality of [plaintiff's] alleged harm" such that an unclean hands defense is appropriate. *Blain v. Doctor's Co.*, 222 Cal. App. 3d 1048, 1063 (1990) (plaintiff's perjury barred emotional distress damages against attorney who advised perjury).   Moldex did not bring 3M's *knowing* misrepresentation of its NRRs upon itself through its own inadvertent misrepresentations.

Because 3M's allegations do not satisfy any of the three prongs of the test for the availability of an unclean hands defense, Moldex respectfully contends that the Court should enter summary judgment against 3M on its unclean hands defense.

Finally, because 3M's affirmative defense is addressed to a claim alleged under Section 17200 *et seq.* of California's Business & Professions Code, Moldex has cited cases applying California law above.   The result, however, would be no different under Minnesota law, which precludes unclean hands defenses (1) based on collateral conduct lacking a direct nexus to the alleged wrong; (2) in the absence of bad faith; and (3) in the absence of prejudice. *See, e.g.*, *Bellino v. Bellino*, No. A12-2319, 2013 WL 4045809, at *4 (Minn. Ct. App. Aug. 12, 2013) (separate and distinct transaction cannot be basis for unclean hands defense); *Progressive Techs., Inc. v. Shupe*, No. A04-1110, 2005 WL 832059, at *4 (Minn. Ct. App. Apr. 12, 2005) (affirming summary judgment of unclean hands defense due to no evidence of plaintiff's bad motive or unconscionability); *Fred O. Watson Co. v. U.S. Life Ins. Co.*, 258 N.W.2d 776, 778 (Minn. 1977) ("The weight of

authority requires reliance on misrepresentations before they are cognizable as an equitable defense."). Although any one of these conditions suffices to render an unclean hands defense unavailable, all three are present here. Under either California or Minnesota law, 3M's unclean hands defense fails.

### III.   Conclusion

For all of the foregoing reasons, Moldex respectfully requests that the Court grant its motion for summary judgment on 3M's "unclean hands" affirmative defense.

Date: April 1, 2016

By:  s/Kevin D. Conneely
Kevin D. Conneely (MN #192703)
Katherine A. Moerke (MN #312277)
STINSON LEONARD STREET P.A.
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
kevin.conneely@stinsonleonard.com
katie.moerke@stinsonleonard.com

AND

Harold A. Barza
(California Bar No. 80888)
(admitted pro hac vice)
Joseph M. Paunovich
(California Bar No. 228222)
(admitted pro hac vice)
Valerie Roddy
(California Bar No. 235163)
(admitted pro hac vice)
Matthew Hosen
(California Bar No. 291631)
(admitted pro hac vice)

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
halbarza@quinnemanuel.com
williamprice@quinnemanuel.com
joepaunovich@quinnemanuel.com
valerieroddy@quinnemanuel.com
matthosen@quinnemanuel.com

**ATTORNEYS FOR PLAINTIFF
MOLDEX-METRIC, INC.**