UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MOLDEX-METRIC, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>Defendants. | Civil No. 14-1821 (JNE/FLN)<br><br><u>HIGHLY CONFIDENTIAL INFORMATION</u> |

**3M'S BRIEF IN OPPOSITION TO
MOLDEX'S MOTION FOR SUMMARY JUDGMENT ON
3M'S "UNCLEAN HANDS" AFFIRMATIVE DEFENSE**

**REDACTED VERSION**

**INTRODUCTION**

Moldex cannot foreclose 3M from asserting an unclean hands defense to Moldex's claim under California's unfair competition law ("UCL") because the controlling California Supreme Court case—which Moldex failed to cite—**requires** this Court to consider evidence of Moldex's unclean hands in deciding whether to grant the equitable remedies Moldex seeks. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180-81 (2000). The broad, per se rule that Moldex proposes—"that a defendant cannot invoke an unclean hands defense to avoid the consequences of its own illegal conduct"— is incorrect. (Moldex Br. 12.) In fact, "[i]n deciding whether to grant the remedy or remedies sought by a UCL plaintiff, the court **must** permit the defendant to offer such [equitable] considerations." *Cortez*, 23 Cal. 4th at 181.

The only way Moldex could prevail on its summary judgment motion would be to prove that the undisputed material facts establish that Moldex's misconduct cannot be given effect under California's three-prong unclean hands test. *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (Cal. App. 1999), *as modified on denial of reh'g* (2000). It cannot. Under the analogous case law prong, the most analogous case—*Cortez*—holds that, in making a remedies determination, the Court must permit 3M to assert evidence of Moldex's unclean hands "to ensure an equitable result." 23 Cal. 4th at 180-81; *see Aguilar v. Zep, Inc.*, 2014 WL 4245988, at *19 (N.D. Cal. Aug. 27, 2014) (denying summary judgment where plaintiffs sought to dismiss unclean hands defense to UCL claim). Under the other two prongs, a reasonable factfinder could justifiably infer that Moldex's prolonged misrepresentations about the Noise Reduction

1

Ratings ("NRRs") of its M-Series earmuffs and 3M's Combat Arms earplugs were both sufficiently egregious and sufficiently related to Moldex's NRR-based UCL claim to invoke the doctrine of unclean hands. Moldex's motion should be denied.

## BACKGROUND

**I.  MOLDEX MISCHARACTERIZES 3M'S LABELING AND TESTING OF 3M'S COMBAT ARMS VERSION 2**

Moldex devotes several pages of its brief to mischaracterizing 3M's testing and labeling of the "closed" end of the Combat Arms Version 2 ("CAEv.2") and its instructions for use, despite not actually moving for summary judgment on the merits of its UCL claim. Moldex's rhetoric is irrelevant to 3M's unclean hands affirmative defense—which is based on **Moldex's** misconduct—and is presumably included in an attempt to color the Court's view of the facts. The problem with Moldex's tale about supposed "threat[s]" to "health and safety" is that it is baseless. To set the record straight, 3M explains below how the U.S. military played an active role in the development, design, and testing of the CAEv.2 and instructed soldiers to fold back the flanges when fitting the "closed" end of the CAEv.2.

Throughout the development of the CAEv.2, the military was fully aware of the testing for the product's "open" and "closed" ends, the conditions under which the tests were performed, the change in the fitting of the "closed" end for testing purposes, and the results obtained. (Ex. 33; Ex. 36 at 2-4.)[1] Indeed, the military conducted its own tests of

---

[1] All "Ex." cites are to exhibits attached to the Declaration of Chad Drown. The page number citations for deposition excerpts are to the sequential page numbers at the bottom center of each page of the exhibit.

the CAEv.2 and ended up using the CAEv.2 for over ten years.  (Ex. 47; Ex. 36 at 5; Ex. 33.)  ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████  In fact, during the motion to dismiss hearing, this Court predicted that the record would reveal that the military tested the CAEv.2 when it asked Moldex's counsel, Mr. Barza: "Wouldn't you think the military would test the earplugs it's giving its people?"  (Ex. 17.)  Mr. Barza answered: "They don't, Your Honor."  (*Id.*)  Mr. Barza was wrong, ████████████████████████████████████

██████████████████████████████.

Ignoring these facts, Moldex makes the baseless allegation that using the CAEv.2 "continues to threaten the health and safety of U.S. military personnel who trust it will protect their hearing."  (Moldex Br. 1.)  There is absolutely **no** evidence that any member of the military has been harmed by using 3M's CAEv.2 or has been confused about how to fit the earplug or the level of protection it will provide.  Not only has the military performed its own testing on the CAEv.2, but it has provided its own instructions to military personnel regarding the methods for fitting CAEv.2, including illustrating how to "fold opposing plug back" for large ear canals.  (Ex. 36 at 3-4; Ex. 33; Ex. 48 at 6, 10; Ex. 49.)

Also, no evidence supports Moldex's assertion that the "22" NRR for the "closed" end of the CAEv.2 overstates the level of protection if the opposing flanges are not folded back.  (Moldex Br. 1, 3-4.)  ████████████████████████████████████

3

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████  Moldex fails to mention this fact in its brief as well.

In any event, in October 2015, 3M permanently discontinued the CAEv.2 in favor of 3M's newer designs. (Ex. 32.)

## II. MOLDEX HAS MADE NUMEROUS FALSE STATEMENTS ABOUT THE NRR OF MOLDEX'S M-SERIES EARMUFFS AND THE NRR OF 3M'S CAEV.2

### A. Moldex's False Statements about Its Own Products

3M deposed Daniel Dix, a former Moldex employee, on November 30, 2015, and it became evident during the course of Dix's deposition that Moldex's marketing materials for its M-Series earmuffs were wrong in several significant respects. (Hornstein Decl. ¶ 13; Ex. 37.) Accordingly, 3M sent Moldex a letter identifying numerous errors in the NRRs and supporting data advertised on Moldex's M-Series marketing materials and packaging. (Hornstein Decl. ¶ 25; Ex. 31.) The declaration of Jim Hornstein filed in support of Moldex's motion confirms the "inaccuracies," "mistake[s]," and "incorrect supporting attenuation data" in Moldex's Internet Data Sheets. (Hornstein Decl. ¶¶ 13-14, 18-22, 24-25.)

The most egregious of these "mistakes" is Moldex's touting of an NRR of "33" for its M-Series earmuffs. This rating was prominently featured in a "bubble" (reproduced below) on Moldex's Data Sheets for around six years, from 2009 to December 2015. (*See* Hornstein Decl. ¶ 22; Ex. 31, Exs. A and B.)

4



The "33" NRR bubble overstated the actual NRRs of the M-Series earmuffs by several dBs (the actual values ranged from between 24 dB and 29 dB, depending on the product). (Hornstein Decl. ¶ 22 and Exs. 34 and 35.) ███████████████████████████

███████████████████████████████████████████████████████

Moldex's only explanation for its overstatement of the NRR for its M-Series earmuffs is that the "33" NRR bubble "was **most likely** copied from Moldex's 2009 Data Sheet for its Pura-Fit foam earplugs" by a "graphic artist" who no longer works at Moldex.[2]  (Hornstein Decl. ¶ 22.) ███████████████████████████

███████████████████████████████████████████████████████

████████████████████████████  Moldex also does not explain how its overstatement of its NRR went unnoticed and unchanged by Moldex for six years.

Moldex's Data Sheets contain other errors.  From 2007 until December 2015, the attenuation and standard deviation reported on the M-Series Data Sheets did not support the claimed NRRs.  (Ex. 31; Hornstein Decl. ¶¶ 16-21.)  Moldex admits that the Data Sheets contained "incorrect supporting attenuation data," and blames those errors on the same graphic artist.  (Hornstein Decl. ¶¶ 24-25; *see id*. ¶¶ 18-21.)  Moldex's only explanation for the failure of its review process to detect these errors is that "the

---

[2] All emphases have been added unless otherwise noted.

underlying Michael & Associates test results" were not circulated to the reviewers responsible for approving the accuracy of the Data Sheets in 2007 and 2009.  (*Id.* ¶ 18.) Moldex cannot explain why no one at Moldex noticed the "incorrect" data for nine years. Even after Moldex corrected its Data Sheets, it failed to correct "additional incorrect supporting attenuation data displayed on certain webpages of Moldex's website" until after Moldex received 3M's letter pointing out the errors in Moldex's marketing materials.  (*Id.* ¶ 25.)

Finally, Moldex wrongly asserts that its M-Series packaging is "correct and accurate[]."  (*Id.* ¶ 23.)  The "labeled values of mean attenuation" (shown in the green rectangles) do not support (and are much lower than) the claimed NRRs of "29" and "26" (circled in red) as required by 40 C.F.R. § 211.211(b).  (*See* Ex. 31, Exs. C and D.)

| MEAN ATTENUATION DATA OF M1 EARMUFFS DONNÉES MOYENNES D'ATTÉNUATION DES M1 EARMUFFS SIGNIFICANDO DEL DATO DE ATENUACIÓN DE LOS M1 EARMUFFS ||||||||||
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Frequency (Hz) / Frecuencia (Hz) / Fréquence (Hz) | 125 | 250 | 500 | 1000 | 2000 | 3150 | 4000 | 6300 | 8000 | NRR |
| Standard Deviation (dB) / Desviación Standard (dB) / Écart Standard (dB) | 21.0 | 26.9 | 33.9 | 40.5 | 38.6 | 43.4 | 43.8 | 45.1 | 43.1 | 29 |
| Mean Attenuation (dB) / Atenuación de Dato (dB) / Atténuation moyenne (dB) | 3.0 | 2.4 | 2.7 | 3.5 | 3.3 | 4.4 | 3.6 | 4.0 | 4.2 | |

Tested ANSI S3.19-1974 by Michael & Associates, Inc. State College, PA.
Tests ANSI S3.19-1974 effectués par Michael & Associates, Inc., State College, PA.
Analizado de acuerdo a las especificaciones ANSI S3.19-1974 por Michael & Associates, Inc. State College, PA.

6



### B.     Moldex's False Statements about the NRR of 3M's CAEv.2

On November 8, 2010, Moldex's general counsel Jim Hornstein and vice-president of special projects Jeffrey Birkner met with members of the U.S. Army in order to promote the Moldex BattlePlug.  (Hornstein Decl. ¶¶ 11-12; Ex. 38 at 4, 10.) Hornstein showed a PowerPoint presentation that included a slide comparing the NRRs of the BattlePlug to 3M's CAEv.1 (one insertable end) and CAEv.2 (two insertable ends) that purported to show 3M's claimed NRRs for the CAEv.1 and CAEv.2.  (Hornstein Decl. ¶¶ 11-12 and Exhibit 1037-B; Ex. 38 at 11-12; Ex. 42.)  However, the comparison slide misrepresented 3M's claimed NRR for the CAEv.2 in the "open" position as "8" (reproduced below with the incorrect "8" circled in red) rather than the "0" that Moldex knew 3M actually claimed.  (Hornstein Decl. ¶¶ 11-12 and Ex. 1037-B; Ex. 38.) Hornstein admits that he knew that the "8" was ▬▬▬▬▬▬▬ at the meeting. (Hornstein Decl. ¶¶ 11-12; Ex. 38 at 2-3, 5.)

7

**Comparison of Moldex Impulse Earplugs with Combat Arms**

|  | NRR – Open | NRR – Closed |
|---|---|---|
| Moldex Independently tested by Kevin Michael | 9 | 24 |
| CAE Two sides Claimed by 3M | 8 | 22 |
| CAE Single End Claimed by 3M | 7 | 21 |

Highly Confidential Technical Information    Moldex00158441

Hornstein testified that he caught Moldex's error either right before or during his presentation to the Army in 2010. (Hornstein Decl. ¶ 12; Ex. 38 at 4.) But Hornstein could not remember whether he **told** the Army that the NRR was incorrect or whether he **pulled out** the page in question from the paper copies distributed at the meeting, (Hornstein Decl. ¶ 12; Ex. 38 at 8), and there is no evidence in the record that he did either of those things.

[redacted]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

## PROCEDURAL POSTURE

Moldex asserted a claim under California's UCL based on 3M's claim of a "0" NRR for "Combat Arms earplugs" in its original Complaint. (Dkt. 1 ¶ 39.) Moldex moved to amend its complaint to add UCL claims based on the "22" NRR on November 16, 2015. (Dkt. 141.)

In its Answer to Moldex's First Amended Complaint, 3M asserted an "unclean hands" affirmative defense to Moldex's UCL claim based on Moldex's misstatements about the NRRs for Moldex's M-Series earmuffs and 3M's CAEv.2 and because "Moldex had presented inaccurate information to the government regarding earplugs." (Ex. 30 ¶¶ 59-74.) 3M's unclean hands defense applies to Moldex's allegations about the CAEv.2 generally (including the "0" and "22" NRRs) as well as Moldex's misconduct regarding Moldex's and 3M's NRRs. (*See id.*)

## LEGAL STANDARD

### I. SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must view facts that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the

evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II.   CALIFORNIA'S UNFAIR COMPETITION LAW

California's UCL defines "unfair competition" as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Profs. Code § 17200. Actions under the UCL are actions in equity, *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 112 (1972), where "Section 17203 authorizes the court to fashion remedies to prevent, deter, and compensate for unfair business practices," *Cortez*, 23 Cal. 4th at 176.

## III.   UNCLEAN HANDS

Moldex relies on California law to argue that 3M is not entitled to assert its unclean hands defense as a matter of law. (Moldex Br. 10-15.) Because Moldex has applied California law, 3M's opposition similarly applies California law. *See, e.g.*, *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 817 (8th Cir. 1992) (applying Illinois unclean hands doctrine in case under Illinois law).

Under California law, the defense of unclean hands arises from the maxim: "'He who comes into Equity must come with clean hands.'" *Kendall-Jackson*, 76 Cal. App. 4th at 978. Whether the particular misconduct is a bar to the relief sought is a question of fact and depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries. *Id.* at 979.

## ARGUMENT

### I. MOLDEX'S "RULE" THAT A DEFENDANT CANNOT INVOKE UNCLEAN HANDS "TO AVOID THE CONSEQUENCES OF ITS OWN ILLEGAL CONDUCT" IS WRONG UNDER CALIFORNIA LAW

As a threshold matter, Moldex proposes a broad-brush "rule that a defendant cannot invoke an unclean hands defense to avoid the consequences of its own illegal conduct . . . ." (Moldex Br. 12.) Moldex is flat-out wrong on the law—there is no such sweeping rule. In fact, in *Cortez v. Purolator Air Filtration Products Co.*—a case Moldex did not cite—the California Supreme Court held just the opposite. While "equitable defenses may not be asserted to **wholly defeat** a UCL claim," under California law those defenses "may be considered by the court when the court exercises its discretion over which, if any, remedies authorized by section 17203 should be awarded." *Cortez*, 23 Cal. 4th at 179-80.

In fact, "[i]n deciding whether to grant the remedy or remedies sought by a UCL plaintiff, the court **must** permit the defendant to offer such [equitable] considerations." *Id.* at 181. "[C]onsideration of the equities between the parties is **necessary** to ensure an equitable result" because "[a] court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute." *Id.* at 180-81.

Consequently, Moldex's "rule" that "unclean hands pose no bar to equitable remedies for a defendant's conduct in violation of a statute" (Moldex Br. 1) is contradicted by controlling California law. 3M may present evidence of Moldex's unclean hands as a defense to Moldex's UCL claim unless Moldex has shown that no reasonable factfinder, when applying the three-part *Kendall-Jackson* test, could conclude

11

that Moldex's unclean hands should be given effect.  Moldex has failed to meet its burden.

## II.   MOLDEX HAS NOT MET ITS BURDEN AS TO THE *KENDALL-JACKSON* TEST

Moldex has not met its burden of showing there are no genuine issues of material fact as to the three-prong unclean hands test set forth in *Kendall-Jackson*.  Rather, (1) analogous cases have held that a party defending a UCL claim may assert an unclean hands defense in contesting the remedies sought and a reasonable factfinder could justifiably infer that Moldex's misrepresentations about the NRRs of its M-Series earmuffs and 3M's Combat Arms earplugs are (2) sufficiently egregious and (3) sufficiently related to Moldex's NRR-based UCL claim.

### A.   Analogous Case Law Confirms that Consideration of Moldex's Unclean Hands Is Necessary to Ensure an Equitable Result

Analogous case law confirms that 3M can assert unclean hands against Moldex's UCL claim.  In *Cortez*, the California Supreme Court held "in addition to those defenses which might be asserted to a charge of violation of the statute that underlies a UCL action, a UCL defendant may assert equitable considerations" and "the court must permit the defendant to offer such considerations" when determining remedies.  23 Cal. 4th at 180-81.

At least one court has relied on *Cortez* to deny the plaintiffs' motion for summary judgment on an unclean hands defense to a UCL claim—the very motion Moldex brings here.  As explained in *Aguilar v. Zep, Inc.*:

> In *Cortez v. Purolator Air Filtration Products Co.*, the California Supreme Court explained that "equitable defenses may not be asserted to wholly defeat a UCL claim since such claims arise out of unlawful [conduct]. It does not follow, however, that equitable considerations may not guide the court's discretion in fashioning the equitable remedies authorized by [the UCL]." The equities may be considered when a trial court exercises its discretion to fashion a remedy under the UCL. **Therefore the plaintiffs' motion for summary judgment on Zep's equitable defenses of** . . . **unclean hands is DENIED to the extent these defenses are asserted against the plaintiffs' remedies under the UCL**.

2014 WL 4245988, at *19 (citations omitted).

The "analogous" cases Moldex cites actually confirm that Moldex's motion should be denied. In *Ticconi v. Blue Shield of California Life & Health Insurance Co.*, the California Court of Appeals explained, "[o]f course, the trial court has the discretion to consider equitable defenses such as unclean hands in creating the *remedies* authorized by Business and Professions Code section 17203." 160 Cal. App. 4th 528, 544-45 (Cal. App. 2008) (citing *Cortez*, 23 Cal. 4th at 179) (italics original). Similarly, the California Supreme Court held in *Salas v. Sierra Chemical Co.* that, while unclean hands may not "wholly defeat a claim based on a public policy expressed by the Legislature in a statute [prohibiting discrimination based on disability]," such "equitable considerations may guide the court in fashioning relief in cases involving legislatively expressed public policy." 59 Cal. 4th 407, 432 (2014) (citing *Cortez*, 23 Cal. 4th at 179).

Moldex also fails to acknowledge the unusual procedural posture of Moldex's motion, where the Court has not found (and Moldex's motion did not seek judgment) that 3M has violated any law. Moldex is asking this Court to grant **summary judgment** on 3M's unclean hands defense to Moldex's UCL claim on the ground that its UCL claim

13

**alleges** conduct that violates the law or public policy, without having to prove that a violation has actually occurred. Moldex has not cited a single case where a court has granted such a motion based on a mere allegation of unlawful conduct. The cases Moldex did cite (1) pre-date *Cortez* (*Kofsky*, *Republic Molding*), (2) involve non-analogous laws and public policies (*e.g.*, immigration (*Mendoza*), group boycotts (*Jomicra*), zoning laws (*Summit Media*), employment discrimination (*Salas*), illegal rebates and wrongful discharge (*Jacobs*), misappropriation of trade secrets (*FLIR*)), and (3) involve very different procedural postures (*e.g.*, preliminary injunction (*Kofsky*), class action certification (*Ticconi*), defendant's motion for summary judgment in favor of unclean hands (*Salas*, *Jacobs*, *Republic Molding*), estoppel from finding bad faith (*FLIR*)).

The most analogous cases—*Cortez* and *Aguilar*—directly support denial of Moldex's motion. The cases cited by Moldex are less analogous and, to the extent they have any bearing here, confirm that Moldex's motion should be denied.

### B. Moldex's Misconduct Is Sufficient to Find Unclean Hands

As to the second prong of the *Kendall-Jackson* test, Moldex argues that its misconduct was not sufficiently egregious to invoke the doctrine of unclean hands because it was (according to Moldex) "inadvertent" and not in "bad faith." (Moldex Br. 2, 13.) Again, Moldex ignores the procedural posture of Moldex's motion and misstates the law.

On Moldex's summary judgment motion, "all justifiable inferences are to be drawn in [the nonmovant's] favor"—here, 3M's. *Anderson*, 477 U.S. at 255. Here, the

14

undisputed facts establish that Moldex overstated the NRR of its M-Series earmuffs as being "33" for six years, provided "incorrect supporting mean attenuation data" between 2007 and December 2015 (notwithstanding two reviews of the Data Sheets), still has not corrected its M-Series packaging, and ▮▮▮▮▮ used a presentation that Moldex knew mischaracterized 3M's NRR ▮▮▮▮▮▮▮▮▮.  (Hornstein Decl. ¶¶ 13-14, 18-22, 24-25; Ex. 31; Ex. 34.)  A reasonable factfinder could justifiably infer from this evidence that Moldex knew its "33" NRR bubble prominently displayed on the M-Series Data Sheets was incorrect and knew there were other errors on the M-Series Data Sheets and packaging and in Moldex's presentation, yet failed to correct them.  Hornstein's conclusory assertion that the errors were "inadvertent" is "entitled to little weight," *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984), and the "[c]redibility determination[]" required to decide this issue should not be made "on a motion for summary judgment," *Anderson*, 477 U.S. at 255.  Moldex has failed to meet its burden of showing a reasonable factfinder could not justifiably infer Moldex's misrepresentations were sufficiently egregious, when all inferences are taken in 3M's favor, to invoke the doctrine of unclean hands.

     Moldex also is simply wrong when it argues that bad faith is required for an unclean hands defense.  "**Any conduct** that violates conscience, **or** good faith, **or** other equitable standards of conduct is sufficient cause to invoke the doctrine."  *Kendall-Jackson*, 76 Cal. App. 4th at 979.  Along the same lines, "intentional or fraudulent conduct is not required," and "even mistaken or negligent conduct on the part of [the plaintiff] is enough to bring the doctrine into play."  *Joint Equity Comm. v. Genovese*,

15

2014 WL 4162318, at *3 (Cal. App. Aug. 22, 2014); *see also Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1116-17 (N.D. Cal. 2010) ("It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness **or bad faith relative to the matter in which he seeks** . . . ."). Here, Moldex's repeated and lengthy misconduct—even if "inadvertent" and a "mistake"—is sufficiently egregious to invoke the doctrine of unclean hands. *Kendall-Jackson*, 76 Cal. App. 4th at 982-83 (reversing summary judgment that barred unclean hands defense).

### C. Moldex's NRR Misconduct Relates Directly to Its NRR-Based UCL Claim

Under the third prong of the *Kendall-Jackson* test, the relationship required to bring the "doctrine into play" under California law simply requires that the conduct "relate directly to the cause at issue." 76 Cal. App. 4th at 979. As interpreted by California courts, any "[m]isconduct in the particular transaction or **connected to the subject matter of the litigation** that affects the equitable relations between the litigants is sufficient to trigger the defense." *Id.* at 974. "Thus, **any evidence** of a plaintiff's unclean hands in relation to the transaction before the court or which affects the equitable relations between the litigants in the matter before the court **should be available to enable the court to effect a fair result** in the litigation." *Id.* at 985. The breadth of the conduct that triggers the defense is supported by the fact that unclean hands "is an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of his claim." *Id.*

Here, the subject matter of Moldex's UCL claim against 3M involves allegedly misleading NRRs. Moldex's misconduct involves its misleading NRRs, including Moldex's misleading conduct in connection with 3M's "0" NRR. Moldex's NRR misconduct could hardly be more "connected to the subject matter of the litigation." *Id.* at 974. That is the end of the matter. A reasonable factfinder could justifiably infer that Moldex's NRR misconduct is "connected to the subject matter of the litigation" or "affects the equitable relations between the litigants in the matter before the court"—Moldex's NRR-based UCL claim. *See id.* at 987-88 (jury could find allegations of Gallo's unfair marketing strategies targeting Kendall-Jackson "occurred in the transaction related directly to the matter before the court—the marketing of [Gallo's] Turning Leaf wine to compete with [Kendall-Jackson's] Vintner's Reserve wine—and affects the equitable relationship between the litigants"); *Emco, Inc. v. Obst*, 2004 WL 1737355, at *5 (C.D. Cal. May 7, 2004) (finding sufficient relationship in false advertising case where plaintiff alleged defendant misled defendant's consumers about country of origin and defendant showed plaintiff misled plaintiff's customers about country of origin). Having opened the door by making serious (and unfounded) allegations about the accuracy of 3M's NRR claims, Moldex cannot escape the evidence of its own false statements about NRRs by arguing they are not sufficiently related to its NRR-based UCL claim.

## CONCLUSION

3M respectfully requests that the Court deny Moldex's motion for summary judgment on 3M's unclean hands defense.

| | |
|---|---|
| Dated: April 22, 2016 | FAEGRE BAKER DANIELS LLP |
| | *s/ David J.F. Gross* |
| David J.F. Gross (#208772) | Chad Drown (#319053) |
| Calvin L. Litsey (#153746) | Elizabeth Cowan Wright (#387126) |
| Nick P. Chan (*pro hac vice*) | FAEGRE BAKER DANIELS LLP |
| Helen E. Chacon (*pro hac vice*) | 2200 Wells Fargo Center |
| FAEGRE BAKER DANIELS LLP | 90 South Seventh Street |
| 1950 University Avenue, Suite 450 | Minneapolis, Minnesota 55402-3901 |
| East Palo Alto, California 94303 | Telephone: (612) 766-7000 |
| Telephone: (650) 324-6700 | chad.drown@FaegreBD.com |
| david.gross@FaegreBD.com | elizabeth.cowanwright@FaegreBD.com |
| calvin.litsey@FaegreBD.com | |
| nick.chan@FaegreBD.com | **Attorneys for Defendants 3M Company** |
| helen.chacon@FaegreBD.com | **and 3M Innovative Properties Company** |

US.105893418